IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Cuauhtemoc Hernandez and William Mathis, | ) ) ) |
| *Plaintiffs,* | ) ) ) |
| -vs- | ) No. 23-cv-16970 ) |
| Thomas Dart, Sheriff of Cook County, and Cook County, Illinois, | ) Judge Harjani ) ) |
| | ) Magistrate Judge Holleb Hotaling ) |
| *Defendants.* | ) ) |

# AMENDED CONSOLIDATED COMPLAINT

Plaintiff Cuauhtemoc Hernandez and William Mathis, by counsel, alleges as follows:

1. This is a civil action arising under Section 202 of the Americans with Disabilities Act, 42 U.S.C. §12132, Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), and the Illinois Civil Rights Remedies Restoration Act ("Restoration Act"), 775 ILCS 60/1 *et seq*. The jurisdiction of this Court is conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2. Plaintiff Cuauhtemoc Hernandez was an inmate at the Cook County Department of Corrections for part of 2022 and 2023 under booking number 2022-0202047. Presently plaintiff is not confined to any correctional facility.

3. Plaintiff William Mathis is an inmate at the Cook County Department of Corrections assigned booking number 2023-0407079.

4. Defendant Thomas Dart is the Sheriff of Cook County. Plaintiff sues Dart in his official capacity only.

5. Defendant Cook County, in collaboration with the Sheriff as outlined in the January 2011 Inter-Agency Agreement, is responsible for accommodating the needs of disabled prisoners remanded to the Sheriff of Cook County and is a necessary party in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F. 3d 947 (7th Cir. 2003).

6. Cook County owns all buildings at the Cook County Department of Corrections. Cook County controls all funding for renovating county owned buildings.

7. Defendants Sheriff and Cook County have received federal funds since at least 1988. These funds have been used to construct capital projects at the Cook County Department of Corrections and to provide medical care, including drug treatment, to inmates.

8. Plaintiff Hernandez is substantially limited in his ability to move from place to place because of chronic low back pain and right knee pain. These conditions substantially limit plaintiff's ability to stand and move from place to place. Plaintiff relies on a cane to move from place to place.

9. When detained at Cook County Jail under booking number 2022-0202047, plaintiff Hernandez was prescribed a cane by the medical staff to move from place to place.

10. Over the past two years, while detained at the Jail, plaintiff Hernandez was required to walk up and down a steep ramp in the lower level of the Cermak Infirmary.

11. Defendants know this ramp does not comply with the ADA Structural Standards. In March 2018, Ellen Stoner was hired by Cook County to assess the Cermak ramp. Ms. Stoner prepared a report noting the "run exceeds code requirements" and that to make the ramp compliant with the ADA, handrails and a "landing 30' from the top of ramp" was necessary. This report is below:



12. The structural barriers prevent plaintiff Hernandez and similarly situated inmates from using the ramp similar to non-disabled inmates. In addition, the plaintiff has suffered physical injuries, including pain, because the ramp is steep, lacks a landing area to rest, and lacks ADA compliant handrails.

13. Plaintiff Hernandez seeks damages individually and requests that the Court allow this case to proceed as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for all individuals who traversed the Cermak ramp with a cane, crutch, or walker, from December 20, 2021, to the date of entry of judgment.

14. The refusal of defendants to correct this obvious physical barrier violates the rights of plaintiff and similarly situated inmates.

15. Plaintiff Mathis is substantially limited in his ability to move from place to place and stand because of arthritis in the left knee. Plaintiff relies on a cane to move from place to place.

16. For several months plaintiff was housed in the Jail's Residential Treatment Unit (RTU) and prescribed a cane by the Cook County Department of Corrections medical staff to move from place to place.

17. Construction of the RTU was completed in 2013. This building, based on the date of construction, is required to comply with the federal structural standards of the ADA.

18. While assigned to the RTU, plaintiff Mathis has been required to move up and down a steep ramp in the lower level of the RTU known as the "east tunnel." This ramp is shown below:



19. Defendants Sheriff and Cook County know this ramp is not compliant with the ADA structural standards. In March of 2021, TJ Tyrrell, a general manager of Cook County's Department of Facilities Management, wrote an e-mail to leadership of Cook County and the Sheriff's Office identifying this ramp appeared to be out of compliance with the ADA.

20. Cook County hired Globetrotters Engineering Corporation who prepared a report dated April 1, 2024 in Westmoreland v. Dart, 23-cv-1851, and make the following findings why the RTU east tunnel ramp does not comply with the ADA structural standards:

- **Top landing:** The Top Landing runs from the Upper Ramp to a pair of doors, leading to the adjacent tunnel, and has a length of 0.75' (9 in.). Since the landing length is less than 60 inches, the landing length is not code compliant.

  The landing is 85% short of the required length. However, this may be easily corrected by relocating the doors to the east 51", to provide the minimum required landing length.

