IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Cuauhtemoc Hernandez and William Mathis, | ) )  )   Case No. 23-cv-16970 |
| Plaintiffs, | ) ) Honorable Sunil R. Harjani |
| v. | )  ) Magistrate Judge Holleb Hotaling |
| Thomas Dart, Sheriff of Cook County, and Cook County, Illinois | ) )  ) |
| Defendants. | ) |

### DEFENDANTS' FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT

NOW COME Defendants, COOK COUNTY SHERIFF THOMAS DART, and COOK COUNTY, a body politic and corporate, by and through their attorneys, Jason E. DeVore and Zachary G. Stillman, of DeVore Radunsky LLC, and for their Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiffs' Amended Consolidated Complaint, state as follows:

### STATEMENT OF FACTS

On August 12, 2024, this Court consolidated the matters of *Hernandez v. Dart, et al.*, No. 23-cv-16970, and *Mathis v. Dart, et al.*, No. 24-cv-01127, in furtherance of Defendant's Motion to Consolidate. (ECF Nos. 34, 40.) Thereafter, on August 21, 2024, Plaintiffs filed their Amended Consolidated Complaint, asserting claims new to this matter under the Illinois Civil Rights Remedies Restoration Act ("Restoration Act"), 775 ILCS 60/1 et seq. (ECF No. 43.)

The allegations of Plaintiffs Hernandez and Mathis are bereft of any specified time period or dates in which the allegations are asserted to have occurred. There are no dates certain in Plaintiffs' complaint, not even the date of alleged incidents, or the date that Plaintiff Mathis' became a detainee in the Cook County Department of Corrections ("CCDOC"). These baseline

1

facts are generally included in many similar lawsuits filed in this Court by Plaintiff's counsel (and, indeed, any counsel). *See, e.g.*, *Westmoreland v. Dart*, No. 23-cv-1851, ECF No. 1; *Walker v. Dart*, No. 20-cv-261, ECF No. 1. Plaintiffs' failures necessitate dismissal of Plaintiffs' Amended Consolidated Complaint for failure to state a claim, as well as an award of costs associated with bringing this Motion to cure basic notice pleading deficiencies.

Further, Plaintiffs' claims under the Illinois Civil Rights Remedies Restoration Act are invalid, as the Northern District has already ruled that the statute does not apply retroactively. Order at 2-4, *Mendoza v. Dart, et al.*, 20-cv-670, (N.D. Ill. Mar. 4, 2024), ECF No. 213. Any such claims are also barred by the Tort Immunity Act.

## **LEGAL STANDARD**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To avoid dismissal, the complaint must sufficiently describe the claim to give the defendant fair notice of it and the grounds upon which it rests, and the complaint must include enough facts to state a claim to relief that is plausible on its face and rise above a speculative level. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009); *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007) ("The rules do not require unnecessary detail, but neither do they promote vagueness or reward deliberate obfuscation."); *id.* (noting that fair notice "serves to expedite resolution by quickly alerting the defendant to basic, critical factual allegations"); *Jackson v. Am. Water Co.*, No. 20-cv-413-SPM, 2021 WL 135912 at *2-3 (S.D. Ill. Jan. 14, 2021) ("[A] plaintiff cannot simply put a few words and phrases on paper to suggest that something illegal might have happened.") (citing *Swanson v. Citibank*, N.A., 614 F.3d 400 (7th Cir. 2010)).

Instead, a plaintiff must provide enough details about the subject matter of a case "to present a story that holds together." *Swanson*, 614 F.3d at 404.

When considering a motion to dismiss, courts evaluate whether a complaint has met its obligation to provide sufficient grounds for entitlement to relief beyond a mere "formulaic recitation of a cause of action's elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to withstand a 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state a claim under the ADA or Rehabilitation Act, a plaintiff must allege facts plausibly suggesting that he is a qualified person with a disability and "was denied the benefits of the services, programs, or activities" because of his disability. *Shuhaiber v. Ill. Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020) (citing *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015)).

## ARGUMENTS

### I. Plaintiff Mathis Fails to State a Valid Claim Due to His Failure to Plead Concrete Dates or Times of Occurrences of the Alleged Conduct.

