IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Cuauthemoc Hernandez and William Mathis,<br><br>          *Plaintiffs,*<br><br>          *-vs-*<br><br>Thomas Dart, Sheriff of Cook County, and Cook County, Illinois,<br><br>          *Defendants.* | 23-cv-16970<br><br>Judge Harjani |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

This case alleges two ramps in the lower level at the Cook County Jail, the Residential Treatment Unit (RTU) east tunnel ramp and the Cermak ramp, violate the structural standards required by the Americans with Disabilities Act (ADA). The RTU east tunnel ramp leads directly to the Cermak ramp and each ramp is of comparable size. Exhibit 1, Cook County Response to Request to Admit ¶ 23.

Fact discovery closes on October 31, 2024, for the claims asserted by plaintiff Mathis. Dkt. 39, Minute entry. Substantial discovery has been exchanged by the parties. Plaintiff Mathis, for example, has responded to several sets of interrogatories and sat for a deposition on July 24, 2024.

Defendants advance two arguments why this case should be dismissed under Rule 12(b)(6). First, defendants say plaintiff Mathis failed "to provide fair notice to defendants because he has not provided dates of Defendants' alleged conduct." Dkt. 54, Motion at 3-5. Defendants next argue any claim under the Illinois Restoration Act, 775 ILCS 60/1 *et seq.*, should be dismissed because it

does not apply retroactively and the Tort Immunity Act shields defendants from liability. Dkt. 54, Motion at 5- 14.

For the reasons stated below, the plaintiffs respectfully request that the Court deny this motion.

### I. Complaint provides "fair notice" of alleged wrongdoing concerning plaintiff Mathis[1]

Defendants argue the complaint should be dismissed under Rule 12(b)(6) because plaintiff Mathis "failed to provide fair notice to Defendants because he has not provided dates of Defendants' alleged conduct." Dkt. 54 Motion at 5. Defendants contend this is so prejudicial because "Defendants cannot assemble witnesses, documents, medical records, video footage, or other materials that may be essential in answering the complaint, offering affirmative defenses, disproving Plaintiff's claims, or aiding in any of Defendants' other potential defenses or legal strategies." Dkt. 54, Motion at 4-5. The Court should reject this argument for the following reasons.

First, the complaint alleges that plaintiff "William Mathis is an inmate at the Cook County Department of Corrections assigned booking number 2023-0407079."[2] Dkt. 43, Amended Consolidated Complaint ¶ 3. The complaint asserts that "[f]or several months plaintiff was housed in the Jail's Residential

---

[1] Defendants' motion contains no argument that the claims by plaintiff Hernandez should be dismissed on grounds he failed to plead concrete dates or times of occurrences of the alleged conduct. *See* Dkt. 54, Motion at 3-14. Indeed, prior to the reassignment of *Mathis v. Dart*, 24-cv-1127, defendants Dart and Cook County each answered the complaint by plaintiff Hernandez. Dkt. 14, Cook County Answer; Dkt. 15, Dart Answer.

[2] On August 29, 2024, after the filing of the Amended Consolidated Complaint, plaintiff Mathis was transferred to the Illinois Department of Corrections. Exhibit 2, IDOC Individual Locator (last visited Oct. 7, 2024).

-2-

Treatment Unit (RTU) and prescribed a cane by the Cook County Department of Corrections medical staff to move from place to place." *Id.* ¶ 16. The housing in the RTU presented a problem, according to plaintiff Mathis, because he was required to move up and down a steep ramp in the lower level that violated the ADA structural standards. *Id.* ¶¶ 18-22. Plaintiff alleges he suffered harm because he was unable to move up and down this non-compliant ramp on the same basis as non-disabled inmates and experienced pain. *Id.* at ¶ 22.

Defendants, based on the booking number, know exactly where plaintiff Mathis has been housed following the admission into the Jail on April 7, 2023.[3] The Sheriff's records show plaintiff Mathis was housed in Division 08/RTU on the following dates: 4/8/2023 to 4/12/2023, 11/1/2023 to 11/6/2023, 12/1/2023 to 2/18/2024, and 2/22/2024 to 2/29/2024. Exhibit 3, Sheriff's Response to Requests to Admit ¶ 46. And while housed in RTU, the Sheriff's movement records show he was moved "to or from Cermak for regular appointments" on 11/1/2023, 12/10/2023, and 1/11/2024. *Id.* ¶ 45. When the Amended Consolidated Complaint was filed on August 21, 2024, plaintiff Mathis was detained at the Cook County Jail and alleged that every "three to four weeks" he traversed the Cermak ramp to attend medical appointments. Dkt. 43, Amended Consolidated Complaint ¶¶ 3, 23, 27.

