IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cuauhtemoc Hernandez et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| -*vs*- | ) | No. 23-cv-16970 |
| | ) | |
| Thomas Dart, Sheriff of Cook County, | ) | Judge Harjani |
| and Cook County, Illinois, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs seek to simplify this case by requesting the Court to certify the issues whether the Cermak ramp and the RTU east tunnel ramp (RTU ramp) comply with the ADA structural standards for inmates prescribed a cane, crutch or walker. The proposed class is easily identified because the Jail maintains information regarding inmates prescribed a cane, crutch and walker in its database and tracks each time the inmates move up and down these ramps. The issues whether the Cermak and/or RTU ramps comply with the ADA standards are central to the claim of each inmate and resolution of these issues will avoid potentially inconsistent rulings and is the most practical and efficient way to manage this litigation.

Defendants argue this case should not be certified because differences among class members would make this case too complex. *See* Dkt. 62, Response at 19-20. This reasoning, once adopted by the district court in *Bennett v. Dart*, 2022 WL 4386588, at *5 (N.D. Ill. 2022) (Blakey, J.) to justify the decertification of the class, was reversed in *Bennett v. Dart*, 53 F.4th 419, 420 (7th Cir. 2022) (*Bennett II*).

Plaintiffs and the putative class share a common experience of traversing allegedly non-compliant ramps. One purpose of Rule 23(b)(3) is "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all" due to small recoveries. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (cleaned up); *Mullins v. Direct Digital LLC*, 795 F.3d 654, 658 (7th Cir. 2015). Litigating these issues as a class action, for many of the same reasons advanced in defendants' motion to reassign and consolidate *Mathis v. Dart*, 24-cv-1127, "contributes greatly to judicial efficiency and economy" because of the "closely related issues and facts."[1] Dkt. 34, Defendants' Motion to Consolidate and Reassign at 7. Plaintiffs show below that the proposed class is ascertainable and that the requirements of Rule 23(a), (b)(2), and (b)(3) are satisfied.

## I. Defendants' response fails to introduce any evidence

Defendants requested several extensions to respond to class certification. In the final extension, defendants stated more time was necessary to complete depositions of plaintiffs and about ten "detainee witnesses" disclosed by plaintiffs. Dkt. 53, Second Motion for Extension ¶¶ 5-6. Defendants represented these depositions were necessary to prepare and submit their brief in opposition of class certification. *Id.* at ¶ 10.

Despite deposing eleven individuals, *see* Dkt. 63, Joint Status at 1-2, defendants

---

[1] Defendants recognized that having one forum decide the common issue of whether the ramps comply with the structural standards of the ADA achieves economies of time and effort when they moved to consolidate the claims of plaintiffs Hernandez and Mathis. *See* Dkt. 34, Defendants' Motion to Consolidate and Reassign. In that motion, defendants argued the cases present common questions of law and fact relating to the application of the ADA standards, *id.* at 4-5, that resolving this issue in a consolidated manner promotes efficiency, *id.* at 5, that the proposed classes requested by plaintiffs Mathis and Hernandez "involve the same overlapping issues and claims," *id.*, and "[a]ll Plaintiffs and putative class members allege substantially similar injuries and difficulties utilizing CCDOC facilities." *Id.* at 6.

fail to cite any deposition testimony in support of their position that that "many questions remain with regard to the experiences of the disclosed proposed class members, and the existence of damages, if any, amongst such individuals." Dkt. 62, Response at 11. Deposition testimony, however, does not support defendants' argument. As explained below, plaintiffs Mathis and Hernandez experienced the same difficulties with the ramps as the putative class members when they went up and down the non-compliant ramps.

Plaintiff Mathis testified the Cermak and RTU ramps were each "too steep" which caused nearly the same injury, pain and shortness of breath. Exhibit 1, Mathis Dep 19:2-10, 26:24-27:7. Because of Mathis's medical condition, going up the ramps was more challenging than descending that manifested with knee pain and his knee popping in and out of place. *Id* at 24:16-25:7. At times, Mathis relied on handrails depending on whether he was carrying paperwork or food. *Id.* at 21:9-19. Mathis traversed the ramps about once every three to four weeks because it was the path of travel to be transported to an outside hospital for injections. *Id.* at 20:7-21.

