IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cuauhtemoc Hernandez, et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | 23-cv-16970 |
| -*vs*- | ) | |
| | ) | Judge Harjani |
| Thomas Dart, Sheriff of Cook County, and Cook County, Illinois, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**PLAINTIFFS' STATUS REPORT REGARDING SUMMARY JUDGMENT**

Plaintiffs, by counsel, and pursuant to the Court's order entered on April 3, 2025, Dkt. 99, submit this status report regarding plaintiffs' anticipated summary judgment motion.

**I.  Introduction**

"This case arises from allegations that ramps at the Cook County Department of Correction's Cermak Health Services Facility and the Residential Treatment Unit's east tunnel fail to comply with the Americans with Disabilities Act (ADA) and the Rehabilitation Act because they are steep, do not have proper landings, and lack ADA compliant handrails." Dkt. 72, Memorandum Opinion and Order at 1.

The Court certified the following classes:

(1) pursuant to Rule 23(b)(2), all inmates at Cook County Jail provided a cane, crutch, or walker by a jail medical provider for a period of more than two weeks and who have traversed either the Residential Treatment Unit east tunnel and/or the Cermak ramp;

    (2) pursuant to Rule 23(b)(3) a class for all Cook County Jail detainees who have been assigned a cane, crutch, or walker by a jail medical provider, for a period of more than two weeks, and traversed the Residential Treatment Unit east tunnel ramp from February 13, 2022 to the date of judgment, to resolve the Rule 23(c)(4) issue of whether the east tunnel ramp complied with the structural standards required by the ADA and Rehabilitation Act at that time; and

    (3) pursuant to Rule 23(b)(3) a class of all Cook County Jail detainees who have been assigned a cane, crutch, or walker by a jail medical provider for a period of more than two weeks, and traversed the Cermak ramp from December 20, 2021 to the date of judgment, to resolve the Rule 23(c)(4) issue of whether the Cermak ramp complied with the structural standards required by the ADA and Rehabilitation Act at that time.

Dkt. 72, Memorandum Opinion and Order at 6.

The Cermak ramp was constructed after 1993 and the RTU east tunnel ramp was constructed after 2010. Exhibit 1, Cook County Response to Admissions ¶¶ 4, 27. The ADA structural standards apply to each ramp because each was constructed after January 26, 1992. 28 C.F.R. § 35.151(a)(1); *Lacy v. Cook County*, 897 F.3d 847, 853-54 (7th Cir. 2018).

Defendants retained Carl Darr of Globetrotters Engineering Corporation (GEC) as their Rule 26(a)(2) expert. Exhibit 2, Defendants' Expert Disclosure. During his deposition on April 30, 2025, Mr. Darr confirmed that each ramp, at the time of its construction, did not comply with the applicable ADA standards. *See* Exhibit 3, Darr Dep 34:3-36:10.

The 1991 ADA Standards and the 2010 ADA Standards are identical in providing that: (1) the rise for any ramp run shall be a maximum of 30 inches; and (2) handrails must meet specific structural requirements. *See* Exhibit 4, 1991 ADA Standards §§ 4.8.2, 4.8.5; Exhibit 5, 2010 ADA Standards §§ 405.6, 405.8.

Mr. Darr testified that the ADA structural standards are "mandatory," explaining: "[i]t would have been mandatory at the time for the designer to design the ramp accordingly and for the contractor to build the ramp accordingly." *See* Exhibit 3, Darr Dep. 17:21–18:8. Mr. Darr further opines that each non-compliant ramp must be renovated to meet the mandatory ADA structural standards. *See* Exhibit 6, Cermak Report at 9–10; Exhibit 7, Residential Treatment Unit Report at 16.

Plaintiffs were unable to traverse the ramps on the same basis as non-disabled inmates because of the structural barriers. Plaintiff Hernandez said the ramps were "too steep and too long" and did not have adequate space to rest which exasperated pain to his leg, back, and shoulder. Dkt. 67-2, Hernandez Dep 92:1-16, 93:3-7. He was compelled to "stop and take breaks" by trying to "lean on the wall" and explained the hardship caused by having "to explain myself why [he] couldn't keep up with the line" of inmates being moved. *Id.* at 42:12-23, 58:7-13, 92:5-16. Plaintiff Mathis experienced similar hardship. Each ramp was "too steep" which caused pain and shortness of breath. Dkt. 67-1, Mathis Dep 19:2-10, 26:24-27:7. Due to Mathis's medical condition, going up the ramps was more challenging than descending and his injuries included knee pain and a feeling of his knee popping in and out of place. *Id.* at 24:16-25:7.

## II. Class 1: Motion for summary judgment regarding the Rule 23(b)(2) class

The Rule 23(b)(2) class allege a "common injury – inability to use the Cermak and Residential Treatment ramps" and "[c]ommon injunctive relief would remedy the injury – either by bringing the ramps into compliance or by ordering

policies and procedures to assist class members while the ramps undergo construction." Dkt. 72, Memorandum Opinion and Order at 5.

Defendants' expert, Mr. Darr, agrees each ramp is noncompliant and must be renovated to comply with mandatory ADA structural standards. Exhibit 6, GEC Report dated December 6, 2023 (regarding Cermak); Exhibit 7, GEC Report dated April 1, 2024 (regarding the Residential Treatment Unit east tunnel). These reports acknowledge neither ramp is compliant with the ADA. Exhibit 6, Cermak Report at 3; Exhibit 7, RTU Report at 10-11.

