IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cuauhtemoc Hernandez and William Mathis, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| -vs- | ) ) | No. 23-cv-16970 |
| Thomas Dart, Sheriff of Cook County, et. al., | ) ) ) ) | Judge Sunil R. Harjani |
| Defendants. | ) | |

**PLAINTIFFS' LOCAL RULE 56.1(a)(2) STATEMENT**

Plaintiffs Hernandez and Mathis, by counsel, files the following Local Rule 56.1(a)(2) Statement:

1. Plaintiff Cuauhtemoc Hernandez had a medical alert to use a cane at all times at the Cook County Jail from February 2, 2022 to August 30, 2022, and from May 10, 2023 to May 11, 2023. Exhibit 1, Sheriff's Response to Admissions ¶¶ 1-2, 40; Exhibit 2, Cook County Response to Admissions ¶ 2. The Court appointed Hernandez to represent a Rule 23(b)(3) class of all Cook County Jail detainees who have been assigned a cane, crutch, or walker by a jail medical provider, for a period of more than two weeks, and traversed the Cermak ramp from December 20, 2021 to the date of judgment to resolve the Rule 23(c)(4) issue of whether the Cermak ramp complied with the structural standards required by the ADA and Rehabilitation Act at that time. Dkt. 72, Memorandum Opinion and Order at 6.

2. Plaintiff William Mathis is a former detainee of the Cook County Jail and from October 16, 2023, until at least August 15, 2024, had a medical alert for "Cane Long Distances Only." Exhibit 1, Sheriff's Response to Admissions ¶ 44; Exhibit 3, IDOC Information for Mathis (admitted to IDOC on 8/29/2024). Plaintiff Mathis has been appointed class representative for two classes: (1) pursuant to Rule 23(b)(2), all inmates at Cook County Jail prescribed a cane, crutch, or walker by a jail medical provider for a period of more than two weeks who traversed either the Residential Treatment Unit east tunnel and/or the Cermak ramp, and (2) pursuant to Rule 23(b)(3) a class for all Cook County Jail detainees who have been assigned a cane, crutch, or walker by a jail medical provider, for a period of more than two weeks, and traversed the Residential Treatment Unit east tunnel ramp from February 13, 2022 to the date of judgment, to resolve the Rule 23(c)(4) issue of whether the east tunnel ramp complied with the structural standards required by the ADA and the Rehabilitation Act at that time. Dkt. 72, Memorandum Opinion and Order at 6.

3. Defendant Thomas Dart, Sheriff of Cook County, has custody and control over the Cook County Jail. Dkt. 76, Sheriff Answer to Consolidated Complaint ¶ 4; 55 ILCS 5/3-6017.

4. Defendant Cook County is an Illinois body politic that is responsible for accommodating the needs of disabled detainees remanded to the Sheriff of Cook County and also owns all buildings at the Cook County Jail. Dkt. 75, Cook County Answer to Consolidated Complaint ¶¶ 5-6.

5. This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 12133 and 29 U.S.C. § 794a(a)(2) Dkt. 76, Sheriff Answer to Consolidated Complaint ¶ 1. Venue is proper under 28 U.S.C. § 1391 because the actions giving rise to plaintiffs' claims occurred in the Northern District of Illinois. *Id.*

6. There is a pedestrian/material access tunnel serving the Cermak Health Services Facility at the basement level. Exhibit 2, Cook County's Response to Admission ¶ 3.

7. The Cermak Health Services Facility was constructed after 1993. Exhibit 2, Cook County's Response to Admission ¶ 4.

8. The Cermak ramp connects the Cermak building to the tunnel and is used by civilian and security employees to enter Cermak, to transport inmates, and to transport equipment. Exhibit 5, Cook County's Response to Admission ¶ 5.

9. Eric Davis has been the Deputy Director of the Cook County Department of Capital Planning and Policy since April 2017 and a licensed architect since 1989. Exhibit 2, Cook County's Response to Admission ¶¶ 7-8.

