**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Cuauhtemoc Hernandez, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-16970 |
| | ) | |
| v. | ) | Honorable Jeremy C. Daniel |
| | ) | |
| Thomas Dart, Sheriff of Cook County, and Cook County, Illinois | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SHERIFF THOMAS J. DART'S RESPONSES TO PLAINTIFF'S FIRST AND SECOND SETS OF REQUESTS TO ADMIT**

NOW COMES Defendant, SHERIFF THOMAS J. DART (hereinafter "Defendant"), by and through his attorneys, Jason E. DeVore and Zachary G. Stillman, of DeVore Radunsky LLC, and for his responses to Plaintiff's First Set of Requests to Admit, dated August 15, 2024 (Request Nos. 1-46), and Second Set of Requests to Admit, dated September 3, 2024 (single request incorporated herein as Request No. 47), pursuant to Rule 36 of the Federal Rules of Civil Procedure, states as follows:

**REQUESTS**

1. Medical staff at Cook County Jail is responsible for identifying "physically disabled" inmates and communicating significant health needs to the correctional staff.

**RESPONSE: Defendant Sheriff Dart admits only that medical staff, employed by Cook County, convey some IIC medical needs to correctional staff using medical alerts, which are visible to correctional staff within CCOMS, as necessary and within the confines of health information privacy laws.**

2. The medical staff at Cook County Jail communicates to the correctional staff when they determine an inmate needs to be provided a cane, crutch or walker.

Exhibit 1 Page 1

**RESPONSE**: Defendant Sheriff Dart admits only that medical staff employed by Cook County convey whether they have prescribed a canes, crutches, or walker to an IIC using medical alerts, which are visible to correctional staff within CCOMS.

3. There is a pedestrian/material access tunnel serving the Cermak Health Services Facility at the basement level.

**RESPONSE: OBJECTION** – This Request to Admit seeks information better sought from Defendant Cook County. Defendant Sheriff Dart and the Cook County Sheriff's Office do not control the Cermak Health Services Facility. Without waiving and in light of this objection, Defendant Sheriff Dart admits that access tunnels exist in the basement level of the CCDOC, including connecting to the Cermak Hospital building known as Division 8.

4. The Cermak Health Services Facility was constructed after 1993.

**RESPONSE: OBJECTION** – This Request to Admit seeks information better sought from Defendant Cook County. Defendant Sheriff Dart and the Cook County Sheriff's Office do not control the Cermak Health Services Facility. Without waiving and in light of this objection, Defendant Sheriff Dart states that after a reasonable inquiry, the information known to or readily obtainable by him is insufficient to enable him to admit or deny the allegations contained in Request No. 4.

5. The Cermak ramp connects the Cermak building to the tunnel and is used by civilian and security employees to enter Cermak, to transport inmates, and to transport equipment.

**RESPONSE: OBJECTION** – This Request to Admit in part seeks information better sought from Defendant Cook County. Defendant Sheriff Dart and the Cook County Sheriff's Office do not control the Cermak Health Services Facility. Without waiving and in light of this objection, Defendant Sheriff Dart admits "the Cermak ramp" connects the Cermak building to the tunnel and may be used by civilian and security employees to enter Cermak, to transport inmates, and to transport equipment.

6. On August 8, 2024, defendant Dart served a supplemental response to production (in response to the names and last known addresses of detainees that have been moved to the Cermak Infirmary with an active alert for a cane, crutch, or walker from December 20, 2021 to the present) and stated, in part, "Defendant Cook County Sheriff Dart is producing the total number of such detainees, rather than the requested list of names. In the requested time period, there were 993 unique booking numbers with alerts for canes, crutches, and walkers, with 631 of those detainees

having transportations to Cermak on record." Exhibit 6, Sheriff Supplemental Response to Production ¶ 7.

**RESPONSE: Defendant Sheriff Dart admits only that the document reflected as Exhibit 6 was served by Defendants' Counsels upon Counsels for Plaintiff, on August 8, 2024.**

7. Eric Davis has been the Deputy Director of the Cook County Department of Capital Planning and Policy since April 2017.

