**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Cuauhtemoc Hernandez, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-16970 |
| | ) | |
| v. | ) | Honorable Jeremy C. Daniel |
| | ) | |
| Thomas Dart, Sheriff of Cook County, | ) | |
| and Cook County, Illinois | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT COOK COUNTY'S RESPONSES TO PLAINTIFF'S
FIRST AND SECOND SETS OF REQUESTS TO ADMIT**

NOW COMES Defendant, COOK COUNTY (hereinafter "Defendant"), by and through its attorneys, Jason E. DeVore and Zachary G. Stillman, of DeVore Radunsky LLC, and for its responses to Plaintiff's First Set of Requests to Admit, dated August 15, 2024 (Request Nos. 1-46), and Second Set of Requests to Admit, dated September 3, 2024 (single request incorporated herein as Request No. 47), pursuant to Rule 36 of the Federal Rules of Civil Procedure, states as follows:

**REQUESTS**

1. Medical staff at Cook County Jail is responsible for identifying "physically disabled" inmates and communicating significant health needs to the correctional staff.

**RESPONSE: Defendant Cook County denies that medical staff at Cook County Jail are solely responsible for identifying "physically disabled" inmates and communicating significant health needs to the correctional staff. Both medical staff employed by Defendant Cook County, which operates the Cook County Health System and the Cermak Health Facility, and the Sheriffs' ADA Officer, assist in the identification process and communication of significant health needs to correctional staff.**

2. The medical staff at Cook County Jail communicates to the correctional staff when they determine an inmate needs to be provided a cane, crutch or walker.

Exhibit 2 Page 1

**RESPONSE: Defendant Cook County denies that medical staff at Cook County Jail communicates to the correctional staff when they determine an inmate needs to be provided a cane, crutch or walker. Any medical staff responsible for the specified task are employed by Defendant Cook County, which operates the Cook County Health System and the Cermak Health Facility. County medical staff work out of Cermak Health Facility, not the Cook County Department of Corrections. Additionally, Defendant denies that County medical staff personally "communicate" any information to correctional staff, beyond the occurrence of automated transmission of their findings and prescriptive alerts. Defendant admits that County medical staff with Cermak make determinations as to whether inmates need to be provided canes, crutches or walkers, as well as the extent of such need and the alerts necessary for each inmate considering the individualized facts in each instance.**

3. There is a pedestrian/material access tunnel serving the Cermak Health Services Facility at the basement level.

**RESPONSE: Defendant Cook County admits that pedestrian/material access tunnels exist in the basement level of the Cermak Health Services Facility, serving the facility.**

4. The Cermak Health Services Facility was constructed after 1993.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 4.**

5. The Cermak ramp connects the Cermak building to the tunnel and is used by civilian and security employees to enter Cermak, to transport inmates, and to transport equipment.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 5.**

6. On August 8, 2024, defendant Dart served a supplemental response to production (in response to the names and last known addresses of detainees that have been moved to the Cermak Infirmary with an active alert for a cane, crutch, or walker from December 20, 2021 to the present) and stated, in part, "Defendant Cook County Sheriff Dart is producing the total number of such detainees, rather than the requested list of names. In the requested time period, there were 993 unique booking numbers with alerts for canes, crutches, and walkers, with 631 of those detainees having transportations to Cermak on record." Exhibit 6, Sheriff Supplemental Response to Production ¶ 7.

**RESPONSE: OBJECTION** – This Request to Admit seeks information not in the control of Defendant Cook County, that would be better sought from Defendant Sheriff Dart. Defendant Cook County does not control the Cook County Department of Corrections, nor does it have any access to or control over inmate records and data, outside of medical related records. Without waiving and in light of this objection, Defendant Cook County states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny the allegations contained in Request No. 6.

7. Eric Davis has been the Deputy Director of the Cook County Department of Capital Planning and Policy since April 2017.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 7.**

8. Eric Davis has been a licensed architect since 1989.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 8.**

9. Mr. Davis duties included acting as the primary contact for the County on the facilities aspect of accessibility and the ADA.

