**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CUAUHTEMOC HERNANDEZ and WILLIAM MATHIS, | ) ) ) | |
| *Plaintiffs,* | ) ) | Case No. 23-cv-16970 |
| *-vs-* | ) ) | Judge Sunil R. Harjani |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) ) ) | Magistrate Judge Keri L. Holleb Hotaling |
| *Defendants.* | ) ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

Defendants, THOMAS DART, in his official capacity as Sheriff of Cook County, and COOK COUNTY, ILLINOIS, by their attorney EILEEN O'NEILL BURKE, State's Attorney of Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD., submit the following response to Plaintiffs' statement of facts:

1.     Plaintiff Cuauhtemoc Hernandez had a medical alert to use a cane at all times at the Cook County Jail from February 2, 2022 to August 30, 2022, and from May 10, 2023 to May 11, 2023. Exhibit 1, Sheriff's Response to Admissions ¶¶ 1- 2, 40; Exhibit 2, Cook County Response to Admissions ¶ 2. The Court appointed Hernandez to represent a Rule 23(b)(3) class of all Cook County Jail detainees who have been assigned a cane, crutch, or walker by a jail medical provider, for a period of more than two weeks, and traversed the Cermak ramp from December 20, 2021 to the date of judgment to resolve the Rule 23(c)(4) issue of whether the Cermak ramp complied with the structural standards required by the ADA and Rehabilitation Act at that time. Dkt. 72, Memorandum Opinion and Order at 6.

**RESPONSE:** Undisputed.

2. Plaintiff William Mathis is a former detainee of the Cook County Jail and from October 16, 2023, until at least August 15, 2024, had a medical alert for "Cane Long Distances Only." Exhibit 1, Sheriff's Response to Admissions ¶ 44; Exhibit 3, IDOC Information for Mathis (admitted to IDOC on 8/29/2024). Plaintiff Mathis has been appointed class representative for two classes: (1) pursuant to Rule 23(b)(2), all inmates at Cook County Jail prescribed a cane, crutch, or walker by a jail medical provider for a period of more than two weeks who traversed either the Residential Treatment Unit east tunnel and/or the Cermak ramp, and (2) pursuant to Rule 23(b)(3) a class for all Cook County Jail detainees who have been assigned a cane, crutch, or walker by a jail medical provider, for a period of more than two weeks, and traversed the Residential Treatment Unit east tunnel ramp from February 13, 2022 to the date of judgment, to resolve the Rule 23(c)(4) issue of whether the east tunnel ramp complied with the structural standards required by the ADA and the Rehabilitation Act at that time. Dkt. 72, Memorandum Opinion and Order at 6.

**RESPONSE:** Undisputed.

3. Defendant Thomas Dart, Sheriff of Cook County, has custody and control over the Cook County Jail. Dkt. 76, Sheriff Answer to Consolidated Complaint ¶ 4; 55 ILCS 5/3-6017.

**RESPONSE:** Defendants object that this statement is overgeneralized and lacks specificity. Notwithstanding and without waiving said objections, undisputed as a general proposition.

4. Defendant Cook County is an Illinois body politic that is responsible for accommodating the needs of disabled detainees remanded to the Sheriff of Cook County and also owns all buildings at the Cook County Jail. Dkt. 75, Cook County Answer to Consolidated Complaint ¶¶ 5-6.

2

**RESPONSE:** Defendants object that this statement is overgeneralized and lacks specificity. Notwithstanding and without waiving said objections, undisputed as a general proposition.

5.      This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 12133 and 29 U.S.C. § 794a(a)(2) Dkt. 76, Sheriff Answer to Consolidated Complaint ¶ 1. Venue is proper under 28 U.S.C. § 1391 because the actions giving rise to plaintiffs' claims occurred in the Northern District of Illinois. *Id.*

**RESPONSE:** Undisputed.

6.      There is a pedestrian/material access tunnel serving the Cermak Health Services Facility at the basement level. Exhibit 2, Cook County's Response to Admission ¶ 3.

**RESPONSE:** Undisputed.

7.      The Cermak Health Services Facility was constructed after 1993. Exhibit 2, Cook County's Response to Admission ¶ 4.

**RESPONSE:** Undisputed.

8.      The Cermak ramp connects the Cermak building to the tunnel and is used by civilian and security employees to enter Cermak, to transport inmates, and to transport equipment. Exhibit 5, Cook County's Response to Admission ¶ 5.

**RESPONSE:** Undisputed.

9.      Eric Davis has been the Deputy Director of the Cook County Department of Capital Planning and Policy since April 2017 and a licensed architect since 1989. Exhibit 2, Cook County's Response to Admission ¶¶ 7-8.

**RESPONSE:** Undisputed.

10.     At present, Mr. Davis's duties include acting as the primary contact for the County on the facilities aspect of accessibility and the ADA and "leading County efforts to renovate the Cermak ramp." Exhibit 2, Cook County's Response to Admission ¶¶ 9-10.

**RESPONSE:** Undisputed.

11.     **[a]** Ellen Stoner is a licensed architect and is the principal of Altus Works. Exhibit 6, Stoner (9/8/2021) Dep 5:22-6:2,16:2-5. **[b]** In about 2017, STV hired Altus Works as an "on-call consultant for accessibility evaluations." Exhibit 6, Stoner (9/8/2021) Dep 15:17-16:10, 28:10-14.

**RESPONSE: [a]** Undisputed. **[b]** Defendants object that the cited deposition testimony is based on speculation. Notwithstanding and without waiving said objection, undisputed.

12.     Mr. Davis believed Ms. Stoner was qualified to assess whether or not the Cermak ramp complied with the 1991 ADA standards. Exhibit 5, Davis (1/19/2022) Dep 94:1-6.

**RESPONSE:** Defendants object that the cited deposition testimony lacks foundation, is based on speculation, and does not support this statement of fact. Notwithstanding and without waiving said objections, disputed. Eric Davis testified he "think[s]" she is qualified to assess. (Pl.'s SOF, Ex. 5, Davis Dep. 94:1–6.)

13.     Mr. Davis testified that he believed Ms. Stoner "was tasked to go and evaluate whether or not, as you say, there may be accessibility issues" with Cook County properties. Exhibit 5, Davis (1/19/2022) Dep 94:16-23.

**RESPONSE:** Undisputed.

14.     Cook County provided the following interrogatory answer in response to the role of Ms. Stoner's assignment pertaining to the Cermak ramp:

> Atlas Works was tasked by the STV/Heery joint venture to review
> accessibility of various locations, including the lower-level ramp in

4

the Cermak Health Services Facility, including but not limited to those requirements from the 2010 ADA Standards that may apply to a building constructed in the late 1990s.

