**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CUAUHTEMOC HERNANDEZ and WILLIAM MATHIS, | ) ) ) | |
| *Plaintiffs,* | ) ) | Case No. 23-cv-16970 |
| *-vs-* | ) ) | Judge Sunil R. Harjani |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) ) ) | Magistrate Judge Keri L. Holleb Hotaling |
| *Defendants.* | ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT**

Defendants, THOMAS DART, in his official capacity as Sheriff of Cook County, and

COOK COUNTY, ILLINOIS, by their attorney EILEEN O'NEILL BURKE, State's Attorney of

Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD., move

for summary judgment and respond to Plaintiffs' motion for partial summary judgment as follows:

## Table of Contents

INTRODUCTION ........................................................................................................................... 5

LEGAL STANDARDS ................................................................................................................... 6

    I.    Summary Judgment. ....................................................................................................... 6

    II.    Article III Standing Requirements. ................................................................................ 7

ARGUMENT ................................................................................................................................... 8

    I.    Plaintiffs Lack Standing Because They Failed to Meet Their Burden of Showing They Suffered an Actual Injury Due to the Alleged Non-Compliant Ramps. ....................................................................................................... 9

    II.    The Cermak and RTU Ramps Substantially Comply with the ADA, and Any Technical Non-Compliance Is *De Minimis*. ........................................................ 12

    III.    In the Alternative, a Trial Is Necessary Before the Court May Enter Judgment on the Two Alleged Issues Involving the Ramps. ........................................ 15

IV.  Plaintiffs Waived Summary Judgment on Their Claims Under the Rehabilitation Act. ...................................................................... 17

V.  Plaintiffs Have Not Shown a Denial of Access to Services, Programs, or Activities or Refusal of Reasonable Accommodations. Strict Compliance Is Not the Governing Standard Where Access Is Provided. ............................ 19

VI.  Defendants Have Not Acted with Deliberate Indifference. ........................... 22

CONCLUSION ........................................................................................... 24

## Table of Cases

U.S. Supreme Court

*Alvarez v. Smith*, 558 U.S. 87 (2009) ....................................................................8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................6

*Bennett v. Spear*, 520 U.S. 154 (1997)................................................................18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)......................................10, 11, 16

*Murthy v. Missouri*, 603 U.S. 43 (2024) ...........................................................7

*Sosna v. Iowa*, 419 U.S. 393 (1975).....................................................................11

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).....................................................7, 9

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)..........................................7, 9


Circuit Court

*Bacon v. City of Richmond*, 475 F.3d 633 (4th Cir. 2007) ............................20

*Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982) ................................................14

*Baysal v. Midvale Indem. Co.*, 78 F.4th 976 (7th Cir. 2023).........................7

*Ellison v. United States Postal Serv.*, 84 F.4th 750 (7th Cir. 2023)...............6

*Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*,
  848 F.3d 822 (7th Cir. 2017) ....................................................................17

*FEC v. Salvi*, 205 F.3d 1015 (7th Cir. 2000) ...................................................16

*Flynn v. FCA US LLC*, 39 F.4th 946 (7th Cir. 2022)...................................8, 16

*Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020) ) ...................7

*Hildreth v. Butler*, 960 F.3d 420 (7th Cir. 2020) ..........................................22

*Hotel 71 Mezz Lender Ltd. Liab. Co. v. Nat'l Ret. Fund.*,

778 F.3d 593 (7th Cir. 2015) ................................................................6, 16

*Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010 (7th Cir. 2016) ...........................10, 21

*Keep Chicago Livable v. City of Chicago*, 913 F.3d 618 (7th Cir. 2019) .......................................9

*Kirola v. City and County of San Francisco* 860 F.3d 1164 (9th Cir. 2017)..................................13

*Kochert v. Greater Lafayette Health Servs.*, 463 F.3d 710 (7th Cir. 2006)....................................7

*Lacy v. Cook County*, 897 F.3d 847 (7th Cir. 2018)............................................................8, 22, 23

*Lange v. City of Oconto*, 28 F.4th 825, 841 (7th Cir. 2022)........................................................22

*Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 10600 (7th Cir. 2020)..........................................9

*Mack v. Resurgent Capital Servs., L.P.*, 70 F.4th 395 (7th Cir. 2023)............................................7

*Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016) ................................15, 16

*Miller v. Gonzalez*, 761 F.3d 822 (7th Cir. 2014)..........................................................................6

*Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*,

708 F.3d 921 (7th Cir. 2013) ...................................................................................................8

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,

2 F.4th 1002 (7th Cir. 2021).....................................................................................................7

*Schroeder v. Chicago*, 927 F.2d 957 (7th Cir. 1991)...................................................................18

*Shaw v. Kemper*, 52 F.4th 331 (7th Cir. 2022) ...........................................................................22

*Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020) ................................9, 10, 11

*Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757 (7th Cir. 2021)........................................6

*Sweeney v. Raoul*, 990 F.3d 555 (7th Cir. 2021) ........................................................................7

*U.S. Venture, Inc. v. United States*, 2 F.4th 1034 (7th Cir. 2021)..................................................18

*Wagoner v. Lemmon*, 778 F.3d 586 (7th Cir. 2015) ...............................................................8, 19

*Walters v. Edgar,* 163 F.3d 430 (7th Cir. 1998)..........................................................................10

*Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266 (7th Cir. 1998)............................17


District Court

*Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357 (S.D. Fla. 2001) .....................14

*Amerigas Propane, L.P. v. BP Am., Inc.*, 691 F. Supp. 2d 844 (N.D. Ill. 2010)............................15

