IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cuauhtemoc Hernandez, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | 23-cv-16970 |
| -*vs*- | ) | |
| | ) | Judge Harjani |
| Thomas Dart, Sheriff of Cook County, | ) | |
| and Cook County, Illinois, | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION**

Defendants' opposition papers do not dispute the core facts that decide this case. Defendants' retained expert, architect Carl Darr, has concluded that both the Cermak ramp and the RTU east tunnel ramp fail to comply with the structural standards mandated by the Americans with Disabilities Act ("ADA"). Two other architectural firms retained by Cook County reached the same conclusion regarding the Cermak ramp: it is noncompliant and must be rebuilt. Defendants now conceded as much, acknowledging that they intend to repair the Cermak ramp at an estimated cost of $600,000, and that "whatever it takes, is what we are going to allocate for" repairing the ramp. Although Mr. Darr likewise found that that the RTU ramp has multiple ADA violations and requires substantial reconstruction, defendants admit they have no plans to bring that ramp into compliance.

Faced with these undisputed facts, defendants resort to mischaracterizing plaintiffs' testimony and invoking the doctrine of *de minimis non curat lex*. Neither effort is persuasive. Plaintiffs Mathis and Hernandez testified to the real harms they suffered when forced to use these steep, noncompliant ramps. Defendants dismiss this evidence, but the record is uncontroverted. Their reliance on *de minimis* fares no better: the ADA set mandatory minimum structural requirements, not flexible guidelines. As the Seventh Circuit has observed, "*de minimis non curat lex* is not Latin for close

enough for government work." *Mitchell v. JCG Industries, Inc.*, 745 F.3d 837, 843 (7th Cir. 2014). Defendants cite no evidence or opinion that these violations are trivial, and none exists.

The scope of these violations underscores the seriousness of defendants' noncompliance. The Cermak lacks a required intermediate landing of at least 60 inches of clear floor space and handrails must be installed at the top and bottom (and for a large portion of the class period, the ramp had no handrails). The RTU ramp suffers from multiple structural deficiencies: it lacks compliant handrails, its slope must be reduced by grinding, and its top landing is 85% smaller than the statutory minimum. Even defendants' own expert identified several immediate corrective measures, such as relocating doors to provide the required 60 inches of clear floor space and regrading portions of the ramp. The estimated cost of bringing this ramp into compliance is $600,000. Despite this knowledge, defendants have taken no steps to plan or implement repairs.

Defendants' motion for summary judgment also fails on the individual deliberate indifference claims of plaintiffs Hernandez and Mathis. The record demonstrates that defendants have long known about the dangers posed by the noncompliant ramps and disregarded the risks. By 2018, defendants were on notice that the Cermak ramp violated ADA standards. They were likewise aware that the RTU east tunnel ramp presented a  barrier. Despite this knowledge, defendants made no effort to bring the RTU ramp into compliance and delayed any meaningful action on the Cermak ramp for years. Nor have they implemented policies or procedures to ensure class members are accommodated while the ramps remain unsafe. Both Hernandez and Mathis testified to the physical pain and harm they endured while traversing these ramps. Mathis further testified that he missed medical appointments when his gout flared up. Combined with repeated grievances submitted about these barriers, the record supports a finding that defendants acted with deliberate indifference. At the very least, these facts create genuine disputes of material fact precluding summary judgment on the individual claims.

In sum, no material factual disputes exist as to the certified Rule 23(c)(4) issues concerning whether the Cermak and RTU east tunnel ramps comply with the ADA's structural standards. Plaintiffs are therefore entitled to judgment as a matter of law on behalf of the Rule 23(b)(3) issue classes. Defendants' motion for summary judgment should be denied. [1]

## I. Defendants offer no evidence that Cermak ramp is merely "technical non-compliance" and considered *de minimis*

Since 2018, three architectural firms have been retained by Cook County to assess the Cermak ramp. Dkt. 139, DRPSOF ¶¶ 11-23; Plaintiffs' Statement of Additional Facts (" PSOAF") ¶¶ 3-6. None have opined the ADA violations on this ramp are *de minimis*. All have recommended that Cook County take specific action to bring this ramp into compliance with the ADA structural standards. *Id.*

