IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EUGENE WESTMORELAND, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 23 C 01851 |
| THOMAS DART, and COOK COUNTY, ILLINOIS, | ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) | |

**ORDER**

For the reasons set forth in the accompanying statement, the plaintiff's motion to certify class [7] is granted. A status hearing will be held on Friday, September 12, 2025, at 1:30 p.m. in Courtroom 2303.

**STATEMENT**

1. **Background**

Plaintiff Eugene Westmoreland, a wheelchair-bound former detainee at the Cook County Jail, brings this putative class action alleging that two ramps in the jail's residential treatment unit ("RTU") do not comply with standards laid out in the Americans with Disabilities Act ("ADA") and Rehabilitation Act. *See* Compl. ¶¶ 1-11, ECF No. 4. He moves to certify a class for the limited purpose of resolving an issue central to his claim—whether the ramps in question are ADA compliant. *See* Mem. in Supp. of Pl.'s Mot. for Class Cert. ("Motion") 2, ECF No. 8; *see also* Fed. R. Civ. P. 23(c)(4). Specifically, the plaintiff proposes the following class definition for certification under Rule 23(b)(2):

> [A]ll Cook County Jail detainees who have been assigned and currently use a wheelchair to traverse the RTU ramps.

Motion at 2.

In addition, the plaintiff moves to certify an overlapping but broader class under Rule 23(b)(3):

> [A]ll Cook County Jail detainees who have been assigned to a wheelchair and use a wheelchair to traverse the RTU ramps from March 24, 2021 to the date of entry of judgment.

Exhibit 1 Page 1

*Id.*[1]

2. Discussion

    a. Rule 23(a) Requirements

Class certification is appropriate if "'after a rigorous analysis,' the trial court is satisfied that the requirements of Rule 23 have been met." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)). Rule 23(a) outlines four threshold conditions:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to 23(a)'s explicit requirements, "courts have long recognized an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). "Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements . . . by a preponderance of evidence." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

    i. Ascertainability

The defendants submit that the proposed class definitions are "too vague" to reliably ascertain membership. Defs.' Resp. in Opp. to Mot. for Class Cer. ("Resp.") 19-20, ECF No. 27. That argument fails. This is not a case where a "significant segment of the class . . . remain unidentified," the class is of "unknowable size," or "the relevant criteria for class membership are unknown." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 495 (7th Cir. 2012). The proffered criteria for class membership are clear and objective—wheelchair assignees who use specific ramps—namely, the RTU ramps. Moreover, class members can be reasonably identified through

---

[1] The plaintiff does not explain his decision to use March 24, 2021 as a class parameter, but it appears that the date corresponds to the earliest period not barred by the applicable statute of limitations. *Winfrey v. City of Chicago*, 957 F. Supp. 1014, 1023 (N.D. Ill. 1997) ("[F]or purposes of Winfrey's claims under Title II of the ADA and the Rehabilitation Act, Illinois' two year personal injury statute of limitations applies.").

prison records. In fact, the defendants have already reported a specific number of wheelchair users housed in the RTU during the discovery phase of this case. *See* Reply in Supp. of Class Cert. ("Reply") 4. And in parallel litigation, the same defendants were able to produce a list of wheelchair users who might have traversed a specific ramp in the Cook County Jail. *See* Ex. 2 to Pl.'s Reply in Supp. of Class Cert. ("*Walker* Notice Motion"), ECF No. 49-2. That decisively undercuts the defendants' claim that membership in the putative classes is indiscernible.[2]

### ii. Numerosity

The defendants' second argument against certification—that there are too few members to constitute a class—also fails.

A putative class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020) (quotations omitted). Here, the plaintiff estimates roughly 300 class members, *see* Reply 4, more than enough to establish numerosity, *see Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 864 (7th Cir. 2018) (concluding that a mere 60 wheelchair-using detainees were sufficiently numerous to constitute a class).

The defendants argue that the plaintiff's estimate is speculative and unfounded. Resp. 10-11; *see also Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (noting that an aspiring class representative "cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class"). To obtain certification, however, a plaintiff need not provide a definitive census of potential class members. "[S]o long as it's reasonable to believe it [is] large enough to make joinder impracticable," a class may proceed "without determination of its size." *Orr*, 953 F.3d at 497 (quotations omitted).

