IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CUAUHTEMOC HERNANDEZ and WILLIAM MATHIS, <br><br> *Plaintiffs,* <br><br> -*vs*- <br><br> THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, <br><br> *Defendants.* | Case No. 23-cv-16970 <br><br> Judge Sunil R. Harjani <br> Magistrate Judge Keri L. Holleb Hotaling |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS**

Defendants, THOMAS DART, in his official capacity as Sheriff of Cook County, and COOK COUNTY, ILLINOIS, by their attorney EILEEN O'NEILL BURKE, State's Attorney of Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD., submit the following response to Plaintiffs' statement of additional facts:

1. **[a]** Plaintiff Mathis was not using a cane when he entered the Department of Corrections. Dkt 122-26, Mathis Dep 13:10-12. **[b]** An alert for Mathis to use a cane for long distances only became effective on October 16, 2023. Exhibit 1, Mathis Inmate Alerts.

**RESPONSE: [a]** Undisputed for purposes of summary judgment that this is the deposition testimony of Mr. Mathis. **[b]** Undisputed.

2. Plaintiff William Mathis was admitted to the Illinois Department of Corrections on August 29, 2024. Dkt. 122-3, IDOC Profile for William Mathis.

**RESPONSE:** Undisputed.

3. On January 19, 2022, Deputy Director Eric Davis testified in *Walker v. Dart* , 20-cv-261, that it is not for him "to say on a definitive basis" whether the Cermak ramp complies with

1

the ADA structural standards and that is why Cook County is hiring an "Architect of Record" to "make the definitive determination and to design any remediations accordingly." Dkt. 122-5, Davis (1/19/2022) Dep 85:4-15.

**RESPONSE:** Defendants object that the cited deposition testimony does not support this statement of fact and calls for legal conclusion. Eric Davis was asked only about the landing area, and he testified that it appears one is not required. Notwithstanding and without waiving said objections, undisputed that Eric Davis testified that the County hired someone to make a definitive determination about the landing area and to design any remediations accordingly. However, it is important to note that the original design plans called for the rise to be a compliant 30 inches, and a 2022 survey using a laser level confirmed that the ramp was compliant. (Defts' SOAF ¶¶ 4–5.) Only when Cook County proactively hired an outside contractor, using advanced LIDAR technology that Cook County does not possess, was it discovered that the ramp was minimally out of compliance by 2.4 inches of elevation over a 43.64 foot (523.68 inches) run. (*Id.* ¶¶ 6–12.)

4. Deputy Director Davis's declaration dated February 22, 2024, states Cook County intends to assign HDR Architecture as the Architect of Record for the Cermak ramp. Dkt. 140-1, Davis Decl. ¶ 16.

**RESPONSE:** Undisputed.

5. HDR Architecture prepared a Program Analysis Report dated August 2, 2024 for the Cermak Tunnel Renovation which stated: "upon review of the previous study performed by GEC, and review of the feasibility of the options presented, HDR concurs and recommends that the County pursue removal and replacement of the non-compliant existing slab on grade ramp, executed in phased construction to maintain County operations." Exhibit 2 at 1, 4, HDR Cook

2

County Government Cermak Tunnel Renovation Program Analysis Report (to be filed provisionally under seal).

**RESPONSE:** Undisputed.

6. A summary of the HDR Program Analysis Report for the Cermak Tunnel Renovation found the following aspects of the ramp to be "non-compliant":

1) Per Section 405.6 of the 2010 Americans with Disabilities Act Accessibility Guidelines (ADAAG) and the 2009 American National Standards Institute (ANSI) Standard A117.1, the rise for any ramp shall be a maximum of 30-inches. The existing ramp rise is approximately 2.7 feet, which is 32.4 inches.

2) Per Section 505 of the 2010 ADAAG and the 2009 ANSI Standard A117.1, ramp handrails shall be continuous along the full length of the ramp and shall extend horizontally a minimum of 12 inches beyond the top and bottom of the ramp. Since the original construction, anti-ligature handrails have been added to each side of the ramp incline. However, at the top and bottom of the ramp the handrails do not extend a minimum of 12 inches beyond the ramp, and the handrails are not continuous.

