**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CUAUHTEMOC HERNANDEZ and WILLIAM MATHIS, | ) ) ) | |
| *Plaintiffs,* | ) ) | Case No. 23-cv-16970 |
| *-vs-* | ) ) ) | Judge Sunil R. Harjani Magistrate Judge Keri L. Holleb Hotaling |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) ) ) | |

## DEFENDANTS' REPLY IN SUPPORT OF SUMMARY JUDGMENT

Defendants, THOMAS DART, in his official capacity as Sheriff of Cook County, and COOK COUNTY, ILLINOIS, by their attorney EILEEN O'NEILL BURKE, State's Attorney of Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD., respectfully submit their Reply in support of their motion for summary judgment. (Dkt. 141.)

### INTRODUCTION

Plaintiffs' response brief does not create a triable issue of fact. Plaintiffs rely on broad generalizations, speculative testimony, and mischaracterizations of the record to suggest that Defendants concede ADA noncompliance or deliberate indifference. But the record shows otherwise. The undisputed evidence demonstrates: (1) Plaintiffs lack standing to pursue claims on behalf of the certified class; (2) even if structural deviations exist, they are minor and did not deny Plaintiffs meaningful access to programs, services, or activities at the Cook County Department of Corrections; and (3) Plaintiffs' individual claims fail because no reasonable jury could find deliberate indifference. Plaintiffs' attempt to repackage maintenance and improvement projects into federal statutory violations cannot survive summary judgment.

1

Indeed, the record shows that Defendants wanted the ramps in question to be compliant upon construction, subsequent testing confirmed they were compliant, and only when Defendants *sua sponte* conducted additional advanced testing with LIDAR technology to ensure compliance was it discovered that there were minor deviations, which Defendants have begun to remedy. Plaintiffs are attempting to punish Defendants for good deeds. Nevertheless, any ramp deviations were *de minimis*, caused no injury greater than *de minimis*, and did not prevent any disabled individual from accessing a program, service, or activity.

## ARGUMENT

Plaintiffs' response confirms that they seek an abstract declaration that the Cermak and RTU east tunnel ramps fail ADA structural specifications without carrying their burden to prove Article III standing or any denial of access under Title II. The party invoking the court's jurisdiction bears the burden of establishing the elements of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The Seventh Circuit requires concrete, particularized harm fairly traceable to the challenged conduct with evidence at summary judgment. *See Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020).

The record here shows minor dimensional variances over long, 40-plus-foot runs (Cermak: 43.64 feet with a 2.4-inch surplus rise; RTU: upper run 25.95 feet with 1.93-inch variance and lower run 30.4 feet with 2.47-inch variance), and handrail extension limits stemming from anti-ligature safety requirements in a correctional environment. Defs' SOAF ¶¶ 11–15, 22–23. Plaintiffs point to no instance where these specific variances caused them to miss, be turned away from, or be denied any medical appointment, service, program, or activity. To the contrary, Plaintiff Hernandez testified that traversing the ramps "irritated" his leg, back, and shoulder, but did not prevent him from reaching appointments; Plaintiff Mathis likewise admitted the Cermak

ramp never prevented him from attending medical appointments, and his refusals coincided with gout flares rather than any staff denial of assistance. Defs' SOAF ¶¶ 29–39. Indeed, even if the Plaintiffs really did experience "irritation" or other minor difficulties, they are unable to establish a causal link between their *de minimis* harms and the minimal variances, as opposed to those irritations being caused by the entire process of traversing from their living unit to their ultimate destination and back again. Those facts are dispositive of standing and of the merits under Seventh Circuit law.

**I.      Plaintiffs Do Not Establish Article III Standing With Record Evidence of Concrete Injury Traceable to the Specific Ramp Variances They Challenge.**

Standing is not dispensed in gross and must be proven for each claim and requested relief; at the summary-judgment stage, plaintiffs must "set forth" specific facts showing a concrete, particularized injury fairly traceable to the defendant's challenged conduct and likely redressable by the judgment they seek. *Spuhler*, 983 F.3d at 284–86; *Hummel v. St. Joseph Cnty. Bd. of Comm'rs,* 817 F.3d 1010, 1019 (7th Cir. 2016); *Larkin v. Fin. Sys. of Green Bay, Inc*., 982 F.3d 1060, 1064–69 (7th Cir. 2020). Plaintiffs' arguments fall short because they never bridge the causal gap between the inches-level variances they identify and any concrete harm. The undisputed measurements show that the Cermak ramp's surplus is 2.4 inches of elevation over approximately 43.64-foot run and that the RTU ramp variances of the upper ramp deviation of 1.93 inches over 25.95- foot run and rise of lower ramp deviation of 2.47 inches over a 30.4-foot horizontal run. Defs' SOAF ¶¶ 11–12, 22–23.

