IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Cuauhtemoc Hernandez and William Mathis, <br><br> *Plaintiffs,* <br><br> -vs- <br><br> Thomas Dart, Sheriff of Cook County, and Cook County, Illinois, <br><br> *Defendants.* | 23-cv- 16970 <br><br> Judge Sunil R. Harjani |

**PLAINTIFF'S JOINT STATUS REPORT**

The plaintiff, pursuant to the Court's order entered on November 21, 2025, Dkt. 160, files the following status report to respond to the Court's questions.

**Plaintiff's Position**

1. **Background**

When *Hernandez* was filed, it concerned only the Cermak ramp, and plaintiff's counsel expressly indicated on the Civil Cover Sheet that the case was related to *Walker v. Dart*, Case No. 20-cv-261. Dkt. 2, Civil Cover Sheet. *Walker* is a class action regarding wheelchair-users traversing the noncompliant Cermak ramp. Defendants represent the Cermak ramp "now no longer exists" and has been replaced with an ADA compliant walkway. *See* Dkt. 158-1, Davis (9/19/2025) Decl. ¶ 5.

Plaintiff's counsel filed *Mathis v. Dart*, Case No. 24-cv-1127, on February 8, 2024. The *Mathis* Civil Cover Sheet indicated the case was related to *Westmoreland v. Dart*, Case No. 23-cv-1851, pending before Judge Tharp, Jr. Exhibit 1, *Mathis* Civil Cover Sheet. The putative class in *Westmoreland*, comprised of wheelchair-users, alleged the RTU ramps

violated the ADA structural standards. *Mathis* then was assigned to Judge Tharp, Jr. and Magistrate Judge Gilbert, the same judges assigned to *Westmoreland.*

The *Mathis* plaintiff requested to represent Rule 23(b)(2) and (b)(3) classes of individuals prescribed canes, crutches, and walkers alleging the RTU east tunnel ramp violated the ADA structural standards. Exhibit 2, *Mathis* Amended Complaint ¶¶ 23-24. The *Mathis* plaintiff also requested to represent a Rule 23(b)(2) class concerning the allegedly non-compliant Cermak ramp. *Id.* ¶ 23. Any request for injunctive relief by the Rule 23(b)(2) plaintiff class represented by Mr. Mathis now appears to be moot based on defendants' representations at summary judgment that the area now complies with the ADA structural standards.

On July 25, 2024, Defendants Sheriff and Cook County moved to "consolidate and reassign" *Mathis* and *Rogers v. Dart*, Case No. 24-cv-3739, putative class actions involving individuals who have prescribed use of canes, crutches, or walkers. Dkt. 34, Motion at 1.

At the July 30, 2024 hearing on defendants' motion, plaintiff's counsel reiterated that *Hernandez* was marked as related to *Walker* on the Civil Cover Sheet. *See* Dkt. 37, Transcript from 7/30/2024 Hearing at 5:21-23. Plaintiff's counsel also alerted this Court that another matter, *Westmoreland v. Dart*, Case No. 23-cv-1851, was pending in the Northern District involving a putative class of wheelchair-users traversing the RTU ramps. *Id.* at 4:18-5:9, 13:22-15:8.

In a joint status report filed on August 6, 2024, the parties confirmed that *Walker* and *Westmoreland* remain pending and involve the same ramps, but only with respect to wheelchair-users. *See* Dkt. 38, Joint Status Report at 1-2.

On August 7, 2024 the Court granted defendants' motion and consolidated and reassigned *Hernandez* with *Mathis v. Dart*, 24-cv-1127, pursuant to Federal Rule of Civil Procedure 42 and Local Rule 40.4. Dkt. 39, Minute entry.

### 2. The reason for separate ADA cases for the same ramps

The explanation for why there are separate ADA cases involving the Cermak and RTU ramps before different judges is because defendants requested to have the putative class actions involving canes, crutches and walkers assigned to this Court. Judge Tharp, Jr. was originally assigned all cases that primarily involved the RTU ramps (*Westmoreland* and *Mathis*) and defendants successfully moved to combine *Mathis* and *Hernandez*.

### 3. What if one judge finds an ADA violation and the other does not on the same ramp?

The Court is correct that one court could find an ADA violation while another court could find no violation concerning the same ramp.

