1

```
                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

CORNELIUS WALKER,               )  Case No. 20 C 261
                                )
           Plaintiff,           )
                                )
       v.                       )
                                )
THOMAS DART, Sheriff of Cook    )
County, and COOK COUNTY,        )
ILLINOIS,                       )  Chicago, Illinois
                                )  May 30, 2024
           Defendants.          )  9:45 a.m.

         TRANSCRIPT OF PROCEEDINGS - MOTION HEARING
             BEFORE THE HONORABLE MARY M. ROWLAND

APPEARANCES:

For the Plaintiff:    THOMAS G. MORRISSEY LTD.
                      BY:  MR. PATRICK W. MORRISSEY
                      BY:  MR. THOMAS G. MORRISSEY
                      10257 S. Western Avenue
                      Chicago, Illinois 60643

For the Defendants:   JOHNSON & BELL LTD.
                      BY:  MR. SAMUEL D. BRANUM
                      33 W. Monroe Street, Suite 2700
                      Chicago, Illinois 60603

Court Reporter:       LAURA R. RENKE, CSR, RDR, CRR
                      Official Court Reporter
                      219 S. Dearborn Street, Room 1224
                      Chicago, Illinois 60604
                      312.435.6053
                      laura_renke@ilnd.uscourts.gov
```

2

(Proceedings heard in open court:)

THE CLERK: Calling 20 C 261, Walker v. Dart.

THE COURT: Good morning.

MR. PATRICK MORRISSEY: Good morning, your Honor. Patrick Morrissey on behalf of the plaintiff class.

THE COURT: Good morning.

MR. THOMAS MORRISSEY: Thomas Morrissey on behalf of the class.

THE COURT: Good morning.

MR. BRANUM: Good morning. Samuel Branum on behalf of defendants.

THE COURT: Good morning. I'm sorry to keep you waiting.

Okay. I know you've got a motion to amend the pleading, amend the complaint, which is to add this state law claim from January. And I don't think it's late or anything like that given that the law came into effect in January.

But I am concerned that it's not retroactive, and I've read the *Mendoza* case. So that's my only issue.

But can I find out what else is happening in the case because this case has lasted a long time, and you have motions that are being briefed or are just recently briefed for summary judgment. And that's -- in my mind, that's the end of the case, right?

MR. BRANUM: That's our understanding.

3

THE COURT: So what would happen if this amended --

MR. BRANUM: I have --

THE COURT: Yeah, so bring me up to date.

MR. BRANUM: Defendants have a response --

THE COURT: Go ahead, yeah.

MR. BRANUM: Defendants have a response brief due on Monday for their summary judgment.

THE COURT: Okay. Okay.

MR. BRANUM: And then they would have a reply due.

THE COURT: Okay.

MR. BRANUM: And it's my understanding that would be the last step.

THE COURT: Okay. And that's the ramp. And then we're done with the case, right?

MR. BRANUM: For trial.

MR. PATRICK MORRISSEY: Your Honor, there's the pending motion for a permanent injunction. Our contention is class members continue to go up and down this ramp, and their rights are being violated.

Just as recently as two days ago, I obtained video of wheelchair users going down the ramp unassisted, which is contrary to what the Sheriff contends is their policy. So -- and there are people who are class members who continue to grieve that they're not helping up and down the ramp.

So our contention is until this ramp is remedied, the

4

class continues to expand. And we contend rights continue to be violated by moving up and down this noncompliant ramp.

THE COURT: So this is my question about the ICRRRA -- right? -- the amendment, because let's say it's not retroactive -- right? -- which is what Judge Daniel says. But wouldn't it apply to people who are using the ramp today or who were using the ramp from January 2nd until next month? So that's what I don't get.

And I don't know the facts of *Mendoza*, and maybe he -- I know he was getting ready for trial. It was two weeks before trial, and Judge Daniel dealt with all that. But if he was somebody that was just looking -- and I didn't look at his complaint.

But if he was somebody that was just looking for relief because he had been in the jail a year ago, or whatever his situation was, and he wanted to get emotional distress damages and he was saying, "Hey, I want to go back in time and get those," and Judge Daniel is saying, "No, you can't. I'm not going to instruct the jury on that," okay. Fair enough.

But if they have a class -- and I don't know exactly how we would do this. But wouldn't the class members who were there as of January 1st, 2024, be entitled to this relief, even though people who were released before January 2024 would not be entitled to this relief because it wouldn't be retroactive? So that's what I'm trying to figure out.

Exhibit 3 Page 1

5

MR. BRANUM: And that point is exactly what -- we thought of the same point when we drafted our response. And we addressed that point on page 4, Section 2.