- **Upper Ramp:** The Upper Ramp has a 25.95' horizontal run and a 1.93' vertical rise with an average slope of 1:13.4. There is a variation in slope at the very top of the ramp. The last 4.27' of the run, at the top has a rise of 4.56" for a slope of 1:11.

  The upper portion of the ramp floor surface is not code compliant; the top 16.5% of the overall length is approximately 0.64% steeper than permitted by code. Since the bottom portion of the ramp run is shallower than 1:12, it would be possible to add a floor topping which will even-out the slope make a consistent floor slope that has a 1:12 slope or shallower.

- **Intermediate Landing:** The Intermediate Landing is 4.75 feet (57 in.) in length. Since the landing length is less than 60 inches in length, the Intermediate Landing is not code compliant.

  It is 5% shorter than the required length. To correct this nonconformity, a longer level floor plane at the landing will need to be provided, extending the floor surface west. This will require the Lower Ramp to be rebuilt, along its entire length, to provide for the additional landing length and maintaining a maximum 1:12 ramp slope.

- **Lower Ramp:** The Lower Ramp has a 30.4' horizontal run and a 2.47 vertical rise, with an average slope of 1:12. There is a variation in slope at the very bottom of the ramp. The last 1 foot of the run is steeper than the rest of the ramp with a slope of approximately 1:8.5.

  The lower portion of the ramp floor surface is not code compliant; the lower 3.5% of the overall run is approximately 11.7% steeper than permitted by code. The floor surface will need to be feathered out, and the ramp length extended slightly for the Lower Ramp floor to be compliant with code requirements for ramp slope at this location.

- **Handrails:** As noted in the code requirements above, handrails need to be located 34-38 inches above the ramp floor and need to extend a minimum of 12 inches beyond the top and bottom of each ramp. The ramp(s) have a continuous handrail on each side located. At the lower end of the Lower Ramp the handrails, where measured, is approximately 33" above the ramp floor. At other locations, the handrail height exceeds 34" above the ramp floor.

> Since, at some locations, handrails are less than 34" above the ramp floor they are not in compliance with requirements for handrail height.
>
> The handrails extend 7.4" beyond the Lower Ramp and 11.3" beyond the Upper Ramp. Since the handrail extensions are less than 12 inches, the handrails are not in compliance with code requirements for handrail extensions.

21. Despite this notice, defendants continue to direct mobility impaired inmates prescribed a crutch, cane, or walker to traverse this non-compliant RTU ramp.

22. Plaintiff Mathis, because of the physical barriers, is unable to traverse this ramp on the same basis as non-disabled basis. Plaintiff has experienced pain and discomfort traversing this non-compliant ramp.

23. Additionally, plaintiff Mathis is required to move up and down a steep and long ramp to attend medical appointments every three to four weeks located in the lower level of Cermak.

24. This ramp was constructed after 1992 and must comply with the ADA federal accessibility standards.

25. Cook County hired Globetrotters Engineering Corporation in 2023 to analyze this ramp for compliance with applicable ADA structural standards.

26. On December 6, 2023, Globetrotters issued a report that the Cermak ramp does not comply with the ADA because the rise is approximately 32.4 inches and does not have an intermediate landing as required by applicable federal standards. Globetrotters also found the hand rails on the ramp do not

comply with applicable ADA standards because they are not continuous and do not extend a minimum 12 inches beyond the ramp.

27. Despite knowing this, defendants Sheriff and Cook County continue to direct mobility impaired detainees, like plaintiff Mathis, to move up and down this non-compliant ramp.

28. The Cermak ramp structural barriers prevent plaintiff and similarly situated inmates from using the ramp similar to non-disabled inmates. In addition, the plaintiff has suffered physical injuries, including pain, because the ramp is steep, lacks a landing area to rest, and lacks ADA compliant handrails.

29. Plaintiff Mathis seeks damages individually and requests that the Court allow this case to proceed as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure for all individuals who traverse the RTU "east tunnel" ramp and the Cermak ramp with a cane, crutch, or walker.

30. Plaintiff Mathis also requests that the Court allow this case to proceed as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for all individuals who traversed the RTU east tunnel ramp with a cane, crutch, or walker, from February 13, 2022, to the date of entry of judgment.

31. Plaintiffs demand trial by jury on their claim for damages.

It is therefore respectfully requested that judgment be entered in favor of plaintiffs for appropriate compensatory damages, that the Court award appropriate relief under the Restoration Act, that the Court certify this case under Rule 23 (b)(2) and (b)(3), and that the Court grant whatsoever other relief may be appropriate, including an award of attorney's fees and costs. In the event the plaintiffs do not establish damages, plaintiffs seek nominal damages.

/s/ <u>Patrick W. Morrissey</u>
ARDC No. 6309730
Thomas G. Morrissey, Ltd.
10257 S. Western Ave
Chicago, Illinois 60643
(773) 233-7901
*Attorney for Plaintiff*