Plaintiffs' Amended Consolidated Complaint fails entirely to identify any relevant time frame or dates for alleged conduct regarding Plaintiff Mathis. Hence, Plaintiffs fail to state a valid claim upon which relief can be granted, and this Court should dismiss all claims asserted by Plaintiff Mathis against Defendants.

Plaintiffs' Complaint omits an exact time span during which the alleged wrongdoing related to Plaintiff Mathis occurred. Mathis does not even state the date he began his incarceration in the Cook County Department of Corrections. (ECF No. 5 ¶ 2.) Instead, the Complaint vaguely asserts that "[f]or several months, [he] has been housed in the Jail's Residential Treatment Unit (RTU) and has been prescribed a cane . . . to move from place to place." (*Id.* ¶ 16.) Mathis also

3

alleges that while assigned to the RTU, he "has been required to move up and down a steep ramp in the lower level of the RTU known as the 'east tunnel.'" (*Id.* ¶ 18.) He further claims that "because of the physical barriers, [he] is unable to traverse [the] ramp on the same basis as non-disabled" detainees, and "has experienced pain and discomfort traversing" the ramp. (*Id.* ¶ 22.) Plaintiff Mathis also alleges that he "is required to move up and down a steep and long ramp to attend medical appointments located in the lower level of Cermak." (*Id.* ¶ 23.) This constitutes the entirety of Plaintiff's allegations asserting a right to relief.

Without more detail as to the specified time periods in which the conduct affecting Plaintiff Mathis is alleged to have occurred, he has not satisfied the burden of notice pleading required by this Court. Defendants cannot be on notice of Plaintiff's claims when no date of occurrence or concrete injury has been specified. *See Jackson*, 2021 WL 135912 at *2-3 (dismissing complaint where allegations were "generic and did not provide specific conduct or dates where conduct occurred"). "It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson*, 614 F.3d at 403.

Such an unadorned complaint is prejudicial to Defendants because "[t]he purpose behind notice pleading is simply to provide a defendant with enough information to prepare a defense." *Sabratek Liquidating LLC v. KPMG LLP*, 2002 WL 774185 at *2 (N.D. Ill. Apr. 26, 2002) (citing *Veazey v. Commc'ns & Cable of Chi., Inc.*, 194 F.3d 850, 854 (7th Cir. 1999)). Defendants cannot prepare a defense based on the Amended Consolidated Complaint's less-than-bare-bones allegations. Without knowing approximately when the alleged incident(s) took place, Defendants cannot assemble witnesses, documents, medical records, video footage, or other materials that may

4

be essential in answering the complaint, offering affirmative defenses, disproving Plaintiff's claims, or aiding in any of Defendants' other potential defenses or legal strategies.

Furthermore, Plaintiff Mathis does not allege that he has been unable to attend his medical appointments or has been deprived of any services because of the slope of the ramp and his condition. *See Shuhaiber*, 980 F.3d at 1170 (affirming dismissal of complaint that alleged plaintiff's difficulties with facilities but failed to include facts that he was unable to access facilities or services on the same basis as other inmates); *Wagoner*, 778 F.3d at 593 (concluding that inconvenience of transport in a noncompliant van does not amount to denial of services).

Plaintiff has failed to provide fair notice to Defendants because he has not provided dates of Defendants' alleged conduct. Plaintiff has also failed to provide the date(s) of his alleged injuries incurred as a result of Defendants' conduct. Notably, these are not new issues. Plaintiff's counsel has repeatedly brought complaints in this Court lacking in such basic necessary information on the alleged conduct of Defendants. *E.g.*, *Mathis v. Dart*, No. 24-cv-1127; *Rogers v. Dart*, No. 24-cv-3739, *Brinson v. Dart*, No. 24-cv-3741. This tactic triggers unnecessary motion practice and inflates Plaintiffs' attorney's fees. This should give rise to sanctions awarded to Defendants for costs and fees associated with bringing this motion.