---

[3] Plaintiff supplements the allegations of the complaint in accordance with *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012), and *Bishop v. Air Line Pilots Ass'n, Intl.,* 900 F.3d 388, 399 (7th Cir. 2018). *See also Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint").

Plaintiff Mathis responded to written discovery regarding movement up or down the Cermak ramp on specific days. In response to an interrogatory seeking the identity of inmates traversing the Cermak ramp on May 23, 2024, plaintiff Mathis responded, with an image, showing his movement up the ramp that day using a cane.[4] Exhibit 4, Mathis Response to Defendant Sheriff's Second Set of Interrogatories ¶ 7. And in response to another interrogatory regarding movement up or down the Cermak ramp on June 20, 2024, plaintiff Mathis responded with yet another image showing his movement up the ramp using a cane. *Id.* ¶ 9. Defendants received this discovery on August 15, 2024, about one month prior to filing the instant motion.

Defendants' argument that the complaint does not provide sufficient notice about "dates of Defendants' alleged conduct," *see* Dkt. 54, Motion at 5, and therefore warrants dismissal should be rejected. A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), sufficient to provide the defendants with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The operative complaint provides "fair notice" that plaintiff, a person with a mobility disability, alleges movement up and down non-compliant ramps in the RTU and Cermak violate his rights.

Second, defendants have ample knowledge of the ramps at issue in this case. On December 6, 2023, Cook County received a report from Globetrotters

---

[4] This image was generated from video produced by defense counsel in this litigation.

-4-

Engineering Corporation (GEC) that acknowledged the Cermak ramp is not compliant with the ADA standards because the rise is over 30 inches and the ramp does not have an intermediate landing. Exhibit 1, Cook County Response to Request to Admit ¶¶ 11-13, 19. It also violates the ADA because the handrails are not continuous. *Id.* ¶ 17. Additionally, GEC submitted to defense counsel a report that the RTU east tunnel ramp does not comply with the ADA. *Id.* ¶¶ 24-25, 29, 32-34, 47. Thus, defendants' argument they do not have notice about the various ramps at issue in this case is misplaced.

Finally, defendants' reliance on *Shuhaiber v. Ill. Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020), to argue "Plaintiff Mathis does not allege that he has been unable to attend his medical appointments or has been deprived of any services because of the slope of the ramp and his condition," *see* Dkt. 54, Motion at 5, misunderstand the complaint. Plaintiff alleges, because of the structural non-compliance of the ramps caused by the steep slope, absence of adequate space to rest at the landings, and non-compliant handrails, he was unable to traverse the ramp on the same basis as non-disabled inmates and experienced pain. *See* Dkt. 43, Consolidated Amended Complaint ¶ 20, 28. This is nearly an identical claim advanced by the wheelchair-using plaintiff class in *Lacy v. Cook County*, 987 F.3d 847, 865-66 (7th Cir. 2018) (plaintiffs "face common physical barriers when they confront steep ramps" and "seek common modifications in the form of mandatory policies for assistance in pushing them up and down ramps"). Unlike the plaintiff in *Shuhaiber* who "did not say anything about his particular circumstances or accommodations that kept him from accessing the Center's facilities

or services on the same basis as other inmates," *Shuhaiber*, 980 F.3d at 1170, plaintiff Mathis adequately alleges a violation of the ADA.

### II. Plaintiffs adequately plead a claim under the Illinois Restoration Act

On January 1, 2024, the Illinois Civil Rights Remedies Restoration Act ("Restoration Act"), 775 ILCS 60/1 *et seq.*, became effective and was passed in response to *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562 (2022). The Restoration Act states that "[f]or decades, courts and juries have awarded damages for emotional distress for violations of federal civil rights statutes" and that "[a]s a result of the *Cummings* decision, an individual whose civil rights have been violated will be left without the full range of remedies once available." 775 ILCS 60/5. Therefore, the express "purpose of this [Restoration] Act is to restore in Illinois the full enjoyment of the civil rights unjustly limited by the U.S. Supreme Court in *Cummings*." 775 ILCS 60/5(c), 60/10.

To that end, the Restoration Act provides that any violation of the ADA or Rehabilitation Act "shall constitute a violation" of the Restoration Act. 775 ILCS 60/15. Additionally, claims for violation of the Restoration Act "may be filed in any court of competent jurisdiction" and Illinois has waived "sovereign and Eleventh Amendment of the United States Constitution immunity for any violation." 775 ILCS 60/30.