Plaintiff Hernandez testified similarly regarding movement up and down the ramps. The ramps were "too steep and too long" and did not have adequate space to rest which exasperated pain to plaintiff's leg, back, and shoulder, and caused anxiety. Exhibit 2, Hernandez Dep 92:1-16, 93:3-7. Hernandez was compelled to "stop to take breaks" by trying to "lean on the wall" and explained the anxiety was due to having "to explain myself why I couldn't keep up with the line" of inmates being moved. *Id.* at 42:12-23, 57:23-13, 92:17-22. Hernandez, similar to Mathis, relied on the handrails depending on his path of travel. *Id.* at 44:12-23.

While the recoveries for traversing the ramps may be small, based on the testimony of plaintiff Mathis and Hernandez, a class action is a vehicle for recovery "by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Cred. Corp.*, 109 F.3d 338, 344 (7th Cir. 1997), quoted with approval in *Amchem*, 521 U.S. at 617.

II. **The class is ascertainable**

Defendants objected to producing the names of putative class members and elected to produce the aggregate number of individuals who traversed the ramps. *See* Exhibit 3, Minute entry in *Mathis v. Dart* (memorializing an offer by defense counsel to produce information about the number of putative class members). Following receipt of defendants' aggregate data (filed as Dkts. 42-16 and 42-17), plaintiffs' counsel agreed this material was sufficient to address ascertainability and numerosity. Exhibit 4, Joint Status filed 8/5/2024 in *Mathis v. Dart*.

Without citation to the depositions of any plaintiff or putative class member, defendants argue "not everyone who was prescribed a cane, crutch, or walker . . . uses their mobility device in relation to the Cermak and RTU ramps identically" or "experienced the same (or any) difficulties with the ramp, let alone injury or some kind of injury." Dkt. 62, Response at 25. This argument, in addition to having no evidentiary support, is inconsistent with the holding in *Lacy v. Cook County*, 897 F.3d 847, 864 (7th Cir. 2018), where the Seventh Circuit affirmed the certification of a class of wheelchair-users complaining of structural noncompliance at six courthouses. Similar to *Lacy*, defendants in the instant case "have not suggested how many of these individuals could not have been injured under the ADA, let alone shown 'a great many' who evaded harm."

*Lacy*, 897 F.3d at 864; *see also* Exhibit 5, *Craig v. Hughes*, 23-cv-2993, Order at 2 (when objecting to ascertainability, the defendant "provides no evidence concerning how many wheelchair-bound individuals would not require ADA compliant showers"). Indeed, Globetrotters Engineering Corporation (GEC), the consultants hired by defendants, opine the ramps must be corrected to remedy the structural non-compliance. Dkt 42-18, GEC Cermak Report at 9; Dkt. 42-19, GEC RTU Report at 10-11.

Further, the Seventh Circuit in *Lacy* distinguished a case relied on by defendants, *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012). The Seventh Circuit found the commonality of the *Lacy* plaintiffs' alleged injuries stemming from defendants' failure to accommodate all wheelchair-using detainees was different from the *Jamie* class members' alleged injuries. *Lacy*, 897 F.3d at n. 38. The *Jamie* plaintiffs claimed "IDEA violations ranging from school district's failure to identify eligible students, to its failure to timely refer them for evaluation and its failure to hold properly constituted meetings regarding their individualized education programs." *Id.* Unlike in *Jamie*, plaintiffs do not claim that defendants engaged in a range of injurious conduct differing by plaintiff. Rather plaintiffs claim defendants engaged in the same conduct – failing to bring the Cermak and RTU ramps into compliance for the Jail's mobility impaired detainees, resulting in the same lack of process access for all of those detainees. And here, Cook County admits the Cermak medical staff determines "whether inmates need to be provided canes, crutches, or walkers," Exhibit 6, Cook County Response to Admissions ¶ 2, and the Sheriff's records identify when these individuals were moved through the underground tunnels. *See* Exhibit 7, Sheriff Response to Admissions ¶¶ 40-42, 44-46.

The class, therefore, is well tailored to reach individuals who would have suffered the alleged deprivations.

### III. The proposed class satisfies Rule 23(a)(1)

Defendants produced evidence showing hundreds of detainees with a cane, crutch, or walker traversed the RTU and Cermak ramps. *See* 42, Pls. Memo. at 3-4. Despite this evidence, defendants contend plaintiffs' evidence in support of numerosity is "speculative" and differences among class members exist because some may "regularly, as opposed to sporadically, use the Cermak or RTU ramps" and injuries may be different. *See* Dkt. 62, Response at 13-15.