Defendants have offered no evidence of any effort to remedy the RTU east tunnel ramp and Mr. Darr had no information regarding this project during his April 30, 2025, deposition, including whether defendants will follow his recommendations to bring the ramp into compliance with the ADA. Exhibit 3, Darr Dep 49:10-50:17. Therefore, the plaintiff class will seek summary judgment to remedy this noncompliant ramp.

Defendants have professed to take steps to remedy the noncompliant Cermak ramp. Eric Davis, a Rule 30(b)(6) designee for Cook County, said the cost to repair this ramp will be approximately $600,000 and that construction "is planned to begin in 2025. Exhibit 8, Davis Dep 23:18-24:7, 77:2-11. In October 2024, defense counsel produced a timeline suggesting that construction will commence on April 7, 2025 and be completed by September 19, 2025. Exhibit 9, P.Morrissey e-mail sent 5/1/2025. Despite several oral and written requests for a status on this project, defense counsel has not supplemented production on this

project. *See id.* Therefore, the plaintiff class will seek summary judgment to remedy this noncompliant ramp.

Additionally, Lonnie Hollis was produced on November 18, 2024, as the Sheriff's Rule 30(b)(6) designee to discuss Topics 3-6 of the Deposition Notice. Exhibit 10, Rule 30(b)(6) Deposition Notice; Exhibit 11, Hollis Dep 5:19-6:10. This Rule 30(b)(6) Notice addresses accommodations to class members to traverse the ramps. Exhibit 10, Rule 30(b)(6) Deposition Notice ¶¶ 3-6.

The only written training regarding movement up and down ramps is from Lexipol. Exhibit 11, Hollis Dep 120:13-121:8. This Lexipol Policy, titled 148, only provides direction for correctional staff to push wheelchair users up and down ramps. Exhibit 11, Hollis Dep 39:2-11; Exhibit 12, Lexipol Policy 148 at 7. Mr. Hollis confirmed this policy does not provide any information about how an officer is to accommodate a class member traversing a ramp at the Jail. Exhibit 11, Hollis Dep 39:22-41:6. He was unable to discuss training for staff to accommodate class members when traversing the ramps. Exhibit 11, Hollis Dep 121:9-122:9.

The plaintiff class, therefore, will seek interim accommodation for class members to traverse the ramps until defendants bring the ramps into compliance with applicable code.

### III. Class 2: Rule 23(b)(3) class regarding Residential Treatment Unit ramp

This class is certified to address the "issue of whether the east tunnel ramp complied with the structural standards required by the ADA and

Rehabilitation Act at that time." Dkt. 72, Memorandum Opinion and Order at 6. The plaintiff class will move for summary judgment on this issue.

Defendants' expert, Mr. Darr, testified the ramp "is not fully compliant" with the mandatory federal accessibility standards. Exhibit 3, Darr Dep 35:9-14. He elaborated why this ramp is noncompliant:

> There are several noncompliant conditions. The landing at the top is too short. The intermediate landing is too short, the handrails do not have 12-inch extensions, one has approximately 11 some inch plus extension, the other I think has a seven and a half extension at the bottom or top, and then also both the top ramp has a section about four feet long that's slightly too steep and the bottom ramp, if I remember correctly, has a section approximately one foot long. That's too steep.

Exhibit 3, Darr Dep 35:16- 36:2. Therefore, the plaintiff class will move for summary judgment on this Rule 23(c)(4) issue.

## IV.  Class 3: Rule 23(b)(3) class regarding Cermak ramp

This class is certified to address the "issue of whether the Cermak ramp complied with the structural standards required by the ADA and Rehabilitation Act at that time." Dkt. 72, Memorandum Opinion and Order at 6. The plaintiff class will move for summary judgment on this issue.

Defendants' expert, Mr. Darr, testified that at the time the Cermak ramp was constructed "[t]he ADAAG Standards would have been applicable to that construction and so these requirements would be required." Exhibit 3, Darr Dep 34:3-12. He said the Cermak ramp does not comply with the 1991 ADA standards, *id.* at 34:13-16, and that "the Cermak ramp for ramp rise has never complied with any of the applicable ADA Codes" because the rise is 32.4 inches, or 2.4 inches over the maximum permitted under the federal code. Exhibit 3, Darr

Dep 21:3-11. In addition, the handrails now attached to the ramp "are not compliant" with the 1991 ADA Standards. *Id.* at 27:20-28:4.

Mr. Darr offers two solutions to fix the noncompliant ramp. Either,

1. Adding an intermediate landing, to reduce the ramp rise to less than 30 inches per run and adding railing extensions at the top and bottom of the ramp.
   *or*
2. Reducing the slope to less than 1:20 by extending the length of the walkway. The sloped walkway will be shallow enough to eliminate the applicability of code requirements for ramps and will not require a handrail.

Exhibit 3, Cermak Ramp Report at 3. The issue certified for this Rule 23(b)(3) class must be found in favor of the plaintiff class. No reasonable finder of fact could find this ramp complies with the applicable code.

### V. Conclusion

It is therefore respectfully requested that the Court set a summary judgment briefing schedule on the above referenced issues.

Respectfully submitted,

/s/ Patrick Morrissey
ARDC No. 6309730
Thomas G. Morrissey, Ltd.
10257 S. Western Ave.
Chicago, IL 60643
(773) 233-7901
pwm@morrisseylawchicago.com
*an attorney for the plaintiff class*