10. At present, Mr. Davis's duties include acting as the primary contact for the County on the facilities aspect of accessibility and the ADA and "leading County efforts to renovate the Cermak ramp." Exhibit 2, Cook County's Response to Admission ¶¶ 9-10.

11. Ellen Stoner is a licensed architect and is the principal of Altus Works. Exhibit 6, Stoner (9/8/2021) Dep 5:22-6:2,16:2-5. In about 2017, STV hired Altus

Works as an "on-call consultant for accessibility evaluations." Exhibit 6, Stoner (9/8/2021) Dep 15:17-16:10, 28:10-14.

12. Mr. Davis believed Ms. Stoner was qualified to assess whether or not the Cermak ramp complied with the 1991 ADA standards. Exhibit 5, Davis (1/19/2022) Dep 94:1-6.

13. Mr. Davis testified that he believed Ms. Stoner "was tasked to go and evaluate whether or not, as you say, there may be accessibility issues" with Cook County properties. Exhibit 5, Davis (1/19/2022) Dep 94:16-23.

14. Cook County provided the following interrogatory answer in response to the role of Ms. Stoner's assignment pertaining to the Cermak ramp:

> Atlas Works was tasked by the STV/Heery joint venture to review accessibility of various locations, including the lower-level ramp in the Cermak Health Services Facility, including but not limited to those requirements from the 2010 ADA Standards that may apply to a building constructed in the late 1990s.

Exhibit 9, Cook County Answer to Second Set of Interrogatories ¶ 3.

15. In March 2018 Ellen Stoner conducted a walkthrough of Cermak. Exhibit 6, Stoner (9/8/2021) Dep 102:16-21; Exhibit 10, Cook County Answer to Plaintiff's First Set of Interrogatories ¶ 2.

16. Ms. Stoner made recommendations to bring the Cermak ramp "into compliance." Exhibit 6, Stoner (9/8/2021) Dep 138:12-20. Ms. Stoner wrote the following information regarding the Cermak ramp:

> Existing ramp is 47' long without a landing. Slope of the ramp is within 1:12 maximum slope requirements, however the run exceeds code requirements. <u>Recommendations:</u>

1. Create compliant landing 30' from top of ramp
2. Repour the remaining 17' ramp in 2 sections with another landing area at the change in ramp direction.
3. Raise door to Medical Records room B020. Extend landing into room and provide 3' wide ramp and 44" wide stair
4. Provide hand rails at both sides of ramps, continuous at landing where no door exists.
5. Provide handrails at both sides of stairs in B020

Exhibit 10, Cook County Answer to Plaintiff's First Set of Interrogatories ¶ 6; Exhibit 4 at 2; Exhibit 5, Davis (1/19/2022) Dep 93:2-13.

17. Ellen Stoner created the drawing of the Cermak ramp attached as Exhibit 4 and also referenced in Eric Davis's deposition as Exhibit 4. Exhibit 5, Davis (1/19/2022) Dep 93:2-13.

18. Ms. Stoner testified as follows:

Q. In addition to the ramp not having a landing within 30 feet from the top of the ramp, you also found that the handrails were incompliant with the 2010 code, correct?

A. Uh-huh.

Mr. Glasso (Ms. Stoner's counsel): You have to say that verbal.

A. Yes. Sorry.

Exhibit 6, Stoner (9/8/2021) Dep 138:22-139:6.

19. Additionally, Cook County hired a third-party architectural/engineering firm, Globetrotters Engineering Corporation (GEC), to assess ADA compliance of the Cermak Health Services facility, starting with a report specifically on the Cermak ramp. Exhibit 2, Cook County's Response to Admission ¶ 11.

20. On December 6, 2023, GEC submitted a Cook County Ramp Accessibility Assessment for the Cermak Health Services Facility finding that the Cermak ramp has "a rise of 32.4 inches, which does not comply with the 30-inch maximum rise stated in Section 4.8.2 of the 1991 ADAAG." Exhibit 2, Cook County's Response to Admission ¶¶ 12-13.