**RESPONSE: OBJECTION – This Request to Admit seeks information better sought from Defendant Cook County. Eric Davis, as Deputy Director of the Cook County Department of Capital Planning and Policy, is employed by Cook County. Without waiving and in light of this objection, Defendant Sheriff Dart defers to Defendant Cook County's Response to Request to Admit No. 7.**

8. Eric Davis has been a licensed architect since 1989.

**RESPONSE: OBJECTION – This Request to Admit seeks information better sought from Defendant Cook County. Eric Davis, as Deputy Director of the Cook County Department of Capital Planning and Policy, is employed by Cook County. Without waiving and in light of this objection, upon information and belief, and pursuant to detail obtained through the Illinois Department of Financial and Professional Regulation, Defendant Sheriff Dart admits the allegations contained in Request No. 8.**

9. Mr. Davis duties included acting as the primary contact for the County on the facilities aspect of accessibility and the ADA.

**RESPONSE: OBJECTION – This Request to Admit seeks information better sought from Defendant Cook County. Eric Davis, as Deputy Director of the Cook County Department of Capital Planning and Policy, is employed by Cook County. Without waiving and in light of this objection, Defendant Sheriff Dart states that after a reasonable inquiry, the information known to or readily obtainable by him is insufficient to enable him to admit or deny the allegations contained in Request No. 9, and therefore defers to Defendant Cook County's Response to Request to Admit No. 9.**

10. Mr. Davis duties include acting as the lead person for Cook County in regard to the effort to renovate the Cermak ramp.

**RESPONSE: OBJECTION – This Request to Admit seeks information better sought from Defendant Cook County. Eric Davis, as Deputy Director of the Cook County Department of Capital Planning and Policy, is employed by Cook County. Without waiving and in light of this objection, Defendant Sheriff Dart states that after a reasonable inquiry, the information**

**known to or readily obtainable by him is insufficient to enable him to admit or deny the allegations contained in Request No. 10, and therefore defers to Defendant Cook County's Response to Request to Admit No. 10.**

11. Cook County hired a third-party architectural/engineering firm, Globetrotters Engineering Corporation (GEC), to assess the ADA compliance of the Cermak Health Services facility, starting with a report specifically on the Cermak ramp.

**RESPONSE: OBJECTION – This Request to Admit seeks information better sought from Defendant Cook County. Defendant Sheriff Dart plays no role in the County RFQ and hiring process, nor do he or the Cook County Sheriff's Office control the County or the Cermak Health Services Facility. Without waiving and in light of this objection, Defendant Sheriff Dart denies that third-party architectural/engineering firm GEC was hired by Sheriff Dart or the Cook County Sheriff's Office to assess the ADA compliance of the Cermak Health Services Facility in relation to this case.**

12. GEC, on December 6, 2023, submitted to Cook County a Corridor Ramp Accessibility Assessment for the Cermak Health Services Facility.

**RESPONSE: OBJECTION – This Request to Admit seeks information better sought from Defendant Cook County, as the alleged recipient of such assessment. Without waiving and in light of this objection, Defendant Sheriff Dart defers to Defendant Cook County's response to Request to Admit No. 12.**

13. GEC made a finding that the Cermak ramp has "a rise of 32.4 inches, which does not comply with the 30-inch maximum rise stated in Section 4.8.2 of the 1991 ADAAG." *See* Dkt. 42-18 at 8.

**RESPONSE: "Dkt. 42-18" refers to an exhibit that Plaintiff attached to Plaintiff's Motion for Class Certification. This document does not contain a bates number reflecting production and attendant discovery in the present case number. Defendant Sheriff Dart objects to Request to Admit No. 13 as improper, to the extent it seeks to solicit factual information which has not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.**

14. Referring to the rise of a ramp, Carl Darr of GEC testified "If it's 2.4 inches short, it doesn't comply regardless." Exhibit 11, Carl Darr (6/3/2024) Deposition at 47:5-8.

**RESPONSE**: Defendant Sheriff Dart objects to Request to Admit No. 14 as improper, to the extent that it seeks to solicit facts and information that were not the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.