**RESPONSE: Defendant Cook County admits that, at present, Eric Davis' duties include acting as the primary contact for the County on the facilities aspect of accessibility and the ADA but notes that this assignment of duty is merely by necessity as a result of the ongoing efforts to fill the vacant ADA Project Director position, to which these responsibilities would ordinarily belong.**

10. Mr. Davis duties include acting as the lead person for Cook County in regard to the effort to renovate the Cermak ramp.

**RESPONSE: OBJECTION** – The term "lead person" is vague and ambiguous and does not adequately describe any existing role. Without waiving and in light of this objection, Defendant Cook County admits that, at present, Eric Davis' duties include leading County efforts to renovate the Cermak ramp, but notes that this assignment of duty is likewise merely by necessity and in the interest of the County as a result of his long running involvement in the matter, despite the assignment of a new Department of Capital Planning Lead Project Manager for the ADA assessments.

11. Cook County hired a third-party architectural/engineering firm, Globetrotters Engineering Corporation (GEC), to assess the ADA compliance of the Cermak Health Services facility, starting with a report specifically on the Cermak ramp.

**RESPONSE: Defendant Cook County admits that third-party architectural/engineering firm GEC was hired to assess the ADA compliance of the Cermak Health Services Facility, starting with a report specifically on the Cermak ramp.**

12. GEC, on December 6, 2023, submitted to Cook County a Corridor Ramp Accessibility Assessment for the Cermak Health Services Facility.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 12 are consistent with GEC's published report.**

13. GEC made a finding that the Cermak ramp has "a rise of 32.4 inches, which does not comply with the 30-inch maximum rise stated in Section 4.8.2 of the 1991 ADAAG." *See* Dkt. 42-18 at 8.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 13 are consistent with GEC's published report.**

14. Referring to the rise of a ramp, Carl Darr of GEC testified "If it's 2.4 inches short, it doesn't comply regardless." Exhibit 11, Carl Darr (6/3/2024) Deposition at 47:5-8.

**RESPONSE: Defendant Cook County admits that Carl Darr testified at his deposition: "If it's 2.4 inches short, it doesn't comply regardless."**

15. Mr. Davis executed a declaration in *Walker v. Dart* on February 22, 2024, acknowledging GEC "conducted site visits on August 18, 2023, and September 1, 2023, to verify existing conditions related to the Cermak ramp" and that "GEC determined the rise of the ramp exceeds the ADA Accessibility Guidelines (ADAAG) by only 2.4 inches over the course of that 43.64 – foot run." Exhibit 1, Davis Decl. ¶¶ 9, 11.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 15.**

16. One purpose of an intermediate landing on a ramp is for an individual to be able to take a break, according to Mr. Davis. Exhibit 5, Davis (3/12/2024) Dep 256: 8-257:1.

**RESPONSE: Defendant Cook County admits that Eric Davis testified that one purpose of an intermediate landing on a ramp is for an individual to be able to take a break.**

17. GEC also found that current handrails on the Cermak ramp "do not extend 12" beyond the ramp and "they do not comply with the 2010 ADAAG requirements for handrail extensions." *See* Dkt. 42-18 at 8.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 17 are consistent with GEC's published report.**

18. GEC proposed the following "[p]ossible solutions" to remedy the non-compliant Cermak ramp:

1. Adding an intermediate landing, to reduce the rise to less than 30 inches per run and adding railing extensions at the top and bottom of the ramp.
   *or*
2. Reducing the slope to less than 1:20 by extending the length of the walkway. The sloped walkway will be shallow enough to eliminate the applicability of code requirements for ramps and will not require a handrail.

Dkt 42-18 at 3.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 18 are consistent with GEC's published report.**

19. In 2024, more than 40 people with an alert for a cane, walker, or crutches have moved up or down the Cermak ramp.

**RESPONSE: OBJECTION – This Request to Admit seeks information not in the control of Defendant Cook County, that would be better sought from Defendant Sheriff Dart. Defendant Cook County does not control the Cook County Department of Corrections, nor does it have any access to or control over inmate records and data, outside of medical related records.**

20. It will cost more than $150,000 to renovate the Cermak ramp.

**RESPONSE: Defendant Cook County admits that the monetary cost of renovating the Cermak ramp will be more than $150,000 but denies that any such individual monetary cost for this one renovation would factor in the totality of ripple-effect costs from performing the construction work out of sequence, along with any other impacts/costs as a result.**

21. The Cook County Board of Commissioners must approve expenditure of funds to renovate the Cermak ramp.

**RESPONSE: Defendant Cook County admits that the Cook County Board of Commissioners must approve the expenditure of funds to renovate the Cermak ramp.**

22. The Cook County Board of Commissioners, as of August 15, 2024, have not approved any construction contract to renovate the Cermak ramp.