Exhibit 9, Cook County Answer to Second Set of Interrogatories ¶ 3.

**RESPONSE:** Defendants object that the Guidance on the 2010 ADA Standards for Accessible Design apply only "[i]f physical construction or alterations commence on or after March 15, 2012." 28 C.F.R. § 35.151(c)(3). Notwithstanding and without waiving said objections, this paragraph is undisputed.

15. In March 2018 Ellen Stoner conducted a walkthrough of Cermak. Exhibit 6, Stoner (9/8/2021) Dep 102:16-21; Exhibit 10, Cook County Answer to Plaintiff's First Set of Interrogatories ¶ 2.

**RESPONSE:** Undisputed.

16. Ms. Stoner made recommendations to bring the Cermak ramp "into compliance." Exhibit 6, Stoner (9/8/2021) Dep 138:12-20. Ms. Stoner wrote the following information regarding the Cermak ramp:

Existing ramp is 47' long without a landing. Slope of the ramp is within 1:12 maximum slope requirements, however the run exceeds code requirements. <u>Recommendations:</u>

1. Create compliant landing 30' from top of ramp
2. Repour the remaining 17' ramp in 2 sections with another landing area at the change in ramp direction.
3. Raise door to Medical Records room B020. Extend landing into room and provide 3' wide ramp and 44" wide stair
4. Provide hand rails at both sides of ramps, continuous at landing where no door exists.
5. Provide handrails at both sides of stairs in B020

Exhibit 10, Cook County Answer to Plaintiff's First Set of Interrogatories ¶ 6; Exhibit 4 at 2; Exhibit 5, Davis (1/19/2022) Dep 93:2-13.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving the objections, disputed. The assertion that "the run exceeds code requirements" is incorrect. Ms. Stoner relied on Figure 16 of the 1991 ADA Standards. However, the federal regulations state, "Unless specifically stated otherwise, the advisory notes, appendix notes, and figures contained in the 1991 Standards and the 2010 Standards explain or illustrate the requirements of the rule; they do not establish enforceable requirements." The 1991 ADA Standards do not "specifically state[] otherwise" that Figure 16 is an enforceable requirement. Moreover, the Cermak ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

17. Ellen Stoner created the drawing of the Cermak ramp attached as Exhibit 4 and also referenced in Eric Davis's deposition as Exhibit 4. Exhibit 5, Davis (1/19/2022) Dep 93:2-13.

**RESPONSE:** Undisputed.

18. Ms. Stoner testified as follows:

Q. In addition to the ramp not having a landing within 30 feet from the top of the ramp, you also found that the handrails were incompliant [*sic*] with the 2010 code, correct?

A. Uh-huh.

Mr. Glasso (Ms. Stoner's counsel): You have to say that verbal.

A. Yes. Sorry.

Exhibit 6, Stoner (9/8/2021) Dep 138:22-139:6.

**RESPONSE:** Defendants object that the Guidance on the 2010 ADA Standards for Accessible Design apply only "[i]f physical construction or alterations commence on or after March 15, 2012." 28 C.F.R. § 35.151(c)(3). Defendants also object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving the objections,

disputed. The Cermak ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

19.     Additionally, Cook County hired a third-party architectural/engineering firm, Globetrotters Engineering Corporation (GEC), to assess ADA compliance of the Cermak Health Services facility, starting with a report specifically on the Cermak ramp. Exhibit 2, Cook County's Response to Admission ¶ 11.

**RESPONSE:** Undisputed.

20.     On December 6, 2023, GEC submitted a Cook County Ramp Accessibility Assessment for the Cermak Health Services Facility finding that the Cermak ramp has "a rise of 32.4 inches, which does not comply with the 30-inch maximum rise stated in Section 4.8.2 of the 1991 ADAAG." Exhibit 2, Cook County's Response to Admission ¶¶ 12-13.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is GEC's assessment. However, Defendants dispute that the minor deviations identified in the report violate the ADA or the Rehabilitation Act. The Cermak ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

21.     Referring to the rise of the ramp, Carl Darr of GEC testified "If it's 2.4 inches short, it doesn't comply regardless." Exhibit 2, Cook County's Response to Admission ¶ 14.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is GEC's assessment. However, Defendants dispute that the minor deviations identified in the report violate the ADA or the Rehabilitation Act. The Cermak ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

22.    GEC also found that the current handrails on the Cermak ramp "do not extend 12" beyond the ramp and "they do not comply with the 2010 ADAAG requirements for handrail extensions." Exhibit 2, Cook County's Response to Admission ¶ 17.

**RESPONSE:** Defendants object that the Guidance on the 2010 ADA Standards for Accessible Design apply only "[i]f physical construction or alterations commence on or after March 15, 2012." 28 C.F.R. § 35.151(c)(3). These guidelines do not apply to the Cermak ramp because it was constructed around 1996. (Defs' SOAF ¶ 4.) Defendants also object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is GEC's assessment. However, Defendants dispute that the minor deviations identified in the report violate the ADA or the Rehabilitation Act. The Cermak ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

23.    GEC proposed the following "[p]ossible solutions" to remedy the non- compliant Cermak ramp:

> 1.   Adding an intermediate landing, to reduce the rise to less than 30 inches per run and adding railing extensions at the top and bottom of the ramp.
> *or*
> 2.   Reducing the slope to less than 1:20 by extending the length of the walkway. The sloped walkway will be shallow enough to eliminate the applicability of code requirements for ramps and will not require a handrail.

Exhibit 2, Cook County's Response to Admission ¶ 18.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is GEC's assessment. However, Defendants dispute that the minor deviations identified in the report violate

the ADA or the Rehabilitation Act. The Cermak ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

24.     The Residential Treatment Unit was constructed after 2010 and contains an east tunnel ramp that leads directly to the Cermak ramp and they are of comparable size. Exhibit 2, Cook County's Response to Admission ¶¶ 23, 27.

**RESPONSE:** Defendants object that the Guidance on the 2010 ADA Standards for Accessible Design apply only "[i]f physical construction or alterations commence on or after March 15, 2012." 28 C.F.R. § 35.151(c)(3). Notwithstanding and without waiving said objections, this paragraph is undisputed.