*Bacal v. SEPTA*, No. 94-6497, 1998 WL 324907, 1998 U.S. Dist. LEXIS 8700

(E.D. Pa. May 28, 1998) .........................................................................................................12

*Brewer v. Wis. Bd. of Bar Exam'rs*, No. 04-C-0694, 2006 WL 752922,

2006 U.S. Dist. LEXIS 23962 (E.D. Wis. Mar. 22, 2006)................................18

*Clark v. Cook Cty. Sheriff's Office*, No. 19 C 7131, 2025 U.S. Dist. LEXIS 156499

(N.D. Ill. Aug. 13, 2025).................................................................................22

*Clemons v. Dart*, 168 F. Supp. 3d 1060 (N.D. Ill. 2016) .............................8, 21

*Crockwell v. Dart*, 2016 WL 4493456 (N.D. Ill. Aug. 26, 2016)......................21

*Deboard v. Solid Rock Props., LLC*, No. 1:22-CV-435-HAB, 2024 WL 1344761, 2024

U.S. Dist. LEXIS 57690 (N.D. Ind. Mar. 29, 2024) ......................................10

*Gateway Sys. v. Chesapeake Sys. Sols.*, 836 F. Supp. 2d 625 (N.D. Ill. 2011) .............................19

*Gilbert v. TrueAccord Corp.*, 608 F. Supp. 3d 656 (N.D. Ill. 2022) ..................15

*G.P. v. Claypool*, 466 F. Supp. 3d 875 (N.D. Ill. 2020) ...................................21

*Harper v. Dart*, No. 14 C 01237, 2015 WL 6407577, 2015 U.S. Dist. LEXIS 142871

(N.D. Ill. Oct. 21, 2015)..................................................................................10

*Holmes v. Godinez*, 311 F.R.D. 177 (N.D. Ill. 2015) .......................................19

*Horton v. City of Chicago*, No. 13-CV-6865, 2018 WL 4699790,

2018 U.S. Dist. LEXIS 168878 (N.D. Ill. Sept. 30, 2018) .............................17

*Indep. Living Res. v. Or. Arena Corp.*, 1 F. Supp. 2d 1124 (D. Or. 1998)......................14

*Johnson v. United Airlines, Inc.*, No. 17 C 08858, 2019 WL 1239723,

2019 U.S. Dist. LEXIS 43484 (N.D. Ill. Mar. 18, 2019) ...............................16

*Jones v. Estrada*, No. 2:21-cv-03417-ODW (ASx), 2022 WL 3092429,

2022 U.S. Dist. LEXIS 33988 (C.D. Cal. Feb. 7, 2022).................................20

*Kirola v. City and County of San Francisco* 2024 WL 1354414 (N.D. Cal. Mar. 28,2024)..........13

*Lonberg v. City of Riverside*, No. 97-237, 2000 WL 34602547,

2000 U.S. Dist. LEXIS 22758 (C.D. Cal. June 12, 2000) ..............................12

*Micek v. City of Chicago*, No. 98 C 6757, 1999 U.S. Dist. LEXIS 16263

(N.D. Ill. Sep. 30, 1999)..................................................................................18

*Spence v. Dart*, 2020 WL 4677053 (N.D. Ill. 2020) .......................................21

*Thomas v. Dart*, No. 17 C 4233, 2018 WL 4016315, 2018 U.S. Dist. LEXIS 142762

(N.D. Ill. Aug. 22, 2018)...............................................................................8, 19

*Winfrey v. City of Chicago*, 957 F. Supp. 1014 (N.D. Ill. 1997) ......................18

4

## INTRODUCTION

Plaintiffs seek partial summary judgment on the two Rule 23(b)(3) issue classes, arguing that the Cermak ramp and the Residential Treatment Unit (RTU) east tunnel ramp violate the structural standards of the Americans with Disabilities Act (ADA) and the Rehabilitation Act. Plaintiffs ask the Court to decide an abstract question of law (whether the Cermak and RTU ramps comply with the accessibility standards) when they have presented no evidence that they suffered a concrete injury from the alleged non-compliant ramps. Without a concrete injury to establish Article III standing, this Court does not have jurisdiction to decide the question of whether the ramps comply with the accessibility standards. Even if the ramps do not strictly comply with the regulatory text, this Court does not have jurisdiction to enter judgment because Plaintiffs have not presented any evidence that they had standing to bring this claim.

Assuming the Court finds that Plaintiffs have established standing, the Cermak and RTU ramps substantially comply with the applicable ADA structural standards. With respect to the Cermak ramp, which spans approximately 40 feet in length, Plaintiffs identify only minor deviations—namely, a slight excess in rise and handrails that fall short of the twelve-inch extension requirement. However, these handrail limitations result from the unavailability of anti-ligature options that meet both ADA requirements and the unique safety needs of a correctional facility.

Similarly, the RTU ramp includes two sloped floor runs separated by an intermediate landing, has only minimal alleged noncompliance, including a slight deviation in rise, a half-inch variance in the lower handrail height, and handrails that do not extend twelve inches beyond the ramp. Cook County has made good faith efforts to meet the structural requirements, and any deviations are technical rather than substantive. In fact, installing extended handrails in this setting would be technically infeasible. (Defs' SOAF ¶¶ 14–15.)

Importantly, departures from the ADA's regulations are permissible when individuals receive equivalent access. The named Plaintiffs and class members received equivalent access because any deviations are *de minimis* and do not create any barrier to access. Further, Plaintiffs and class members are provided reasonable accommodations to navigate the ramps and have not been denied access to any service, program, or activity. These undisputed facts underscore that Plaintiffs have failed to demonstrate a statutory violation. Defendants' motion for summary judgment should be granted, and Plaintiffs' motion for partial summary judgment should be denied.