Defendants' retained expert architect, Carl Darr of Globetrotters Engineering Corporation (GEC), opines the Cermak ramp must be renovated to meet the mandatory ADA standards. Dkt. 139, DRPSOF ¶¶ 35, 38-39. Defendants' assertion, in response to statement 38 and 39 that "Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act" and that "[t]he Cermak ramp and RTU east tunnel ramp substantially comply with the ADA and Rehabilitation Act, and any technical non-compliance is *de minimis*," has no support. *See* Dkt. 139, DRPSOF ¶¶ 38-39. Defendants, after all, hired Mr. Darr as their Rule 26(a)(2)(B) expert and his opinion expressly rebuts defendants' representation here at summary judgment that "any technical noncompliance is *de minimis*" and "the *de minimis* deviations from the Guidelines are permitted because cane, crutch, and walker users have equivalent access to the services, programs, and activities that are accessed by traversing the Cermak and RTU ramps." Dkt. 141, Memo at 12.

---

[1] Neither party moved for summary judgment regarding the Rule 23(b)(2) class. A plaintiff need not show deliberate indifference when seeking injunctive relief, only when seeking damages for an ADA claim. *Lacy v. Cook County*, 897 F.3d 847, 862-63 (7th Cir. 2018).

To remove any doubt about this issue, Deputy Director Davis testified on January 19, 2022, that Cook County intended to hire an "Architect of Record" to "make the definitive determination [regarding the state of the Cermak ramp] and to design any remediations accordingly." PSOAF ¶ 3. Upon learning of GEC's findings, Deputy Director Davis testified "the variation is such that it seems prudent and in the best interest of the citizenry and the people occupying the facility to go ahead and replace [the Cermak ramp]." PSOAF ¶ 19. Cook County then hired HDR Architecture as the Architect of Record; HDR reviewed GEC's report and "recommend[ed] that the County pursue removal and replacement of the non compliant existing slab on grade ramp." PSOAF ¶¶ 3-6. Defendants know this ramp will cost about $600,000 to replace and Deputy Director Davis said "whatever it takes, is what we are going to allocate for" replacing this ramp. PSOAF ¶¶ 8, 10.

The ramp is not compliant for many reasons. First, there were no handrails until January 2023 when Cook County attempted to comply with an order entered in *Walker v. Dart*.[2] Dkt. 139, DRPSOF ¶¶ 70, 72. It is undisputed that the purpose of handrails under ADA code is to "allow somebody to steady themselves, whether they're walking or in a wheelchair, to provide stability when they're walking or in a wheelchair." *Id.* ¶ 66. Handrail extensions measuring 12 inches are used when "somebody is approaching a ramp or getting off a ramp, [because] they still might need to have something to hold onto." PSOAF ¶ 14. Since the class period extends to December 20, 2021, a significant number of class members transversed the ramp without the benefit of any handrails.[3]

---

[2] Prior to this work, Deputy Director Davis stated the ramp "appears that instead of a handrail that there are hospital-style bumpers" at approximately "the same height off the floor." Dkt. 139, DRPSOF ¶ 69.

[3] Defendants dispute statements 67 and 68 that the Cermak ramp violated the ADA because it did not have any handrails in January 2022 (this is prior to the entry of the *Walker v. Dart* Order that Cook County must install ADA compliant handrails by December 31, 2022). Dkt. 139, DRPSOF ¶¶ 67, 68, 70. In response to statements 67 and 68, defendants "dispute[]" and state, without citation, "[t]he Cermak ramp substantially complies with the ADA and Rehabilitation Act, and any technical non-compliance is *de minimis*." *Id.* This response violates Local Rule 56.1(b)(3)(B) requiring "specific references to the affidavits, parts of the record, and other supporting materials relied upon" and should be stricken.

Second, because the rise of the Cermak ramp is greater than 30 inches, the ADA requires an intermediate landing. Dkt. 139, DRPSOF ¶¶ 16, 20; PSOAF ¶¶ 5-6. An intermediate landing is a level area measuring at least 60 inches and provides "a place to stop for a moment, even turn around." Dkt. 139, DRPSOF ¶¶ 29-30, 33. An example of an intermediate landing – from GEC's drawings to remedy the RTU east tunnel ramp – is below:



Dkt. 139, DRPSOF ¶ 33. Defendants have known the absence of an intermediate landing renders this ramp non-compliant with the ADA. In 2018, Cook County hired architect Ellen Stoner who prepared a written recommendation to repour the ramp in two sections "with another landing area at the change in ramp direction." Dkt. 139, DRPSOF ¶¶ 11-16.