The plaintiff's approximation is reasonable in light of the record. During discovery, the plaintiff identified 25 wheelchair users housed at the RTU on May 30, 2023. *See* Reply 4. Extrapolating beyond that single unit of the jail—and, for the 23(b)(3) class, to all wheelchair users who were detained there in the last four years—total membership may well exceed 300. *Id.*

---

[2] The defendants' ascertainability argument appears to be largely directed at a strawman. Rather than explain why the plaintiffs' proposed class definitions are too indefinite, the defendants attack a hypothetical, narrower class they would find more palatable—detainees who "used the [RTU] ramps on the same basis as [Plaintiff], had the same type of wheelchair alert as he, and experienced the same difficulties." Resp. 19; *see also* Defs.' Sur-Reply in Opp. to Class Cert. 3, 9-10 ("Sur-Reply"), ECF No. 51. That, of course, is not a valid challenge to ascertainability but, rather, a poorly taxonomized challenge to commonality and typicality, which the Court will address in due course.

The plaintiff's estimate is further reinforced by findings in similar cases. In *Lacy v. Dart*, the court identified approximately 60 "Cook County Jail detainees who have been assigned and currently use a wheelchair." 897 F.3d at 855. And in *Walker v. Dart*, the court notified approximately 500 detainees who used a wheelchair to traverse the Cermak Infirmary of the Cook County Jail. *See Walker* Notice Motion; *see also* No. 20-cv-00261 (N.D. Ill. Jan. 14, 2020). The findings of those cases, coupled with the limited discovery obtained to date, are beyond sufficient to support a reasonable belief that the proposed classes are "large enough to make joinder impracticable." *Orr*, 953 F.3d at 497.

### iii. Commonality

The defendants are no more successful in challenging the third condition of class certification: commonality.

To establish commonality, all class members' claims must "depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 1465 (2019). "Neither Rule 23 nor any gloss that decided cases have added to it requires that *every* question be common." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014); *see also Wal-Mart*, 564 U.S. at 359 ("Even a single common question will do" (quotations omitted) (cleaned up)). "What matters" is "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (quotations omitted). Thus, "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek*, 764 F.3d at 756.

The plaintiff's proposed classes exhibit commonality. Each member challenges the same conduct (the construction and maintenance of two RTU ramps) based on the same legal theory (noncompliance with the ADA and Rehabilitation Act). All members' claims thus implicate an identical question: whether the RTU ramps violated federal accessibility standards. *See* Reply 9. The answer to that question is dispositive—meaning its resolution will either materially advance or categorically doom all class members' claims "in one stroke." *Wal-Mart*, 564 U.S. at 350. Accordingly, the commonality standard is met.

The defendants object that the plaintiff has not proven that the RTU ramps affected all class members to the same extent—or, indeed, at all. Resp. 6-7. While that may be true, it is no reason to deny certification. The "possibility or indeed inevitability" that a class will "include persons who have not been injured by the defendant's conduct" does "not preclude class certification." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009). "It is routine in class actions to have a final phase in which individualized proof must be submitted," *Suchanek*, 764 F.3d at 756, and the likelihood that some class members may not be able to marshal such proof will not

invalidate an otherwise viable class. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798 (7th Cir. 2013) (certifying based on the common question whether defective products were sold to class members even though "damages [were] likely to vary across class members"). Accordingly, "the fact that some . . . detainees are not permanently confined to their wheelchairs or have more mobility than others[] is irrelevant for purposes of certifying the putative class." *Lacy v. Dart* ("*Lacy I*") No. 14-cv-06259, 2015 WL 1995576, at *4 (N.D. Ill. Apr. 30, 2015), *aff'd sub. nom.*, *Lacy v. Cook Cnty., Illinois* ("*Lacy II*"), 897 F.3d 847 (7th Cir. 2018).

The defendants note a relevant caveat: "[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006) (affirming denial of class certification in a consumer-protection lawsuit where many members of a class—Coca Cola drinkers—were not deceived). "There is no precise tipping point," however, "at which a class includes too many people who have not been harmed" and "[s]uch determinations are a matter of degree [that] turn on the facts as they appear from case to case." *Lacy II*, 897 F.3d at 864.