Exhibit 2 at 3, HDR Cook County Government Cermak Tunnel Renovation Program Analysis Report (to be filed provisionally under seal)

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is HDR's assessment. However, Defendants dispute that the minor deviations identified in the report violate the ADA or the Rehabilitation Act. The Cermak ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*. Moreover, it is important

3

to note that the original design plans called for the rise to be a compliant 30 inches, and a 2022 survey using a laser level confirmed that the ramp was compliant. (Defts' SOAF ¶¶ 4–5.) Only when Cook County proactively hired an outside contractor, using advanced LIDAR technology that Cook County does not possess, was it discovered that the ramp was minimally out of compliance by 2.4 inches of elevation over a 43.64 foot (523.68 inches) run. (*Id.* ¶¶ 6–12.)

7.      On April 1, 2025, defendants Dart and Cook County disclosed Carl Darr as an expert in *Westmoreland v. Dart*, 23-cv-1851, along with the GEC Report dated April 1, 2024, for the RTU ramps. Dkt. 142-8, Defendants' Rule 26(a)(2)(B) Disclosure in *Westmoreland*. Defendants disclosed the same GEC report for the RTU east tunnel ramp in this case. Dkt. 122-11, Defendants' Rule 26(a)(2)(B) Disclosure in *Hernandez*.

**RESPONSE:** Defendant Sheriff does not dispute the fact of any filing on the docket of *Westmoreland v. Dart*, 23-cv-1851, noting that courts may make take judicial notice of public filings to show what was disclosed. *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022). Defendant Sheriff further notes that while it is appropriate to take judicial notice of prior filings, it is not appropriate to assume the truth of all disputed factual representations made in such separate cases. *See, e.g., Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016).

8.      Deputy Director Davis testified as the Rule 30(b)(6) Designee for Cook County on October 23, 2024, and stated that the current budget for 2025 projects the cost to repair the noncompliant Cermak ramp will be $600,000. Dkt. 142-1, Davis (Cook County 30(b)(6) Designee) (10/23/2024) Dep 4:16-5:7, 23:6-24:7.

**RESPONSE:** Defendants object that the cited deposition testimony does not support the use of word "noncompliant" in statement of fact. Notwithstanding and without waiving said objections, undisputed as to the cost but disputed that the minor deviations identified in the report

4

violate the ADA or the Rehabilitation Act. The Cermak ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

9. Deputy Director Davis agrees that the cost to renovate the RTU east tunnel ramp is similar to the cost to repair the Cermak ramp. Dkt. 142-1, Davis (Cook County Rule 30(b)(6) Designee) (10/23/2024) Dep 92:8-13.

**RESPONSE:** Undisputed.

10. Deputy Director Davis, when discussing the budget to repair the Cermak ramp, said "the ADA is a law" and "[w]e will construct whatever is needed to be constructed" and "whatever it is going to turn out to be, whatever it takes, is what we are going to allocate for it." Dkt. 142-1, Davis (Cook County 30(b)(6) Designee) (10/23/2024) Dep 23:18-24:7.

**RESPONSE:** Undisputed.

11. Mr. Darr agrees that it would be easy to fix the upper non-compliant landing on the RTU east tunnel ramp by moving doors at the top to make the landing a 60-inch clear floor area. Dkt. 142-4, Darr (6/3/2024) Dep 48:23-49:5, 93:19-24.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Defendants object that the cited deposition testimony does not support the use of word "easy" in statement of fact. Notwithstanding and without waiving said objections, undisputed that this is Mr. Darr's testimony. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act. The RTU east tunnel ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

12. In response to a FOIA request seeking video of the RTU east tunnel ramp from February 6, 2025, *see* Exhibit 4 at 3, the Sheriff's Office produced the following video depicting the top of the RTU east tunnel ramp. Exhibit 5, (to be filed as a digital media exhibit). This video,