Plaintiffs identify no medical record, grievance disposition, transport log, or deposition testimony demonstrating that these variances—as opposed to ordinary exertion over long internal distances or preexisting conditions—caused a missed or denied service. Mathis's testimony that he refused appointments when his gout flared (with refusals dated October 31, 2023, and February

16, 2024) does not establish that any ramp specification, rather than the gout itself, was the but-for cause of any missed appointment. Defs' SOAF ¶¶ 36-39. *See Baysal v. Midvale Indem. Co*., 78 F.4th 976, 978 (7th Cir. 2023) (standing requires concrete injury "caused by the asserted wrong") (citing *Department of Education v. Brown*, 600 U.S. 551 (2023)). Hernandez's description of "pain" or "irritation" likewise does not show that the extra inches of rise or the absence of twelve-inch handrail extensions prevented him from accessing any program or appointment. Defs' SOAF ¶¶ 29–35. Instead, he testified that the pain was caused by walking long distances generally, not due to traveling on the ramps, specifically. *Id.* ¶ 29. There may be cases where a seemingly minor variance matters—a doorway three inches too narrow for a wheelchair to fit cannot be overcome, or shelf three inches too high cannot be reached. But Plaintiffs have offered no evidence that a ramp a few inches too high causes the same sort of barrier to access or would lead to any injury for a user. Thus, no concrete injury can be seen being inflicted because of the ramps.

Under Seventh Circuit precedent, bare technical noncompliance or a consultant's recommendation to rebuild as alleged by plaintiffs is not itself an Article III injury. *See Casillas v. Madison Ave. Assocs., Inc*., 926 F.3d 329, 333–34 (7th Cir. 2019) (stating that a plaintiff cannot demonstrate standing simply by pointing to a violation; the plaintiff must show the violation caused a concrete injury). Because Plaintiffs have not offered admissible evidence tying the identified variances to a concrete, particularized injury, the Court lacks jurisdiction to issue the advisory structural ruling they seek. *See Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016).

Nor does class procedure manufacture standing. The named plaintiffs needed standing when they filed, and if they never had it, jurisdiction never attached regardless of certification.

*Walters v. Edgar*, 163 F.3d 430, 432–33 (7th Cir. 1998). Plaintiffs' reliance on *Scott v. Dart*, 99 F.4th 1076 (7th Cir. 2024), is misplaced. *Scott* held that the prospect of an incentive award can *preserve* a personal stake against mootness in a certified damages class, it did not hold that an incentive award *creates* injury-in-fact where none exists or that courts may issue stand-alone declarations on structural compliance without concrete harm. If Plaintiffs' interpretation of the law were correct, then any person (whether they suffered an injury or not) could file a putative class action seeking an incentive award and have standing based on that incentive award. In other words, anyone could create standing just by filing a class action. This, however, is not the law. *See Walters*, 163 F.3d at 432–33. Article III is a threshold requirement that must be undisputedly established with evidence before deciding the merits of the case. Because Plaintiffs have not met their burden of showing a concrete injury traceable to the minor deviations of the ramps, this Court must deny Plaintiffs' motion and grant Defendants' motion. *See Flynn v. FCA US LLC*, 39 F.4th 946, 953–54 (7th Cir. 2022).

In the alternative, if the Court does not find that Plaintiffs lack standing as a matter of law, then the issue needs to be presented to the trier of fact and Plaintiffs' motion must be denied. It is well-established that where genuine issues of material fact exist as to standing, those issues must be tried by a jury. "[I]n a case . . . that proceeds to trial, the specific facts set forth by the plaintiff to support standing 'must be supported adequately by the evidence adduced at trial.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted)).