It is unlikely, however, that two judges in the Northern District of Illinois would reach different conclusions about whether the ramps violate the ADA structural standards. As the Seventh Circuit explained in *Bennett,* when applying federal accessibility standards to toilets and showers, these type of cases "present what appears to be a straightforward question." *Bennett v. Dart*, 53 F.4th 419, 420 (7th Cir. 2022) (*Bennett II*) (*per curiam*). The same is true here. Defendants hired two architects – Globetrotters Engineering Corporation and HDR – and each conclude that the Cermak ramp violates the ADA because the rise was too high and the newly installed handrails failed to meet structural requirements. According to defendants, bringing this area into compliance would cost approximately $600,000. Dkt. 1558, Def. LR Resp. ¶¶ 4-5, 8. This ramp "now no longer exists" and this

area is now compliant with the ADA, according to Eric Davis, Cook County's Deputy Director for Capital Planning and Policy. Dkt. 158-1, Davis (9/19/2025) Decl. ¶¶ 1-5. Accordingly, as with Cermak, it is unlikely any reasonable factfinder could conclude that the prior ramp complied with the ADA structural standards.

Similarly, defendants' retained architectural expert, Globetrotters Engineering Corporation (GEC), inspected the RTU east tunnel ramp twice in January 2024 and issued a report on April 1, 2024, concluding that the ramp also failed to comply with the ADA structural standards for multiple independent reasons. *See* Dkt. 139, Def. LR Resp ¶¶ 27-28. Mr. Darr of GEC identified several structural modifications necessary to bring the ramp into compliance, and the parties agree that Cook County has no projected date for approving funds for these repairs. *Id.* ¶¶ 33-34. The parties also agree that the cost of repairing the RTU ramp is comparable to the cost of repairing the Cermak ramp – approximately $600,000. Dkt. 158, Def. LR Resp ¶¶ 8-9. On this record, there is no genuine dispute that the RTU ramp violates ADA structural standards, and no reasonable finder of fact could conclude that the ramp, in its current condition, complies with the ADA.

### 4. Proposals to further consolidate litigation regarding the ramps

In theory, there are only two potential options to limit the number of judges addressing the straightforward question whether each of the ramps complies with the ADA structural standards.

First, *Hernandez* and *Westmoreland* could be transferred to Judge Rowland's *Walker* case. But this approach risks substantially delaying resolution of the *Walker* class action, which is limited to the Cermak ramp. The Seventh Circuit has already expressed concern about the slow pace of jail-accessibility class litigation. *Bennett II*, 53 F.4th at 420

(directing the district court to resolve the case "with dispatch" on remand). Judge Rowland has acknowledged this same concern in *Walker*, "a 2020 case." Exhibit 3, *Walker* 5/30/2024 Transcript at 15:14-24. Consolidating additional cases into *Walker* would only complicate and prolong the pending ruling on whether the Cermak ramp complied with the ADA structural standards, which is the issue certified under Rule 23(c)(4).

Second, the Court could reconsider its August 7, 2024 consolidation and reassignment of *Mathis*. *See* Dkt. 39, Minute entry. Because *Mathis* was administratively terminated on August 12, 2014, Dkt. 32, Minute entry, that case would need to be reopened and reassigned back to Judge Tharp, Jr., who is already presiding over *Westmoreland*, the other case involving the RTU ramps. The Court could then transfer the original *Hernandez* case - only concerning a Rule 23(b)(3) class relating to the Cermak ramp - to Judge Rowland's *Walker* case. This path would almost certainly require formal notice to the class members, which in turn will increase litigation costs and may create additional procedural complications.

In plaintiff's view, either option is likely to delay resolution of the class wide issues, rather than streamline them. The core question – whether each ramp complies with the applicable ADA structural standards – is straightforward, and adding procedural complexity will only prolong the litigation.

### 5. Conferral with defense counsel regarding the Court's questions

Immediately following the Court's order on November 21, 2025, at 2:29 pm, class counsel sent defense counsel an email at 3:36 pm seeking a conferral on the Court's questions. *See* Exhibit 4, T.Morrissey email sent 11/21/2025 at 3:36 pm. Defense counsel

was not available for a phone conferral until November 24, 2025 at 2:00 pm. *Id.* S.Branum e-mail sent 11/24/2025 at 11:59 am.

**Defendants' Position**

Plaintiffs sent Defendants a draft of this status report at 2:41pm the day the status report was due, stating that Plaintiffs "need to file this around 3:00 pm so the Court has enough time to review for tomorrow's hearing." Plaintiffs raise several issues that Defendants would like the opportunity to discuss with their clients. Defendants request to update the Court on their position next week given that some client contacts may not be available until after the Thanksgiving break.

Respectfully submitted,

| /s/ Patrick Morrissey<br>Thomas G. Morrissey, Ltd.<br>10257 S. Western Ave.<br>Chicago, IL 60643<br>(773)233-7901<br><br>*An attorney for the plaintiff class* | /s/ Samuel Branum  (with consent)<br>Johnson & Bell, Ltd.<br>33 W. Monroe St., Suite 2700<br>Chicago, IL 60603<br><br>*An attorney for defendants* |
|---|---|