THE COURT: Okay.

MR. BRANUM: And this is the argument, that this case does not involve damages to class members. Those class members -- right now we don't even know if any of those class members are disabled. There could be individuals who are malingering. The first element of a claim under an ADA is whether they're disabled.

THE COURT: Okay. So the -- wait a minute. The Sheriff has people in wheelchairs who are not disabled. Is that the idea?

MR. BRANUM: Yes. There was actually a trial where they had someone in a wheelchair who had quads that were huge. And the jury found that he was not disabled. There was medical testimony that said he was able to walk.

But when you have ADA claims, when you have litigation, is it easier to let someone sit in a wheelchair or potentially expose yourself to a lawsuit?

So there's a lot of issues. I'm not saying everyone is malingering.

THE COURT: Uh-huh.

MR. BRANUM: But there are individuals who malinger. That is a fact.

6

THE COURT: Okay. But that would -- okay. That's interesting to me. I've never heard of that. Is that -- wouldn't that be -- that wouldn't be a reason not to amend the complaint, though, would it? I mean, that particular person would not be entitled to damages, and it sounds like that person doesn't belong in the class.

But isn't that a different issue for me to have a problem with or for them to have a problem with than this motion?

MR. BRANUM: This motion addresses a claim that's dependent on a violation of the Americans with Disabilities Act. And for an individual class member to succeed on that claim, they have to prove every element, that they're a qualified individual with a disability being one of those elements.

That's why this class could not be certified as an entire class. It was only certified as an issue to get rid of these individual issues that predominated. And that's where the Seventh Circuit said, "Well, you can have this class on a discrete issue." So that is the discrete issue that's going to be resolved on behalf of the class.

The class members will then have -- if they succeed would have a declaratory judgment that the Cermak ramp did or did not comply with the regulatory standards.

They would then be able to take that, file an

7

individual suit for damages, and it would be in those individual suits where they would have to at least prove that they are a qualified individual with a disability. They could file that suit to add a claim based on the Illinois Civil Rights Remedies Restoration Act.

And it would be in those individual suits for damages that they would -- that these individuals who have been alleged to have had a violation post effective date of the act would then be able to pursue that claim in these individual suits.

So to have that claim in this suit is meaningless because they cannot recover damages in this suit.

MR. PATRICK MORRISSEY: If I may, your Honor. The Illinois law provides more than just damages. And it's on page, I believe, 3 of our brief. And it talks about permanent and preliminary negative or mandatory injunction, temporary restraining order, declaratory relief or other relief.

So the plaintiff class continues to be, we allege, harmed since the implementation of this act. We believe they should benefit from supplementing the complaint with an allegation concerning this law.

And we believe because of that, it should -- the Court should grant leave for the supplement.

THE COURT: So you're partly arguing that I shouldn't certify the class.

MR. BRANUM: I didn't catch that last part.

8

THE COURT: So you're partly arguing that I shouldn't certify the class, at least for damages?

MR. BRANUM: No. What I'm saying is the way the class is certified now, it is not for -- it is -- it is under the provision (b)(2) for damages, but it's also under (c)(4) for an issue. And that is the only issue that's being resolved on a classwide basis.

And so these individual class members are not able to obtain damages in this suit. They're just not able to because we don't even get to the qualified individual with disability element of their claim. That's an individual issue which your Honor found made this suit originally unsuitable for class certification because of predominant individual issues.

Seventh Circuit said, "Well, you can do it on a discrete issue," but that's the only issue that's being resolved on a classwide basis. They would then need to file a new lawsuit with a new complaint.

THE COURT: Are you -- is this what you're imagining in this suit? Because I thought that we would -- and I haven't looked back at the docket, so forgive me. But I did not think that we were going to come to some resolution about liability as to the ramp and whether or not it complied with the ADA.

And let's say there's a determination that it doesn't comply with the ADA, so there's liability. And then however many class members there are are going to go out and file

Exhibit 3 Page 2

9

```
 1  individual cases.  I didn't think I was inflicting that on my
 2  colleagues.  And we're going to have then individual cases for
 3  individual men who have traversed the ramp to come in and
 4  litigate their damages.
 5       Is that what's happening here?  I thought we'd get
 6  maybe a special master to decide somehow whether there are
 7  damages and, if so, what those damages are.  I mean, isn't
 8  there a more efficient way to do this than to have 20 people or
 9  200 people file individual claims?
10       MR. THOMAS MORRISSEY:  I think there is an efficient
11  manner to handle this.
12       The first issue, as Mr. Branum points out, is whether
13  or not the ramp was compliant or not.  And that's the issue
14  that was certified by this Court.
15       After that, after the Court rules either granting or
16  denying our motion, then I think there will be mechanisms to
17  handle that, either through settlement or through a special
18  master, to resolve the damages for the class.
19       MR. BRANUM:  We disagree.  We have a Seventh Amendment
20  right to a trial by jury, and it's on each element of a
21  plaintiff's claim.  And one of those elements we will be
22  challenging each individual class member, which is whether they
23  are a qualified individual with disability.
24       THE COURT:  Okay.  So we'll do the first ten trials,
25  and then we'll see where that goes.
```