Absent such basic date information, Defendants are prejudiced in their ability to defend against and litigate the claims against them. Moreover, Plaintiff fails to present a valid claim for relief. *See* FED. R. CIV. P. 11. Accordingly, Plaintiff Mathis' claims should be dismissed.

## II. The Illinois Restoration Act Does Not Apply Retroactively to Plaintiff's Claims.

Plaintiffs' allegations pertaining to the Illinois Civil Rights Remedies Restoration Act ("Restoration Act" or "ICRRA") also fail to state a claim because the Restoration Act does not apply retroactively. Order at 3-4, *Mendoza v. Dart, et al.*, No. 20-cv-670 (N.D. Ill. Mar. 4, 2024),

ECF No. 213 ("Because [the ICRRRA] is substantive, and because there is no express provision concerning retroactivity, the statute applies prospectively."). Without providing any analysis, Plaintiffs' Amended Consolidated Complaint includes claims that allegedly fall under the Restoration Act, disregarding the fact that the conduct, while not specifically dated, is clearly alleged to have occurred before the Act came into effect on January 1, 2024.

Plaintiff Mathis has been in CCDOC custody since April 2, 2020, so claims arising from much of his three-plus years of detention do not qualify under the Restoration Act. (ECF No. 1 ¶ 2.) Plaintiff's allegations fail because they are based on events that occurred before the Restoration Act went into effect and are thus not covered by it.

A.  **The Illinois Restoration Act Does not apply retroactively.**

The Illinois General Assembly passed the Restoration Act on June 20, 2023, in response to the United States Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022). 775 ICLS 60/10. In *Cummings*, the Court ruled that non-economic damages like "emotional distress damages," were no longer recoverable under the Rehabilitation Act and the ADA. 596 U.S. at 230. The General Assembly found that such damages had been previously awarded, and that the *Cummings* decision "will likely impair the availability of emotional distress damages under other federal civil rights statutes as well." 775 ICLS 60/5(a)-(b).

Prior to March 4, 2024, no court in Illinois had determined whether the Restoration Act applies retroactively. This changed when the Honorable Jeremy C. Daniel definitively ruled in *Mendoza* that the Restoration Act was **not** retroactive. Order at 2-4, *Mendoza v. Dart, et al.*, 20-cv-670 (N.D. Ill. Mar. 4, 2024), ECF No. 213 ("*Mendoza* Order"). But even without Judge Daniel's decision, the default presumption is that a statute only applies prospectively. *E.g.*, *Landgraf v. USI Film Products*, 511 U.S. 244, 272 (1994); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208

(1988) ("Retroactivity is not favored in the law."). A clear legislative intent to apply a statute retroactively can defeat this default rule. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 536 (7th Cir. 2007). "Under *Landgraf*, a court must 'determine whether the legislature expressly prescribed the statute's temporal reach.'" *Mendoza* Order at 3 (citing *Thomas*, 487 F.3d at 536). If so, the legislature's intent must be given effect unless it would violate the Constitution. *Id.*

The Illinois Supreme Court has clarified that the second step of the *Landgraf* analysis is unnecessary given Section 4 of Illinois' Statute on Statutes, 5 ILCS 70/4. *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 20, 72 N.E.3d 346. "Section 4 is a general savings clause, which [the Illinois Supreme Court] has interpreted as meaning that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only." *Id.* Therefore, "If the temporal reach of the amendment is not set forth in the statutory amendment itself, then it is provided by default in Section 4." *Id.* ¶ 20, 72 N.E.3d at 353 (citation omitted).

Here, nothing in the Restoration Act indicates "a clear prescription of the statute's temporal reach." *Mendoza* Order at 3. The Illinois General Assembly did not state that the Restoration Act applies retroactively; therefore, the legislature's intent regarding the applicability of the Act could not be clearer. While the Restoration Act restores damages for "past, current, and future monetary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonmonetary losses, and any amount that may be determined by a jury, or a court sitting without a jury," it does not permit damages for violations that predate the Act itself. 775 ILCS 60/20. Therefore, there is no legislative intent to give effect to. *See Thomas*, 487 F.3d at 536.