Defendants argue the claims under the Illinois Restoration Act are invalid "because the Restoration Act is not retroactive." Dkt. 54, Motion at 6. This argument deserves little consideration because plaintiff Mathis traversed the allegedly non-compliant ramps after January 1, 2024, and seeks relief for traversing the

-6-

non-compliant ramps, including the appointment as the class representative for a Rule 23(b)(2) class to remedy ongoing violations of the ADA.[5]

Indeed, in response to written discovery, plaintiff Mathis averse he is depicted traversing the Cermak ramp with a cane on May 23, 2024 and June 20, 2024. *See* Exhibit 4, Mathis Response to Sheriff's Second Set of Interrogatories ¶¶ 7, 9. Thus, defendants' suggestion that any allegations under the Restoration Act must fail since no alleged conduct occurred after January 1, 2024, is inapposite.

Finally, defendants argue the Tort Immunity Act shields defendants from any liability under the Restoration Act. Dkt. 54, Motion at 10-14. This argument, however, is misplaced. The Tort Immunity Act does not provide immunity for a local government to violate the ADA.

The Restoration Act merely provides a remedy for a violation of the ADA that Illinois legislature determined was "unjustly limited by the U.S. Supreme Court in *Cummings*." 775 ILCS 60/5(c), 60/10. The Restoration Act makes plain a violation of "Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12132 et seq.) . . . shall constitute a violation of this Act." 775 ILCS 160/15.

The Illinois Tort Immunity Act "grants only immunities and defenses" to "protect local public entities and public employees from liability arising from the operation of government." *See* 745 ILCS 10/1-101.1(b). Defendants cite no authority and plaintiffs' counsel has not identified any support for the rule the Illinois

---

[5] Plaintiff Mathis seeks to represent a class under Rule 23(b)(2) of the Civil Rules of Civil Procedure. *See* Dkt. 41, Motion for Class Certification at 1.

Tort Immunity Act grants local government "immunities and defenses" for violating the ADA.

Additionally, plaintiff Mathis seeks relief in the form of a class under Rule 23(b)(2) and the text of the Tort Immunity Act does not apply to injunctive relief. *Rivera v. City of North Chicago*, 2021 WL 323794, at *9 (N.D.Ill. 2021) (Durkin, J.) (citing 745 ILCS 10/2-101 ("Nothing in this Act affects the rights to obtain relief *other than damages* against a local public entity or public employee.") (emphasis added)).

The specific sections of the Tort Immunity Act cited by defendants demonstrate they are inapplicable. Defendants, for example, contend Section 4-103 of the Tort Immunity Act applies to any "alleged failure to provide Plaintiffs with a safe and reasonably sufficient facility, and/or to train officers regarding compliance with the ADA and Rehabilitation Act." Dkt. 54, Motion at 12. This section does not apply. Plaintiff alleges the Cermak and RTU east tunnel ramps must comply with "structural accessibility standards that apply to newly constructed or altered facilities subject to Title II and III," *see Lacy*, 897 F.3d at 853, and defendants failed to bring these ramps into compliance. Defendants have no immunity for violating the ADA and the Restoration Act merely affords a remedy that the legislature determined was unjustly limited by the *Cummings* decision. 775 ILCS 60/5, 60/10.

Defendants next say Section 2-202 "protects Illinois governmental workers and entities from liability for acts of negligence." Dkt. 54, Motion at 12. Plaintiff, however, does not seek to impose liability under a state law negligence theory.

Defendants next argue Section 2-109 of the Tort Immunity Act, that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable," applies. Dkt. 54, Motion at 13. This provision is not applicable because "[o]nly public entities are subject to Title II[.]" *City & County of San Franisco v. Sheehan*, 575 U.S. 600, 610 (2015); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) ("Under Title II of the ADA . . . the proper defendant is that 'entity.' . . . [A]s a rule there is no personal liability under Title II[.]"). Since personal liability is not an element for liability under Title II of the ADA, defendants' assertion that Section 2-109 imposes immunity on defendants Sheriff and Cook County is not applicable.

Defendants' final argument that Section 3-103 of the Tort Immunity Act applies is undeveloped. *See* Dkt. 54, Motion at 13-14. Plaintiffs seek to hold defendants liable for having steep, non-compliant ramps in RTU and Cermak that violate the ADA accessibility standards. The Seventh Circuit explained in *Lacy* that "[p]erhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services." *Lacy*, 897 F.3d at 853. Plaintiffs allege the defendants have knowledge of the inaccessible ramps and Section 3-103 of the Tort Immunity Act provides a local entity is not shielded from liability if "it appears from its use that it has created a condition that is not reasonably safe." Section 3-103 of the Tort Immunity Act therefore does not apply.

**III.    Conclusion**

It is therefore respectfully requested that the Court deny defendants' motion to dismiss.

                              Respectfully submitted,

/s/   Patrick W. Morrissey
     Thomas G. Morrissey, Ltd.
     10257 S. Western Ave.
     Chicago, IL 60643

     *an attorney for plaintiffs*