These arguments, however, fail because a proposed class is sufficiently numerous when "joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Defendant Sheriff admitted more than 40 individuals with an alert for a cane, crutch, or walker have moved up or down the RTU ramp and Cermak ramp in 2024. Exhibit 7, Sheriff Response to Admission ¶¶ 19, 35. As explained by the Court in *Craig*, "[a] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class suit." Exhibit 5, *Craig* Order at 2 (internal citation omitted). As in *Craig* (where the partied agreed 100 or more wheelchair-users encountered allegedly inaccessible conditions), there is no dispute that hundreds of individuals with an active medical order for a cane, crutch, or walker traversed the ramps as issue here making the class "large enough that joinder is impracticable." *See id*. The Court, therefore, should find the numerosity requirement is met.

IV. **Commonality**

Defendants argue the GEC reports finding the ramps are non-compliant and reliance on *Bennett* is insufficient to satisfy commonality. Dkt. 62, Response at 10. Defendants also insist the common questions of whether the ramps compliance with the ADA structural standards "do not advance [plaintiffs'] claims." *Id.* at 11. These objections should be overruled for the following reasons.

To satisfy commonality, plaintiffs must "assert a common injury that is 'capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Lacy*, 897 F.3d at 865 (*citing Wal-Mart*, 564 U.S. at 350). In *Bennett v. Dart*, 953 F.3d 467,469 (7th Cir. 2020) (*Bennett I*), the Court considered a challenge by individuals prescribed canes, crutches, and walkers regarding the application of federal structural standards applied to toilets and showers to one housing division at the Jail. The Seventh Circuit held in *Bennett I* that the plaintiff framed a "central legal issue" with a class definition that "will win if the Standards apply (and were violated, to detainees' detriment) and otherwise will lose."

Plaintiffs here present a "central legal issue" that "will if the Standards apply (and were violated, to detainees' detriment) and otherwise will lose." *Bennett I*, 953 F.3d at 469. Similar to the class in *Bennett,* plaintiffs and the proposed class were prescribed a cane, crutch or walker by the medical staff and allege structural barriers prevented them from using the ramps similar to non-disabled inmates.

Eric Davis, the County's in-house subject matter expert on ADA compliance, Exhibit 6, Cook County Response to Admissions ¶¶ 9-10, testified these noncompliant

-7-

elements deprive mobility impaired detainees the ability to safely use the ramps on the same basis as non-disabled individuals. *See* Exhibit 8, Davis (6/5/2024) Dep 230:24-236:4. And Carl Darr, the vice president of architecture for GEC who inspected the ramps, Exhibit 6, Cook County Response to Admissions ¶¶ 11-14, 28-29, referencing the RTU ramp, testified defendants should take immediate action to correct the more egregious non-compliant elements "[a]ssuming they have the resources to do that, you know, I guess it would involve the corrections department function, why wouldn't they?" Exhibit 9, Darr Dep 94:1-10.

Finally, defendants suggest that the common issue of noncompliance with the structural standards ultimately may be determined in favor of the plaintiffs thus defeating commonality. *See* Dkt. 62, Response 11. As the Seventh Circuit explained in *Bennett I*, "Rule 23(a) and (b) provides a list of requirements for class certification, all of which must be met, but surety of prevailing on the merits is not among them." 953 F.3d at 469 (internal citation omitted). Defendants' belief that the outcome of this common issue may ultimately be found in favor of the plaintiff does not diminish the "central legal issue" presented in this case. *Bennett I*, 953 F.3d at 469.

V. **Typicality**

Defendants argue "Plaintiffs have not presented evidence of their disabilities, what assistive devices they use and when, or any specific injuries arising from traversing the ramps in question." Dkt. 62, Response at 12. This position, however, overlooks evidence demonstrating each plaintiff is mobility impaired, traversed the ramps at issue in this case, and was ordered a cane by a Jail medical provider.[2] *See* Pls. Memo. at 9-10.

---

[2] Defendants do not challenge the adequacy requirement of plaintiffs or their counsel.

Defendants know precisely when plaintiffs and putative class members traversed the ramps with an active alert for a cane, crutch, or walker. For example, the Jail has records plaintiff Hernandez had an alert to use a cane from February 2, 2022 to August 30, 2022, and May 10, 2023 to May 11, 2023, and was transported to or from Cermak on specific dates. Exhibit 7, Sheriff's Response to Admissions ¶¶ 40-42. Similar records are in possession of defendants concerning plaintiff Mathis. *Id.* at ¶¶ 44-46.