21. Referring to the rise of the ramp, Carl Darr of GEC testified "If it's 2.4 inches short, it doesn't comply regardless." Exhibit 2, Cook County's Response to Admission ¶ 14.

22. GEC also found that the current handrails on the Cermak ramp "do not extend 12" beyond the ramp and "they do not comply with the 2010 ADAAG requirements for handrail extensions." Exhibit 2, Cook County's Response to Admission ¶ 17.

23. GEC proposed the following "[p]ossible solutions" to remedy the non-compliant Cermak ramp:

> 1. Adding an intermediate landing, to reduce the rise to less than 30 inches per run and adding railing extensions at the top and bottom of the ramp.
> *or*
> 2. Reducing the slope to less than 1:20 by extending the length of the walkway. The sloped walkway will be shallow enough to eliminate the applicability of code requirements for ramps and will not require a handrail.

Exhibit 2, Cook County's Response to Admission ¶ 18.

24. The Residential Treatment Unit was constructed after 2010 and contains an east tunnel ramp that leads directly to the Cermak ramp and they are of comparable size. Exhibit 2, Cook County's Response to Admission ¶¶ 23, 27.

25. In March of 2021, Timothy Tyrrell, the General Manager of Cook County's Facilities Management Department sent an e-mail acknowledging the path of travel on the RTU ramp is not compliant with the ADA. Exhibit 7, Tyrrell e-mail sent 3/8/2021 at 2:53 pm.

26. The RTU east tunnel ramp includes two-sloped floor runs separated by an intermediate landing. Exhibit 2, Cook County's Response to Admission ¶ 25. The runs are both steeper than 1:20 and therefore are ramps as defined under the ADA. *Id.*

27. GEC, including Mr. Darr, inspected the RTU east tunnel ramp on January 23, 2024, and again on January 25, 2024. Exhibit 2, Cook County's Response to Admission ¶ 29.

28. GEC submitted a report dated April 1, 2024 in *Westmoreland v. Dart*, 23-cv-1851, and make the following findings why the RTU east tunnel ramp does not comply with the ADA structural standards;

- **Top landing:** The Top Landing runs from the Upper Ramp to a pair of doors, leading to the adjacent tunnel, and has a length of 0.75' (9 in.). Since the landing length is less than 60 inches, the landing length is not code compliant.

    The landing is 85% short of the required length. However, this may be easily corrected by relocating the doors to the east 51", to provide the minimum required landing length.

- **Upper Ramp:** The Upper Ramp has a 25.95' horizontal run and a 1.93' vertical rise with an average slope of 1:13.4. There is a variation in slope at the very top of the ramp. The last 4.27' of the run, at the top has a rise of 4.56" for a slope of 1:11.

  The upper portion of the ramp floor surface is not code compliant; the top 16.5% of the overall length is approximately 0.64% steeper than permitted by code. Since the bottom portion of the ramp run is shallower than 1:12, it would be possible to add a floor topping which will even-out the slope make a consistent floor slope that has a 1:12 slope or shallower.

- **Intermediate Landing:** The Intermediate Landing is 4.75 feet (57 in.) in length. Since the landing length is less than 60 inches in length, the Intermediate Landing is not code compliant.

  It is 5% shorter than the required length. To correct this nonconformity, a longer level floor plane at the landing will need to be provided, extending the floor surface west. This will require the Lower Ramp to be rebuilt, along its entire length, to provide for the additional landing length and maintaining a maximum 1:12 ramp slope.

- **Lower Ramp:** The Lower Ramp has a 30.4' horizontal run and a 2.47 vertical rise, with an average slope of 1:12. There is a variation in slope at the very bottom of the ramp. The last 1 foot of the run is steeper than the rest of the ramp with a slope of approximately 1:8.5.

  The lower portion of the ramp floor surface is not code compliant; the lower 3.5% of the overall run is approximately 11.7% steeper than permitted by code. The floor surface will need to be feathered out, and the ramp length extended slightly for the Lower Ramp floor to be compliant with code requirements for ramp slope at this location.