15. Mr. Davis executed a declaration in *Walker v. Dart* on February 22, 2024, acknowledging GEC "conducted site visits on August 18, 2023, and September 1, 2023, to verify existing conditions related to the Cermak ramp" and that "GEC determined the rise of the ramp exceeds the ADA Accessibility Guidelines (ADAAG) by only 2.4 inches over the course of that 43.64 – foot run." Exhibit 1, Davis Decl. ¶¶ 9, 11.

**RESPONSE**: Defendant Sheriff Dart objects to Request to Admit No. 15 as improper, to the extent that it seeks to solicit facts and information that were not the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.

16. One purpose of an intermediate landing on a ramp is for an individual to be able to take a break, according to Mr. Davis. Exhibit 5, Davis (3/12/2024) Dep 256: 8-257:1.

**RESPONSE**: Defendant Sheriff Dart objects to Request to Admit No. 16 as improper, to the extent that it seeks to solicit facts and information that were not the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.

17. GEC also found that current handrails on the Cermak ramp "do not extend 12" beyond the ramp and "they do not comply with the 2010 ADAAG requirements for handrail extensions." *See* Dkt. 42-18 at 8.

**RESPONSE**: "Dkt. 42-18" refers to an exhibit that Plaintiff attached to Plaintiff's Motion for Class Certification. This document does not contain a bates number reflecting production and attendant discovery in the present case number. Defendant Sheriff Dart objects to Request to Admit No. 17 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.

18. GEC proposed the following "[p]ossible solutions" to remedy the non-compliant Cermak ramp:

1. Adding an intermediate landing, to reduce the rise to less than 30 inches per run and adding railing extensions at the top and bottom of the ramp.
*or*
2. Reducing the slope to less than 1:20 by extending the length of the walkway. The sloped walkway will be shallow enough to eliminate the applicability of code requirements for ramps and will not require a handrail.

Dkt 42-18 at 3.

**RESPONSE: "Dkt. 42-18" refers to an exhibit that Plaintiff attached to Plaintiff's Motion for Class Certification. This document does not contain a bates number reflecting production and attendant discovery in the present case number. Defendant Sheriff Dart objects to Request to Admit No. 18 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selective introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.**

19. In 2024, more than 40 people with an alert for a cane, walker, or crutches have moved up or down the Cermak ramp.

**RESPONSE: Defendant Sheriff Dart admits the allegations contained in Request No. 19.**

20. It will cost more than $150,000 to renovate the Cermak ramp.

**RESPONSE: OBJECTION – This Request to Admit seeks information better sought from Defendant Cook County. Defendant Sheriff Dart plays no role in the County expenditure process, nor do he or the Cook County Sheriff's Office control the Cermak Health Services Facility. Without waiving and in light of this objection, Defendant Sheriff Dart states that after a reasonable inquiry, the information known to or readily obtainable by him is insufficient to enable him to admit or deny the allegations contained in Request to Admit No. 20, and therefore defers to Defendant Cook County's Response to Request to Admit No. 20.**

21. The Cook County Board of Commissioners must approve expenditure of funds to renovate the Cermak ramp.

**RESPONSE: OBJECTION – This Request to Admit seeks information better sought from Defendant Cook County. Defendant Sheriff Dart plays no role in the County expenditure process, nor do he or the Cook County Sheriff's Office control the Cermak Health Services Facility. Without waiving and in light of this objection, Defendant Sheriff Dart defers to Defendant Cook County's Response to Request to Admit No. 21.**

22. The Cook County Board of Commissioners, as of August 15, 2024, have not approved any construction contract to renovate the Cermak ramp.

**RESPONSE: OBJECTION – This Request to Admit seeks information better sought from Defendant Cook County. Defendant Sheriff Dart plays no role in the County expenditure process, nor do he or the Cook County Sheriff's Office control the Cermak Health Services Facility. Defendant Sheriff Dart additionally objects to this Request to Admit as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.**

23. The East RTU ramp "leads directly to the Cermak ramp and they are of comparable size."

Dkt. 42-1, Davis Decl. Fn. 2.

**RESPONSE: "Dkt. 42-1" refers to an exhibit that Plaintiff attached to Plaintiff's Motion for Class Certification. This document does not contain a bates number reflecting production and attendant discovery in the present case number. Defendant Sheriff Dart objects to Request to Admit No. 23 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.**

24. On April 1, 2024, GEC submitted to the law firm of Devore Radunsky, a Tunnel Corridor Accessibility Assessment. In this report, GEC identifies the East RTU ramp as the East Tunnel Corridor. Dkt. 42-19 at 1, 3.