**RESPONSE: Defendant Cook County denies the allegations contained in Request No. 22.**

23. The East RTU ramp "leads directly to the Cermak ramp and they are of comparable size." Dkt. 42-1, Davis Decl. Fn. 2.

**RESPONSE: Defendant Cook County admits that Eric Davis testified in his Declaration that the East RTU ramp "leads directly to the Cermak ramp and they are of comparable size."**

24. On April 1, 2024, GEC submitted to the law firm of DeVore Radunsky, a Tunnel Corridor Accessibility Assessment. In this report, GEC identifies the East RTU ramp as the East Tunnel Corridor. Dkt. 42-19 at 1, 3.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 24.**

25. The East RTU ramp includes two-sloped floor runs separated by an intermediate landing. These runs are both steeper than 1:20 and therefore, are ramps as defined by the ADA. Dkt. 42-19 at 10.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 25.**

26. In response to a request for a list of inmates moved to or from RTU with an alert for a cane, crutch, or walker from February 13, 2022, to the present, defendant responded, "In the requested time period, there were 717 detainees with alerts for canes, crutches, or walkers, who were assigned to Division 8/RTU, with 476 of those detainees having transportation to Cermak on Record." Exhibit 2, Response to Production ¶ 12.

**RESPONSE: OBJECTION** – This Request to Admit seeks information not in the control of Defendant Cook County, that would be better sought from Defendant Sheriff Dart. Defendant Cook County does not control the Cook County Department of Corrections, nor does it have any access to or control over inmate records and data, outside of medical related records.

27. The Residential Treatment Unit was constructed after 2010.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 27.**

28. Carl M. Darr is vice president of architecture for GEC.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 28.**

29. GEC inspected the East RTU ramp on January 23, 2024, and again on January 25, 2024. Dkt. 42-19 at 6. Mr. Darr was present during each inspection.

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 29.**

30. GEC issued a report on April 1, 2024 in *Westmoreland v. Dart*, 23-cv-1851, and make the following findings why the RTU east tunnel ramp does not comply with the ADA structural standards:

1) **Top landing:** The Top Landing runs from the Upper Ramp to a pair of doors, leading to the adjacent tunnel, and has a length of 0.75' (9 in.). Since the landing length is less than 60 inches, the landing length is not code compliant. The landing is 85% short of the required length. However, this may be easily corrected by relocating the doors to the east 51", to provide the minimum required landing length.

2) **Upper Ramp:** The Upper Ramp has a 25.95' horizontal run and a 1.93' vertical rise with an average slope of 1:13.4. There is a variation in slope at the very top of the ramp. The last 4.27' of the run, at the top has a rise of 4.56" for a slope of 1:11. The upper portion of the ramp floor surface is not code compliant; the top 16.5%

7

Exhibit 2 Page 7

of the overall length is approximately 0.64% steeper than permitted by code. Since the bottom portion of the ramp run is shallower than 1:12, it would be possible to add a floor topping which will even-out the slope make a consistent floor slope that has a 1:12 slope or shallower.

3) **Intermediate Landing:** The Intermediate Landing is 4.75 feet (57 in.) in length. Since the landing length is less than 60 inches in length, the Intermediate Landing is not code compliant. It is 5% shorter than the required length. To correct this nonconformity, a longer level floor plane at the landing will need to be provided, extending the floor surface west. This will require the Lower Ramp to be rebuilt, along its entire length, to provide for the additional landing length and maintaining a maximum 1:12 ramp slope.

4) **Lower Ramp:** The Lower Ramp has a 30.4' horizontal run and a 2.47 vertical rise, with an average slope of 1:12. There is a variation in slope at the very bottom of the ramp. The last 1 foot of the run is steeper than the rest of the ramp with a slope of approximately 1:8.5. The lower portion of the ramp floor surface is not code compliant; the lower 3.5% of the overall run is approximately 11.7% steeper than permitted by code. The floor surface will need to be feathered out, and the ramp length extended slightly for the Lower Ramp floor to be compliant with code requirements for ramp slope at this location.