25.     In March of 2021, Timothy Tyrrell, the General Manager of Cook County's Facilities Management Department sent an e-mail acknowledging the path of travel on the RTU ramp is not compliant with the ADA. Exhibit 7, Tyrrell e- mail sent 3/8/2021 at 2:53 pm.

**RESPONSE:** Defendants object that the cited email lacks foundation, is based on speculation, and does not support this statement of fact. Timothy Tyrrell has not been disclosed or qualified as an expert on the Americans with Disabilities Act (ADA), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on the federal statutes and regulations. Further, in his email, Mr. Tyrrell stated that some unidentified ramp "appears" to be "slightly out of compliance." (Pl.'s SOF, Ex. 7, Tyrrell Email, Mar. 8, 2021, 2:53pm.) Mr. Tyrrell did not identify the ramp and did not indicate that any measurements were taken. Notwithstanding and without waiving said objections, disputed. The RTU ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

26.     The RTU east tunnel ramp includes two-sloped floor runs separated by an intermediate landing. Exhibit 2, Cook County's Response to Admission ¶ 25. The runs are both steeper than 1:20 and therefore are ramps as defined under the ADA. *Id.*

**RESPONSE:** Undisputed.

27.     GEC, including Mr. Darr, inspected the RTU east tunnel ramp on January 23, 2024, and again on January 25, 2024. Exhibit 2, Cook County's Response to Admission ¶ 29.

**RESPONSE:** Undisputed.

28.     GEC submitted a report dated April 1, 2024 in *Westmoreland v. Dart*, 23-cv-1851, and make the following findings why the RTU east tunnel ramp does not comply with the ADA structural standards;

- **Top landing**: The Top Landing runs from the Upper Ramp to a pair of doors, leading to the adjacent tunnel, and has a length of 0.75' (9 in.). Since the landing length is less than 60 inches, the landing length is not code compliant.

  The landing is 85% short of the required length. However, this may be easily corrected by relocating the doors to the east 51", to provide the minimum required landing length.

- **Upper Ramp**: The Upper Ramp has a 25.95' horizontal run and a 1.93' vertical rise with an average slope of 1:13.4. There is a variation in slope at the very top of the ramp. The last 4.27' of the run, at the top has a rise of 4.56" for a slope of 1:11.

  The upper portion of the ramp floor surface is not code compliant; the top 16.5% of the overall length is approximately 0.64% steeper than permitted by code. Since the bottom portion of the ramp run is shallower than 1:12, it would be possible to add a floor topping which will even-out the slope make a consistent floor slope that has a 1:12 slope or shallower.

- **Intermediate Landing**: The Intermediate Landing is 4.75 feet (57 in.) in length. Since the landing length is less than 60 inches in length, the Intermediate Landing is not code compliant.

  It is 5% shorter than the required length. To correct this nonconformity, a longer level floor plane at the landing will need to be provided, extending the floor surface west. This will require the Lower Ramp to be rebuilt, along its entire length, to

provide for the additional landing length and maintaining a maximum 1:12 ramp slope.

- **Lower Ramp**: The Lower Ramp has a 30.4' horizontal run and a 2.47 vertical rise, with an average slope of 1:12. There is a variation in slope at the very bottom of the ramp. The last 1 foot of the run is steeper than the rest of the ramp with a slope of approximately 1:8.5.

  The lower portion of the ramp floor surface is not code compliant; the lower 3.5% of the overall run is approximately 11.7% steeper than permitted by code. The floor surface will need to be feathered out, and the ramp length extended slightly for the Lower Ramp floor to be compliant with code requirements for ramp slope at this location.

- **Handrails**: As noted in the code requirements above, need to be located 34-38 inches above the ramp floor and need to extend a minimum of 12 inches beyond the top and bottom of each ramp. The ramp(s) have a continuous handrail on each side located. At the lower end of the Lower Ramp the handrails, where measured, is approximately 33" above the ramp floor. At other locations, the handrail height exceeds 34" above the ramp floor. Since, at some locations, handrails are less than 34" above the ramp floor they are not in compliance with requirements for handrail height.

  The handrails extend 7.4" beyond the Lower Ramp and 11.3" beyond the Upper Ramp. Since the handrail extensions are less than 12 inches, the handrails are not in compliance with code requirements for handrail extensions.

Exhibit 2, Cook County's Response to Admission ¶ 47.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is GEC's assessment. However, Defendants dispute that the minor deviations identified in the report violate the ADA or the Rehabilitation Act. The RTU east tunnel ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

29.     Mr. Darr testified in *Westmoreland v. Dart*, that "the regulations don't permit any entity to have a landing less than 60 inches." Exhibit 2, Cook County's Response to Admission ¶ 31.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is Mr. Darr's testimony. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act. The RTU east tunnel ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

30.     Mr. Darr testified that the purpose of an intermediate landing "basically gives somebody a place to stop for a moment, even turn around." Exhibit 8, Darr (4/30/2025) Dep 30:18-23.

**RESPONSE:** Undisputed.

31.     Mr. Darr testified in *Westmoreland v. Dart*, that the RTU east tunnel ramp is not in compliance with the ADA regulations. Exhibit 2, Cook County's Response to Admission ¶ 32.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is Mr. Darr's testimony. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act. The RTU east tunnel ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

32.     Mr. Darr testified in *Westmoreland v. Dart* that providing an accommodation such as pushing a wheelchair person up or down the RTU east tunnel ramp does not obviate the need of the government to comply with the ADA standards "for a required accessible route." Exhibit 2, Cook County's Response to Admission ¶ 33.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Defendants also object that Mr. Darr is not qualified to offer an opinion on such matters. Notwithstanding and without waiving said objections, undisputed that this is Mr. Darr's

testimony. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act. The RTU east tunnel ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

33. GEC offered the following recommendations to bring the RTU east tunnel ramp into compliance with the ADA:



Figure 3: Plan of Recommendations

Exhibit 2, Cook County's Response to Admission ¶ 34.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is GEC's assessment. However, Defendants dispute that the minor deviations identified in the report violate the ADA or the Rehabilitation Act. The RTU east tunnel ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

34. There is no projected date when the RTU east tunnel ramp will be renovated in accordance with the recommendations of GEC and, as of August 15, 2024, the Cook County Board

of Commissioners have not approve any funds to reconstruct the RTU east tunnel ramp to comply with the ADA. Exhibit 2, Cook County's Response to Admission ¶¶ 36, 39.

**RESPONSE:** Undisputed.

35.     Defendants retained Carl Darr as their Rule 26(a)(2) expert in this case. Exhibit 11, Defendants' Expert Disclosure.