## LEGAL STANDARDS

### I. Summary Judgment.

Summary judgment "is the proverbial 'put up or shut up' moment in a lawsuit, when a party must reveal what evidence it has to convince a jury." *Ellison v. United States Postal Serv.*, 84 F.4th 750, 759 (7th Cir. 2023). In cases where a "movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender Ltd. Liab. Co. v. Nat'l Ret. Fund.*, 778 F.3d 593, 601 (7th Cir. 2015).

Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Courts "must therefore construe the record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true." *Id.*; *see also Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021) ("[N]o matter how tempting it might be on

6

summary judgment to be distracted by the sparkle of seemingly compelling facts, our assigned task is to take the facts in the light most favorable to the non-moving party . . . .").

## II.      Article III Standing Requirements.

"If a plaintiff lacks standing, a federal court lacks jurisdiction." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020). A challenge to the court's jurisdiction may not be waived, as courts have an "independent obligation to examine [its] own jurisdiction, and standing 'is perhaps the most important of the jurisdictional doctrines.'" *Kochert v. Greater Lafayette Health Servs.*, 463 F.3d 710, 714 (7th Cir. 2006).

Under the doctrine of standing, a plaintiff must have "(1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021); *see also Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 978 (7th Cir. 2023) (stating that the "concrete injury" must have been "caused by the asserted wrong"). "[S]tanding is not dispensed in gross." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Instead, "'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion*, 594 U.S. at 431).

"A bare procedural violation, divorced from any concrete harm, would not satisfy the injury-in-fact requirement for Article III standing." *Mack v. Resurgent Capital Servs., L.P.*, 70 F.4th 395, 403 (7th Cir. 2023). Under Article III, federal courts cannot answer legal questions, however important, "before those questions have ripened into actual controversies between someone who has experienced (or imminently faces) an injury and another whose action or inaction caused (or risks causing) that injury." *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021). "[F]ederal courts are prohibited from rendering advisory opinions; they cannot divine on 'abstract dispute[s] about

the law.'" *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921, 926 (7th Cir. 2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)).

## ARGUMENT

Plaintiffs move for partial summary judgment on the issue that the Cermak and RTU ramps are not compliant with the ADA structural standards. (Pl.'s Memo., ECF No. 123.) Plaintiffs' only request is for the Court to find that the Cermak and RTU ramps violated the ADA structural standards. (*Id.*)

By moving for only partial summary judgment, Plaintiffs concede a trial is necessary to resolve this case in their favor. Plaintiffs do not move for summary judgment on any element of their claims, including whether: (1) they are qualified individuals with a disability, (2) a public entity denied them the benefits of its services, programs, or activities or otherwise subjected them to discrimination, and (3) the denial or discrimination occurred because of their disability. *Thomas v. Dart*, No. 17 C 4233, 2018 WL 4016315, 2018 U.S. Dist. LEXIS 142762, at *8 (N.D. Ill. Aug. 22, 2018) (citing *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015)).

Plaintiffs also do not move for summary judgment on the element of "intentional discrimination," which is necessary for Plaintiffs to establish in order to receive compensatory damages. *See Lacy v. Cook County*, 897 F.3d 847, 856–57 (7th Cir. 2018) ("[I]n order to collect damages," a plaintiff must prove "the intentional nature of the defendants' discrimination."); *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1065 (N.D. Ill. 2016) ("[T]o recover compensatory damages under either the ADA or the Rehabilitation Act the plaintiff must prove that the [defendant's] discrimination was intentional.").

Before the Court can rule on the discrete issue of whether the Cermak and RTU ramps comply with the accessibility standards, the Court must first "assure itself of its jurisdiction." *Flynn*

*v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022). "To invoke the jurisdiction of a federal court, a plaintiff must demonstrate that he has standing to sue, a requirement 'rooted in the traditional understanding of a case or controversy.'" *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1547). If the Court does not have jurisdiction over this case because Plaintiffs lack standing, which they do lack standing, then this Court does not have jurisdiction to decide *any* issue, including the discrete class issue of whether the ramps comply with the ADA.

## I.      Plaintiffs Lack Standing Because They Failed to Meet Their Burden of Showing They Suffered an Actual Injury Due to the Alleged Non-Compliant Ramps.

As the parties invoking federal jurisdiction, Plaintiffs bear the burden of demonstrating they have standing to sue to remedy an alleged violation. *See TransUnion*, 594 U.S. at 430–31 ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing."); *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 623 (7th Cir. 2019) ("The burden of making this showing—of demonstrating the requisite injury to invoke federal jurisdiction—rests with the plaintiff."). Plaintiffs must meet this burden with evidence, not allegations. *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 284–85 (7th Cir. 2020).

Plaintiffs have failed to meet their burden because they have not submitted any evidence that they suffered a concrete and particularized injury that is traceable to the *alleged violations*, *i.e.*, non-compliant Cermak and RTU ramps, as opposed to traveling *any long distance*, even on level ground. As such, this Court lacks jurisdiction to decide the issue presented in Plaintiffs' motion for partial summary judgment, and Defendants are entitled to summary judgment.

Before the Court may address the merits of Plaintiff's claims under the ADA and Rehabilitation Act, it must first determine whether Article III standing exists. To establish standing, a plaintiff must demonstrate: (1) an injury in fact that is concrete, particularized, and actual or

imminent; (2) a causal connection between the injury and the challenged conduct; and (3) that the injury would likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

To establish standing at the summary judgment stage of litigation, a plaintiff must "set forth" by affidavit or other evidence "specific facts" demonstrating he has suffered "a concrete and particularized injury that is both fairly traceable to the challenged conduct and likely redressable by a judicial decision." *Spuhler*, 983 F.3d at 284 (quoting *Lujan*, 504 U.S. at 561). "As the litigation progresses, the way in which the plaintiff demonstrates standing changes." *Id.* at 285. Allegations may be sufficient at the pleadings stage, but *evidence* is required at summary judgment. *See id.* At summary judgment, a "plaintiff must offer evidence showing *actual harm*" to establish standing. *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2016) (emphasis added).