Third, the handrails defendants installed in January 2023 remain noncompliant. Neither defendants' retained expert, Carl Darr, nor HDR Architecture has opined that defendants are excused from meeting the ADA's clear handrail requirements. Indeed, other handrails throughout the Department of Corrections ("DOC") are not anti-ligature, and even if anti-ligature features were necessary here defendants could still install compliant handrails on at least two of the ramp's four sides. PSOAF ¶¶ 20-22, 34.

Accordingly, the undisputed evidence is that the Cermak ramp's violation are not "technical" nor considered *de minimis*. Defendants profess these violations must be remedied, aver that action is being taken now to repair this noncompliant ramp, and that it will cost $600,000 to remove and replace

this ramp. PSOAF ¶¶ 3-6, 8, 10, 19. No reasonable factfinder could conclude anything other than that the Cermak ramp has been noncompliant with the ADA throughout the class period.

## II. No evidence RTU east tunnel ramp is merely "technical non-compliance" and considered *de minimis*

Similar to the Cermak ramp, defendants offer no evidence or testimony the RTU east tunnel is merely "technical noncompliance" [and] is *de minimis*." Dkt. 141, Memo at 12. Mr. Darr and his team from GEC inspected this ramp two times and found a host of structural violations. Dkt. 139, DRPSOF ¶¶ 26-28. Significantly, Mr. Darr opines this ramp does not comply with the mandatory ADA standards and the ramp must be renovated. Dkt. 139, DRPSOF ¶¶ 36, 38-39. Some portion of the ramp, such as the noncompliant landing at the top that is "85% short of the required length," according to Mr. Darr, "may be easily corrected by relocating the doors to the east 51", to provide the minimum required landing length." Dkt. 139, DRPSOF ¶ 28. Mr. Darr's report was issued on April 1, 2024, over sixteen months ago, in *Westmoreland v. Dart*, 23-cv-1851. PSOAF ¶ 7. Defendants disclosed the same report here under Rule 26(a)(2)(B) underscoring their knowledge and acceptance that this ramp must be corrected to comply with the ADA. PSOAF ¶ 7; Dkt. 139, DRPSOF ¶ 28.

Defendants, however, have not taken any steps to follow their expert's opinion that this ramp must be corrected nor have the County Board of Commissioners approved any funds to remedy this noncompliant ramp. Dkt. 139, DRPSOF ¶ 34. Any argument or suggestion the violations are merely technical or *de minimis* is unsupported. No reasonable factfinder could conclude anything other than that the RTU east tunnel ramp has been noncompliant with the ADA throughout the class period.

## III. Plaintiffs have standing to bring this case

This case has been certified to address specific issues whether the ramps must adhere to the ADA structural standards and whether the ramps are non-compliant with the standards. Dkt. 139, DRPSOF ¶¶ 1-2. As the Court explained, "the Seventh Circuit's holdings in *Bennett I and II* dictate

the outcome in this case." *Hernandez v. Dart*, 2024 WL 4903906, at *4 (N.D. Ill. 2024) (Harjani, J.) "Class members [ ] receive the benefit of a declaratory judgment (if the class prevails) on the [certified] issue but would need to proceed in individual suits to seek damages; by contrast, if the class loses, every detainee would be bound through the doctrine of issue preclusion." *Bennett v. Dart*, 53 F.4th 419, 420 (7th Cir. 2022) (*Bennett II*).

Defendants never challenged whether Mathis and Hernandez have standing to represent classes under Rule 23.[4] *See* Dkt. 62, Defendants' Response. While a jurisdictional challenge, including standing, may be conducted at any time, *Walters v. Edgar*, 163 F.3d 430, 433 (7th Cir. 1988), defendants' attempt now to challenge standing, based on misrepresentations of the record, should be rejected. Members of the class "have a common injury – inability to safely use the Cermak and Residential Treatment Unit ramps." *Hernandez*, 2024 WL 4903906, at *4. Additionally, each plaintiff has "the prospect of an incentive award," and that "is enough to support the named plaintiff's concrete interest in litigation" to secure standing. *Scott v. Dart*, 99 F.4th 1076, 1082-88 (7th Cir. 2024); Exhibit 2, *Carr v. Sheriff*, 17-cv-7135, Dkt. 242, Order (holding "Scott has standing based on the prospect of an incentive award.").