In this case, as in *Lacy*, the Court is "confident that the balance tips in favor of certification." *Id.* On the existing record, it is far from "apparent" that a substantial number of class members have gone without injury. *Kohen*, 571 F.3d at 677. Indeed, "[t]he defendants have not suggested how many of these individuals could not have been injured under the ADA, let alone shown a 'great many' who evaded harm." *Lacy II*, 897 F.3d at 864. Moreover, the Seventh Circuit has recognized that, because "mobility impairments requiring the use of a wheelchair" "will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity . . . the individualized nature of [such] disabilities does not undermine commonality." *Lacy II*, 897 F.3d at 865 n.37 (quoting 28 C.F.R. § 35.108(d)(2)(ii)-(iii)). Where, as here, all putative class members "share [the] common physical impairment" of being "confined to wheelchairs," "face common physical barriers when they confront steep ramps and noncompliant [] facilities," and challenge "the same failure to implement and enforce policies that would accommodate all wheelchair-using detainees," the record permits only one conclusion: "commonality abounds." *Id.* at 865.

    iv. **Typicality**

The proposed class fulfill the typicality requirement for largely the same reasons. *See Wal-Mart*, 564 U.S. at 349 n.5 ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge." (quotation omitted)). "Generally, a class representative's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory." *McFields v. Dart*, 982 F.3d 511, 517-18 (7th Cir. 2020) (cleaned up). Here, the plaintiffs' claim implicates precisely the same conduct and legal theory as those of other class members. *See Lacy II*, 897 F.3d at 866 (finding that plaintiffs,

wheelchair-bound detainees challenging prison ramps as ADA noncompliant, "alleged the same injurious conduct and requested the same modifications as the class at-large" such that there was "no reason to question the typicality of their claims"). As such, Rule 23(a)(3) is satisfied.

The defendants' recycled arguments to the contrary are not persuasive. They reiterate that the challenges the plaintiff experienced with the RTU ramps were not universal and the plaintiff's unique injuries cannot be fairly imputed to the class at large. Resp. 8-9. Again, however, "[f]actual differences will not defeat typicality" so long as "the named plaintiffs' claims arise from the same event or course of conduct that gives rise to the claims of the class members and are based on the same legal theory." *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 394 (N.D. Ill. 2011) (quoting *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 150 (3d Cir. 2008)). While the plaintiff may have been injured to a different extent than some other class members, his claim is hardly "idiosyncratic or [] unique." *Suchanek*, 764 F.3d at 758. To the contrary, it possesses the "same essential characteristics" as any other member's claim, and is thus properly considered typical. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 1465 (2019) (quotation marks omitted).[3]

### v. Adequacy

The defendants contend that Westmoreland is an inadequate class representative because, shortly after moving for class certification, he was transferred from the Cook County Jail to the Illinois Department of Corrections ("IDOC"). Defs.' Suppl. Br. 2, ECF No. 119. Since Westmoreland no longer resides at the facility where the allegedly noncompliant ramps are located, the defendants argue that he lacks standing to seek injunctive relief for a putative class.[4] *Id.* at 2, 7-8. The plaintiff responds that, while Westmoreland's transfer might have mooted his individual claim for such relief, he may still seek it on behalf of a putative class under a carveout to the mootness doctrine: the "inherently transitory exception." Pl.'s Suppl. Br. 5-7, ECF No. 120.

---

[3] In a single line in the Sur-Reply, the defendants claim without explanation that the plaintiff has "forfeited" his arguments regarding commonality, typicality, and Rule 23(b)(2) by not responding to the defendant's points. Sur-Reply 5, 7. The Court finds no such forfeiture.

[4] The defendants submit that Westmoreland's transfer also deprived him of Article III standing, while at the same time appearing to concede that Westmoreland should be permitted to seek monetary damages for his individual claim. Defs. Suppl. Br. at 3, 8-9. The latter position is correct. *See Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) (When a plaintiff "seeks monetary damages, his case is not moot even if the underlying misconduct that caused the injury has ceased."); *Powell v. McCormack*, 395 U.S. 486, 497 (1969) ("Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy.").

"The inherently transitory exception allows a named plaintiff in a class action to continue prosecuting the action even though intervening circumstances may have mooted his or her personal claim following the inception of the lawsuit." *Westmoreland v. Hughes*, No. 23-CV-14044, 2024 WL 6080514, at *4 (N.D. Ill. May 23, 2024), *aff'd*, 144 F.4th 952 (7th Cir. 2025). To qualify, a plaintiff must have "filed for class certification while [still] a party to a live controversy." *Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010). Having done so, the plaintiff must then establish that "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Id.* at 582.[5] So long as those conditions are met, the inherently transitory exception "furnishes a court with subject matter jurisdiction over a case despite the plaintiff's lack of a personal stake in its outcome." *Westmoreland*, 2024 WL 6080514, at *4.