5

a still image produced below, shows the state of the non-compliant landing at the top of the RTU east tunnel ramp:



Exhibit 5, Video at 6:10 (to be filed as a digital media exhibit)

**RESPONSE:** Defendant's object that the phrase "non-compliant" landing is a legal conclusion. Notwithstanding and without waiving said objections, undisputed that the still image shows the top of the RTU east tunnel ramp but disputed that the landing is "non-compliant." The RTU east tunnel ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

13. Mr. Darr opines that installing handrails on the RTU east tunnel ramp compliant with the ADA "wouldn't require much" and "could be done" in the year 2024. Dkt. 1424, (6/3/2024) Dep 94:12-95:4.

6

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is Mr. Darr's testimony. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act. The RTU east tunnel ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

14. Mr. Darr said the code requires handrail extensions to be 12 inches because "the logical understanding is that, if somebody is approaching a ramp or getting off a ramp, they still might need to have something to hold onto." Dkt. 142-4, Darr (6/3/2024) Dep 64:8-15.

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed that this is Mr. Darr's testimony. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act. The Cermak ramp and RTU east tunnel ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

15. Video of the RTU east tunnel ramp from November 7, 2019, marked Tunnel-CAM 0.108 CMK to RTU West, shows Eugene Westmoreland stumble near the top of the ramp while in possession of a cane. Exhibit 3, Video at 10:01:45 a.m. (to be filed as a digital media exhibit); Exhibit 12, Westmoreland Decl. dated 2/8/2023 ¶¶ 1-2 (foundation for video labeled "Tunnel-CAM 0.108 CMK to RTU West-2019-11-07"); Exhibit 13, Defendants' Response to Statement of Facts in *Westmoreland v. Dart*, 21-cv-4330, ¶ 27.

**RESPONSE:** Defendants object that Eugene Westmoreland is a plaintiff in his own lawsuit, *Westmoreland v. Dart*, 21-cv-4330, and is not a plaintiff in this case. Notwithstanding and without waiving said objections, undisputed as to depiction of Eugene Westmoreland stumbling near the top of the ramp while in possession of a cane. However, Defendants dispute that the minor

7

deviations violate the ADA or the Rehabilitation Act or caused Mr. Westmoreland to stumble. The RTU east tunnel ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*. Defendants also dispute that "stumbling" is an injury under Article III. *See, e.g.*, *Deboard v. Solid Rock Props., LLC*, No. 1:22-CV-435-HAB, 2024 WL 1344761, 2024 U.S. Dist. LEXIS 57690, at *4 (N.D. Ind. Mar. 29, 2024) (holding that "physical difficulty" is not a concrete injury that would establish Article III standing).

16. Video of the RTU east tunnel ramp from November 7, 2019, depicts Eugene Westmoreland brace himself on the wall near the top of the ramp in the vicinity of the noncompliant landing and location where handrail extensions should be 12 inches beyond the ramp. Exhibit 3, Video at 10:02:09 a.m. (to be filed as a digital media exhibit).

**RESPONSE:** Defendants object that this paragraph lacks foundation and calls for a legal conclusion. Notwithstanding and without waiving said objections, undisputed as to depiction of Eugene Westmoreland bracing himself on the wall near the top of the ramp. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act or caused Mr. Westmoreland to stumble. The RTU east tunnel ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

17. Mr. Darr opines that repairing the upper ramp area on the RTU east tunnel ramp that is too steep can be corrected by perhaps saw-cutting out a portion to make the ramp less steep. Dkt. 142-4, Darr (6/3/2024) Dep 95:5-20.