## II.     The Facts Show Plaintiffs Received Functional Access with Reasonable Assistance.

Even if the Court reaches the merits, Plaintiffs' theory fails because Title II and Seventh Circuit law look to whether a qualified individual was denied the benefits of a service, program,

or activity by reason of disability, not to technical deviations in a vacuum. *Wagoner v. Lemmon,* 778 F.3d 586, 592 (7th Cir. 2015); *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). The summary-judgment record shows Plaintiffs accessed services and appointments and that detainees using canes, crutches, or walkers were provided staff assistance, wheelchairs, or carts as needed, with signage and training directing staff to accommodate mobility limitations. Defs' SOAF ¶¶ 24–28, 29–39. Plaintiffs identify no instance where necessary assistance was requested and denied, resulting in the loss of any medical service or program. *Id*. ¶¶ 29–39. Against this record, consultant opinions (who were in fact hired by the County by their own accord to best serve their citizens) that it would be optimal to re-pour concrete or relocate doors do not establish a statutory violation absent evidence that detainees were actually denied program access. *Hummel,* 817 F.3d at 1019.

Moreover, the ADA's regulations recognize equivalent facilitation: departures from particular technical specifications are permitted where equivalent access is provided. *See* 28 C.F.R. § 35.151(c)(1)–(2). In a correctional facility, anti-ligature constraints are a legitimate safety consideration affecting the availability of specific handrail fittings, and where anti-ligature extensions are not available, staff assistance and mobility devices ensure equivalent access in practice. Defs' SOAF ¶¶ 13–15, 24–28, 32–34, 39. Plaintiffs offer no admissible evidence that safe, anti-ligature extension fittings satisfying the twelve-inch specification exist for this application or that the absence of such extensions caused any detainee to be denied services.

Plaintiffs' allegations that the intermediate landing is non-compliant does not show any connection resulting in any injuries to the Plaintiffs. The County's outside contractor measured a total surplus rise of 2.4 inches over a 43.6 feet Cermak run, and that the RTU ramp variances of the upper ramp deviation is 1.93 inches over 25.95- foot run and rise of lower ramp deviation is

2.47 inches over a 30.4-foot horizontal run. Plaintiffs nonetheless present no transport record, medical scheduling log, or sworn account establishing that the absence of an intermediate landing, as opposed to overall distance or personal medical conditions, caused a denial of a service, program, activity, or even injury. Defs' SOAF ¶¶ 11–12, 22–23, 29–39.

As the Seventh Circuit explained in *Jaros*, "the presence of grab bars would not have made a difference because Jaros concedes that he experiences the same 'severe pain' whether walking, sitting, standing, or lying in bed." *Jaros,* 684 F.3d 667, 671 (7th Cir. 2012). The same is true here. Plaintiff Hernandez testified that the "pain" was caused by walking long distances generally, not due to traveling on the ramps specifically, and that walking the ramps "irritated" his leg, back, and shoulder, but admitted he was never prevented from attending a medical appointment. Defs' SOAF ¶¶ 29–39. Plaintiff Mathis acknowledged that his refusals to attend Cermak appointments occurred when his gout flared up, not because the slope or landing design barred him from access. *Id*. Just as in *Jaros*, where the claimed structural feature would not have altered the plaintiff's pain, here the record shows that Plaintiffs' underlying conditions, not the minor slope or landing variances, explain their discomfort. Under *Jaros* and *Wagoner*, Title II liability does not arise without proof of a denial of benefits, and Plaintiffs' record does not supply that element.

## III. Plaintiffs' "de minimis" Rejoinder Misstates Defendants' Argument; The Problem is Causation and Materiality, and Plaintiffs' Facts do Not Create a Triable Issue.

Plaintiffs respond that "de minimis non curat lex is not Latin for close enough for government work." Pls.' Reply at 1–2 (quoting *Mitchell v. JCG Indus*., Inc., 745 F.3d 837, 843 (7th Cir. 2014)). *Mitchell* concerned compensability of short donning/doffing periods under the FLSA; it did not alter Article III's injury requirement or Title II's program-access framework. Defendants' point is factual and rooted in causation: where variances are mere inches over long runs and handrail-extension geometry is constrained by anti-ligature safety, Plaintiffs must still

prove that those variances—not preexisting conditions, not long intra-facility distances generally, and not self-selected refusals during gout flares—caused a denial of services. The current record does not allow a reasonable jury to find that causal link. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) (stating that summary judgment is not appropriate if the record allows a reasonable jury to find for the nonmoving party). Defendants' point is not that small differences, in all cases, don't matter. Defendants' point is that Plaintiffs have not and cannot establish that the small differences here caused them any denial of services, and as such Defendants are entitled to summary judgment.