10

```
 1       MR. BRANUM:  That's a possibility.
 2       THE COURT:  But we're not going to have all these
 3  individuals file separate claims at $400-a-pop filing fee.  I
 4  can't imagine that.
 5       Okay.  So I think I need to look at this.  I'm not
 6  exactly following everything that you're saying.  I feel like
 7  you're implicating -- fair enough.  I'm not -- on the class
 8  certification argument.  I think that this can be handled with
 9  an amendment, but it's limited in time back to January 1st.
10  And I don't -- I think that's doable, but I need to look back
11  at the complaint.
12       And then I know you're close to being done with
13  briefing.  And that's just on the ramp, right?
14       MR. THOMAS MORRISSEY:  We're -- the injunctive relief
15  aspect has been completed I think, what, about a month and a
16  half ago, the briefing on that.
17       We've asked defendant to supplement any information
18  they have in regards to whether there are any steps being taken
19  currently by the County to remedy it.
20       THE COURT:  Right.
21       MR. THOMAS MORRISSEY:  And Mr. Branum has not provided
22  us with any documentation.
23       THE COURT:  I know there was -- I know finally the
24  person went in and did the mapping or the drawings.  I know
25  that that happened, and I know you turned those over.
```

11

```
 1       And then any movement since then?  I assume that has
 2  to go back to the County Board for budgetary authority or
 3  something.  Anything since then?
 4       MR. BRANUM:  So they then deposed Eric Davis, who is
 5  the one who's kind of overseeing the -- I guess like a
 6  contractor, putting pieces together.
 7       THE COURT:  Okay.
 8       MR. BRANUM:  Since they deposed Eric Davis, we have
 9  not communicated.  So this is the first time that they're
10  raising this issue that they're looking for additional
11  information.  And so I just haven't been in contact with them
12  to see --
13       THE COURT:  Okay.
14       MR. BRANUM:  -- where they're at.  But I can get that
15  information.
16       THE COURT:  Okay.  And is Eric Davis -- is he a county
17  person, or is he the architect contractor?
18       MR. BRANUM:  He's with Cook County.
19       THE COURT:  Okay.
20       MR. BRANUM:  He's the -- a director of Cook County
21  Capital Planning.
22       THE COURT:  Okay.
23       MR. PATRICK MORRISSEY:  Just to clarify the record, in
24  April, we did call and e-mail Mr. Branum because Mr. Davis said
25  there should be a transfer package that would help with
```

12

```
 1  budgeting this project and moving forward for an architect of
 2  record to design it.  So we have reached out.  And there hasn't
 3  been any effort to tell us how we're moving forward.
 4       THE COURT:  Okay.  So if there's a supplement to the
 5  discovery --
 6       MR. BRANUM:  I can get that information.
 7       THE COURT:  Right, because this is outstanding
 8  discovery.  I mean, there's a duty to supplement, of course.
 9       So if there's movement, if you would supplement.  I
10  mean, it's not going to impact the finding of liability.  But
11  if there's a finding of liability, the request is injunctive
12  relief.  And that's going to get tangled over there.  So we're
13  going to be working on this, unfortunately, probably for a
14  little while.  So if you could update that, that would be
15  helpful.
16       MR. BRANUM:  Yes, your Honor.
17       And if I could just add one thing about the argument
18  of these -- what you said implicates the class certification
19  order.
20       THE COURT:  Yeah.
21       MR. BRANUM:  Just direct your Honor to the Seventh
22  Circuit order where they said, you know, a resolution on this
23  issue, all the class members would get would be a declaratory
24  judgment.  And then they said they would then need to proceed
25  in individual suits.  And that "individual suits" was clearly
```

Exhibit 3 Page 3

Case: 1:23-cv-16970 Document #: 161-3 Filed: 11/24/25 Page 4 of 4 PageID #:2506
Case: 1:20-cv-00261 Document #: 246 Filed: 06/20/24 Page 13 of 16 PageID #:4594
Case: 1:20-cv-00261 Document #: 246 Filed: 06/20/24 Page 14 of 16 PageID #:4595