If the Illinois General Assembly wanted the Restoration Act to apply retroactively, it could have said so, or at least made it effective immediately. "'[A] statute that has an express delayed implementation date but is otherwise silent as to temporal reach will be applied prospectively.'"

7

*Gilmore v. Carey*, 2017 IL App (1st) 153263 (quoting *Alvarez*, 2016 IL 120729, ¶ 23, 72 N.E.3d at 353)). The delay between the date the Restoration Act was passed (June 20, 2023) and the date it became effective (January 1, 2024) is further evidence that the Illinois General Assembly did not intend for it to apply retroactively to claims occurring before the date of its enactment, as is the case herein.

Recently, the court in *Pogorzelska v. VanderCook College of Music*, No. 19-cv-5683 (N.D. Ill. Apr. 11, 2024), ECF No. 206, found that the Restoration Act could apply retroactively to claims filed before the *Cummings* decision, but that case is distinguishable from the instant matter. *Pogorzelska* concerned conduct that occurred in 2017. That case was filed in 2019, at a time when the full range of damages for civil rights claims was recoverable and before the *Cummings* decision abrogated those damages. In *Pogorzelska*, Judge Aspen found that the passage of the Restoration Act in direct response to *Cummings* allowed the plaintiff's claims for emotional distress damages, originally pled in 2019, to spring back to life. *Pogorzelska*, ECF No. 206 at 2-3. The court, however, stopped short of finding that the Restoration Act applied retroactively to claims that were *not* plead prior to *Cummings*. *Id.* at 6 ("[N]or do we consider it 'entirely new'; the emotional-distress damages Plaintiff seeks . . . were available when she initiated this suit and during a significant part of its pendency."). *Pogorzelska* aligns with the legislative intent of the passage of the Restoration Act. *See* 775 ILCS 60/10 ("The purpose of this Act is to restore in Illinois the full enjoyment of the civil rights unjustly limited by . . . *Cummings*."). *Pogorzelska* did just that, restoring previously pleaded damages claims.

In contrast, the court in *Mendoza* noted that the Restoration Act did not allow unpled claims to spring forth from nothing. *Mendoza* Order at 2-3. There, the court determined that plaintiff's amended complaint would be futile because, although the request to add a claim under the

8

Restoration Act *after* it went into effect was timely, the Restoration Act did not permit *new* claims related to conduct that occurred before the Act went into effect. *Id.* at 3.

The instant matter is distinguishable from *Pogorzelska* and similar to *Mendoza*. In *Pogorzelska*, the court revived prior claims and damages that were effectively extinguished by *Cummings*, then revived by the Restoration Act. Here, however, Plaintiffs seek new damages not previously pled for injuries that allegedly occurred when the Restoration Act was not in effect, just like the plaintiff in *Mendoza*. In this case, Plaintiffs' allegations concern incidents *primarily* occurring between the *Cummings* decision in 2022 and before the Restoration Act went into effect on January 1, 2024. Specifically, Plaintiff Hernandez alleges injuries and violations of the Restoration Act during the time he was an inmate, "for part of 2022 and 2023." ECF No. 43 ¶¶ 2, 9-10. At no time was Hernandez entitled to recovery of damages he now seeks. As such, there is nothing to restore.

Even if Plaintiff Mathis is to assert that he is entitled to damages, alleging continuing violations of the ADA occurring past January 1, 2024, such violations would be all that Plaintiff Mathis would be entitled to under the Restoration Act. No claims from before the statute went into effect on January 1, 2024, should be permitted, as there were no recovery rights to restore at such time as the conduct occurred.

B. **The Restoration Act is a Substantive Change to Illinois Law.**

Further, because the Restoration Act is a substantive change to Illinois law, it applies only prospectively. *Alvarez*, 2016 IL 120729, ¶ 20, 72 N.E.3d at 352. Under the Restoration Act, which took effect on January 1, 2024, violations of federal discrimination statutes, including the ADA and Section 504 of the Rehabilitation Act, "constitute a violation of this Act." 775 ILCS 60/15. The Restoration Act permits plaintiffs to seek a statutory minimum of $4,000 for any violation of

9

it. 775 ILCS 60/20. The legislature found that establishing minimum damages promotes the general welfare, deters unlawful conduct, encourages victims of discrimination to vindicate their rights, and ensures access to the courts. 775 ILCS 60/5(d).