Indeed, the record evidence shows putative class members, like plaintiff Mathis, complained of being unable to move up or down the ramps on the same basis as non-disabled inmates. Plaintiff Mathis filed two grievances about the difficulty traversing the ramps. *See* Pls. Memo at 9-10. Defendants discount the declarations of five putative class members (Carlos Martinez, Tommy Love, Kavarian Rogers, Quovotis Harris, and Raasikh Phillips) because they fail to explain "how they traverse the ramps," "whether they or other proposed class members have suffered any injuries from traversing the ramps," or the extent of help rendered by staff. *See* Dkt. 62, Response at 12. These putative class members, however, are all typical because each had an active alert for an auxiliary aid, traversed one (or both of the ramps), and aver they were unable to move up or down on the same basis as non-disabled because of the structural non-compliance. Dkt. 42-7, Decl. C.Martinez; Dkt. 42-8, Decl. T.Love; Dkt. 42-9, Decl. K.Rogers; Dkt. 42-14, Decl. Q.Harris; Dkt. 42-15, Decl. R.Phillips.

The claims of plaintiffs and the proposed class are typical because the claims "arise[] from the same course of conduct" meaning "Defendants' alleged failure to bring the Cermak ramp [and RTU ramp] into compliance with the ADA and RHA." *Walker v. Dart*, 2021 WL 809765, at * 5 (N.D. Ill. 2021).

## VI. Plaintiff satisfies Rule 23(b)(2)

Defendants argue plaintiff Mathis is unable to demonstrate equitable relief is "appropriate for the whole class" and that "not all members would receive the same relief or accommodation." Dkt. 62, Response at 16-18. This argument should be rejected for nearly the same reasons explained by the district court in *Walker*, 2021 WL 809765, at *6.

Similar to the plaintiff in *Walker*, plaintiff Mathis contends defendants "act on grounds that apply generally to the class by failing to comply with the Structural Standards required by the ADA and RHA as it relates to the Cermak ramp" and the RTU ramp. *Walker*, 2021 WL 809765, at *6. One form of equitable relief applicable to the class as a whole involves bringing the ramps into compliance with the applicable federal structural standards. *Id.*

Defendants suggest part of this relief may be moot by arguing, without citation to any evidence, that renovations for the Cermak ramp will be "substantially complete by September of 2025." *See* Dkt. 62, Response at 16. Notably, defendants do not advance similar argument regarding the RTU ramp other than suggest an "ADA compliance overhaul . . . is imminently starting." *Id.* at 17. These unsupported factual arguments demonstrate one form of relief appropriate for the class as a whole is to renovate the ramps to comply with the structural standards.

Other forms of equitable relief are also available to the proposed class, including preliminary injunctive relief requiring defendants to implement policies and procedures to assist putative class members when transversing the ramps or provide a different path of travel for putative class members until the ramps are renovated. *See Lacy*, 897 F.3d at

854.

## VII. Certification appropriate under Rule 23(b)(3) and Rule 23(c)(4)

Defendants urge the Court to adopt argument overturned in *Bennett II* that "[d]ifferences among class members would make the case too complex" given individualized nature of some class members disabilities. *Bennett II,* 53 F.4th at 420; Dkt. 62, Response at 19 (arguing "[t]he potential members of the putative class have vastly different disabilities, utilize mobility devices differently than Plaintiffs, and require different reasonable accommodations from one another"). Plaintiffs respectfully request that the Court decline defendants' invitation to overturn binding precedent.

As the Court explained in *Craig*, "*Bennett II* instructs district courts to consider whether certification in ADA cases under Rule 23(b)(3) in conjunction with (c)(4) is appropriate to "resolve the *issue*, not the whole case." Exhibit 5, *Craig* Order at 4. Similar to *Craig*, the fact that class members "might have different damages" does not preclude certification where, as here, the main issues are (1) whether the ADA applies to the ramps, and (2) if the standards were violated due to non-compliant slopes, inadequate landings, and insufficient handrails. *Id.* at 5. These issues "can be resolved on a class-wide basis as they are relevant to every detainee in the proposed classes." *Id.*

Defendants rely on *Jacks v. DirectSat USA, LLC*, 2024 WL 4380256 (7th Cir. Oct. 3, 2024), to argue "Plaintiffs have failed to 'show that common questions predominate in the resolution of the specific issue or issues that are the subject of the certification motion and not as to the cause of action, taken as a whole.'" Dkt. 62, Response at 21-22. *Jacks* holds that to certify a class under Rule 23(c)(4) a party must demonstrate "common questions predominate as to each issue to be certified" and that

"certifying the proposed issue would be the most practical and efficient way to resolve the litigation." *Jacks*, 2024 WL 4380256, at * 8.