- **Handrails:** As noted in the code requirements above, need to be located 34-38 inches above the ramp floor and need to extend a minimum of 12 inches beyond the top and bottom of each ramp. The ramp(s) have a continuous handrail on each side located. At the lower end of the Lower Ramp the handrails, where measured, is approximately 33" above the ramp floor. At other locations, the handrail height exceeds 34" above the ramp floor. Since, at some locations, handrails are less than 34" above the ramp floor they are not in compliance with requirements for handrail height.

  The handrails extend 7.4" beyond the Lower Ramp and 11.3" beyond the Upper Ramp. Since the handrail extensions are less than 12 inches, the handrails are not in compliance with code requirements for handrail extensions.

Exhibit 2, Cook County's Response to Admission ¶ 47.

29.     Mr. Darr testified in *Westmoreland v. Dart*, that "the regulations don't permit any entity to have a landing less than 60 inches." Exhibit 2, Cook County's Response to Admission ¶ 31.

30.     Mr. Darr testified that the purpose of an intermediate landing "basically gives somebody a place to stop for a moment, even turn around." Exhibit 8, Darr (4/30/2025) Dep 30:18-23.

31.     Mr. Darr testified in *Westmoreland v. Dart*, that the RTU east tunnel ramp is not in compliance with the ADA regulations. Exhibit 2, Cook County's Response to Admission ¶ 32.

32.     Mr. Darr testified in *Westmoreland v. Dart* that providing an accommodation such as pushing a wheelchair person up or down the RTU east tunnel ramp does not obviate the need of the government to comply with the ADA standards "for a required accessible route." Exhibit 2, Cook County's Response to Admission ¶ 33.

33.     GEC offered the following recommendations to bring the RTU east tunnel ramp into compliance with the ADA:



*Figure 3: Plan of Recommendations*

Exhibit 2, Cook County's Response to Admission ¶ 34.

34. There is no projected date when the RTU east tunnel ramp will be renovated in accordance with the recommendations of GEC and, as of August 15, 2024, the Cook County Board of Commissioners have not approve any funds to reconstruct the RTU east tunnel ramp to comply with the ADA. Exhibit 2, Cook County's Response to Admission ¶¶ 36, 39.

35. Defendants retained Carl Darr as their Rule 26(a)(2) expert in this case. Exhibit 11, Defendants' Expert Disclosure.

36. During his deposition on April 30, 2025, Mr. Darr confirmed that the Cermak ramp and RTU east tunnel ramp, at the time of construction, did not comply with the applicable ADA standards. Exhibit 8, Darr (4/30/2025) Dep 34:3-36:10.

37. The 1991 ADA Standards and the 2010 ADA Standards are identical in regards to certain components of ramps: (1) the rise for any ramp run shall be a maximum of 30 inches, and (2) handrails must meet specific structural requirements. *See* Exhibit 12, 1991 ADA Standards §§ 4.8.2, 4.8.5; Exhibit 13, 2010 ADA Standards §§ 405.6, 405.8.

38. Mr. Darr testified that the ADA structural standards are "mandatory," explaining: "[i]t would have been mandatory at the time for the designer to design the ramp accordingly and for the contractor to build the ramp accordingly." Exhibit 8, Darr (4/30/2025) Dep 17:21–18:8.

39. Mr. Darr further opines that each non-compliant ramp must be renovated to meet the mandatory ADA structural standards. *See* Exhibit 14, Cermak Report at 9–10; Exhibit 15, Residential Treatment Unit Report at 16.

40. Lonnie Hollis was produced on November 18, 2024, as the Sheriff's Rule 30(b)(6) designee, to discuss Topics 3-6 of the Deposition Notice. Exhibit 16, Rule 30(b)(6) Deposition Notice; Exhibit 17, Hollis Dep 5:19-6:10. This Rule 30(b)(6) Notice addresses accommodations to class members to traverse the ramps. Exhibit 16, Rule 30(b)(6) Deposition Notice ¶¶ 3-6.