**RESPONSE: "Dkt. 42-19" refers to an exhibit that Plaintiff attached to Plaintiff's Motion for Class Certification. This document does not contain a bates number reflecting production and attendant discovery in the present case number. Defendant Sheriff Dart objects to Request to Admit No. 24 as improper, to the extent htat it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.**

25. The East RTU ramp includes two-sloped floor runs separated by an intermediate landing. These runs are both steeper than 1:20 and therefore, are ramps as defined by the ADA. Dkt. 42-19 at 10.

7

Exhibit 1 Page 7

**RESPONSE:** "Dkt. 42-19" refers to an exhibit that Plaintiff attached to Plaintiff's Motion for Class Certification. This document does not contain a bates number reflecting production and attendant discovery in the present case number. Defendant Sheriff Dart objects to Request to Admit No. 25 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.

26. In response to a request for a list of inmates moved to or from RTU with an alert for a cane, crutch, or walker from February 13, 2022, to the present, defendant responded, "In the requested time period, there were 717 detainees with alerts for canes, crutches, or walkers, who were assigned to Division 8/RTU, with 476 of those detainees having transportation to Cermak on Record." Exhibit 2, Response to Production ¶ 12.

**RESPONSE:** Defendant Sheriff Dart denies that this was merely his response to the specified request, but asserts that by explicit agreement of the parties, this information was tendered as responsive. Defendant admits the remaining allegations in Request No. 26.

27. The Residential Treatment Unit was constructed after 2010.

**RESPONSE: OBJECTION** – This Request to Admit seeks information better sought from Defendant Cook County. Defendant Sheriff Dart is not involved in facilities management, or capital planning issues, including construction of Cook County Department of Corrections Divisions. Without waiving and in light of this objection, Defendant Sheriff Dart admits the allegations contained in Request No. 27.

28. Carl M. Darr is vice president of architecture for GEC.

**RESPONSE:** Defendant Sheriff Dart objects to Request to Admit No. 28 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.

29. GEC inspected the East RTU ramp on January 23, 2024, and again on January 25, 2024. Dkt. 42-19 at 6. Mr. Darr was present during each inspection.

**RESPONSE:** "Dkt. 42-19" refers to an exhibit that Plaintiff attached to Plaintiff's Motion for Class Certification. This document does not contain a bates number reflecting production and attendant discovery in the present case number. Defendant Sheriff Dart objects to

8

Exhibit 1 Page 8

**Request to Admit No. 29 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.**

30. GEC issued a report on April 1, 2024 in *Westmoreland v. Dart*, 23-cv-1851, and make the following findings why the RTU east tunnel ramp does not comply with the ADA structural standards:

1) **Top landing:** The Top Landing runs from the Upper Ramp to a pair of doors, leading to the adjacent tunnel, and has a length of 0.75' (9 in.). Since the landing length is less than 60 inches, the landing length is not code compliant. The landing is 85% short of the required length. However, this may be easily corrected by relocating the doors to the east 51", to provide the minimum required landing length.

2) **Upper Ramp:** The Upper Ramp has a 25.95' horizontal run and a 1.93' vertical rise with an average slope of 1:13.4. There is a variation in slope at the very top of the ramp. The last 4.27' of the run, at the top has a rise of 4.56" for a slope of 1:11. The upper portion of the ramp floor surface is not code compliant; the top 16.5% of the overall length is approximately 0.64% steeper than permitted by code. Since the bottom portion of the ramp run is shallower than 1:12, it would be possible to add a floor topping which will even-out the slope make a consistent floor slope that has a 1:12 slope or shallower.

3) **Intermediate Landing:** The Intermediate Landing is 4.75 feet (57 in.) in length. Since the landing length is less than 60 inches in length, the Intermediate Landing is not code compliant. It is 5% shorter than the required length. To correct this

9

Exhibit 1 Page 9

nonconformity, a longer level floor plane at the landing will need to be provided, extending the floor surface west. This will require the Lower Ramp to be rebuilt, along its entire length, to provide for the additional landing length and maintaining a maximum 1:12 ramp slope.