5) **Handrails:** As noted in the code requirements above, handrails Carl Darr testified in *Westmoreland v. Dart*, need to be located 34-38 inches above the ramp floor and need to extend a minimum of 12 inches beyond the top and bottom of each ramp. The ramp(s) have a continuous handrail on each side located. At the lower end of

> the Lower Ramp the handrails, where measured, is approximately 33" above the ramp floor. At other locations, the handrail height exceeds 34" above the ramp floor. Since, at some locations, handrails are less than 34" above the ramp floor they are not in compliance with requirements for handrail height. The handrails extend 7.4" beyond the Lower Ramp and 11.3" beyond the Upper Ramp. Since the handrail extensions are less than 12 inches, the handrails are not in compliance with code requirements for handrail extensions.

Dkt. 42-19 at 10-11.

**RESPONSE: Defendant Cook County denies the allegations with regard to the handrails in relation to any allegations that the report incorporated the testimony of Carl Darr. Carl Darr's deposition did not occur until June 3, 2024, subsequent to the date the alleged report was issued. Additionally, Counsels for Plaintiff have notified Counsel for Defendants that the referenced portion of the request was a typo and have therefore resubmitted this Request as Request to Admit No. 47. Accordingly, Defendant Cook County Denies the allegations in Request to Admit No. 30.**

31. Carl Darr testified in *Westmoreland v. Dart*, that "the regulations don't permit any entity to have a landing less than 60 inches." Exhibit 11, Darr (6/3/2024) Dep 62:19-20.

**RESPONSE: Defendant Cook County admits that Carl Darr testified in *Westmoreland* that "the regulations don't permit any entity to have a landing less than 60 inches."**

32. Carl Darr testified in *Westmoreland v. Dart*, that the East RTU ramp is not in compliance with the ADA regulations. Exhibit 11, Darr (6/3/2024) Dep 87:3-8.

**RESPONSE: Defendant Cook County admits that Carl Darr testified in *Westmoreland* that the East RTU ramp is not in compliance with the ADA regulations.**

33. Carl Darr testified in *Westmoreland v. Dart* that providing an accommodation such as pushing a wheelchair person up or down the East RTU ramp does not obviate the need of the government to comply with the ADA standards "for a required accessible route." Exhibit 11, Darr (6/3/2024) Dep 88:18-23.

9

Exhibit 2 Page 9

**RESPONSE**: Defendant Cook County admits that Carl Darr testified in *Westmoreland* that providing an accommodation such as pushing a wheelchair-bound person up or down the East RTU ramp does not obviate the need of the government to comply with the ADA standards "for a required accessible route."

34. GEC offered the following recommendations to bring the RTU east tunnel ramp into compliance with the ADA:



Figure 3: Plan of Recommendations

Dkt. 42-19 at 16.

**RESPONSE**: Defendant Cook County admits the allegations contained in Request No. 34.

35. More than 40 inmates with an alert for a cane, crutch, or walker moved up the RTU east tunnel ramp in 2024.

**RESPONSE**: OBJECTION – This Request to Admit seeks information not in the control of Defendant Cook County, that would be better sought from Defendant Sheriff Dart. Defendant Cook County does not control the Cook County Department of Corrections, nor does it have any access to or control over inmate records and data, outside of medical related records. Without waiving and in light of this objection, Defendant Cook County states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny the allegations contained in Request No. 35.

36. There is no projected date when the RTU east tunnel ramp will be renovated in accordance with the recommendations of GEC.

**RESPONSE: Defendant Cook County admits that there is no projected date when the RTU east tunnel ramp renovation in accordance with the GEC recommendations will be complete.**

37. It will cost more than $150,000 to renovate the RTU east tunnel ramp.

**RESPONSE: Defendant Cook County denies that any formal design drawings or estimates yet exist which could possibly delineate that it will cost more than $150,000 to renovate the RTU east tunnel ramp. Additionally, any such individual monetary cost for this one renovation would not factor in the ripple-effect costs of performing the construction work out of sequence, and other impacts/costs.**

38. The Cook County Board of Commissioners must approve expenditure of funds to renovate the RTU east tunnel ramp.

**RESPONSE: Defendant Cook County admits that the Cook County Board of Commissioners must approve the expenditure of funds to renovate the RTU east tunnel ramp.**

39. The Cook County Board of Commissioners, as of August 15, 2024, have not approved any funds to reconstruct the RTU east tunnel ramp to comply with the ADA.