**RESPONSE:** Undisputed.

36.     During his deposition on April 30, 2025, Mr. Darr confirmed that the Cermak ramp and RTU east tunnel ramp, at the time of construction, did not comply with the applicable ADA standards. Exhibit 8, Darr (4/30/2025) Dep 34:3- 36:10.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is Mr. Darr's testimony. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act. The Cermak ramp and RTU east tunnel ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

37.     **[a]** The 1991 ADA Standards and the 2010 ADA Standards are identical in regards to certain components of ramps: (1) the rise for any ramp run shall be a maximum of 30 inches, and **[b]** (2) handrails must meet specific structural requirements. See Exhibit 12, 1991 ADA Standards §§ 4.8.2, 4.8.5; Exhibit 13, 2010 ADA Standards §§ 405.6, 405.8.

**RESPONSE:** Defendants object that the Guidance on the 2010 ADA Standards for Accessible Design apply only "[i]f physical construction or alterations commence on or after March 15, 2012." 28 C.F.R. § 35.151(c)(3). Notwithstanding and without waiving said objection: **[a]** Undisputed. **[b]** Defendants object that this paragraph is vague and lacks specificity because Plaintiff does not identify the "structural requirements" relating to handrails. Notwithstanding and

without waiving said objections, disputed. The 1991 ADA Standards and the 2010 ADA Standards are not identical in regards to handrails. (Pl.'s SOF, Ex. 12, 1991 ADA Standards § 4.8.5; Pl.'s SOF, Ex. 13, 2010 ADA Standards § 405.8.)

38.     Mr. Darr testified that the ADA structural standards are "mandatory," explaining: "[i]t would have been mandatory at the time for the designer to design the ramp accordingly and for the contractor to build the ramp accordingly." Exhibit 8, Darr (4/30/2025) Dep 17:21–18:8.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is Mr. Darr's testimony. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act. The Cermak ramp and RTU east tunnel ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

39.     Mr. Darr further opines that each non-compliant ramp must be renovated to meet the mandatory ADA structural standards. See Exhibit 14, Cermak Report at 9–10; Exhibit 15, Residential Treatment Unit Report at 16.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is Mr. Darr's testimony. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act. The Cermak ramp and RTU east tunnel ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

40.     Lonnie Hollis was produced on November 18, 2024, as the Sheriff's Rule 30(b)(6) designee, to discuss Topics 3-6 of the Deposition Notice. Exhibit 16, Rule 30(b)(6) Deposition Notice; Exhibit 17, Hollis Dep 5:19-6:10. This Rule 30(b)(6) Notice addresses accommodations to class members to traverse the ramps. Exhibit 16, Rule 30(b)(6) Deposition Notice ¶¶ 3-6.

**RESPONSE:** Undisputed.

41.     The only written training by the Sheriff's Office regarding movement up and down ramps is from Lexipol. Exhibit 17, Hollis Dep 120:13-121:8. This Lexipol Policy, titled 148, only provides direction for correctional staff to push wheelchair users up and down ramps. Exhibit 17, Hollis Dep 39:2-11; Exhibit 18, Lexipol Policy 148 at 7.

**RESPONSE:** Defendants object that the cited exhibit does not reflect that Lexipol is the "only" written training provided by the Sheriff's Office regarding movement up and down ramps. Notwithstanding and without waiving said objections, disputed. Mr. Hollis testified that the Sheriff's Office provides other training outside Lexipol, including both written and oral training and direction given by supervisors as a routine matter, such as pre-service training through the training academy, yearly in-service training after graduating from the academy, emails from supervisors, and memorandums and direction given to staff during roll call. (Pl.'s SOF, Ex. 17, Hollis Dep. 116:9–117:7.)

42.     **[a]** Mr. Hollis confirmed Policy 148 does not provide any information about how an officer is to accommodate a class member traversing a ramp at the Jail. Exhibit 17, Hollis Dep 39:22-41:6. **[b]** Mr. Hollis also was unable to discuss training for staff to accommodate class members when traversing the ramps. Exhibit 17, Hollis Dep 121:9- 122:9.

**RESPONSE: [a]** Defendants object that the information in this paragraph is immaterial and irrelevant. Notwithstanding and without waiving said objections, disputed. Mr. Hollis testified that the Sheriff's Office provides other training outside Lexipol, such as pre-service training through the training academy, yearly in-service training after graduating from the academy, and memorandums given to staff during roll call. (Pl.'s SOF, Ex. 17, Hollis Dep. 116:9–117:7.)

**[b]** Defendants object that the cited testimony lacks foundation and does not support this statement of fact. Mr. Hollis testified that he could not answer any questions regarding the training that officers receive *in the academy* (not training in general) and that it was not the area that he oversaw. (Pl.'s SOF, Ex. 17, Hollis Dep. 121:9–122:6.)

43.     The Appendix to the 1991 ADA Standards states "[t]he ability to manage an incline is related to its slope and its length." Exhibit 19, Portion of 1991 ADA Appendix at 7, A4.8.2. The Appendix to the 1991 ADA Standards states "[l]evel landings are essential toward maintaining an aggregate slope that complies with these guidelines." Exhibit 19, Portion of 1991 ADA Appendix at 7, A4.8.4.

**RESPONSE:** Defendants object that the information in this paragraph is immaterial and irrelevant because the citied ADA Appendix discusses the slope in the context of persons in wheelchairs, but this case does not involve persons in wheelchairs. Notwithstanding and without waiving said objections, undisputed.

44.     Plaintiff Hernandez had an alert to use a cane from February 2, 2022 to August 30, 2022 and from May 10, 2023 to May 11, 2023. Exhibit 1, Sheriff's Response to Admissions ¶ 40.

**RESPONSE:** Undisputed.

45.     The medical intake for Hernandez on February 2, 2022, by PA Salvador Martinez documents "H/O: M.Obese with chronic LBP and shoulder OA" and that he was given "CPM/PRN with pain Rx -cane." Exhibit 20 at 3, Hernandez 2/2/2022 Intake Medical Record.

**RESPONSE:** Defendants object that the information in this paragraph lacks foundation and contains undefined shorthand and medical terminology. Notwithstanding and without waiving said objection, undisputed that this information is contained in the cited exhibit.

46. Hernandez dated a Health Service Request Form February 4, 2022, and wrote "I cant walk to far meaning need a wheel chair when moved around for court etc." Exhibit 21 at 1, Hernandez Health Service Request Form. Hernandez submitted another Health Service Request Form dated February 23, 2022, stating "I need to see the doctor to get an order that I be transported in a wheel chair when I go to court etc. I cant walk distances so please call me immediately. Staff told me to direct this to medical that doctor." Exhibit 21 at 2, Hernandez Health Service Request Form.