Plaintiffs have not met this burden. They offer no evidence that the *design* of the Cermak or RTU east tunnel ramps (as opposed to their preexisting conditions) caused them any concrete, particularized injury. Plaintiff Hernandez testified that walking on the ramps merely "irritated" his leg, back, and shoulder, not that it caused a distinct injury or denied him access to any facility or service. (Defs' SOAF ¶¶ 30–35.) Plaintiff Mathis admitted that the Cermak ramp never actually stopped or prevented him from accessing services or attending appointments. (Defs' SOAF ¶¶ 36–39.) An "irritation" of a preexisting condition is not an injury, and neither is difficulty being able to navigate the ramps. *See, e.g.*, *Deboard v. Solid Rock Props., LLC*, No. 1:22-CV-435-HAB, 2024 WL 1344761, 2024 U.S. Dist. LEXIS 57690, at *4 (N.D. Ind. Mar. 29, 2024) (holding that "physical difficulty" is not a concrete injury that would establish Article III standing); *Harper v. Dart*, No. 14 C 01237, 2015 WL 6407577, 2015 U.S. Dist. LEXIS 142871, at *14 (N.D. Ill. Oct. 21, 2015) (holding that plaintiff's allegation that he had "great difficulty" showering, toileting, and

10

getting into bed was insufficient to withstand a motion to dismiss because the plaintiff's allegations were "just conclusions without facts, which are not enough").

Even assuming Plaintiffs experienced some difficulty navigating the ramps, they have not shown that such difficulty was caused by the ramp design as opposed to unrelated medical conditions or a lack of requested accommodations. Traceability requires more than a generalized complaint about facility design—it requires a causal link between the alleged barrier and a denied benefit or program. That link is missing here. *See Lujan*, 504 U.S. at 560 (stating that "traceability" requires "a causal connection between the injury and the conduct complained of"). Remember, the alleged problems with the Cermak and RTU ramps are slight excesses in rise that are negligible when compared to the ramps' horizontal runs, measuring over 40 feet in length, and slight deviations in handrail and landing requirements. (Defs' SOAF ¶¶ 11–12, 22–23.) Plaintiffs provide no evidence of any injury caused by those deviations as opposed to their preexisting conditions and the same journey over level ground. (*Id.* ¶¶ 29–39.)

Named plaintiffs must have standing to sue "at the time the complaint is filed." *Sosna v. Iowa*, 419 U.S. 393, 402 (1975). If the plaintiffs "never had standing" to bring a lawsuit, "federal jurisdiction never attached," regardless of whether a class action was later certified. *Walters v. Edgar,* 163 F.3d 430, 432 (7th Cir. 1998). Plaintiffs have failed to present any evidence establishing they suffered an Article III injury or have standing to bring this claim. Plaintiffs have not presented evidence that they suffered "a concrete and particularized injury," *see Spuhler*, 983 F.3d at 284, that is traceable to the slight deviations of the Cermak and RTU ramps as opposed to just walking long distances. "The standard for demonstrating the jurisdictional facts at summary judgment is whether the plaintiffs have supplied evidence of 'specific facts' that, taken as true, show each element of standing." *Id.* at 286 (quoting *Lujan*, 504 U.S. at 561). Plaintiffs have completely failed

11

to supply the required evidence. As such, Plaintiffs lack standing to bring this claim. Plaintiff's motion for partial summary judgment must be denied, and Defendants' motion must be granted.

## II. The Cermak and RTU Ramps Substantially Comply with the ADA, and Any Technical Non-Compliance Is *De Minimis*.

The Court certified two issue classes under Rule 23(c)(4) to resolve whether the Cermak and RTU ramps "complied with the structural standards required by the ADA and Rehabilitation Act." (Class Cert. Order at 6, ECF No. 72.) These issues can only be resolved in favor of Defendants. First, the Cermak and RTU ramps are in substantial compliance with the ADA Accessibility Guidelines ("Guidelines"). Second, any technical noncompliance is *de minimis*. Third, the *de minimis* deviations from the Guidelines are permitted because cane, crutch, and walker users have equivalent access to the services, programs, and activities that are accessed by traversing the Cermak and RTU ramps. Fourth, having handrails that extend past each end of the ramp is infeasible because that type of fitting is not available for anti-ligature handrails, which are a necessary safety precaution at the CCDOC.

To comply with the law, Cook County is not required to alter structures that are in substantial compliance with the ADA. As one court stated, "precise, technical compliance" with the Guidelines is "[not] required for a municipality to avoid being found in violation of the ADA." *Lonberg v. City of Riverside*, No. 97-237, 2000 WL 34602547, 2000 U.S. Dist. LEXIS 22758, at *30 (C.D. Cal. June 12, 2000). "Indeed, other Courts have expressly held that 'substantial compliance' with the ADA regulations is good enough." *Id.* (citing cases); *see also Bacal v. SEPTA*, No. 94-6497, 1998 WL 324907, 1998 U.S. Dist. LEXIS 8700, at *38 n.28 (E.D. Pa. May 28, 1998) (pointing out the "plaintiff class cites to no case law in support of the proposition that substantial compliance . . . is not a recognizable defense" to technical ADA violations).