---

[4] No party moved for summary judgment regarding the Rule 23(b)(2) class and defendants do not directly challenge plaintiff Mathis's standing to represent this class. Mathis moved to represent at Rule 23(b)(2) class on August 14, 2024, while detained at the Jail. Dkt. 41, Motion. Although Mathis was transferred to the IDOC on August 29, 2024, PSOAF ¶ 2, and his individual claim for injunctive relief is moot, the "class claims can be saved by the inherently transitory exception." *Westmoreland v. Hughes*, 144 F.4th 952, 955 (7th Cir. 2025). This "exception applies where (1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." 144 F.4th at 955.

Here, for the reasons explained by the district court in *Westmoreland v. Dart*, 23-cv-1851, Dkt. 123, there is a strong basis to conclude both elements to the test are met. The DOC is a "temporary holding area" and "it is uncertain whether any given detainee will retain a live claim long enough to permit certification, establishing the first element of the inherently transitory exception." *See* Exhibit 1, *Westmoreland v. Dart*, 23-cv-1851, Dkt. 123, Statement at 7-8. As the record demonstrates here, the motion for class certification was filed when Mathis was at the DOC. As for the second element, plaintiff Mathis satisfies this element for the same reasons explained in *Westmoreland*, "since their makeup is constant and ever-changing." *See* Exhibit 1, *Westmoreland* Statement at 8.

Unlike the issue in the recent Seventh Circuit opinion in *Westmoreland v. Hughes*, where Mr. Westmoreland was not an "adequate class representative" because he did not file any grievance prior to initiating the case against the Illinois Department of Corrections, here defendants do not raise the exhaustion defense. *See Westmoreland*, 144 F.4th at 955-56.

Turning to the evidence regarding the class representatives, it is undisputed that Mathis has a history of chronic knee pain and gout flare-ups. Dkt. 139, DRPSOF ¶¶ 54-55. Mathis testified that using the steep ramps caused him significant pain, his knee to dislocate, shortness of breath, and even missed medical appointments. *Id.* ¶¶ 56, 58-59.[5] The law requires a ramp such as the Cermak ramp to include a 60-inch clear landing at the midpoint, so that individuals have an opportunity to rest. *Id.* ¶¶ 16, 19-21, 23, 29-30. Notably, Mathis did not begin using a cane until several months after his admission to the DOC, supporting the inference that traversing the noncompliant ramps aggravated his condition and contributed to his worsening mobility limitations. PSOAF ¶ 1.

Moreover, Mathis testified that he declined medical appointments because his fragile physical condition and inability to travel to Cermak for treatment. As reflected in paragraph 59 of plaintiffs' Local Rule Statement, Mathis explained that he only refused appointments when his knee condition flared up:

> Q.    You were always able to get where you need to go, correct?
> A.    Yes. Unless I didn't feel like going over because my knee was giving me problems and I declined going over there.
>
> …                       …                       …                       …
>
> Q.    This states right here that they received a refusal form from you, correct?
> A.    Yep.
> Q.    That was on October 31, 2023?
> A.    Yes.
> Q.    And do you know why you might have refused on that day?
> A.    It was probably due to the flare-up. I only refuse when I have a flare-up.
> Q.    Would it sound right to you on February 16, 2024, you might have also refused?
> A.    Yes.

---

[5] Defendants' attempt to respond to one such statement by disputing it with a colloquy that Mathis "had been experiencing general knee pain following his admittance to the Cook County Jail system" and general argument, without any citations, that "any technical non-compliance is *de minimis*." Dkt. 139, DRPSOF ¶ 56. This type of response should be disregarded. The statement that moving up and down each ramp caused pain and shortness of breath, *id.* ¶ 56, and that going up was more challenging than descending and caused a feeling his knee was popping in and out of place, *id.* ¶ 58, is fully supported by the deposition testimony. Defendants' response to statement 58, that "[d]ue to gravity, going up a ramp is harder than going down for *anyone*," *id.* ¶ 58, has no support and violates Local Rule 56.1.

Dkt. 139, DRPSOF ¶ 59; Dkt. 122-26, Mathis Dep 29:15-31:10.