Westmoreland complied with the threshold requirement of the inherently transitory exception by filing the pending class-certification motion while his claim for injunctive relief was still live. *See* Pl. Suppl. Br. 1, 4.

The first analytical prong of the inherently transitory exception is also satisfied. That prong does not require the plaintiff to prove, as a matter of fact, that his claim for injunctive relief expired too quickly to reasonably permit resolution. Nor does it demand a finding that no representative's claim could conceivably outlive a class action. "[T]he crux of the inherently transitory exception is the uncertainty about the length of time a claim will remain alive," not its actual lifespan. *Olson*, 594 F.3d at 582 (quotation omitted). So long as it is "*uncertain* that any potential named plaintiff in the class of inmates would have a live claim long enough for a district court to certify a class," the first condition of the inherently transitory exception is fulfilled. *Id.* (emphasis added).

With respect to the duration of detention at the Cook County Jail, uncertainty abounds. The facility generally serves as a temporary holding area for inmates facing trial, awaiting transfer to the IDOC, or serving short-term sentences. Moreover, fluctuations in housing availability, inmate status, and administrative demands frequently render terms of confinement indefinite. As a result, "the length of incarceration in a county jail generally cannot be determined at the outset and is subject to a number of unpredictable factors, thereby making it inherently transitory." *Id.* Because all class members' claims for injunctive relief depend on continued assignment to the Jail, it is

---

[5] The Seventh Circuit's recent decision in *Westmoreland v. Hughes* suggests that, in addition to the criteria laid out in *Olson*, the inherently transitory exception requires that a class action be "possible" in the first place—meaning no fatal defect beyond mootness would otherwise preclude certification. *See* 144 F.4th 952, 955-56 (7th Cir. 2025). For the reasons discussed in the preceding and subsequent sections, that prerequisite is met.

uncertain whether any given member will retain a live claim long enough to permit certification, establishing the first element of the inherently transitory exception.

The exception's second element is also fulfilled. That element requires that there "be a constant class of persons suffering the deprivation complained of in the complaint." *Id*. The proposed classes qualify, since their makeup is constant and ever-changing.

The fact that Westmoreland no longer resides at the Cook County Jail does not render him an inadequate representative. Many fellow class members have likely experienced the same fate since this case was filed, and many more reassignments doubtless lie in the future. Given the uncertainty that attaches to confinement at the Cook County Jail, and the ever-rotating roster of inmates housed in that facility, it would be unreasonable to condition class certification on its representative maintaining a live individual claim. The inherently transitory exception was designed to prevent such insuperable obstacles in circumstances like these.

### b. Rule 23(b) Requirements

In addition to satisfying the requirements of Rule 23(a), a putative class must qualify for certification under at least one provision of subpart (b). Classes certified under Rule 23(b)(2) must involve a defendant who "act[ed] on grounds that apply generally to the class," such that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Alternatively, a class may be certified under 23(b)(3), which applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### i. Rule 23(b)(2)

Certification under Rule 23(b)(2) is appropriate because the plaintiff seeks injunctive and declaratory relief that would apply uniformly to all members of the plaintiff's first proposed class—current wheelchair users at Cook County Jail who traverse the RTU ramps. The defendants' alleged conduct—maintaining RTU ramps that are noncompliant with the ADA and Rehabilitation Act—applies to all wheelchair-using detainees who access those ramps. Each class member's claim therefore turns on the same alleged unlawful condition, and the remedy would be identical: injunctive relief requiring the ramps' remediation or accommodation. *See Wal-Mart*, 564 U.S. at 360 (observing that "Rule 23(b)(2) applies [] when a single injunction or declaratory judgment would provide relief to each member of the class.").[6]

---

[6] Contrary to the defendants' position, the fact that individual class members may seek personal damages assessments subsequent and in addition to receiving injunctive and declaratory relief does not violate Rule 23(b)(2). In a 23(b)(2) action, "a declaration is a permissible prelude

ii. Rule 23(b)(3)

In addition to seeking injunctive relief on behalf of current Jail inmates, the plaintiff seeks to certify a broader class under Rule 23(b)(3): "all Cook County Jail detainees who have been assigned to a wheelchair and use a wheelchair to traverse the RTU ramps from March 24, 2021 to the date of entry of judgment." Motion at 2.[7]

Certification under Rule 23(b)(3) is warranted where "questions of law and fact to members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently resolving the dispute in question." Fed R. Civ. P. 23(b)(3). This case passes the superiority bar, since a single, consolidated proceeding is a far more efficient means of deciding the threshold question of the defendants' liability than dozens of parallel proceedings implicating the same question. *See Bennett v. Dart*, No. 18-cv-04268, 2020 WL 1812376, at *3 (N.D. Ill. Apr. 9, 2020) ("As the merits of Plaintiff's proposed class turn upon a single legal question, proceeding as a class achieves economies of time, effort, and expense and promotes uniformity of decision.").