**RESPONSE:** Defendants object that this paragraph lacks foundation and is based on speculation. Notwithstanding and without waiving said objections, undisputed that this is Mr. Darr's testimony. However, Defendants dispute that the minor deviations violate the ADA or the

Rehabilitation Act. The RTU east tunnel ramp substantially complies with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

18. During a hearing before Judge Rowland on March 23, 2023, in *Walker v. Dart*, 20-cv-261, Brian Gainer, the lead attorney for defendants from Johnson and Bell, Ltd., discussed the "surveyor report" of the Cermak ramp. Dkt. 142-3, Transcript from *Walker v. Dart*, 20-cv-261 on 3/23/2023 at 11:1-6. Mr. Gainer acknowledge the surveyor report is not from an "architectural person" and when asked by the Court whether this survey could be defended in front of a jury, he stated "[n]o, I think we need an expert." *Id.* at 12:12-16, 18:16-19:1. During the hearing Judge Rowland stated the plat survey "is not going to fly with a jury" and Mr. Gainer "agree[d] with the [Court's statement]." *Id.* 19:46.

**RESPONSE:** Defendants object that this statement is neither evidence nor admissible. A district court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). "[I]t is universally known that statements of attorneys are not evidence." *Campania Management Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002); *see also R-Boc Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647, 666 n.29 (N.D. Ill. 2017) (pointing out that "statements of lawyers are not evidence and do not count"). Notwithstanding and without waiving said objections, undisputed that defense counsel made this statement at the March 23, 2023, hearing.

19. On March 12, 2024, Deputy Director Davis testified in *Walker v. Dart*, 20-cv-261, as follows about GEC's recommendation regarding the Cermak ramp: "[a]t this point, the variation is such that it seems prudent and in the best interest of the citizenry and the people occupying the facility to go ahead and replace it. The offset is greater than we thought it was." Dkt. 142-2, Davis (3/12/2024) Dep 258:3-259:12.

9

**RESPONSE:** Defendants object that this paragraph is vague, lacks specificity, and contains non-material facts. Notwithstanding and without waiving said objections, undisputed that this is Mr. Davis's testimony and that Defendants want to provide an environment compliant with all ADA guidelines. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act. The Cermak ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

20. Deputy Director Davis testified other ramps at the Cook County Jail, for example the Residential Treatment Unit (RTU) east tunnel corridor adjacent to the Cermak ramp, do not have anti-ligature handrails. Dkt. 142-2, Davis (3/12/2024) Dep 147:7-14. Additionally, Deputy Director Davis testified he has no personal knowledge whether other ramps at the Jail have anti-ligature handrails. Exhibit 2, Davis (3/12/2024) Dep 148:5-9.

**RESPONSE:** Defendants object that this paragraph is vague, lacks specificity, and contains non-material facts. Notwithstanding and without waiving said objections, undisputed that this is Mr. Davis's testimony. However, Defendants dispute that the minor deviations violate the ADA or the Rehabilitation Act. The Cermak ramp and RTU east tunnel ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

21. On August 27, 2025, Gary Keclik, an architect, toured some living units in Division 11 and observed handrails next to the stairs on Living Unit AA and along the second-floor perimeter of Living Unit AA. Dkt. 142-9, Keclik Decl. ¶¶ 1, 3, 7. These railings were not anti-ligature. *Id.*

**RESPONSE:** Defendants object that the declaration of Gary Keclik in another case is inadmissible, undisclosed opinion testimony. Plaintiff never disclosed Mr. Keclik as an expert or provided a report as required by Fed. R. Civ. P. 26(a)(2). *See Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 951 (7th Cir. 2018) ("Rule 26(a)(2)(A) requires a party to disclose

10

the identity of a witness who will present expert testimony under Federal Rule of Evidence 702."); *see also Salgado by Salgado v. GMC*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) (stating that an expert must submit a "complete report" that "include[s] the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor"). Under Rule 37(c)(1), a party who fails to make such disclosures cannot use the witness "to supply evidence on a motion" unless the failure was substantially justified or harmless, which is not the case here. *See Mitchell v. Exxon Mobil Corp.*, 143 F.4th 800, 808 (7th Cir. 2025) (affirming exclusion of undisclosed evidence that the opposing party had no opportunity to test). Notwithstanding and without waiving this objection, undisputed for purpose of summary judgement that this is Gary Keclik's conclusion.