## IV. Plaintiffs' Damages Theory Fails Because the Record Defeats Deliberate Indifference as a Matter of Law.

To recover damages, Plaintiffs must show intentional discrimination, typically via deliberate indifference—knowledge that a violation of a federally protected right was substantially likely coupled with a failure to act. *Lacy v. Cook County*, 897 F.3d 847, 856–63 (7th Cir. 2018); *Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020); *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022). The undisputed evidence shows the opposite. With respect to the Cermak ramp in particular, the Sheriff's Office and County intended for the ramp to be compliant and thought it was compliant based on a subsequent study. Defs' SOAF ¶¶ 4–5. Further, neither the Sheriff's Office nor the County had any knowledge that the contractor who constructed the RTU ramp did not construct the ramp in compliance with all structural standards, or, at the very least, Plaintiffs have no evidence of such knowledge.

Nonetheless, Cook County commissioned campus-wide accessibility assessments covering approximately 11 million square feet, surveyed the ramps, retained Globetrotters Engineering Corporation, considered design tradeoffs in light of anti-ligature safety, and installed handrails along the ramp runs while evaluating feasible configurations. Defs' SOAF ¶¶ 1, 4–5, 9, 11–15, 20,

22–23. Plaintiffs point to consultant recommendations and later plans indicating re-pouring concrete or relocating doors, but those documents reflect ongoing evaluation and mitigation, not the culpable mental state *Lacy* requires. Plaintiffs identify no evidence that, before commissioning assessments and retaining experts, Defendants knew a violation of a federally protected right was substantially likely and nevertheless elected inaction. The County's iterative steps to assess and address conditions defeat deliberate indifference as a matter of law on this record.

**V.      Plaintiffs' Rehabilitation Act Theory is Waived and Independently Fails for Lack of Proof That the Relevant "Program or Activity" Received Federal Funds.**

Plaintiffs' briefing treats ADA and Rehabilitation Act claims as interchangeable and does not develop a Rehabilitation Act-specific analysis. Pls.' Reply Mot. at 12-13. The Seventh Circuit deems arguments waived when presented only in undeveloped fashion. *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 848 F.3d 822, 829 (7th Cir. 2017). In any event, the Rehabilitation Act requires proof that the "program or activity" whose operations are at issue received federal financial assistance, and "program or activity" means the operations of the relevant department or agency that received funds—not the entire local government. 29 U.S.C. § 794(b); *Schroeder v. Chicago*, 927 F.2d 957, 962 (7th Cir. 1991); *Winfrey v. City of Chicago*, 957 F. Supp. 1014, 1024 (N.D. Ill. 1997). Plaintiffs cite generalized funding to other County functions at unspecified times rather than proof that the department responsible for the ramp construction or operation received federal funds during the relevant period. That evidence pointed out by the Plaintiffs is insufficient and warrants summary judgment for Defendants on the Rehabilitation Act claim independent of the Title II analysis.

**CONCLUSION**

The Seventh Circuit requires Plaintiffs, at summary judgment, to prove a concrete, particularized injury fairly traceable to the specific variances they challenge. The record does not

9

show that the *de minimis* deviations caused any detainee to be denied a medical appointment, service, or program. The record instead shows equivalent facilitation and program access through staff assistance, wheelchairs, and carts and shows continuous evaluation inconsistent with deliberate indifference. Plaintiffs' Rehabilitation Act claim is waived and, in any event, unsupported by evidence that the relevant "program or activity" received federal funds.

For these reasons, Defendants THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS respectfully request that this Honorable Court deny Plaintiffs' motion for partial summary judgment, grant Defendants' motion for summary judgment, and grant such other relief that this Court deems just and appropriate.

Respectfully submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

Dated: October 6, 2025

/s/ Adnan Shafi
Special Assistant State's Attorney

Monica Burkoth (burkothm@jbltd.com)
Samuel D. Branum (branums@jbltd.com)
Adnan Shafi (shafia@jbltd.com)
Nelson A. Aydelotte (aydelotten@jbltd.com)
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770