13

```
1   in the Seventh Circuit order.
2           THE COURT:  Right.
3           MR. BRANUM:  So I just want to direct your Honor to
4   that case.
5           THE COURT:  Thank you.  And is that Seventh Circuit
6   order -- that's in a Judge Blakey case, right?
7           MR. BRANUM:  No, that's -- yes, that --
8           THE COURT:  Right.
9           MR. BRANUM:  Right, which -- Bennett v. Dart, which
10  then your Honor then relied on --
11          THE COURT:  Right.
12          MR. BRANUM:  -- in granting their motion to
13  reconsider.
14          THE COURT:  Right.  And are you in the Bennett v.
15  Dart, all three of you?
16          MR. BRANUM:  Yes.
17          THE COURT:  So what's happening there?  Is there
18  anything that would be helpful to me?  I mean, I can read it
19  myself.  But is there anything I should know that would be
20  helpful?  No.
21          MR. PATRICK MORRISSEY:  Summary judgment is pending.
22          THE COURT:  Okay.  All right.
23          MR. BRANUM:  Fully briefed summary judgment.
24          THE COURT:  Okay.
25          MR. THOMAS MORRISSEY:  It's in front of Judge Cummings
```

14

```
1   now.
2           THE COURT:  Oh, it got transferred.
3           MR. THOMAS MORRISSEY:  Yes.
4           THE COURT:  Oh, that's too bad.  Well, he's my
5   neighbor.  I'll commiserate with him.
6           So okay.  But -- so you haven't gotten a ruling where
7   you're then getting into these individual cases.  I mean, you
8   anticipate -- how many class members are we talking about?
9           MR. BRANUM:  Well, that's a question.  Not everyone
10  will want to file an individual suit.  I mean, a lot of
11  these --
12          THE COURT:  Well, of course.  I mean, you're shedding
13  off -- you think these guys are going to file individual cases?
14  I mean, who's going to pay the filing fees on those?
15          MR. BRANUM:  This goes back to the merits argument,
16  which is this is a 40-foot-long ramp.  It's off by 2 inches.
17  Many of these individuals don't even know there's anything
18  wrong with the ramp.  And there's not anything.  It's 40 feet,
19  and it's 2 inches.  You watch the video, they're rolling easily
20  down the ramp; they're making their way up the ramp.
21          So, I mean, this goes into merits, which they were not
22  injured in any way.  So I don't -- so I don't expect a lot of
23  them would even want to file a suit because they were able to
24  access programs, go up and down the ramp.
25          THE COURT:  Okay.  And what's at stake in the Bennett
```

15

```
1   case?
2           MR. PATRICK MORRISSEY:  The Bennett case, your Honor,
3   is a building at the jail, Division 10, that had no grab bars
4   by any detainee toilet.
5           THE COURT:  Oh, okay.
6           MR. PATRICK MORRISSEY:  It had no bench in any of the
7   showers.
8           THE COURT:  Okay.
9           MR. PATRICK MORRISSEY:  And almost all the showers had
10  no grab bars.  And it's for people who have a cane, crutch, or
11  walker who was in this building that was built after the
12  passage of the Rehab Act that required structures similar to
13  the ADA.
14          THE COURT:  Okay.  All right.
15          So I just -- the whole point of Rule 23 is we don't
16  have these individual cases.  So I'll reread that opinion.  I
17  remember reading that opinion, and I remember the Seventh
18  Circuit chastising the district court for not moving the case
19  along.  And here I am in a 2020 case, and I'm not moving it
20  along.  So I'm -- I got it.
21          But I don't remember the stuff about individual cases
22  because I was -- my eyes were burning on the "What are you
23  doing down there, District Court?  Why aren't you moving these
24  cases along?"  So, you know, we all read what we need to read.
25          But, you know, I don't like the idea of a bunch of
```

16

```
1   individual cases.  I think that defeats Rule 23, and I -- but
2   obviously I'll read what the Seventh Circuit tells us.
3           MR. BERGTHOLD (via phone):  Brandon Bergthold.
4           THE COURT:  Okay.  That's my next case, I guess.
5   Okay.
6           MR. THOMAS MORRISSEY:  Thank you, your Honor.
7           THE COURT:  Have a good day.
8           MR. PATRICK MORRISSEY:  Thank you, your Honor.
9           MR. BRANUM:  Thank you.
10      (Concluded at 10:02 a.m.)
11                         * * * * *
12      I certify that the foregoing is a correct transcript of the
13  record of proceedings in the above-entitled matter.
14
15  /s/ LAURA R. RENKE                       June 20, 2024
    LAURA R. RENKE, CSR, RDR, CRR
16  Official Court Reporter
```

Exhibit 3 Page 4