Unlike procedural statutes, the Restoration Act does not regulate the behavior of lawyers or judges in order to make the process of litigation fair and efficient. Nor is the Restoration Act simply a remedial statute. *Clanton v. United States*, 943 F.3d 319, 324 (7th Cir. 2019) (determining remedial statutes are a category distinct from both substantive and procedural statutes).

As discussed above, the Restoration Act provides a new, substantive state-law claim that addresses the rights of plaintiffs to protection from future violations of the Rehabilitation Act and ADA. It defines new violations, permits the recovery of minimum statutory damages and other remedies, and tells readers what sorts of sanctions they face for failing to obey the statute. 775 ILCS 60/15-20. So, as the Seventh Circuit found in *Thomas*, 487 F.3d at 536, the Restoration Act is a substantive act which shapes behavior occurring outside the courtroom, like Plaintiffs' claims in their Amended Consolidated Complaint.

Accordingly, any claims brought by Plaintiffs under the Restoration Act, in so far as such includes conduct occurring earlier than January 1, 2024, should be dismissed because the Restoration Act is not retroactive.[1] Consequently, this Court should dismiss Plaintiff's claims alleged under the Restoration Act and dismiss Defendants from all claims.

### III. **Plaintiffs' Claims Under the Restoration Act Also Fail Because Multiple Sections of the Tort Immunity Act Shields Defendants from Liability.**

---

[1] To the extent that, in Response, Plaintiffs seek to add dates regarding when the alleged violations occurred, that only strengthens Defendants' argument above in Section I. By failing to provide basic information in their Complaint, Plaintiffs have prejudiced Defendants and wasted this Court's time by necessitating additional briefing to clarify what the actual claim is and what defenses may be applicable.

Plaintiffs' claims based on the Restoration Act should also be dismissed because multiple sections of the Tort Immunity Act bar Plaintiffs' state-law claims. The Tort Immunity Act exists to "protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101(a). The Restoration Act expressly states that the "[s]tate waives sovereign and Eleventh Amendment of the United States Constitution immunity for any violation of this Act," but the Restoration Act is deafeningly silent on the Tort Immunity Act. 775 ILCS 60/30. Nowhere in the Restoration Act did Defendants, Cook County, and the Sheriff, waive any immunities against state law.

### A. Section 4-103 of the Tort Immunity Act

Under the Tort Immunity Act, a local public entity cannot be held liable for a state law claim based on a "failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein." 745 ILCS 10/4-103. This provision shields Defendants from state tort liability. *Dunn v. Cnty. of Will*, 18 C 6304, 2019 WL 1953049, at *13 (N.D. Ill. May 2, 2019) (affirming dismissal of state law tort claim against sheriff for holding detainee ten days after he should have been released) (citing *Schneider v. Cnty. of Will*, 528 Fed. App'x 590 (7th Cir. 2013)); *Kelderhouse v. Fox*, 05 C 4503, 2006 WL 2560855, at *10 (N.D. Ill. Aug. 31, 2006) ("Section 4-103 appears to provide both county sheriff and public employees with absolute immunity should they fail to sufficiently supervise the jail or inspect prisoners."). Immunity under Section 4-103 applies "regardless of whether the alleged conduct was willful and wanton." *Dunn*, 2019 WL 1953049, at *13 ("Section 4-103 does not provide an exception for conduct found to be willful and wanton") (citing *Jefferson v. Sheahan*, 279 Ill. App. 3d 74, 77 (1st Dist. 1996)). Courts have held that claims based on an alleged failure to keep a jail in a "safe and reasonable" condition are barred by Section 4-103 of

11

the Tort Immunity Act. *Isaacs v. St. Clair Cnty. Jail*, 08-0417-DRH, 2009 WL 211158, at *5-6 (S.D. Ill. Jan. 29, 2009) (citing 745 ILCS 10/4-103). Also, under Section 4-103, claims based on a local public entity's "failure to train correction officers . . . are barred by the Illinois Tort Immunity Act as they involve [the local public entity's] failure to provide sufficient personnel and supervision." *Hawkins v. St. Clair Cnty.*, No. 07-142-DRH, 2009 WL 10726383, at *25 (S.D. Ill. Mar. 31, 2009).