In *Jacks*, the plaintiffs, three former satellite service technicians, filed a class action suit against their employer alleging a violation of the Illinois Minimum Wage Law and the Fair Labor Standards Act for time spent performing work-related tasks in excess of forty hours per week. 2024 WL 4380256, at *1. Prior to trial, the district court decertified a Rule 23(c)(4) issue class finding "not only was it 'not possible to separate the question of liability from the question of damages,' but there was 'no feasible way' to determine the liability for the class as a whole" due to "'too much variance in the amount of time DirectSat technicians spent working overtime and the work they were doing in that overtime.'" *Id.* at *3.

The Seventh Circuit was critical of the district court's analysis for two reasons. First, the Court found it "was a flawed approach" for the district court to "examine[] whether common questions predominated as to the entire cause of action" rather "than looking to see whether common questions predominated as to each of the remaining fourteen certified issues." *Id.* at *8. Second, the Court squarely rejected the notion that "issues certified pursuant to Rule 23(c)(4) must resolve *all liability* in one fell swoop." *Id.*

Ultimately, however, the Court affirmed the decertification order since the DirectSat compensation method "raises many more individualized issues as compared to the straightforward forty-hour workweek commonly used by other employers" and there was a wide variation in work performed on some of the issue classes. *Id.* at *8. The Court found "this is not a case where liability and damages can be determined by a simple formula or uncomplicated follow-on proceedings," but required "hundreds of separate

trials to evaluate evidence regarding the nature and scope of an individual technician's work and the impact of his particular supervisor on the type of tasks assigned and how the technician recorded his time – not to mention the individualized piece-rate calculations at the center of this dispute." *Id.* at *9.

This case is distinguishable from *Jacks* because the proposed class, similar to the *Bennett* class, "presents what appears to be a straightforward question about whether [the ramps] compl[y] with the Standards." *Bennett II*, 53 F.4th at 420. For nearly the same reasons articulated in *Bennett I*, the issue whether the ramps comply with the ADA standards is relevant to every detainee. *Id.*

Finally, defendants argue that plaintiffs fail to show a class action is a superior method of adjudicating this case. Dkt. 62, Response at 22-24. Defendants rely on language by the district court in *Bennett* (that was subsequently reversed) that "individual questions relating to Plaintiffs' claims require highly tailored and individualized inquiries into existing disabilities, use of assistive devices, injuries sustained, and potentially other substantive or procedural issues, such as exhaustion of administrative remedies or statute of limitations." Dkt. 62, Response at 23. This argument was squarely rejected in *Bennett II* because "[c]lass members would receive the benefit of a declaratory judgment (if the class prevails) on the issue but would need to proceed in individual suits to seek damages; by contract, if the class loses, every detainee would be bound through the doctrine of issue preclusion." *Bennett II*, 53 F.4th at 420. The Cout of Appeals saw no reason "why the application of the Standards cannot be determined class-wide, while leaving to the future any particular inmate's claim to other relief." *Id.* The same is true here and is consistent with *Jacks* since a class regarding the proposed issues "would be

the most practical and efficient way to resolve the litigation." *Jacks*, 2024 WL 4380256, at *8. A class action, thus, is a vehicle for the parties to litigate in one forum whether the ramps comply with the structural standards and "achieves economies of time, effort, and expense and promotes uniformity of decision." *Bennett*, 2020 WL 1812376, at *3; *Suchanek v. Strum Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) ("Rule 23(b)(3) class actions are designed to 'cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or brining about other undesirable results.'" (quoting *Amchem Prods., Inc.*, 521 U.S. at 615)).

### IX. Conclusion

Plaintiffs request that the Court order that this case proceed as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

                                                                     Respectfully submitted,

                                           /s/ <u>Patrick W. Morrissey</u>
                                                     Patrick W. Morrissey
                                                     Thomas G. Morrissey
                                                     Thomas G. Morrissey, Ltd.
                                                     10257 S. Western Ave.
                                                     Chicago, IL. 60643
                                                     (773) 233-7900
                                                     pwm@morrisseylawchicago.com

                                                     *Attorneys for Plaintiffs*