41. The only written training by the Sheriff's Office regarding movement up and down ramps is from Lexipol. Exhibit 17, Hollis Dep 120:13-121:8. This Lexipol Policy, titled 148, only provides direction for correctional staff to push wheelchair users up and down ramps. Exhibit 17, Hollis Dep 39:2-11; Exhibit 18, Lexipol Policy 148 at 7.

42. Mr. Hollis confirmed Policy 148 does not provide any information about how an officer is to accommodate a class member traversing a ramp at the Jail. Exhibit 17,

Hollis Dep 39:22-41:6. Mr. Hollis also was unable to discuss training for staff to accommodate class members when traversing the ramps. Exhibit 17, Hollis Dep 121:9-122:9.

43. The Appendix to the 1991 ADA Standards states "[t]he ability to manage an incline is related to its slope and its length." Exhibit 19, Portion of 1991 ADA Appendix at 7, A4.8.2. The Appendix to the 1991 ADA Standards states "[l]evel landings are essential toward maintaining an aggregate slope that complies with these guidelines." Exhibit 19, Portion of 1991 ADA Appendix at 7, A4.8.4.

44. Plaintiff Hernandez had an alert to use a cane from February 2, 2022 to August 30, 2022 and from May 10, 2023 to May 11, 2023. Exhibit 1, Sheriff's Response to Admissions ¶ 40.

45. The medical intake for Hernandez on February 2, 2022, by PA Salvador Martinez documents "H/O: M.Obese with chronic LBP and shoulder OA" and that he was given "CPM/PRN with pain Rx -cane." Exhibit 20 at 3, Hernandez 2/2/2022 Intake Medical Record.

46. Hernandez dated a Health Service Request Form February 4, 2022, and wrote "I cant walk to far meaning need a wheel chair when moved around for court etc." Exhibit 21 at 1, Hernandez Health Service Request Form. Hernandez submitted another Health Service Request Form dated February 23, 2022, stating "I need to see the doctor to get an order that I be transported in a wheel chair when I go to court etc. I cant walk distances so please call me immediately. Staff told me

to direct this to medical that doctor." Exhibit 21 at 2, Hernandez Health Service Request Form.

47. At one point in time, Hernandez testified he did not believe there were handrails on the Cermak ramp. Exhibit 22, Hernandez Dep 93:11-16. When handrails were installed on the ramp, Hernandez would use the handrails "sometimes" depending on which side of the ramp he was required to walk on due to his bad right shoulder. Exhibit 22, Hernandez Dep 44:12-23.

48. On August 18, 2022, RN Jeelan McCray made the following documentation in Hernandez's medical file:

> Pt seen today. He ambulated out with a noticeable staggered limp and drag of his left foot. Pt is overweight and strongly declares that he cannot get up from a standing position without a cane. Pt does have an order for a cane at all times. Div 9 will not allow pt to have his cane on the deck. Communication sent to the provider for appropriate housing. F/U prn.

Exhibit 23, RN McCray 8/18/2022 Record.

49. Plaintiff Hernandez testified the Cermak ramp and RTU east tunnel ramp were "too steep and too long" and did not have adequate space to rest which exasperated pain to his leg, back, and shoulder." Exhibit 22, Hernandez Dep 92:1-16, 93:3-7.

50. When Hernandez moved up and down the ramps he was compelled to "stop and take breaks" by trying to "lean on the wall" and he was unable to "keep up with the line" of inmates being moved. Exhibit 22, Hernandez 42:12-23, 58:7-

13, 92:5-16. Using "the ramp was just one of the biggest problems because it's so long" and caused Hernandez to be in pain. Exhibit 22, Hernandez Dep 57:23-58:6.

51. The pain caused by using the ramp would last "for days," exasperated Hernandez's preexisting injuries, and caused him to fall inside his cell in Division 10. Exhibit 22, Hernandez Dep 54:2-55:16, 58:3-6, 62:7-17.