4) **Lower Ramp:** The Lower Ramp has a 30.4' horizontal run and a 2.47 vertical rise, with an average slope of 1:12. There is a variation in slope at the very bottom of the ramp. The last 1 foot of the run is steeper than the rest of the ramp with a slope of approximately 1:8.5. The lower portion of the ramp floor surface is not code compliant; the lower 3.5% of the overall run is approximately 11.7% steeper than permitted by code. The floor surface will need to be feathered out, and the ramp length extended slightly for the Lower Ramp floor to be compliant with code requirements for ramp slope at this location.

5) **Handrails:** As noted in the code requirements above, handrails Carl Darr testified in *Westmoreland v. Dart*, need to be located 34-38 inches above the ramp floor and need to extend a minimum of 12 inches beyond the top and bottom of each ramp. The ramp(s) have a continuous handrail on each side located. At the lower end of the Lower Ramp the handrails, where measured, is approximately 33" above the ramp floor. At other locations, the handrail height exceeds 34" above the ramp floor. Since, at some locations, handrails are less than 34" above the ramp floor they are not in compliance with requirements for handrail height. The handrails extend 7.4" beyond the Lower Ramp and 11.3" beyond the Upper Ramp. Since the handrail extensions are less than 12 inches, the handrails are not in compliance with code requirements for handrail extensions.

10

Exhibit 1 Page 10

Dkt. 42-19 at 10-11.

**RESPONSE:** "Dkt. 42-19" refers to an exhibit that Plaintiff attached to Plaintiff's Motion for Class Certification. This document does not contain a bates number reflecting production and attendant discovery in the present case number. Defendant Sheriff Dart objects to Request to Admit No. 30 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.

31. Carl Darr testified in *Westmoreland v. Dart*, that "the regulations don't permit any entity to have a landing less than 60 inches." Exhibit 11, Darr (6/3/2024) Dep 62:19-20.

**RESPONSE:** Defendant Sheriff Dart objects to Request to Admit No. 31 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.

32. Carl Darr testified in *Westmoreland v. Dart*, that the East RTU ramp is not in compliance with the ADA regulations. Exhibit 11, Darr (6/3/2024) Dep 87:3-8.

**RESPONSE:** Defendant Sheriff Dart objects to Request to Admit No. 32 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.

33. Carl Darr testified in *Westmoreland v. Dart* that providing an accommodation such as pushing a wheelchair person up or down the East RTU ramp does not obviate the need of the government to comply with the ADA standards "for a required accessible route." Exhibit 11, Darr (6/3/2024) Dep 88:18-23.

**RESPONSE:** Defendant Sheriff Dart objects to Request to Admit No. 33 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.

34. GEC offered the following recommendations to bring the RTU east tunnel ramp into compliance with the ADA:



Figure 3: Plan of Recommendations

Dkt. 42-19 at 16.

**RESPONSE:** "Dkt. 42-19" refers to an exhibit that Plaintiff attached to Plaintiff's Motion for Class Certification. This document does not contain a bates number reflecting production and attendant discovery in the present case number. Defendant Sheriff Dart objects to Request to Admit No. 34 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.

35. More than 40 inmates with an alert for a cane, crutch, or walker moved up the RTU east tunnel ramp in 2024.

**RESPONSE: Defendant Sheriff Dart admits the allegations contained in Request No. 35.**

36. There is no projected date when the RTU east tunnel ramp will be renovated in accordance with the recommendations of GEC.

**RESPONSE: Defendant Sheriff Dart objects to Request to Admit No. 36 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.**

37. It will cost more than $150,000 to renovate the RTU east tunnel ramp.

**RESPONSE: Defendant Sheriff Dart objects to Request to Admit No. 37 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.**

38. The Cook County Board of Commissioners must approve expenditure of funds to renovate the RTU east tunnel ramp.

**RESPONSE: OBJECTION – This Request to Admit seeks information better sought from Defendant Cook County. Defendant Sheriff Dart plays no role in the County expenditure process. Without waiving and in light of this objection, Defendant Sheriff Dart defers to Defendant Cook County's Response to Request to Admit No. 38.**

39. The Cook County Board of Commissioners, as of August 15, 2024, have not approved any funds to reconstruct the RTU east tunnel ramp to comply with the ADA.