**RESPONSE: Defendant Cook County admits that, as of August 15, 2024, the Cook County Board of Commissioners has not yet approved any funds to reconstruct the RTU east tunnel ramp to comply with the ADA.**

40. Plaintiff Hernandez had an alert to use a cane from February 2, 2022 to August 30, 2022 and from May 10, 2023 to May 11, 2023. See DR Hernandez 000005.

**RESPONSE: OBJECTION – To the extent that this Request seeks information specifically related to Plaintiff's Alerts, such information is not in the control of Defendant Cook County and would be better sought from Defendant Sheriff Dart. Defendant Cook County does not control the Cook County Department of Corrections, nor does it have any access to or control over inmate records and data, outside of medical related records.**

41. The Sheriff's records identify when plaintiff Hernandez was moved to Cermak.

**RESPONSE: OBJECTION – This Request to Admit seeks information not in the control of Defendant Cook County, that would be better sought from Defendant Sheriff Dart. Defendant Cook County does not control the Cook County Department of Corrections, nor does it have any access to or control over inmate records and data, outside of medical related records.**

42. DR Hernandez 000007 shows plaintiff was transported to or from Cermak on 2/7/2022, 2/26/2022, 4/7/2022, and 8/4/2022.

**RESPONSE: OBJECTION – This Request to Admit seeks information not in the control of Defendant Cook County, that would be better sought from Defendant Sheriff Dart. Defendant Cook County does not control the Cook County Department of Corrections, nor does it have any access to or control over inmate records and data, outside of medical related records.**

43. On August 18, 2022, RN Jeelan McCray sent an e-mail o PA-C Kevin Sims and wrote, referring to plaintiff Hernandez, "This pt just came back for IDOC on 8/4 and has a cane at all times. The provider that seen him on intake renewed the cane order from February when he was here. He is overweight and walk with a staggered, shuffled limp. He drags the left foot. He does need the cane in my opinion, but they will not allow him to have in Div 9, except for long distances. As a result, he needs appropriate housing. Please see my note." DR 00157.

**RESPONSE: Defendant Cook County denies that the specified email text above appears on the document produced by Defendants in *Hernandez* labelled DR 000157.**

44. William Mathis, as of August 15, 2024, is detained at Cook County Jail and from October 16, 2023 until at least August 15, 2024, has had an alert for a cane.

**RESPONSE: OBJECTION – This Request to Admit seeks information not in the control of Defendant Cook County, that would be better sought from Defendant Sheriff Dart. Defendant Cook County does not control the Cook County Department of Corrections, nor does it have any access to or control over inmate records and data, outside of medical related records.**

45. William Mathis was moved to or from Cermak on 4/2/2024, 1/11/2024, 12/10/2023, 12/4/2023, 12/1/2023, and 11/1/2023. *See* Exhibit 3.

**RESPONSE: OBJECTION – This Request to Admit seeks information not in the control of Defendant Cook County, that would be better sought from Defendant Sheriff Dart. Defendant Cook County does not control the Cook County Department of Corrections, nor does it have any access to or control over inmate records and data, outside of medical related records.**

46. The Sheriff's Records show William Mathis was housed in DIV08/RTU on the following dates: 4/8/2023 to 4/12/2023, November 1, 2023 to November 6, 2023, December 10, 2023 to February 18, 2024, and February 22, 2024 to February 29, 2024. Exhibit 4.