**RESPONSE:** Defendants object that this statement is hearsay and inadmissible. A district court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Parties may not rely on inadmissible hearsay in summary judgement proceedings the same way they may not rely on such statements in a trial. *Id.*; *see Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996). Notwithstanding and without waiving said objection, undisputed that this information is contained in the cited exhibit.

Further, Hernandez is not a medical professional and lacks sufficient training to diagnose what sort of assistive medical device(s) he needs. Complaints about allegedly improper healthcare decisions are not properly brought under the ADA because "[t]he ADA does not create a remedy for medical malpractice" or "incompetent treatment" of an individual's needs. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (finding that no discrimination was alleged where paraplegic plaintiff failed to show that he was treated any worse because he was disabled and the subject of his complaint amounted to "incompetent treatment of his paraplegia"); *see also Est. of Morris v. Jeffreys*, No. 3:20-cv-50320, 2021 WL 3187699, 2021 U.S. Dist. LEXIS 140733, at *22 (N.D. Ill. July 28, 2021) ("[A] complaint about the adequacy of [plaintiff's] healthcare is not properly within

Title II of the ADA."); *Hirsch v. Will County*, No. 19-cv-07398, 2021 WL 1531602, 2021 U.S. Dist. LEXIS 74310, at *9 (N.D. Ill. Apr. 19, 2021) (citing *Bryant*, 84 F.3d at 249) (same); *Johnson v. Redmond*, No. 17 C 50210, 2017 WL 6813706, 2017 U.S. Dist. LEXIS 217568, at *6–7 (N.D. Ill. Oct. 30, 2017) (same); *Gaston v. Dart*, No. 15 C 828, 2015 WL 5093797, 2015 U.S. Dist. LEXIS 113486, at *8–9 (N.D. Ill. Aug. 25, 2015) (same).

47.     At one point in time, Hernandez testified he did not believe there were handrails on the Cermak ramp. Exhibit 22, Hernandez Dep 93:11-16. When handrails were installed on the ramp, Hernandez would use the handrails "sometimes" depending on which side of the ramp he was required to walk on due to his bad right shoulder. Exhibit 22, Hernandez Dep 44:12-23.

**RESPONSE:** Defendants object that the cited exhibit does not support this statement of fact. Cuauhtemoc Hernandez was asked in his deposition about both the Residential Treatment Unit (RTU) and Cermak ramps in the questions that his answers were responsive to. (Hernandez Dep. 44:12-13; 89:17-18, Pl.'s Ex. 22.) Hernandez does not identify whether he was referring to the ramp(s) in the RTU or the Cermak ramp. (*Id.*) Notwithstanding and without waiving said objections, undisputed that this is Hernandez's testimony.

48.     On August 18, 2022, RN Jeelan McCray made the following documentation in Hernandez's medical file:

> Pt seen today. He ambulated out with a noticeable staggered limp and drag of his left foot. Pt is overweight and strongly declares that he cannot get up from a standing position without a cane. Pt does have an order for a cane at all times. Div 9 will not allow pt to have his cane on the deck. Communication sent to the provider for appropriate housing. F/U prn.

Exhibit 23, RN McCray 8/18/2022 Record.

**RESPONSE:** Defendants object that this statement lacks foundation and contains inadmissible hearsay. A district court "may consider only admissible evidence in assessing a

motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Parties may not rely on inadmissible hearsay in summary judgement proceedings the same way they may not rely on such statements in a trial. *Id.*; *see Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996). Notwithstanding and without waiving said objections, undisputed for purposes of summary judgment.

49.     Plaintiff Hernandez testified the Cermak ramp and RTU east tunnel ramp were "too steep and too long" and did not have adequate space to rest which exasperated pain to his leg, back, and shoulder." Exhibit 22, Hernandez Dep 92:1- 16, 93:3-7.

**RESPONSE:** Defendants object that the cited testimony lacks foundation, is based on speculation, and does not support this statement of fact. Cuauhtemoc Hernandez has not been disclosed as an expert on the American with Disabilities Act ("ADA"), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on the federal statutes and regulations. Hernandez's testimony on whether the ramp met the standards was based on a cursory Google search. (Hernandez Dep 91:11-92:16; Pl.'s Ex. 22.) Notwithstanding and without waiving said objections, this paragraph is disputed. Hernandez stated that he was, in fact, able to rest on the ramp by leaning against the adjacent wall. (*Id.* at 92:7.) Defendants also dispute that the Cermak ramp and RTU east tunnel ramp were "too steep and too long." The Cermak ramp and RTU east tunnel ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

50.     When Hernandez moved up and down the ramps he was compelled to "stop and take breaks" by trying to "lean on the wall" and he was unable to "keep up with the line" of inmates being moved. Exhibit 22, Hernandez 42:12-23, 58:7- 13, 92:5-16. Using "the ramp was just one

of the biggest problems because it's so long" and caused Hernandez to be in pain. Exhibit 22, Hernandez Dep 57:23-58:6.

**RESPONSE:** Defendants object that the cited exhibit does not support this statement of fact. This statement is also disputed. Hernandez's testimony was not that he was unable to keep up with a line of inmates specifically while on the ramp, but that he was unable to keep up with a line of inmates in general. (Hernandez Dep 58:7-13, Pl.'s Ex. 22.) Hernandez could not recall if the ramp was part of his complaints about anxiety. (*Id.*) The quoted passage of Hernandez's testimony further does not state that the ramp was the source of his pain. (*Id.*) Instead, Hernandez stated that he was "in pain in general." (*Id.*) Hernandez testified that walking on the ramp only "irritated" his leg, back, and shoulder. (*Id.* at 92:11–16.)

51.     The pain caused by using the ramp would last "for days," exasperated Hernandez's preexisting injuries, and caused him to fall inside his cell in Division 10. Exhibit 22, Hernandez Dep 54:2-55:16, 58:3-6, 62:7-17.

**RESPONSE:** Defendants object that the cited deposition testimony lacks foundation and is based on speculation. This statement of fact is also disputed. Hernandez is not a medical expert, does not have medical training, and is unqualified to opine as to the cause of his alleged fall in his cell in Division 10. Hernandez suffered from a number of preexisting conditions, including a torn meniscus, which could have contributed to his alleged fall. (Hernandez Dep. 54:13-15, Pl.'s Ex. 22.) Further, Hernandez stated that his pain was caused by walking "anywhere that was long distance." (*Id.* at 54:18-20.) Hernandez testified that walking on the ramp only "irritated" his leg, back, and shoulder. (*Id.* at 92:11–16.)