Indeed, it is important to note that the Cermak ramp's original design plans called for the rise to be a compliant 30 inches, and a 2022 survey using a laser level confirmed that the ramp was compliant. (Defs' SOAF ¶¶ 4–5.) Only when Cook County proactively hired an outside contractor, using advanced LIDAR technology that Cook County does not possess, was it discovered that the Cermak and RTU ramps were minimally out of compliance. (*Id.* ¶¶ 11–12, 22–23.) The Cermak ramp deviated by only 2.4 inches of elevation over a 43.64-foot (523.68 inches) run (Cermak ramp). (*Id.* ¶¶ 11–12.) The RTU ramp deviated by only 1.93 inches over the span of a 25.95-foot (311.4 inches) horizontal run, resulting in a slope deviation less than 1% (0.64%) for the upper ramp and deviated by only 2.47 inches over the span of a 30.4-foot (364.8 inches) horizontal run, resulting in a slope deviation of only 3.5% of the overall run for the lower ramp. (*Id.* ¶¶ 22–23.) This case involves a class of detainees prescribed canes, crutches, or walkers, not a class of wheelchair users. Minor slope deviations or dimensional variances at the landings present no barrier to meaningful access. (*Id.* ¶¶ 22.) The record is devoid of any evidence that these conditions caused injury or denied Plaintiffs' or class members' access to medical appointments or services. (*Id.* ¶¶ 29–39.) Likewise, the handrails were only technically out of compliance, a *de minimis* deviation that does not alter accessibility or the ability to navigate the ramps. (*Id.* ¶¶ 13–15, 22.)

Plaintiffs' reliance on *Kirola v. City and County of San Francisco* is misplaced. (Pl.'s Memo. at 10.) In *Kirola*, the Ninth Circuit addressed structural violations that categorically prevented disabled individuals from using the facilities. 860 F.3d 1164, 1178 (9th Cir. 2017); 2024 WL 1354414, at *2–3 (N.D. Cal. Mar. 28, 2024). Those conditions directly denied access, making strict adherence to the Guidelines determinative. By contrast, the *de minimis* slope deviation of the Cermak and RTU ramps has not been shown to preclude detainees' use of the facility. As Plaintiff

Hernandez admitted, he was never prevented from reaching an appointment or service, even when he needed to pause and rest (Defs' SOAF ¶¶ 30–35), and Plaintiff Mathis admitted that he was never prevented from accessing services or attending appointments. (*Id.* ¶¶ 36–39.) Thus, unlike *Kirola*, where structural defects themselves barred access, Plaintiffs here have not demonstrated that the ramps' design deprived them of meaningful access, rendering *Kirola* inapplicable.

Under the doctrine of "de minimis non curat lex," an actionable claim "requires injury." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). The rise of the Cermak and RTU ramps are only slightly over the maximum rise of 30 inches set forth in the Guidelines. (Defs' SOAF ¶¶ 11, 23.) All Plaintiffs can point towards is a slightly higher elevation of *inches* when traversing ramps that are more than *40 feet* in length. This negligible difference is *de minimis*, and Plaintiffs cannot point to any injury caused by those *de minimis* inches as opposed to their preexisting conditions and the 40 feet of the ramp itself. *See Bart*, 677 F.2d at 625; *see also Indep. Living Res. v. Or. Arena Corp.*, 1 F. Supp. 2d 1124, 1151 (D. Or. 1998) (holding that "the [structural] violations [were] mostly *de minimis* and inadvertent, and the costs (and other problems) associated with remedying them greatly outweigh the potential benefit to plaintiffs"); *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1369–70 (S.D. Fla. 2001) (holding that "injunctive relief would not be appropriate for *de minimis* violations that 'do not materially impair the use of an area for its intended purpose, . . . [or] pose any apparent danger to persons with disabilities'" (citation omitted)).

Relatedly, Plaintiffs have not submitted any evidence that not having handrails extend twelve inches past each end of the ramp caused Plaintiffs or class members any harm. Again, remember that the Cermak and RTU ramps do have handrails that extend the length of the ramps, but to have handrails extend past each end of the ramp requires a special type of fitting which "is

14

not available for anti-ligature handrails." (Defs' SOAF ¶ 14.) In a jail setting, anti-ligature handrails are a necessary safety precaution. (*Id.* ¶ 15.) Conforming to the handrail requirement is technically infeasible, and Defendants are entitled to summary judgment on any issue related to handrails. *See* 28 C.F.R. § 35.151(b)(1).

Because the Cermak and RTU ramps substantially comply with the Guidelines and any departure is *de minimis* or due to technical infeasibility, Defendants are entitled to summary judgment, and Plaintiffs are not entitled to partial summary judgment.

## III. In the Alternative, a Trial Is Necessary Before the Court May Enter Judgment on the Two Alleged Issues Involving the Ramps.

Defendants are entitled to summary judgment because Plaintiffs have not suffered actual, concrete injuries, any deviation is *de minimis*, Defendants substantially complied with the Guidelines, and Defendants intended to comply with the Guidelines. However, even if the Court does not grant summary judgment in Defendants' favor, Plaintiffs are not entitled to partial summary judgment.

This Court does not have jurisdiction to enter partial summary judgment in favor of Plaintiffs *on any issue* if it does not have jurisdiction. *See Gilbert v. TrueAccord Corp.*, 608 F. Supp. 3d 656, 663 (N.D. Ill. 2022) (stating that a court "must not address the merits" of a case if the plaintiff lacks standing); *Amerigas Propane, L.P. v. BP Am., Inc.*, 691 F. Supp. 2d 844, 860 (N.D. Ill. 2010) (denying summary judgment to plaintiffs because there was a dispute of fact regarding whether the plaintiffs had standing to bring their claim).