There is ample evidence that Mathis suffered an injury. He was unable to travel to and from Cermak on the same basis as nondisabled individuals because of the obvious structural barriers. The record also demonstrates that an ADA-compliant ramp—featuring an appropriate slope, handrails, and intermediate landings of at least 60 inches—is designed to allow disabled individuals with disabilities to move safely. By contrast, the Cermak ramp's noncompliance—for example, the absence of any resting point at its midpoint—directly caused Mathis's pain and related harms.

Defendants contend Hernandez lacks standing to bring this case on grounds traversing the ramps "merely 'irritated' his leg, back, and shoulder, not that it caused a distinct injury or denied him access to any facility or service."[6] Dkt. 141, Memo at 10. This position, asserted in response to several of plaintiffs' statements, *see* Dkt. 139, DRPSOF ¶¶ 50-51, 53,[7] distorts the cited deposition testimony where Hernandez avers moving up and down the ramps caused pain:

> Q.     Can you let me finish my question? You spoke to them about your use of the ramp; your anxiety related to use of the ramp, or your anxiety in general?
>
> A.     In general. Just being in pain in general at that point in time. Because I was in pain. I was in pain, basically - - I mean, the ramp was one of the biggest problems because it's so long.

*See* Dkt. 139, DRPSOF ¶ 50; Dkt. 122-22, Hernandez Dep 57:23-58:6.

Hernandez squarely testified that the ramps were "too steep and too long." Dkt. 139, DRPSOF ¶ 49. He further testified that walking long distances, including traversing the ramp, caused "pain on

---

[6] Defendants' reliance on *DeBoard v. Solid Rock Props.*, 2024 WL 1344761, at *4 (N.D. Ill. Mar. 29, 2024), is unpersuasive. Dkt. 141, Memo at 10. In *DeBoard*, the plaintiff was a "serial 'tester,' searching for Indiana apartment complexes that violate the Fair Housing Act ("FHA") and sign when that search is fruitful." Exhibit 3, *DeBoard v. Solid Rock Properties, LLC*, 22-cv-435, Dkt. 49, Opinion and Order at 1. The *DeBoard* plaintiff posed as a renter with no intent to live at the apartment, *id.* at 3-4, and the court held the plaintiff "pleads only the violation of the statute itself as an injury." *Id.* at 12; *DeBoard*, 2024 WL 1344761, at *2. Hernandez and Mathis, on the other hand, regularly traversed the ramps while detained at the DOC and present evidence of personal harms caused by moving up and down.

[7] Defendants' response to these statements that Hernandez lacks "foundation" to testify about this injury is baseless. *Patterson v. Baker*, 990 F.3d 1082 (7th Cir. 2021) ("lay witnesses must limit their opinions to matters not only rationally based on their personal perceptions, but also that will be helpful to understanding the witnesses' broader testimony or determining a fact at issue").

[his] [] knee," that the pain persisted "for days," and that after one such episode he "fell in [his] []
cell" because of the pain from ambulating. Dkt. 139, DRPSOF ¶ 51; Dkt. 122-22, Hernandez Dep
54:2-55:16, 58:3-6, 62:7-17. Defendants attempt to dismiss this evidence by claiming Hernandez
"lacks foundation," is not "a medical expert," and suffered from "a number of preexisting conditions,
including a torn meniscus, which could have contributed to his alleged fall." *See* Dkt. 139, DRPSOF
¶ 51. These arguments fail. An ADA claim is "effectively a state-law tort claim." *Turnage v. Dart*,
16 F.4th 551, 552 (7th Cir. 2021). And under "[I]llinois law, a tortfeasor is liable for the injuries he
caused, even though the injuries are the aggravation of a pre-existing condition" and "[a]n 'eggshell
skull' instruction stands for the proposition that a defendant takes his plaintiff as he finds him." *Testa
v. Village of Mundelein, Ill.*, 89 F.3d 443, 446 (7th Cir. 1996). Thus, defendants' suggestion that
Hernandez's preexisting conditions explain his falls is immaterial, particularly in light of Hernandez's
unrebutted testimony that traversing the ramp exasperated his condition and precipitated the fall.

Finally, defendants suggest in the alterative that "any factual dispute regarding [Article III]
standing and this Court's jurisdiction" must be "resolved by a jury." Dkt. 141, Memo at 17. This
argument is not accurate. This Court must "decide issues of fact necessary to make the standing
determination." *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 747 (9th Cir. 2012); *Vaupel
Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 873 (Fed.Cir. 1991) (holding that
whether a plaintiff has standing to sue is a matter of law to be determined by the court); *Dillard v.
Chilton County Com'n*, 495 F.3d 1324, 1330 (11th Cir. 2007).("standing is a threshold jurisdictional
question which must be addressed prior to and independent of the merits of a party's claims").