The putative class also demonstrates predominance. The "predominance requirement is satisfied when 'common questions represent a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication.'" *Messner*, 669 F.3d at 815. In general, claims for monetary relief as individualized as those arising from disability-related injuries are ill-suited for classwide resolution under 23(b)(3). In this case, however, the plaintiff seeks certification under the provision only for the limited purpose of resolving a single issue tied to liability: whether the RTU ramps in question complied with federal accessibility standards. The federal rules explicitly permit such a course of action. *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."). As does

---

to a claim for damages," *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 369 (7th Cir. 2012), and "the fact that the plaintiffs might require individualized relief does not preclude certification of a class for common equitable relief," *Pella Corp. v. Saltzman*, 606 F.3d 391, 395 (7th Cir. 2010); *see also Suchanek*, 764 F.3d at 756 ("It is routine in class actions to have a final phase in which individualized proof must be submitted.").

[7] The Seventh Circuit has recognized that "[i]t is possible to certify the injunctive aspects of [a] suit under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3), achieving both consistent treatment of class-wide equitable relief and an opportunity for each affected person to exercise control over the damages aspects." *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999). Accordingly, courts have certified overlapping class definitions under both Rule 23(b)(2) and 23(b)(3) in the same litigation for purposes of injunctive and declaratory relief and monetary relief, respectively. *See, e.g.*, Order, *Walker*, No. 20-cv-00261 (N.D. Ill. June 22, 2023), ECF No. 159.

the Seventh Circuit, which has commented that "a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 800 (7th Cir. 2013); *see also Otero v. Dart*, 306 F.R.D. 197, 207 (N.D. Ill. 2014) ("Even if damages vary among class members, the Court may hold separate liability and damages trials or appoint a magistrate judge to preside over individual damages proceedings.").[8]

Because the plaintiff seeks 23(b)(3) certification solely to resolve a single question common to all members' claims, that question necessarily predominates over all others. *See Bennett v. Dart*, 53 F.4th 419, 420 (7th Cir. 2022) (reversing the decertification of a class of inmates alleging violations of ADA accessibility standards at Cook County Jail on the rationale that, even though individual damages may vary substantially, Rule 23(b)(4) permitted the "application of the [s]tandards [to] be determined class-wide, while leaving to the future any particular inmate's claim to other relief.").

\* \* \*

In sum, the Court concludes that both of the plaintiff's proposed classes satisfy the requirements of Rule 23(a), and that certification is proper under Rule 23(b)(2) and Rule 23(b)(3). The classes are clearly defined and ascertainable, sufficiently numerous, and present common questions of law and fact. The plaintiff's claims are typical of the class, and, while his transfer rendered any individual claim for injunctive relief moot, he remains an adequate representative under the inherently transitory exception. Moreover, certification under Rule 23(b)(2) is appropriate because the requested injunctive and declaratory relief would apply uniformly and dispositively to all class members. In addition, certification under Rule 23(b)(3) is warranted because the plaintiff seeks to certify a single, predominant question of liability—whether the RTU ramps comply with federal accessibility standards—and resolution of that question will advance

---

[8] The defendants claim that the plaintiff cannot seek issue-based certification under Rule 23(c)(4) because he is seeking certification under Rules 23(b)(2) and (3). Sur-Reply 2-3, 8. That argument imagines a conflict where none exists. Rule 23(b) describes the threshold requirements that must be met to certify any class; Rule 23(c)(4)—just like its companion Rule 23(c)(5)—specifies one type of class action that may be brought once those requirements have been met. The provisions are not and have never been deemed incompatible.

The defendants' related assertion that the plaintiff is not seeking issue certification under Rule 23(c)(4) is also false. The initial motion for class certification clearly requested such relief. *See* Mot. at 10 ("The is a case where the Court can certify this case to resolve an '*issue*, [but] not the whole case'" (quoting *Bennett*, 53 F.4th at 420)).

the claims of all class members more efficiently than separate litigation. The motion for class certification is granted.

Date: September 2, 2025

John J. Tharp, Jr.
United States District Judge