22. Mr. Keclik toured some living units in Division 9 on February 20, 2025. *Id.* ¶ 13. The Division 9 living units he observed, similar to the living units in Division 11, did not have anti-ligature handrails. *Id.* Division 9, according to the Sheriff's webpage, houses maximum and medium security detainees. Exhibit 11 at 3, Printout of "Active Individual in Custody Housing" identifying Division 9 houses maximum and medium security detainees.

**RESPONSE:** Defendants object that the declaration of Gary Keclik in another case is inadmissible, undisclosed opinion testimony. Plaintiff never disclosed Mr. Keclik as an expert or provided a report as required by Fed. R. Civ. P. 26(a)(2). *See Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 951 (7th Cir. 2018) ("Rule 26(a)(2)(A) requires a party to disclose the identity of a witness who will present expert testimony under Federal Rule of Evidence 702."); *see also Salgado by Salgado v. GMC*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) (stating that an expert must submit a "complete report" that "include[s] the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor"). Under Rule 37(c)(1), a party who fails to make such disclosures cannot use the witness "to supply evidence on a motion"

11

unless the failure was substantially justified or harmless, which is not the case here. *See Mitchell v. Exxon Mobil Corp.*, 143 F.4th 800, 808 (7th Cir. 2025) (affirming exclusion of undisclosed evidence that the opposing party had no opportunity to test). Notwithstanding and without waiving this objection, undisputed for purpose of summary judgement that this is Gary Keclik's conclusion.

23. Lonnie Hollis, in response to a question whether inmates with canes, crutches, or walkers are accommodated up or down either the Cermak or RTU east tunnel ramp, stated "[t]hat, I am not sure if I can answer that without being speculative." Dkt. 122-17, Hollis (Sheriff 30(b)(6) Designee) Dep 86:5-87:6.

**RESPONSE:** Disputed. Mr. Hollis testified that any time that an inmate with a cane, crutch, or walker requested assistance, the correctional staff would "look into it and provide assistance." (Pl.'s SOF, Ex. 17, Hollis Dep. 100:16–24.)

24. Mr. Hollis stated there is an expectation that a Sheriff's employee who is escorting a person with a cane, crutch, or walker would "document the request for accommodation" and any accommodation in the Jail Management System (JMS) because "[t]hat's the expectation of the policy." Dkt. 122-17, Hollis (Sheriff 30(b)(6) Designee) Dep 89:2192:14.

**RESPONSE:** Defendants object that this paragraph is immaterial and irrelevant. Notwithstanding and without waiving said objections, disputed that the Lexipol Policy requires to document the request for accommodation. (Pl.'s SOF, Ex. 18, Lexipol Policy 148.). Stating further, Mr. Hollis testified that any time that an inmate with a cane, crutch, or walker requested assistance, the correctional staff would "look into it and provide assistance." (Pl.'s SOF, Ex. 17, Hollis Dep. 100:16–24.).

25. Mr. Hollis had no knowledge whether any person with a cane, crutch, or walker requested an accommodation or was even provided an accommodation during the year prior to his

deposition and stated "[i]f there were instances of such [accommodations], as you described, it should be contained and the expectation that would be that it should be contained in the Jail Management System." Dkt. 122-17, Hollis (Sheriff 30(b)(6) Designee) Dep 102:8-104:10.

**RESPONSE:** Defendants object that this paragraph lacks foundation. Defendants further object that the questions posed to Mr. Hollis were outside the scope of the topics in Plaintiff's Rule 30(b)(6) notice. Notwithstanding and without waiving said objections, disputed to the extent Plaintiff relies on this statement of fact to argue that inmates are not provided assistance. Mr. Hollis testified that any time that an inmate with a cane, crutch, or walker requested assistance, the correctional staff would "look into it and provide assistance." (Pl.'s SOF, Ex. 17, Hollis Dep. 100:16–24.)