Here, Section 4-103 applies to allegations by Plaintiffs regarding Defendants' alleged failure to provide Plaintiffs with a safe and reasonably sufficient facility, and/or to train officers regarding compliance with the ADA and Rehabilitation Act. Plaintiffs' claims that the East RTU and Cermak ramps are not compliant with the ADA are claims that CCDOC does not have sufficient equipment or facilities. While those allegations may allow Plaintiffs to proceed with Federal ADA or Rehabilitation Act claims, however, a state law Restoration Act claim is foreclosed by the Tort Immunity Act.

B. Section 2-202 of the Tort Immunity Act

The Tort Immunity Act protects Illinois governmental workers and entities from liability for acts of negligence. 745 ILCS 10/2-202. A municipality in Illinois is liable only for the willful and wanton acts of its employees. *Gordon v. Degelmann*, 29 F.3d 295, 299 (7th Cir. 1994) (citing 745 ILCS 10/2-202). According to Illinois law, "Willful and wanton misconduct is essentially aggravated form of negligence, regarded as a hybrid between conduct considered negligent and conduct considered intentionally tortious." *Sparks v. Starks*, 367 Ill. App. 3d 834, 837 (1st Dist. 2006). The Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm, or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id.* at 838 (internal quotations omitted).

12

Here, the Court should dismiss Plaintiffs' claims under the Restoration Act because they do not even allege willful and wanton conduct on behalf of Defendants, and any liability for acts of negligence is protected by the Tort Immunity Act.

C.  **Section 2-109 of the Tort Immunity Act**

Additionally, under the Tort Immunity Act "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Generally, there is no personal liability under Title II of the ADA or the Rehabilitation Act. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court was . . . correct to dismiss [the individual defendants sued] in their individual capacity for the discrimination and retaliation claims arising directly under the Rehabilitation Act and the ADA."); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131) ("[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA.").

Plaintiffs fails to allege any claims against an individual defendant. Also, because an employee cannot be held liable under Title II of the ADA or the Rehabilitation Act, and because the Tort Immunity Act grants immunity to local public entities where an employee is not liable, the Tort Immunity Act shields Defendants from liability related to the Restoration Act for any injuries arising from violations of the ADA and Rehabilitation Act.

D.  **Section 3-103 of the Tort Immunity Act**

Section 3-103 is another applicable provision of the Tort Immunity Act. Section 3-103 reads as follows:

> A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such

13

plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe.

745 ILC 10/3-103. This provision shields Cook County from liability based on any allegations about the physical structures and construction of the facilities in CCDOC, including the East RTU and Cermak ramps.

As a result, multiple sections of the Tort Immunity Act apply to Plaintiffs' proposed claim brought under the state law Restoration Act, and any claims alleged under such statute fail.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that Plaintiffs' Amended Consolidated Complaint be dismissed for failure to state a valid claim.

WHEREFORE, Defendants, COOK COUNTY SHERIFF THOMAS DART, and COOK COUNTY, a body politic and corporate, respectfully request that this Court enter an order dismissing Plaintiffs Complaint for failure to state a claim, or otherwise dismissing Plaintiffs' claims asserted under the Restoration Act.

Respectfully submitted,

*/s/ Jason E. DeVore*
One of the Attorneys for the Defendant(s)

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
Zachary G. Stillman (ARDC # 6342749)
230 W. Monroe St., Suite 230
Chicago, IL 60606
(312) 300-4479 telephone
jdevore@devoreradunsky.com
tradunsky@devoreradunsky.com
zstillman@devoreradunsky.com

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that above **Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiffs' Amended Consolidated Complaint** was filed on September 16, 2024, with the Northern District of Illinois ECF System, serving a copy on all parties.

*/s/ Zachary Stillman*
Zachary Stillman