52. Hernandez reported the pain caused by using the ramp to the correctional officers and, on two occasions at most, he was transported in a cart. Exhibit 22, Hernandez Dep 44:24-45:10, 46:5-47:3. Correctional staff told Hernandez that the cart would not be used "all the time" and that he required a "medical script". Exhibit 22, Hernandez Dep 46:18-48:9, 56:19-57:8.

53. Hernandez reported his pain caused by using the ramps to the medical staff and even requested a prescription to use a wheelchair or to be transported regularly on a cart. Exhibit 22, Hernandez Dep 50:16-51:1, 56:19-57:8.

54. A medical record by PA Brittany Wilkins dated October 16, 2023, documents plaintiff Mathis has "acromegaly" with injections to treat this condition, along with "[c]hronic L knee pain OA (poor, worsening)" and a "low bunk" alert and "cane long distance only" alert. Exhibit 24 at 7, PA Wilkins Medical Record dated 10/16/2023.

55. A medical record by PA Daniel Kaczrowski dated November 20, 2023, documents Mathis "reports numerous h/o community flares," that he complained of "painful weight bearing on L ankle" and "likely gout flare." Exhibit 25 at 1, PA Kaczrowski Record dated 11/20/2023.

56. Mathis testified each ramp was "too steep" which caused pain and shortness of breath. Exhibit 26, Mathis Dep 19:2-10, 26:24-27:7.

57. During his incarceration at the Cook County Jail, Mathis went to Cermak approximately once every three to four weeks because he would attend medical appointments at Stroger Hospital to obtain injections. Exhibit 26, Mathis Dep 27:8-28:10.

58. Due Mathis's medical condition, going up the ramps was more challenging than descending and his injuries included knee pain and a feeling of his knee popping in and out of place. Exhibit 26, Mathis Dep 24:16-25:7.

59. Mathis has missed medical appointments at Cermak due to pain caused by traversing the ramps and ambulating during "flare-ups" of his condition. Exhibit 26, Mathis Dep 29:15-31:10.

60. From October 16, 2023, until at least August 15, 2024, plaintiff William Mathis had an alert to use a cane long distance only. Exhibit 1, Sheriff's Response to Admissions ¶ 44.

61. The Sheriff's record show Mathis was housed in DIV8/RTU on the following dates: April 8, 2023 to April 12, 2023, November 1, 2023 to November 6, 2023, December 10, 2023 to February 18, 2024, and February 22, 2024 to February 29, 2024. Exhibit 1, Sheriff's Response to Admissions ¶ 46.

62. On December 10, 2023, while assigned to Division 6, Mathis had a gout flare that caused his foot to swell up and be unable to hold any weight. Exhibit 26, Mathis Dep 54:17-55:7. The correctional officers initially told Mathis on this day

he had to walk in order to be evaluated by the doctor at Cermak. *Id.* at 55:22-56:23. Mathis was then seen by a nurse who placed him in a wheelchair and he was transferred into a cart and driven to Cermak. *Id.* at 56:5-11.

63. After December 10, 2023, Mathis has requested the correctional officers to transport him in a cart up and down the ramps, but was told "inmates not suppose to be on the cart" and was not escorted up and the ramps using a cart. Exhibit 26, Mathis Dep 61:5-20.

64. Mr. Lonnie Hollis, the Sheriff's Rule 30(b)(6) designee and Assistant Executive Director since 2020, said the use of a cart for inmates to move up or down ramps "is situational and they can't necessarily request for a cart, because the carts may or may not be available at a given time, that would have to be escalated to a supervisor, and they would have to work with Cermak to determine how to have the person escorted over." Exhibit 17, Hollis Dep 22:20-23:2, 98:11-22.

65. Additionally, Mr. Hollis stated that if a class member is at the base of a ramp and seek a wheelchair to traverse the ramp, a correctional supervisor must be contacted and supervisor would contact the on-duty nursing supervisor at Cermak "and a decision would be made at that point" whether a wheelchair would be permitted to move up or down the ramp. Exhibit 17, Hollis Dep 98:23-101:23.