**RESPONSE: Defendant Sheriff Dart objects to Request to Admit No. 39 as improper, to the extent that it seeks to solicit facts and information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Without waiving and in light of this objection, Defendant Sheriff Dart defers to Defendant Cook County's Response to Request to Admit No. 39.**

40. Plaintiff Hernandez had an alert to use a cane from February 2, 2022 to August 30, 2022 and from May 10, 2023 to May 11, 2023. See DR Hernandez 000005.

**RESPONSE: Defendant Sheriff Dart admits that Plaintiff Hernandez had an alert to use a cane from February 2, 2022, to August 30, 2022, and from May 10, 2023, to May 11, 2023, but denies that this was the full extent of Plaintiff's cane permissions. Plaintiff also had an alert for Cane Long Distance Only from August 30, 2022, to May 11, 2023.**

41. The Sheriff's records identify when plaintiff Hernandez was moved to Cermak.

**RESPONSE: Defendant Sheriff Dart admits the allegations in Request No. 41.**

42. DR Hernandez 000007 shows plaintiff was transported to or from Cermak on 2/7/2022, 2/26/2022, 4/7/2022, and 8/4/2022.

13

Exhibit 1 Page 13

**RESPONSE: Defendant Sheriff Dart admits that Plaintiff Hernandez's referenced Movement Records show that he was transported to or from Cermak for regular appointments on 2/7/2022, 2/26/2022, 4/7/2022, and 8/4/2022.**

43. On August 18, 2022, RN Jeelan McCray sent an e-mail to PA-C Kevin Sims and wrote, referring to plaintiff Hernandez, "This pt just came back for IDOC on 8/4 and has a cane at all times. The provider that seen him on intake renewed the cane order from February when he was here. He is overweight and walk with a staggered, shuffled limp. He drags the left foot. He does need the cane in my opinion, but they will not allow him to have in Div 9, except for long distances. As a result, he needs appropriate housing. Please see my note." DR 00157.

**RESPONSE: OBJECTION – Request to Admit No. 43 seeks information better sought from Defendant Cook County. Defendant Sheriff Dart and the Cook County Sheriff's Office do not control the Cermak Health Services Facility, nor do they have access to inmate medical records, employee records, or employee emails. On that basis, Defendant Sheriff cannot admit or deny the origin of emails sent by the non-employees identified in this Request. Without waiving and in light of this objection, Defendant Sheriff Dart admits only that a document produced by co-defendant Cook County as DR 001577 contains the quoted language.**

44. William Mathis, as of August 15, 2024, is detained at Cook County Jail and from October 16, 2023 until at least August 15, 2024, has had an alert for a cane.

**RESPONSE: Defendant Sheriff Dart admits that William Mathis is a detainee at Cook County Department of Corrections, and that Mathis had a medical alert that reads "Cane Long Distance Only" between October 16, 2023, and August 15, 2024.**

45. William Mathis was moved to or from Cermak on 4/2/2024, 1/11/2024, 12/10/2023, 12/4/2023, 12/1/2023, and 11/1/2023. *See* Exhibit 3.

**RESPONSE: Defendant Sheriff Dart admits that Plaintiff Mathis's referenced Movement Records show that he was transported to or from Cermak for regular appointments on 4/2/2024, 1/11/2024, 12/10/2023, 12/4/2023, 12/1/2023, and 11/1/2023.**

46. The Sheriff's Records show William Mathis was housed in DIV08/RTU on the following dates: 4/8/2023 to 4/12/2023, November 1, 2023 to November 6, 2023, December 10, 2023 to February 18, 2024, and February 22, 2024 to February 29, 2024. Exhibit 4.

**RESPONSE:** Defendant Sheriff Dart admits the allegations contained in Request No. 46.

47. Globetrotters Engineering Corporation submitted a report dated April 1, 2024 in *Westmoreland v. Dart*, 23-cv-1851, and make the following findings why the RTU east tunnel ramp does not comply with the ADA structural standards:

1) **Top landing:** The Top Landing runs from the Upper Ramp to a pair of doors, leading to the adjacent tunnel, and has a length of 0.75' (9 in.). Since the landing length is less than 60 inches, the landing length is not code compliant. The landing is 85% short of the required length. However, this may be easily corrected by relocating the doors to the east 51", to provide the minimum required landing length.