**RESPONSE: OBJECTION – This Request to Admit seeks information not in the control of Defendant Cook County, that would be better sought from Defendant Sheriff Dart. Defendant Cook County does not control the Cook County Department of Corrections, nor does it have any access to or control over inmate records and data, outside of medical related records. Without waiving and in light of this objection, Defendant Cook County states that after a reasonable inquiry, the information known to or readily obtainable by them is insufficient to enable it to admit or deny the allegations contained in Request No. 46.**

47. Globetrotters Engineering Corporation submitted a report dated April 1, 2024 in *Westmoreland v. Dart*, 23-cv-1851, and make the following findings why the RTU east tunnel ramp does not comply with the ADA structural standards:

1) **Top landing:** The Top Landing runs from the Upper Ramp to a pair of doors, leading to the adjacent tunnel, and has a length of 0.75' (9 in.). Since the landing length is less than 60 inches, the landing length is not code compliant. The landing is 85% short of the required length. However, this may be easily corrected by relocating the doors to the east 51", to provide the minimum required landing length.

2) **Upper Ramp:** The Upper Ramp has a 25.95' horizontal run and a 1.93' vertical rise with an average slope of 1:13.4. There is a variation in slope at the very top of the ramp. The last 4.27' of the run, at the top has a rise of 4.56" for a slope of 1:11. The upper portion of the ramp floor surface is not code compliant; the top 16.5% of the overall length is approximately 0.64% steeper than permitted by code. Since the bottom portion of the ramp run is shallower than 1:12, it would be possible to

13

Exhibit 2 Page 13

add a floor topping which will even-out the slope make a consistent floor slope that has a 1:12 slope or shallower.

3) **Intermediate Landing:** The Intermediate Landing is 4.75 feet (57 in.) in length. Since the landing length is less than 60 inches in length, the Intermediate Landing is not code compliant. It is 5% shorter than the required length. To correct this nonconformity, a longer level floor plane at the landing will need to be provided, extending the floor surface west. This will require the Lower Ramp to be rebuilt, along its entire length, to provide for the additional landing length and maintaining a maximum 1:12 ramp slope.

4) **Lower Ramp:** The Lower Ramp has a 30.4' horizontal run and a 2.47 vertical rise, with an average slope of 1:12. There is a variation in slope at the very bottom of the ramp. The last 1 foot of the run is steeper than the rest of the ramp with a slope of approximately 1:8.5. The lower portion of the ramp floor surface is not code compliant; the lower 3.5% of the overall run is approximately 11.7% steeper than permitted by code. The floor surface will need to be feathered out, and the ramp length extended slightly for the Lower Ramp floor to be compliant with code requirements for ramp slope at this location.

5) **Handrails:** As noted in the code requirements above, need to be located 34-38 inches above the ramp floor and need to extend a minimum of 12 inches beyond the top and bottom of each ramp. The ramp(s) have a continuous handrail on each side located. At the lower end of the Lower Ramp the handrails, where measured, is approximately 33" above the ramp floor. At other locations, the handrail height exceeds 34" above the ramp floor. Since, at some locations, handrails are less than

14

Exhibit 2 Page 14

> 34" above the ramp floor they are not in compliance with requirements for handrail height. The handrails extend 7.4" beyond the Lower Ramp and 11.3" beyond the Upper Ramp. Since the handrail extensions are less than 12 inches, the handrails are not in compliance with code requirements for handrail extensions.

Dkt. 42-19 at 10-11

**RESPONSE: Defendant Cook County admits the allegations contained in Request No. 47 are consistent with GEC's published report.**

                    **Respectfully submitted,**

                    */s/ Troy S. Radunsky*
                    Troy S. Radunsky
                    One of the Attorneys for Defendants

Troy S. Radunsky (tradunsky@devoreradunsky.com)
Jason E. DeVore (jdevore@devoreradunsky.com)
Zachary G. Stillman (zstillman@devoreradunsky.com)
DeVore Radunsky LLC
230 W. Monroe Ste 230
Chicago, IL 60606
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      The undersigned, an attorney, hereby certifies that **Defendant Cook County's Responses to Plaintiff's First and Second Sets of Requests to Admit** were sent via email correspondence to all below listed parties on September 16, 2024.

                    */s/ Zachary G. Stillman*
                    Zachary G. Stillman
                    One of the Attorneys for Defendants

Service List:
Thomas G. Morrissey
Patrick Morrissey
10257 S. Western Ave
Chicago, IL 60643
773 233 7901
Pwm@morrisseylawchicago.com
tgm@morrisseylawchicago.com