52.     Hernandez reported the pain caused by using the ramp to the correctional officers and, on two occasions at most, he was transported in a cart. Exhibit 22, Hernandez Dep 44:24-

21

45:10, 46:5-47:3. Correctional staff told Hernandez that the cart would not be used "all the time" and that he required a "medical script". Exhibit 22, Hernandez Dep 46:18-48:9, 56:19-57:8.

**RESPONSE:** Defendants object that the cited exhibit does not support this statement of fact. This paragraph is also disputed. Hernandez never testified that he was only able to use the cart twice, at most. Hernandez instead stated that he could remember two occasions which he used a cart, not that these were the only times he was able to utilize it. (Hernandez Dep. 46:18-47:9, 56:19-57:13; Pl.'s Ex. 22.) Hernandez further testified that officers told him that he needed a "medical script" for a wheelchair to travel long distances because they would not be able to take him in the cart all the time, not that they would refuse to transport him in the cart if he did not have a "medical script." (*Id.* at 56:19-57:13.)

53.     Hernandez reported his pain caused by using the ramps to the medical staff and even requested a prescription to use a wheelchair or to be transported regularly on a cart. Exhibit 22, Hernandez Dep 50:16-51:1, 56:19-57:8.

**RESPONSE:** Defendants object that the cited exhibit does not support this statement of fact. This paragraph is also disputed. Hernandez testified that his pain was caused by walking long distances generally, not due to traveling on the ramp, specifically. (Pl.'s SOF, Ex. 22, Hernandez Dep. at 50:16–51:1, 54:18–20.) Hernandez testified that walking on the ramp only "irritated" his leg, back, and shoulder. (*Id.* at 92:11–16.) Hernandez also testified that he would be transported on a cart. (*Id.* at 57:5–8.)

Further, Hernandez is not a medical professional and lacks sufficient training to diagnose what sort of assistive medical device(s) he needs. Complaints about allegedly improper healthcare decisions are not properly brought under the ADA because "[t]he ADA does not create a remedy for medical malpractice" or "incompetent treatment" of an individual's needs. *Bryant v. Madigan*,

84 F.3d 246, 249 (7th Cir. 1996) (finding that no discrimination was alleged where paraplegic plaintiff failed to show that he was treated any worse because he was disabled and the subject of his complaint amounted to "incompetent treatment of his paraplegia"); *see also Est. of Morris v. Jeffreys*, No. 3:20-cv-50320, 2021 WL 3187699, 2021 U.S. Dist. LEXIS 140733, at *22 (N.D. Ill. July 28, 2021) ("[A] complaint about the adequacy of [plaintiff's] healthcare is not properly within Title II of the ADA."); *Hirsch v. Will County*, No. 19-cv-07398, 2021 WL 1531602, 2021 U.S. Dist. LEXIS 74310, at *9 (N.D. Ill. Apr. 19, 2021) (citing *Bryant*, 84 F.3d at 249) (same); *Johnson v. Redmond*, No. 17 C 50210, 2017 WL 6813706, 2017 U.S. Dist. LEXIS 217568, at *6–7 (N.D. Ill. Oct. 30, 2017) (same); *Gaston v. Dart*, No. 15 C 828, 2015 WL 5093797, 2015 U.S. Dist. LEXIS 113486, at *8–9 (N.D. Ill. Aug. 25, 2015) (same).

54.     A medical record by PA Brittany Wilkins dated October 16, 2023, documents plaintiff Mathis has "acromegaly" with injections to treat this condition, along with "[c]hronic L knee pain OA (poor, worsening)" and a "low bunk" alert and "cane long distance only" alert. Exhibit 24 at 7, PA Wilkins Medical Record dated 10/16/2023.

**RESPONSE:** Defendants object that the information in this paragraph lacks foundation and contains undefined shorthand and medical terminology. Notwithstanding and without waiving said objection, undisputed that this information is contained in the cited exhibit.

55.     A medical record by PA Daniel Kaczrowski dated November 20, 2023, documents Mathis "reports numerous h/o community flares," that he complained of "painful weight bearing on L ankle" and "likely gout flare." Exhibit 25 at 1, PA Kaczrowski Record dated 11/20/2023.

**RESPONSE:** Defendants object that the information in this paragraph lacks foundation. Notwithstanding and without waiving said objection, undisputed that this information is contained in the cited exhibit.

56. Mathis testified each ramp was "too steep" which caused pain and shortness of breath. Exhibit 26, Mathis Dep 19:2-10, 26:24-27:7.

**RESPONSE:** Defendants object that the cited testimony lacks foundation, is based on speculation, and does not support this statement of fact. William Mathis has not been disclosed as an expert on the American with Disabilities Act ("ADA"), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on the federal statutes and regulations. Notwithstanding and without waiving said objections, this paragraph is disputed. Mathis stated that he had been experiencing general knee pain following his admittance to the Cook County Jail system. (Mathis Dep. 16:11-16; Pl.'s SOF, Ex. 26.) The subject ramps deviated from the ADA Accessibility Guidelines ("Guidelines") for vertical rise by only 1.93 to 2.47 inches. Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long. Defendants also dispute that the Cermak ramp and RTU east tunnel ramp were "too steep." The Cermak ramp and RTU east tunnel ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

57. During his incarceration at the Cook County Jail, Mathis went to Cermak approximately once every three to four weeks because he would attend medical appointments at Stroger Hospital to obtain injections. Exhibit 26, Mathis Dep 27:8-28:10.

**RESPONSE:** Defendants object that the cited deposition testimony does not support this statement of fact. Mathis testified that he went to an outside hospital every month. (Pl.'s SOF, Ex. 26, Mathis Dep. 27:8–28:10.)

58. Due Mathis's medical condition, going up the ramps was more challenging than descending and his injuries included knee pain and a feeling of his knee popping in and out of place. Exhibit 26, Mathis Dep 24:16-25:7.