"The requirement that litigants possess standing ensures 'that courts do not decide abstract principles of law but rather concrete cases and controversies.'" *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (quoting *Sierra Club v. Marita*, 46 F.3d 606, 613 (7th Cir. 1995)). A plaintiff's standing is a "threshold question in every federal case" because if the plaintiff

does not have standing, then "the court is without authority to consider the merits of the action." *Id.* (citation omitted).

If a court does "not have subject-matter jurisdiction over the matter due to a lack of Article III standing," any judgment entered would be void. *Johnson v. United Airlines, Inc.*, No. 17 C 08858, 2019 WL 1239723, 2019 U.S. Dist. LEXIS 43484, at *6 (N.D. Ill. Mar. 18, 2019); *see also FEC v. Salvi*, 205 F.3d 1015, 1019 (7th Cir. 2000) (stating that a judgment is void "where it is entered by the court without jurisdiction"); *Meyers,* 843 F.3d 724, 725 (7th Cir. 2016) (concluding that the plaintiff lacked Article III standing, vacating judgment of the district court, and remanding with instructions to dismiss for lack of jurisdiction). If facts regarding standing are controverted on summary judgment, then the case must proceed to trial where the plaintiffs must present evidence that proves injury. *Lujan*, 504 U.S. 555, 561 (1992) (citation omitted).

Defendants are entitled to summary judgment because Plaintiffs have not presented evidence to withstand Defendants' factual challenge to standing. *See Flynn,* 39 F.4th 946, 953–54 (7th Cir. 2022) (stating that defendants have "every right" to seek "a standing ruling as a factual matter after the close of discovery"). Moreover, this Court cannot rule, as a factual matter, that Plaintiffs *did suffer* an Article III injury for two reasons. First, in their motion for partial summary judgment, Plaintiffs have not asked the Court to find that no dispute of fact exists regarding standing. Second, even if the Court finds that Plaintiffs have moved on the issue of standing, this Court must draw all reasonable inferences in favor of *Defendants* as the nonmoving party on this issue from the perspective of Plaintiffs' motion. *See Hotel 71 Mezz Lender Ltd. Liab. Co.,* 778 F.3d 593, 603 (7th Cir. 2015) (stating that cross-motions for summary judgment are considered separately, and a party is entitled to favorable factual inferences when it falls on the nonmoving side of an issue).

For these reasons, even if the Court finds a factual dispute as to whether the negligible variance caused any injury to Plaintiffs or class members, this dispute may only be resolved by a jury. This Court may not enter judgment in favor of Plaintiffs on any issue involving the ramps until any factual dispute regarding standing and this Court's jurisdiction is resolved by a jury.

## IV.    Plaintiffs Waived Summary Judgment on Their Claims Under the Rehabilitation Act.

Plaintiffs' motion for partial summary judgment focuses exclusively on the ADA. Plaintiffs do not develop any argument addressing the Rehabilitation Act, the Uniform Federal Accessibility Standards (UFAS), or why they are entitled to summary judgment on this claim. (*See generally* Pl.'s Memo.) Therefore, Plaintiffs have waived summary judgment on their claims under the Rehabilitation Act. *See Horton v. City of Chicago*, No. 13-CV-6865, 2018 WL 4699790, 2018 U.S. Dist. LEXIS 168878, at *13 n.5 (N.D. Ill. Sept. 30, 2018) (stating that a party waives an argument "by failing to support it with any discussion of the applicable statute and case law").

The only place the Rehabilitation Act and UFAS are mentioned is in a single footnote. (Pl.'s Memo. at 2 n.1.) There, Plaintiffs simply state that the Rehabilitation Act's requirements are "essentially" the same as the ADA. (*Id.*) Plaintiffs do not develop any argument supporting their conclusory statement or their claims under the Rehabilitation Act. Because Plaintiffs mention the Rehabilitation Act only in passing in a single footnote, they have waived summary judgment under this law. *See Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 848 F.3d 822, 829 (7th Cir. 2017) (stating that a party may waive an argument "by presenting it only in an undeveloped footnote"); *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 274 (7th Cir. 1998) (holding that the plaintiffs waived an argument that "appeared in their brief in a solitary footnote").

The Rehabilitation Act is different from the ADA because it requires that the "program or activity" receive federal financial assistance. *Schroeder v. Chicago*, 927 F.2d 957, 962 (7th Cir.

1991). The definition of "program or activity" is "all of the operations of . . . *a department* . . . of a local government." 29 U.S.C. § 794 (emphasis added). It is *not* all the operations of a *local government*. *Id.* It is limited to the department within the local government. *See Schroeder*, 927 F.2d at 962; *Winfrey v. City of Chicago*, 957 F. Supp. 1014, 1024 (N.D. Ill. 1997).

Evidence that a local government as a whole received federal financial assistance is insufficient to establish liability under the Rehabilitation Act. *Id.* The definition of "program or activity" *excludes* the Sheriff's Office and Cook County because these entities *are* "local government[s]," not a "department, agency, special purpose district, or other instrumentality *of a* . . . local government." *Micek v. City of Chicago*, No. 98 C 6757, 1999 U.S. Dist. LEXIS 16263, at \*6–7 (N.D. Ill. Sep. 30, 1999).

"It is the cardinal principle of statutory construction that it is [a court's] duty to give effect, if possible, to every clause and word of a statute." *U.S. Venture, Inc. v. United States*, 2 F.4th 1034, 1042 (7th Cir. 2021) (quoting *Bennett v. Spear*, 520 U.S. 154, 173 (1997)). Congress could have defined "program or activity" to include all the operations of a local government, but it did not. It defined "program or activity" to include only the operations of the department within the local government that receives federal financial assistance.