Accordingly, the evidence at summary judgment shows class representatives Hernandez and
Mathis have standing to challenging the ramps.

## IV. Defendants' argument about reasonable accommodations and lack of evidence is meritless

Plaintiffs present evidence they were unable to move up and down the ramps on the same

basis as nondisabled inmates because of the obvious structural barriers. Plaintiffs also present evidence the defendants have not implemented policies and procedures to ensure class members are accommodated up and down the ramps until they are renovated to meet the ADA structural standards. PSOAF ¶¶ 23-27, 35; Dkt. 139, DRPSOF ¶¶ 40-42, 64-65.

Defendants cite unsupported statements to argue "Plaintiffs received reasonable accommodations to ensure they are able to access services, programs, and activities at the Department of Corrections," that signs were always "posted at the end of the ramps" suggesting class members could request assistance, and that reasonable accommodations were always offered. Dkt. 141, Memo at 19-20. These statements, generated from the Rule 30(b)(6) Deposition of Lonnie Hollis, are unsupported. Mr. Hollis was unable to speculate if class members were accommodated up the ramps. PSOAF ¶ 21, 25. Although he said the Sheriff's policy was to document any request for assistance, he did not look in the Sheriff's Jail Management System (JMS) to identify whether any class members were assisted prior to his deposition. PSOAF ¶¶ 23-27. He also lacked personal knowledge about the posting of any sign near the ramps because he has not "been in the tunnels in a while." PSOAF ¶ 35.

In addition to Mathis and Hernandez testifying that they were denied accommodations to move up and down the ramps, plaintiffs present corroborating evidence from Carlos Martinez and Kavarian Rogers that assistance was likewise denied.[8] Dkt. 139, DRPSOF ¶¶ 73, 76-78. Defendants attempt to dispute this testimony by relying on Mr. Hollis's assertion that it is "common practice for correctional officers to provide alternative forms of assistance to inmates, such as transportation via wheelchair." *See* Dkt. 139, DRPSOF ¶¶ 73, 78. But that claim is unsupported: Mr. Hollis lacks personal knowledge of whether correctional staff in fact provide such accommodations to class members. *See* PSOAF ¶¶ 23-27, 35.

---

[8] It is also logical to infer that class members stumbled up the non-compliant ramps, similar to the video depicting Eugene Westmoreland in November 2019 and that the doors at the top of the RTU ramp present a barrier because they violate the clear floor space as depicted in the February 6, 2025, video. PSOAF ¶¶ 12, 15-16.

Defendants also contend the law provides they may satisfy the ADA by the "equivalent facilitation" provision. Dkt. 141, Memo at 20. As explained in plaintiffs' brief, defendants have the burden to show class members have clearly equivalent access. *See* Dkt. 123, Memo at 11-15. Defendants cannot make this showing by relying on unsupported statements by Mr. Hollis. *See* Dkt. 141, Memo at 21 (citing DSOAF ¶¶ 24-28). Additionally, Mathis and Hernandez each testified they requested assistance to traverse the ramps and were denied by staff. Dkt. 139, DRPSOF ¶¶ 46, 52-53, 63.

Finally, defendants offer no admissible evidence to dispute that plaintiffs Mathis and Hernandez, along with class members Carlos Martinez, Tommy Love, Quovotis Harris, and Kavarian Rogers, were required to navigate the noncompliant ramps and that doing so caused them pain and deprived them the ability to traverse the ramps on the same basis as nondisabled inmates due to the obvious structural barriers.[9] *See* Dkt. 141, Memo at 21. If the Cermak ramp was compliant with the ADA, for example, it would have had 60 inches of clear floor space to rest at the midpoint. It is reasonable to infer from the record evidence that such a landing would have lessened the pain these class members experienced and enabled them to use the ramp safely.