26. Prior to his deposition, Mr. Hollis did not look at JMS to see if any person with a cane, crutch, or walker was accommodated up or down the Cermak or RTU east tunnel ramps. Dkt. 122-17, Hollis (Sheriff 30(b)(6) Designee) Dep 87:7-89:20.

**RESPONSE:** Defendants object that this paragraph is immaterial and irrelevant. Notwithstanding and without waiving said objections, undisputed for purposes of summary judgment that this is the deposition testimony of Mr. Hollis. Stating further, Lexipol Policy does not require to document the request for accommodation. (Pl.'s SOF, Ex. 18, Lexipol Policy 148.). Mr. Hollis testified that any time that an inmate with a cane, crutch, or walker requested assistance, the correctional staff would "look into it and provide assistance." (Pl.'s SOF, Ex. 17, Hollis Dep. 100:16–24.)

27. Mr. Hollis had no information and did not "want to speculate" whether class members were accommodated, such as in a wheelchair, in the year prior to his November 18, 2024, deposition. Dkt. 122-17, Hollis (Sheriff 30(b)(6) Designee) Dep 103:13-104:1.

**RESPONSE:** Defendants object that this paragraph lacks foundation. Defendants further object that the questions posed to Mr. Hollis were outside the scope of the topics in Plaintiff's Rule 30(b)(6) notice. Notwithstanding and without waiving said objections, disputed to the extent Plaintiff relies on this statement of fact to argue that inmates are not provided assistance. Mr. Hollis testified that any time that an inmate with a cane, crutch, or walker requested assistance, the correctional staff would "look into it and provide assistance." (Pl.'s SOF, Ex. 17, Hollis Dep. 100:16–24.)

28. Eugene Westmoreland suffered a fall in the afternoon of November 7, 2019, at the Department of Corrections and, because of this fall, "is now confined to a wheelchair." *Westmoreland v. Dart*, 21-cv-4330, 2023 WL 4273661, at *5-6 (N.D.Ill. 2023) (Kennelly, J.) (district court's review of undisputed facts at summary judgment).

**RESPONSE:** Defendants do not dispute that Westmoreland alleged that he fell and that he alleged liability. Defendants do not admit causation or liability in any manner.

29. On August 13, 2021, the Sheriff's Office collected a grievance from Eugene Westmoreland, a wheelchair-user, complaining of pain and burns caused by "going up and down several ramps." Exhibit 6 at 1, Westmoreland Grievance marked Control # 2021 x 10912. Under the "Specific Location of Incident" the grievance identifies "RTU Building – Halls & Court Building – Halls." *Id.*

**RESPONSE:** Defendants object that this statement is hearsay and inadmissible. A district court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Parties may not rely on inadmissible hearsay in summary judgement proceedings the same way they may not rely on such statements in a trial. *Id.*; *see Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996). Notwithstanding

14

and without waiving said objections, this paragraph is disputed. Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long.

30. On December 13, 2022, the Sheriff's Office collected a grievance from Eugene Westmoreland complaining about the pain and injury received when rolling his wheelchair from the RTU to Cermak because of the non-compliant ramps that he found to be steep. Exhibit 7 at 1, Westmoreland Grievance marked Control # 2022 x 18190.

**RESPONSE:** Defendants object that this statement is hearsay and inadmissible. A district court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Parties may not rely on inadmissible hearsay in summary judgement proceedings the same way they may not rely on such statements in a trial. *Id.*; *see Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996). Notwithstanding and without waiving said objections, this paragraph is disputed. Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long.

31. On January 25, 2024, Sabrina Rivero-Canchola responded to a grievance by Raasikh Phillips assigned Grievance # 2024 x 00603. Exhibit 8, Phillips Grievance at 2-3. Phillips complains in this grievance that it was "extremely hard" traversing the ramps from RTU to Cermak with his walker. *Id.* at 1.

**RESPONSE:** Defendants object that this statement is hearsay and inadmissible. A district court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Parties may not rely on inadmissible hearsay in summary judgement proceedings the same way they may not rely on such statements in a trial.