66. Eric Davis said the purpose of handrails under the ADA code is to "allow someone to steady themselves, whether they're walking or in a wheelchair,

to provide stability when they're walking or in a wheelchair." Exhibit 5, Davis (1/19/2022) Dep 104:2-8.

67. Eric Davis testified in January of 2022 that the Cermak ramp did not have handrails that comply with either the 1991 or 2010 ADA standards. Exhibit 5, Davis (1/19/2022) Dep 52:3-7.

68. Eric Davis testified in January of 2022 that "handrails would need to be provided" to comply with the ADA structural standards. Exhibit 5, Davis (1/19/2022) Dep 52:16-22.

69. Eric Davis said that the Cermak ramp "appears that instead of a handrail that there are hospital-style bumpers at that - - at approximately the same height off the floor." Exhibit 5, Davis (1/19/2022) Dep 106:7-14.

70. An order was entered in *Walker v. Dart* requiring Cook County to install "hand-railings on the Cermak Ramp on or before December 31, 2022" and that the "railings must comply with the Americans with Disabilities Act (ADA)." Exhibit 27, Order in *Walker v. Dart*, 20-cv-261, Dkt. 120.

71. Timothy Tyrrell, the general manager for the department of facilities management for Cook County, was produced for a deposition on May 9, 2023. Exhibit 28, Tyrrell Dep 5:12-23, 11:5-18. Mr. Tyrrell testified that ironworkers "installed some handrails" on the Cermak ramp in the fall of 2022. Exhibit 28, Tyrrell Dep 70:6-12.

72. Mr. Tyrrell said the project to install hand railings on each side of the Cermak ramp was completed on January 16, 2023. Exhibit 28, Tyrrell Dep 72:22-

73:16. The project was completed at this time "because of delivery and shipment issues." Exhibit 28, Tyrrell Dep 71:6-22.

73. Carlos Martinez signed a declaration on June 1, 2024, indicating that he used crutches to move from place to place, that it was painful to move up and down the Cermak ramp, and that he requested a wheelchair to traverse the Cermak ramp on May 30, 2024, and was denied by the medical and correctional staff. Exhibit 29, Martinez Decl ¶¶ 1-4.

74. Tommy Love executed a declaration in June of 2024 indicating he uses a cane to move from place to place and that moving up and down the RTU east tunnel ramp and Cermak ramp causes physical pain to his body because each ramp is steep and long. Exhibit 30, Love Decl ¶¶ 1-4.

75. Quovotis Harris was processed into the Cook County Jail in 2019 and has an amputated right leg. Exhibit 31, Harris Decl ¶¶ 1-2. Up until September 2023, Harris used a cane and a prosthetic leg to move from place to place. *Id.* ¶¶ 2-3. Harris regularly moved from RTU to Cermak for medical appointments and experienced pain moving up and down the ramps to and from Cermak. *Id.* ¶¶ 4-6.

76. Kavarian Rogers was shot in the head in February of 2020 that caused a substantial impairment with the use of the right side of his body, including moving. Exhibit 32, Rogers Decl ¶ 2; Exhibit 33, Rogers Dep 50:18-51:7.

77. Rogers has moved up and down the RTU east tunnel ramp and Cermak ramp with a walker. Exhibit 32, Rogers Decl ¶ 4. Traversing these ramps

with a walker caused Rogers to experience pain because they are both long and steep. *Id.*

78.     Rogers has requested a cart to move up and down the Cermak ramp and RTU ramp and has been denied by the staff at the Jail. Exhibit 33, Rogers Dep 14:17-15:23.

79.     The Sheriff and County have received federal funds for the benefit of inmates at the Department of Corrections. Dkt. 76, Sheriff's Answer ¶ 7; Dkt. 75, County's Answer ¶ 7.


/s/     Patrick W. Morrissey

Thomas G. Morrissey, Ltd.
10257 S. Western Ave.
Chicago, IL 60643
(773)233-7901
pwm@morrisseylawchicago.com

*an attorney for the plaintiff class*