2) **Upper Ramp:** The Upper Ramp has a 25.95' horizontal run and a 1.93' vertical rise with an average slope of 1:13.4. There is a variation in slope at the very top of the ramp. The last 4.27' of the run, at the top has a rise of 4.56" for a slope of 1:11. The upper portion of the ramp floor surface is not code compliant; the top 16.5% of the overall length is approximately 0.64% steeper than permitted by code. Since the bottom portion of the ramp run is shallower than 1:12, it would be possible to add a floor topping which will even-out the slope make a consistent floor slope that has a 1:12 slope or shallower.

3) **Intermediate Landing:** The Intermediate Landing is 4.75 feet (57 in.) in length. Since the landing length is less than 60 inches in length, the Intermediate Landing is not code compliant. It is 5% shorter than the required length. To correct this nonconformity, a longer level floor plane at the landing will need to be provided, extending the floor surface west. This will require the Lower Ramp to be rebuilt,

along its entire length, to provide for the additional landing length and maintaining a maximum 1:12 ramp slope.

4) **Lower Ramp:** The Lower Ramp has a 30.4' horizontal run and a 2.47 vertical rise, with an average slope of 1:12. There is a variation in slope at the very bottom of the ramp. The last 1 foot of the run is steeper than the rest of the ramp with a slope of approximately 1:8.5. The lower portion of the ramp floor surface is not code compliant; the lower 3.5% of the overall run is approximately 11.7% steeper than permitted by code. The floor surface will need to be feathered out, and the ramp length extended slightly for the Lower Ramp floor to be compliant with code requirements for ramp slope at this location.

5) **Handrails:** As noted in the code requirements above, need to be located 34-38 inches above the ramp floor and need to extend a minimum of 12 inches beyond the top and bottom of each ramp. The ramp(s) have a continuous handrail on each side located. At the lower end of the Lower Ramp the handrails, where measured, is approximately 33" above the ramp floor. At other locations, the handrail height exceeds 34" above the ramp floor. Since, at some locations, handrails are less than 34" above the ramp floor they are not in compliance with requirements for handrail height. The handrails extend 7.4" beyond the Lower Ramp and 11.3" beyond the Upper Ramp. Since the handrail extensions are less than 12 inches, the handrails are not in compliance with code requirements for handrail extensions.

Dkt. 42-19 at 10-11

**RESPONSE:** "Dkt. 42-19" refers to an exhibit that Plaintiff attached to Plaintiff's Motion for Class Certification. This document does not contain a bates number reflecting production and attendant discovery in the present case number. Defendant Sheriff Dart objects to Request to Admit No. 47 as improper, to the extent that it seeks to solicit facts and

**information which have not been the subject of written, expert, or deposition discovery in this consolidated case. Defendant Sheriff further objects to this Request to Admit to the extent that it seeks to selectively introduce as affirmative facts only portions of discovery taken in a separate and distinct lawsuit.**

**Respectfully submitted,**

*/s/ Troy S. Radunsky*
Troy S. Radunsky
One of the Attorneys for Defendants

Troy S. Radunsky (tradunsky@devoreradunsky.com)
Jason E. DeVore (jdevore@devoreradunsky.com)
Zachary G. Stillman (zstillman@devoreradunsky.com)
DeVore Radunsky LLC
230 W. Monroe Ste 230
Chicago, IL 60606
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that **Defendant Sheriff Thomas J. Dart's Responses to Plaintiff's First and Second Sets of Requests to Admit** were sent via email correspondence to all below listed parties on September 16, 2024.

*/s/ Zachary G. Stillman*
Zachary G. Stillman
One of the Attorneys for Defendants

Service List:
Thomas G. Morrissey
Patrick Morrissey
10257 S. Western Ave
Chicago, IL 60643
773 233 7901
Pwm@morrisseylawchicago.com
tgm@morrisseylawchicago.com