**RESPONSE:** Defendants object that the information in this paragraph is immaterial and irrelevant. Due to gravity, going up a ramp is harder than going down a ramp for *anyone*. Defendants also object that the cited deposition testimony lacks foundation and is based on speculation. Mathis is not a medical expert, does not have medical training, and is unqualified to opine as to the cause of his alleged medical condition. Notwithstanding and without waiving said objections, this paragraph is disputed. Mathis stated that he had been experiencing general knee pain following his admittance to the Cook County Jail system. (Mathis Dep. 16:11-16; Pl.'s SOF, Ex. 26.) The subject ramps deviated from the ADA Accessibility Guidelines ("Guidelines") for vertical rise by only 1.93 to 2.47 inches. Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long.

59. Mathis has missed medical appointments at Cermak due to pain caused by traversing the ramps and ambulating during "flare-ups" of his condition. Exhibit 26, Mathis Dep 29:15-31:10.

**RESPONSE:** Disputed. Mathis never testified that the Cermak ramp caused him to miss medical appointments. In fact, Mathis testified that the Cermak ramp never actually stopped or prevented him from accessing services or appointments. (Mathis Dep. 29:8-14; Pl.'s Ex. 26.) Mathis stated that he was always able to get where he wanted to go, unless he "didn't feel like going over" due to his general knee pain. (*Id.* at 29:15-19.) Further, the subject ramps deviated from the ADA Accessibility Guidelines ("Guidelines") for vertical rise by only 1.93 to 2.47 inches.

Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long.

60.     From October 16, 2023, until at least August 15, 2024, plaintiff William Mathis had an alert to use a cane long distance only. Exhibit 1, Sheriff's Response to Admissions ¶ 44.

**RESPONSE:** Undisputed.

61.     The Sheriff's record show Mathis was housed in DIV8/RTU on the following dates: April 8, 2023 to April 12, 2023, November 1, 2023 to November 6, 2023, December 10, 2023 to February 18, 2024, and February 22, 2024 to February 29, 2024. Exhibit 1, Sheriff's Response to Admissions ¶ 46.

**RESPONSE:** Undisputed.

62.     **[a]** On December 10, 2023, while assigned to Division 6, Mathis had a gout flare that caused his foot to swell up and be unable to hold any weight. Exhibit 26, Mathis Dep 54:17-55:7. **[b]** The correctional officers initially told Mathis on this day he had to walk in order to be evaluated by the doctor at Cermak. *Id.* at 55:22-56:23. **[c]** Mathis was then seen by a nurse who placed him in a wheelchair and he was transferred into a cart and driven to Cermak. *Id.* at 56:5-11.

**RESPONSE:** **[a]** Undisputed. **[b]** Disputed. Mathis testified that he told the correctional officers that he was experiencing pain in his foot, to which the officers suggested that he go to the doctor to be treated, once Mathis told the officers that he was unable to complete the walk to the doctors the officers arranged for Mathis to be transported. (Mathis Dep. 55:22-56:23; Pl.'s SOF, Ex. 26.) **[c]** Undisputed.

63.     After December 10, 2023, Mathis has requested the correctional officers to transport him in a cart up and down the ramps, but was told "inmates not suppose to be on the cart" and was not escorted up and the ramps using a cart. Exhibit 26, Mathis Dep 61:5-20.

**RESPONSE:** Disputed. If a cart was not available for use when an inmate requested it, correctional officers would provide alternative forms of assistance to inmates. (Hollis Dep. 100:16-24; Pl.'s SOF, Ex. 17.) Any time that an inmate with a cane, crutch, or walker requested assistance, Assistant Executive Director Lonnie Hollis stated that the correctional staff would "look into it and provide assistance." (*Id.*) Mathis testified that on multiple occasions he was transported via wheelchair by correctional staff when he was unable to use a cart. (Mathis Dep. 33:22-34:4, 43:7-9, 46:17-21, 55:22-56:11; Pl.'s SOF, Ex. 26.)

64.     Mr. Lonnie Hollis, the Sheriff's Rule 30(b)(6) designee and Assistant Executive Director since 2020, said the use of a cart for inmates to move up or down ramps "is situational and they can't necessarily request for a cart, because the carts may or may not be available at a given time, that would have to be escalated to a supervisor, and they would have to work with Cermak to determine how to have the person escorted over." Exhibit 17, Hollis Dep 22:20-23:2, 98:11- 22.

**RESPONSE:** Undisputed with additional context. Mr. Hollis testified that any time a person with a cane, crutch, or walker "ask[ed] for assistance, we're going to look into it and provide assistance." (Pl.'s SOF, Ex. 17, Hollis Dep. 100:16–24.)

65.     Additionally, Mr. Hollis stated that if a class member is at the base of a ramp and seek a wheelchair to traverse the ramp, a correctional supervisor must be contacted and supervisor would contact the on-duty nursing supervisor at Cermak "and a decision would be made at that

point" whether a wheelchair would be permitted to move up or down the ramp. Exhibit 17, Hollis Dep 98:23-101:23.

**RESPONSE:** Undisputed with additional context. Mr. Hollis testified that any time a person with a cane, crutch, or walker "ask[ed] for assistance, we're going to look into it and provide assistance." (Pl.'s SOF, Ex. 17, Hollis Dep. 100:16–24.)

66.     Eric Davis said the purpose of handrails under the ADA code is to "allow someone to steady themselves, whether they're walking or in a wheelchair, to provide stability when they're walking or in a wheelchair." Exhibit 5, Davis (1/19/2022) Dep 104:2-8.

**RESPONSE:** Undisputed.

67.     Eric Davis testified in January of 2022 that the Cermak ramp did not have handrails that comply with either the 1991 or 2010 ADA standards. Exhibit 5, Davis (1/19/2022) Dep 52:3-7.

**RESPONSE:** Defendants object that the Guidance on the 2010 ADA Standards for Accessible Design apply only "[i]f physical construction or alterations commence on or after March 15, 2012." 28 C.F.R. § 35.151(c)(3). Notwithstanding and without waiving said objection, disputed. The Cermak ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

68.     Eric Davis testified in January of 2022 that "handrails would need to be provided" to comply with the ADA structural standards. Exhibit 5, Davis (1/19/2022) Dep 52:16-22.

**RESPONSE:** Defendants object that this statement is vague and lacks specificity. Notwithstanding and without waiving said objection, disputed. The Cermak ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

69.     Eric Davis said that the Cermak ramp "appears that instead of a handrail that there are hospital-style bumpers at that - - at approximately the same height off the floor." Exhibit 5, Davis (1/19/2022) Dep 106:7-14.