Every program of the Sheriff's Office and Cook County "is not regulated because *some other program or division* receive[d] financial assistance." *Winfrey*, 957 F. Supp. at 1024 (emphasis added). A Rehabilitation Act claim against Defendants "is only viable if the *department, agency, or instrumentality* whose activities are at issue receives federal funds." *Brewer v. Wis. Bd. of Bar Exam'rs*, No. 04-C-0694, 2006 WL 752922, 2006 U.S. Dist. LEXIS 23962, at \*12 (E.D. Wis. Mar. 22, 2006) (emphasis added).

Plaintiffs have not presented *any evidence* that any department, agency, or instrumentality of Defendants received federal funds when the ramps were constructed. Plaintiffs cite a single statement of fact alleging some unknown departments of Defendants received federal funds at some unspecified point in time. Plaintiffs do not present evidence that the department overseeing construction of the ramps received federal funding when the ramps were constructed. Plaintiff's single statement of fact "is simply too slim a reed" for this Court to rule, as a matter of law, that Defendants are liable under the Rehabilitation Act. *See Gateway Sys. v. Chesapeake Sys. Sols.*, 836 F. Supp. 2d 625, 631 (N.D. Ill. 2011).

## V.     Plaintiffs Have Not Shown a Denial of Access to Services, Programs, or Activities or Refusal of Reasonable Accommodations. Strict Compliance Is Not the Governing Standard Where Access Is Provided.

In order to succeed on an ADA claim, Plaintiffs must show: (1) they are qualified individuals with a disability, (2) a public entity denied them the benefits of its services, programs, or activities or otherwise subjected them to discrimination, and (3) the denial or discrimination occurred because of their disability. *Thomas*, 2018 WL 4016315, 2018 U.S. Dist. LEXIS 142762, at *8 (citing *Wagoner*, 778 F.3d at 592). As such, "an ADA violation exists only if the defendant's action or inaction prevents the plaintiff from participating in a program, activity or service." *Holmes v. Godinez*, 311 F.R.D. 177, 226 (N.D. Ill. 2015).

Plaintiffs received reasonable accommodations to ensure they are able to access services, programs, and activities at the Department of Corrections. (Defs' SOAF ¶¶ 29–39.) Plaintiffs do not have evidence that they missed medical appointments, were unable to participate in housing opportunities, or were excluded from activities. (*Id*.) Plaintiffs successfully navigated the ramps with accommodations, including use of a mobilized cart and a wheelchair. (*Id.* ¶¶ 32–34, 39.) There are signs posted at the end of the ramps that provide notice for detainees with cane, crutches or walkers that they can ask for help. (*Id.* ¶ 28.) Pursuant to policy and training, officers will

accommodate individuals with disabilities. (*Id.* ¶ 24–27.) There is no dispute that Plaintiffs and class members are provided reasonable accommodations, and Defendants are entitled to summary judgment.

Plaintiffs' motion rests on the mistaken assumption that any departure from the Guidelines automatically establishes a statutory violation. That is not the law. Neither the ADA nor the Rehabilitation Act is a strict liability statute. They "cannot be read to impose strict liability on public entities that neither caused plaintiffs to be excluded nor discriminated against them." *Bacon v. City of Richmond*, 475 F.3d 633, 639–40 (4th Cir. 2007); *see also Jones v. Estrada*, No. 2:21-cv-03417-ODW (ASx), 2022 WL 3092429, 2022 U.S. Dist. LEXIS 33988, at *3 (C.D. Cal. Feb. 7, 2022) (stating that "the Court is aware of no case law, either in the Ninth Circuit or elsewhere, asserting a strict liability standard for [defendants] under the ADA").

To the contrary, the regulations for both statutes have "equivalent facilitation" provisions. Thus, Cook County may comply with the statutes even if the Guidelines are technically not met. Under the ADA's regulations, "[d]epartures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided." 28 C.F.R. § 35.151(c)(1), (c)(2). Likewise, the Rehabilitation Act's regulations confirm that while compliance with the Guidelines is sufficient, it is not necessary if other measures achieve the same result. 28 C.F.R. § 42.522(b)(1). This standard recognizes that the ADA's purpose is to ensure meaningful access, not to require perfect conformity to a particular technical specification when other measures achieve the same functional result.

Public entities are not required to make all facilities structurally accessible if alternative methods can ensure program accessibility. *G.P. v. Claypool*, 466 F. Supp. 3d 875, 885–86 (N.D. Ill. 2020). These methods can include relocating services or providing staff assistance. *Id.* The

Seventh Circuit has also made clear that, at summary judgment, a plaintiff must show actual harm—mere allegations of a technical deviation are not enough. *Hummel*, 817 F.3d at 1019.

Plaintiffs misapply "equivalent facilitation" precedent. In cases like *Clemons*, 168 F. Supp. 3d 1060 (N.D. Ill. 2016), *Crockwell v. Dart*, 2016 WL 4493456 (N.D. Ill. Aug. 26, 2016), and *Spence v. Dart*, 2020 WL 4677053 (N.D. Ill. 2020), the courts considered whether alternatives could provide equivalent access only after the plaintiff had shown a barrier that actually impaired facility use. Plaintiffs here have not made that showing. Without proof that the ramps imposed a barrier to Plaintiffs' access to facility services, programs, or activities or otherwise denied them meaningful access, Plaintiffs cannot show that they were denied equivalent access.