## V.   ADA and Rehabilitation Act claims are functionally identical

Courts in this circuit treat claims under the ADA and Rehabilitation Act as coextensive. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012). The only material difference is that the Rehabilitation Act requires that the defendant receive federal funding. *Wagoner*, 778 F.3d at 592. Because all parties agree that Title II of the ADA applies here and defendants did not move for summary judgment over the

---

[9] Defendants deposed each of these class members along with Anthony Muniez, Raasikh Phillips, Sylvestor Brinson, Antoine Pierce, and Kent Elwoods. *See* Dkt. 63, Joint Status Report at 2. Defendants do not cite any of their deposition transcripts in support of their position.

Rehabilitation Act claim, the Court need not separately decide whether defendants also receive federal funds.[10]

## VI. Evidence defendants have acted with deliberate indifference

Defendants contend summary judgment must be entered favor of defendants because there is no evidence deliberate indifference.[11] Dkt. 141, Memo at 22-24. This argument is premised on disputed facts.

First, it is wrong for defendants to state they had no knowledge the Cermak ramp was noncompliant until issuance of the GEC Report. Dkt. 141, Memo at 23. In 2018, Ellen Stoner, an architect hired by Cook County, prepared a report identifying the ramp is noncompliant and that action must be taken to correct these violations. Dkt. 139, DRPSOF ¶¶ 11-18. Defendants' citation to a "2022 survey" suggesting the ramp was compliant with the ADA, *see* Dkt. 141, Memo at 22, is inadmissible. Brian Gainer, the lead attorney for defendants Dart and Cook County in *Walker v. Dart*, 20-cv-261, told Judge Rowland that this survey was not defensible. PSOAF ¶ 18. Finally, the Cermak ramp did not have any handrails until January 2023, Dkt. 139, DRPSOF ¶¶ 70, 72, and it was obvious, during all relevant times, that a ramp required handrails under the ADA. The suggestion that only anti-ligature handrails may be used at the DOC is disputed. Several housing units and ramps use railings that are not anti-ligature, including in the housing units in Division 9 where the Sheriff houses maximum security inmates. PSOAF ¶¶ 20-22.

Defendants have also been on notice the RTU east tunnel ramp may be noncompliant with the ADA since at least March 2021 when Timmothy Tyrrell, the General Manager of Cook County's

---

[10] There is, however, evidence and argument that federal funds have been received for the benefit of detainees at the DOC. In response to the complaint, defendants admit federal funds have been received for programing for detainees. Dkt. 122, PSOF ¶ 79. Plaintiffs even cited *Clemons v. Dart*, 168 F.3d 1060, 1065 (N.D. Ill. 2016), where the district court held the Rehabilitation Act applied to a detainee housed in Cermak. Dkt. 123, Memo fn. 1. Defendants' suggestion the Rehabilitation Act claim is waived is unsupported. *See* Dkt. 141, Memo at 17-19.

[11] As stated above, deliberate indifference is not an element for the Rule 23(b)(2) plaintiff class to prevail.

Facility Management Department, sent an e-mail that the RTU ramp is not compliant is not ADA compliant. Dkt. 139, DRPSOF ¶ 25. To remove any doubt, defendants have known definitively since issuance of GEC's report on April 1, 2024, that the RTU east tunnel ramp must be renovated to address ongoing ADA violations. Dkt. 139, DRPSOF ¶ 28. And defendants have also received grievances since at least August 2021 from inmates assigned wheelchairs, canes, crutches, and walkers inmates complaining of barriers traversing the ramp. PSOAF ¶¶ 28-33. The record is clear Cook County Board has not allocated any money to remedy this ramp, *see* Dkt. 139, DRPSOF ¶ 34, and defendants' brief offers no insight when this ramp will be repaired in accordance with their expert's opinion.

Importantly, since GEC's reports finding each ramp is noncompliant with the ADA, defendants offer no evidence of "policies and procedures to assist class members while the ramps undergo construction." *Hernandez*, 2024 WL 4903906, at *4. The Sheriff's 30(b)(6) Designee, Mr. Hollis, had no knowledge whether staff, as a matter of course, accommodate class members. PSOAF ¶¶ 23-27. This is evidence of deliberate indifference during the class period.

**VII.   Conclusion**

It is therefore respectfully requested that the Court grant summary judgment in favor of the two Rule 23(b)(3) issue classes and deny defendants' motion for summary judgment.

Respectfully submitted,

/s/   Patrick W. Morrissey
      Thomas G. Morrissey
      Patrick W. Morrissey
      10257 S. Western Ave.
      Chicago, IL. 60643
      (773) 233-7901
      *Attorneys for the plaintiff class*