15

*Id.*; *see Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996). Notwithstanding and without waiving said objections, this paragraph is disputed. Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long. Defendants also dispute that difficulty traversing a ramp is an injury under Article III. *See, e.g.*, *Deboard v. Solid Rock Props., LLC*, No. 1:22-CV-435-HAB, 2024 WL 1344761, 2024 U.S. Dist. LEXIS 57690, at *4 (N.D. Ind. Mar. 29, 2024) (holding that "physical difficulty" is not a concrete injury that would establish Article III standing).

32. Phillips avers he has used a walker since November of 2023 due to a medical condition and that traversing the ramps from RTU to Cermak causes him pain and that he fears he may fall. Exhibit 9, Phillips (7/5/2024) Decl. ¶¶ 1-3.

**RESPONSE:** Defendants object that the cited declaration lacks foundation, is based on speculation, and does not support this statement of fact. Phillips has not been disclosed as an expert on the American With Disabilities Act ("ADA"), the Rehabilitation Act, the ADA Standards for Accessible Design, or the Uniform Federal Accessibility Standards and does not have the necessary foundation to opine on the federal statutes and regulations. Notwithstanding and without waiving said objections, this paragraph is disputed. The subject ramps deviated from the ADA Accessibility Guidelines ("Guidelines") for vertical rise by only 1.93 to 2.47 inches. Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long. Defendants also dispute that the Cermak ramp and RTU east tunnel ramp were "steep" or "long." The Cermak ramp and RTU east tunnel ramp substantially comply with the ADA and the Rehabilitation Act, and any technical non-compliance is *de minimis*.

33. The Sheriff's Office collected a grievance from Antoine Pierce on March 12, 2024, complaining of pain walking up and down the Cermak ramp with a cane. Exhibit 10 at 1, Pierce Grievance assigned Control # 2024 x 03041.

**RESPONSE:** Defendants object that this statement is hearsay and inadmissible. A district court "may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Parties may not rely on inadmissible hearsay in summary judgement proceedings the same way they may not rely on such statements in a trial. *Id.*; *see Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996). Notwithstanding and without waiving said objections, this paragraph is disputed. Plaintiffs have offered no evidence or authority for the assertion that a deviation of only a few inches will cause a cognizable difference in the amount of effort required to traverse ramps that are over 40 feet long.

34. Deputy Director Davis believes it is feasible to extend the handrails on "two of the four ends" on the Cermak ramp with "a custom extension." Dkt. 142-2, Davis (3/12/2024) Dep 150:6-15.

**RESPONSE:** Defendants object that this statement is incomplete and lacks specificity. Notwithstanding and without waiving said objection, disputed. Cermak ramp is no longer a ramp and has been replaced with an extended pedestrian walkway and therefore is not required to comply with the requirements of a "ramps." Defendants' Exhibit A, Davis Decl. ¶ 5.

35. Mr. Hollis, in response to questions whether signs are posted near the Cermak or RTU east tunnel ramp, said "I'm not sure if the signage is still there, I haven't been in the tunnels in a while." Dkt. 122-17, Hollis (Sheriff 30(b)(6) Designee) Dep 80:21-23.

**RESPONSE:** Defendants object that the cited declaration lacks foundation and is based on speculation. Notwithstanding and without waiving said objection, disputed. Mr. Hollis testified that he has not been there in a while and that, as a result, there is no way for him to know any information regarding the posted signs near the Cermak or RTU east tunnel ramp. (Pl.'s SOF, Ex. 17, Hollis Dep. 80:21–81:5, ECF No. 122-17.)

        Respectfully submitted,

        EILEEN O'NEILL BURKE
        State's Attorney of Cook County

Dated: October 6, 2025        /s/ Adnan Shafi
        Special Assistant State's Attorney

Monica Burkoth (burkothm@jbltd.com)
Samuel D. Branum (branums@jbltd.com)
Adnan Shafi (shafia@jbltd.com)
Nelson A. Aydelotte (aydelotten@jbltd.com)
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770