**RESPONSE:** Defendants object that the information in this paragraph is immaterial and irrelevant. Mr. Davis's testimony is from January 2022, which is before the project to replace existing handrails with ADA compliant handrails was completed in January 2023. (Pl.'s SOF ¶¶ 71–72.) On July 5, 2022, a work order was entered to "[r]emove existing handrails in ramp leading from tunnel to Cermak and replace with ADA compliant handrails." (Ex. A, Cook County – Reactive Work Order.) The project was completed on January 16, 2023. (*Id.* at 2.)

70.     An order was entered in *Walker v. Dart* requiring Cook County to install "hand-railings on the Cermak Ramp on or before December 31, 2022" and that the "railings must comply with the Americans with Disabilities Act (ADA)." Exhibit 27, Order in *Walker v. Dart*, 20-cv-261, Dkt. 120.

**RESPONSE:** Undisputed.

71.     Timothy Tyrrell, the general manager for the department of facilities management for Cook County, was produced for a deposition on May 9, 2023. Exhibit 28, Tyrrell Dep 5:12-23, 11:5-18. Mr. Tyrrell testified that ironworkers "installed some handrails" on the Cermak ramp in the fall of 2022. Exhibit 28, Tyrrell Dep 70:6-12.

**RESPONSE:** Undisputed.

72.     Mr. Tyrrell said the project to install hand railings on each side of the Cermak ramp was completed on January 16, 2023. Exhibit 28, Tyrrell Dep 72:22- 73:16. The project was completed at this time "because of delivery and shipment issues." Exhibit 28, Tyrrell Dep 71:6-22.

**RESPONSE:** Undisputed.

73.     Carlos Martinez signed a declaration on June 1, 2024, indicating that he used crutches to move from place to place, that it was painful to move up and down the Cermak ramp, and that he requested a wheelchair to traverse the Cermak ramp on May 30, 2024, and was denied by the medical and correctional staff. Exhibit 29, Martinez Decl ¶¶ 1-4.

**RESPONSE:** Disputed. Any time that an inmate with a cane, crutch, or walker requested assistance, the correctional staff would "look into it and provide assistance." (Hollis Dep. 100:16-24; Pl.'s SOF, Ex. 17.) Further, the subject ramps deviated from the ADA Accessibility Guidelines ("Guidelines") for vertical rise by only 1.93 to 2.47 inches. Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long.

74.     Tommy Love executed a declaration in June of 2024 indicating he uses a cane to move from place to place and that moving up and down the RTU east tunnel ramp and Cermak ramp causes physical pain to his body because each ramp is steep and long. Exhibit 30, Love Decl ¶¶ 1-4.

**RESPONSE:** Defendants object that the cited declaration lacks foundation, is based on speculation, and does not support this statement of fact. Tommy Love has not been disclosed as an expert on the American With Disabilities Act ("ADA"), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on the federal statutes and regulations. Notwithstanding and without waiving said objections, this paragraph is disputed. The subject ramps deviated from the ADA Accessibility Guidelines ("Guidelines") for vertical rise by only 1.93 to 2.47 inches. Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause

a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long. Defendants also dispute that the Cermak ramp and RTU east tunnel ramp were "steep" or "long." The Cermak ramp and RTU east tunnel ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

75. **[a]** Quovotis Harris was processed into the Cook County Jail in 2019 and has an amputated right leg. Exhibit 31, Harris Decl ¶¶ 1-2. Up until September 2023, Harris used a cane and a prosthetic leg to move from place to place. *Id.* ¶¶ 2-3. **[b]** Harris regularly moved from RTU to Cermak for medical appointments and experienced pain moving up and down the ramps to and from Cermak. *Id.* ¶¶ 4-6.

**RESPONSE: [a]** Undisputed for purposes of summary judgment. **[b]** Disputed. The subject ramps deviated from the ADA Accessibility Guidelines ("Guidelines") for vertical rise by only 1.93 to 2.47 inches. Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long.

76. Kavarian Rogers was shot in the head in February of 2020 that caused a substantial impairment with the use of the right side of his body, including moving. Exhibit 32, Rogers Decl ¶ 2; Exhibit 33, Rogers Dep 50:18-51:7.

**RESPONSE:** Undisputed for purposes of summary judgment.

77. Rogers has moved up and down the RTU east tunnel ramp and Cermak ramp with a walker. Exhibit 32, Rogers Decl ¶ 4. Traversing these ramps with a walker caused Rogers to experience pain because they are both long and steep. *Id.*

**RESPONSE:** Defendants object that the cited declaration lacks foundation, is based on speculation, and does not support this statement of fact. Kavarian Rogers has not been disclosed

31

as an expert on the American With Disabilities Act ("ADA"), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on the federal statutes and regulations. Notwithstanding and without waiving said objections, this paragraph is disputed. The subject ramps deviated from the ADA Accessibility Guidelines ("Guidelines") for vertical rise by only 1.93 to 2.47 inches. Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long. Defendants also dispute that the Cermak ramp and RTU east tunnel ramp were "steep" or "long." The Cermak ramp and RTU east tunnel ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

78. Rogers has requested a cart to move up and down the Cermak ramp and RTU ramp and has been denied by the staff at the Jail. Exhibit 33, Rogers Dep 14:17-15:23.

**RESPONSE:** Defendants object that the cited exhibit does not support this statement of fact. Rogers' testimony fails to specify which individuals or entities Rogers directed his request to. (Rogers Dep. 14:17-15:23; Pl.'s Ex. 33.) Notwithstanding and without waiving said objections, this paragraph is disputed. If a cart was not available for use when an inmate requested it, it was common practice for correctional officers to provide alternative forms of assistance to inmates, such as transportation via wheelchair. (Hollis Dep. 100:16-24; Pl.'s SOF, Ex. 17.)

79. The Sheriff and County have received federal funds for the benefit of inmates at the Department of Corrections. Dkt. 76, Sheriff's Answer ¶ 7; Dkt. 75, County's Answer ¶ 7.

**RESPONSE:** Defendants object that the cited exhibit does not support this statement of fact. This statement is also disputed. Defendant Cook County admitted only that Cook County currently received federal funds, and Defendant Sheriff admitted only that Defendant Sheriff was

currently receiving federal funds and that "federal funds have been used in programming for detainees." (Cook County Ans. ¶ 7; ECF No. 75; Sheriff's Ans. ¶ 7; ECF No. 76.)

Respectfully submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

Dated: August 18, 2025

/s/ Adnan Shafi
Special Assistant State's Attorney

Monica Burkoth (burkothm@jbltd.com)
Samuel D. Branum (branums@jbltd.com)
Adnan Shafi (shafia@jbltd.com)
Nelson A. Aydelotte (aydelotten@jbltd.com)
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770