To the contrary, the record shows that Plaintiffs received equivalent access. The record contains no evidence that Plaintiffs ever requested and were denied assistance in traversing the ramps in circumstances where they could not otherwise access the facility. (Defs' SOAF ¶¶ 29–39.) Hernandez testified that the ramps "irritated" his leg, back, and shoulder, but admitted he was never prevented from attending appointments. (*Id.* ¶¶ 30–35.) Mathis likewise acknowledged the Cermak ramp never barred him from medical appointments. (*Id.* ¶¶ 36–39.) Plaintiffs have no evidence that the *design* of the ramps and its *de minimis* deviations caused a barrier to access. Plaintiffs' access to services, programs, and activities were the same (equivalent) notwithstanding any negligible difference of *inches* on ramps more than *40 feet* in length; Plaintiffs present no evidence that any irritation they experienced was due to the noncompliant inches as opposed to the compliant 40 feet.

The undisputed evidence shows Defendants provided functional alternatives—staff assistance, wheelchairs, and carts—to ensure access. (*Id.* ¶¶ 29–39.) Plaintiffs cite no instance

where such help was requested and denied. Without proof that any structural deviation caused a denial of access, Plaintiffs' claims fail.

In short, both the ADA's regulations and Seventh Circuit precedent reject Plaintiffs' theory. Absolute structural compliance is not required where equivalent facilitation provides the same practical access, and Plaintiffs received equivalent access.

## VI. Defendants Have Not Acted with Deliberate Indifference.

To recover damages on their claims under the disability statutes, Plaintiffs must produce evidence of "intentional conduct (and not mere negligence) by a named defendant." *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022). This means Plaintiffs must prove that Defendants acted with deliberate indifference, which requires a showing Defendants "*knew* that harm to a federally protected right was substantially likely and . . . *failed* to act on that likelihood.'" *Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020) (emphasis in original) (quoting *Lacy*, 897 F.3d at 862). In other words, Plaintiffs must prove "indifference that is a 'deliberate choice'" by Defendants. *Lange v. City of Oconto*, 28 F.4th 825, 841 (7th Cir. 2022) (quoting *Lacy*, 897 F.3d at 862).

Plaintiffs do not have any evidence that Defendants knew that Plaintiffs' or any class members' rights would be violated. Indeed, the Cermak ramp's original design plans called for the rise to be a compliant 30 inches, and a 2022 survey using a laser level confirmed that the ramp was compliant. (Defs' SOAF ¶¶ 4–5.) Only when Cook County proactively hired an outside contractor, using advanced LIDAR technology that Cook County does not possess, was it discovered that the Cermak and RTU ramps were minimally out of compliance. (Defs' SOAF ¶¶ 11–12, 22–23.) As discussed above, the handrails were noncompliant because compliant handrails created a risk of strangulation. *See, e.g.*, *Clark v. Cook Cty. Sheriff's Office*, No. 19 C 7131, 2025 U.S. Dist. LEXIS 156499, at *13–14 (N.D. Ill. Aug. 13, 2025) ("Far from deliberate indifference, the evidence shows that the Sheriff's Office was aware of the issue, researched the issue, tested different wheelchairs,

considered its legal obligations with regard to detainees, and reached a well-thought-out conclusion that balanced the risks and benefits of using wheelchairs with removable armrests. Clark may disagree with that conclusion. But the Sheriff's Office was not deliberately indifferent.").

Plaintiffs may point to the two GEC reports, but these reports do not establish the requisite knowledge. First, the report on the RTU ramp was authored on April 1, 2024, *after* Plaintiffs filed their lawsuits. (Defs' SOAF ¶ 20.) The report on the Cermak ramp was authored on December 6, 2023, which was two weeks before Plaintiff Hernandez filed this lawsuit. (*Id.* ¶ 9.) Second, the two reports set forth only minor deviations that would not create any cognizable difference in mobility. (*Id.* ¶¶ 11–12, 22–23.) The two reports do not establish that "harm to a federally protected right was *substantially likely*." *Lacy*, 897 F.3d at 862.

Plaintiffs may argue that Defendants knew that harm was substantially likely *before* the two GEC reports were authored. Defendants, and the record, dispute any such knowledge, but even assuming *arguendo* that Defendants had such knowledge, Plaintiffs cannot meet the second element of deliberate indifference that Defendants "*failed* to act on that likelihood." *Lacy*, 897 F.3d at 862. If Defendants had "failed" to act, then GEC would never have been retained, and the two reports would never have been authored. GEC was retained "[a]s part of a comprehensive, multi-contract program to assess the overall ADA/accessibility compliance of all its public safety facilities (approximately 11 million square feet)." (Defs' SOAF ¶ 1.) The fact that Defendants have taken proactive steps to assess the Department of Corrections compound and remedy any deviations is the antithesis of deliberate indifference. (*Id.*) Plaintiffs want to punish Defendants for doing the right thing.

Plaintiffs do not have any evidence that Defendants failed to act in the face of any knowledge that harm to the rights of disabled persons was substantially likely. Defendants have not acted with deliberate indifference, and therefore, Plaintiffs may not be awarded damages.

## CONCLUSION

For these reasons, Defendants THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS respectfully request that this Honorable Court deny Plaintiffs' motion for partial summary judgment, grant Defendants' motion for summary judgment, and grant such other relief that this Court deems just and appropriate.

Respectfully submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

Dated: August 18, 2025

/s/ Adnan Shafi
Special Assistant State's Attorney

Monica Burkoth (burkothm@jbltd.com)
Samuel D. Branum (branums@jbltd.com)
Adnan Shafi (shafia@jbltd.com)
Nelson A. Aydelotte (aydelotten@jbltd.com)
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770