**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CUAUHTEMOC HERNANDEZ and WILLIAM MATHIS, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | Case No. 23-cv-16970 |
| *-vs-* | ) | |
| | ) | Honorable Sunil R. Harjani |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPROVAL OF CLASS
NOTICE AND SHIFT COST OF CLASS NOTICE TO DEFENDANTS**

Plaintiffs Cuauhtemoc Hernandez and William Mathis, as class representatives of the Rule 23(b)(3) classes, file this reply in in support of their motion for the Court to approve class notice in accordance with Rule 23(d)(1)(B) and that the Court order defendants to pay for the cost of notice.

**1. It is not premature to send class notice based on defendants' standing argument**

Defendants argue that class notice should be delayed because class representatives Hernandez and Mathis allegedly lack standing and, in their view, "[i]f a jury determines that Plaintiffs did not suffer any concrete injury, then the entire class action would be dismissed for lack of subject-matter-jurisdiction" and that "any previously sent notice [would be] misleading to class members and create unnecessary confusion." Dkt. 182, Response at 4. This argument fails at the outset because the Court has already rejected defendants' standing challenge when granting summary judgment to the Rule 23(b)(3) classes. Dkt. 175, Memorandum Opinion and Order at 5-6. Defendants offer no basis to revisit that determination.

1

Defendants' reliance on *Perttu v. Richards*, 605 U.S. 460 (2025), is misplaced. *Perttu* addressed "whether a party has a right to a jury trial on PLRA exhaustion when that dispute is intertwined with the merits of the underlying suit." 605 U.S. at 464. There, the same factual question – whether the defendant destroyed grievances – controlled both exhaustion and the First Amendment retaliation claim. 605 U.S. at 464. Because these issues were inseparable, the Court held that a jury was required to resolve the factual dispute. *Id.* Here, there is no overlapping factual dispute for a jury to resolve as to jurisdiction. Accordingly, the "[o]rdinar[y]" rule applies: the Court – not a jury – "may resolve factual disputes in the course of determining whether subject matter jurisdiction is proper." *Perttu*, 605 U.S. at 472.

Defendants do not dispute the jurisdictionally relevant facts – namely, that Mr. Hernandez and Mr. Mathis traversed the non-compliant ramps at the Department of Corrections. Instead, defendants believe that plaintiffs will be unable to persuade a jury that they suffered compensable harm. That contention goes to damages, not standing.

As court routinely recognize, Article III standing turns on whether a plaintiff suffered a concrete injury sufficient to invoke federal jurisdiction – not whether the plaintiff will ultimately recover damages. *Booker-El v. Superintendent Ind. State Prison*, 668 F.3d 896, 899-90 (7th Cir. 2012) (citing *Arreola v. Godinez,* 546 F.3d 788, 794-95 (7th Cir. 2008)). Standing is separate from the merits. *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022). As the Seventh Circuit has explained, "[a]lthough the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing. Standing is a prerequisite to *filing a suit*, while the underling merits of a claim . . . determine whether the plaintiff is *entitled to relief.*" *Arreola*, 546 F.3d at 794-95 (emphasis in original); *see also Pit Row, Inc. v. Costco Wholesale Corporation*, 101 F.4th 493, 501 (7th Cir. 2024) ("In plain English, a litigant is not required to show that it will

win in order to establish standing. All it must do to satisfy Article III is to show that it has a colorable *claim* to such a right") (cleaned up). Indeed, the *Walker* court considered this same argument during a recent hearing and viewed this as an argument regarding damages, not whether Article III standing is secured. *See Walker v. Dart*, 20-cv-261, Dkt. 316, Transcript from 2/4/2026 Hearing at 2:20-3:2 (the court explaining "my sense is that I have found that Mr. Walker has standing to bring the case, and I'm not going to present standing to a jury. I don't agree with you" and elaborating "once a party has standing, they can bring a case. They can lose on damages. Happens all the time. People come here and they have standing to litigate, but they lose. They get zero damages.").

Because defendants raise no genuine jurisdictional dispute and merely repackage a merits argument as a standing challenge, their request to delay class notice should be denied. Class members previously notified are entitled to know the status of the Court's summary judgment opinion which resolved the issues certified under Rule 23(c)(4) and class members who did not receive the initial notice because they went up and down the ramps after the first notice was mailed are entitled to be informed that this case has been certified and the Court's summary judgment ruling. The Court, as a "fiduciary of the class," *Culver v. City of Milwaukee*, 277 F.3d 908, 915 (7th Cir. 2002), should exercise discretion under Rule 23(d)(1)(B), and require appropriate notices to be sent to class members.

### 2. Defendants' proposed notices are not consistent with Rule 23(b)(3)

This case is certified under Rule 23(b)(3), which reflects the Court's determination that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In opposing certification, defendants argued that detainees' disabilities are too individualized and that adjudication would require "a case-by-case analysis" of

3

each class member's claim. Dkt. 62, Response Opposing Class Certification at 19. The Court rejected that position in certifying the class.

Defendants now pivot to a different – but equally flawed – argument. They contend that *Bennett* requires that, following a declaratory judgment on a Rule 23(b)(3) issue class, class members must be notified that they need to file entirely new lawsuits to pursue damages, and that such notice "cannot advise" when or even where those lawsuits should be filed. *See* Dkt. 182, Response at 5, 8. Under defendants' approach, hundreds or thousands of individual class members would be left to navigate the state and federal court system on their own, before different judges, to litigate damages arising from the same underlying ADA violations. *Id.* at 8.

That vision is fundamentally incompatible with the purpose of Rule 23(b)(3). As the Supreme Court explained in *Amchem Products Inc. v. Windsor*, the "policy at the very core" of the Rule 23(b)(3) mechanism is to address situations where "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." 521 U.S. 591, 616-17 (1997) (citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). Defendants' proposal would do exactly what Rule 23(b)(3) is designed to prevent: it would fracture a cohesive class action into innumerable individual lawsuits, many of which would never be filed at all.

By contrast, courts routinely employ well-reasoned procedures within a single class action to address individualized issues such as damages through follow-on proceedings. *See* Dkt. 179, Motion at 2-3, 6. That approach preserves the efficiencies of class adjudication while allowing for claimant-specific determinations.

Notably, defendants do not even address *Walker v. Dart*, Case No. 20-cv-261, despite its central role in plaintiffs' motion. In *Walker*, the court expressly recognized that *Bennett* supports

the use of "separate hearing[s]" within the same action to determine "damages of individual class members." *See* Dkt. 179-2, *Walker v. Dart*, 20-cv-291, Dkt. 159 Order at 3-4; Dkt. 179, Motion at 2. That procedure – individualized damages determinations following classwide liability findings – aligns with both Rule 23(b)(3) and the governing case law.

Defendants' contrary approach would undermine judicial economy, burden the courts with duplicative litigation, and effectively deny relief to many class members. It should be rejected.

### 3. The plaintiff class is a prevailing party under Supreme Court precedent and *Bennett II*

Defendants argue that neither of the classes are considered a "prevailing party" because there has been no "material alteration of the legal relationship" between the parties. Dkt. 182, Response at 10. That argument fails under settled Supreme Court and Seventh Circuit precedent.

The Supreme Court has long recognized that when "a plaintiff succeeds in remedying a civil rights violation . . . he serves as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (cleaned up). "Fee-shifting in such a case at once reimburses a plaintiff for what it cos[t] [him] to vindicate [civil] rights, and holds to account a violator of federal law." 563 U.S. at 833 (cleaned up).

To qualify as a prevailing party, a plaintiff must satisfy two requirements. First, the litigation must result in a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 792-93 (1989). Second, that alteration must be "judicially sanctioned." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605 (2001). The classes have satisfied both elements.

5

### a. *Summary judgment materially altered the legal relationship in a manner Congress intended the ADA to promote*

The Court's grant of summary judgment materially altered the legal relationship between the parties in precisely the manner Congress intended when it enacted the Americans with Disabilities Act (ADA). As the Seventh Circuit has explained, "Congress enacted the ADA to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Lacy v. Cook County*, 897 F.3d 847, 852 (7th Cir. 2018) (cleaned up). To effectuate that mandate, the Department of Justice "has adopted structural accessibility standards that apply to newly constructed or altered facilities submitted to Titles II and III" of the ADA. *Id.* at 853.

Applying the Seventh Circuit's directives in *Bennett v. Dart*, 953 F.3d 467 (7th Cir. 2020) (*Bennett I*), and *Bennett v. Dart*, 53 F.4th 419 (7th Cir. 2022) (*Bennett II*), the Court ruled in favor of the Rule 23(b)(3) classes and held that the Cermak ramp and RTU east tunnel ramp violated federal accessibility standards. As the Court observed, "*Bennett I* and *II* dictate the outcome" where a class seeks adjudication of common structural accessibility issues. Dkt. 72, Memorandum Opinion and Order at 4.

Defendants' contention that plaintiffs prevailed on "a preliminary issue," *see* Dkt. 182, Response at 10, is incorrect. Mr. Hernandez and Mr. Mathis sought certification of Rule 23(b)(3) classes to resolve class-wide liability issues. Dkt. 72, Memorandum Opinion and Order at 5-6. The classes prevailed on these issues. *See* Dkt. 175, Memorandum Opinion and Order at 1.

As the Seventh Circuit explained in *Bennett II*, such a ruling provides class members "the benefit of a declaratory judgment" and a pathway to "proceed in individual suits to seek damages."

*Bennett II*, 53 F.4th at 420. Indeed, defendants acknowledged that "all the class members has is a declaratory judgment on the single issue." Dkt. 182, Response at 7.

### b. *The alteration of the parties' legal relationship was judicially sanctioned*

There is likewise no dispute that the change in the parties' legal relationship was judicially sanctioned. The Court's summary judgment ruling conferred a declaratory judgment in favor of the classes consistent with *Bennett II*, thereby authorizing class members to pursue individual damages actions. *Bennett II*, 53 F.4th at 420.

The Supreme Court has repeatedly held that declaratory relief satisfies the "judicial sanctioned" requirement for prevailing party status. *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) ("[w]e have repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy that test"). The Court's declaration materially altered the legal relationship between the parties by conclusively establishing defendants' violation of federal law.

The declaratory judgment entered in favor of the Rule 23(b)(3) classes remains operative and serves as the vehicle through which class members may pursue individual damages. As the Supreme Court has made clear, a party may prevail on a significant issue in the litigation even if it does not obtain all relief sought. *Texas State Teachers Ass'n*, 489 U.S. at 790 ("Congress clearly contemplated that interim fee awards would be available 'where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all the issues.'"). Likewise, "plaintiffs may receive fees under § 1988 even if they are not victorious on every claim" and "[a] civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in doing so, has vindicated Congress's statutory purposes." *Fox*, 563 U.S. at 834. By obtaining a declaratory judgment confirming defendants' violation of the ADA, the plaintiff classes achieved meaningful relief and vindicated Congress's statutory purposes.

7

### 4. Defendants' reliance on the "traditional rule" that plaintiff bears notice costs is misplaced

Class Counsel does not dispute the general principle articulated in *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974), that "[t]he usual rule is that a plaintiff must initially bear the cost of notice to the class." *See* Dkt. 182, Response at 9. That rule, however, does not control this case because the present dispute concerns notice following the grant of summary judgment in favor of the Rule 23(b)(3) classes.

*Bakov v. Consolidated World Travel, Inc.*, 68 F.4th 1053 (7th Cir. 2023), supports shifting notice costs where the plaintiff class has prevailed. As *Bakov* explains, district courts retain discretion to allocate notice costs, particularly where liability has been established. *Id.* at 1059-60 (citing *Fournigault v. Indep. One Mortg. Corp.*, 242 F.R.D. 486, 490 (N.D. Ill. 2007) (finding that, because plaintiffs were entitled to summary judgment on the merits, "circumstances exist which justify the exceptional requirement of Defendant bearing the cost of notice")). In *Hunt v. Imperial Merchant Services, Inc.*, 560 F.3d 1137, 1143 (9th Cir. 2009), the Ninth Circuit cited district court authority and quoted *Newburg on Class Actions* for the general principle that "'interim litigation costs, including class notice costs, may be shifted to defendant after plaintiff's showing of some success on the merits, whether by preliminary injunction, partial summary judgment, or other procedure.'" 560 F.3d at 1143 (citing 3 William B. Rubenstein, Alba Conte, and Herbert B. Newburg, *Newburg on Class Actions* § 8:6 (4th ed. 2007)).

Relatedly, cost-shifting is also warranted in light of defendants' aggressive litigation posture. Defendants have refused to engage in mediation and have signaled that each class member seeking damages will face extensive and contentious litigation. This approach is directly at odds with Rule 1 of the Federal Rules of Civil Procedure, which requires the parties to secure "the just,

speedy, and inexpensive determination of every action and proceeding." Defendants' refusal to participate in settlement discussions – particularly after an adverse summary judgment ruling and in the face of undisputed violations of federal accessibility standards at each ramp – is inconsistent with both the letter and the spirit of the Rules.

Finally, as the Seventh Circuit emphasized in *Bakov*, "[t]he fact that the district court's liability determination may be reversed on appeal does not affect" the propriety of shifting notice costs to defendants. 68 F.4th at 1059.

### 5. Class Counsel will provide an undertaking to repay costs if necessary

As set forth in the motion, and consistent with *Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1986), Class Counsel is prepared to execute an undertaking promising to personally repay any notice costs shifted to defendants if the Seventh Circuit reverses the grant of summary judgment. *See* Dkt. 179, Motion at 10.

Class Counsel can also submit financial documentation for an in-camera review to demonstrate the ability to repay such costs. These safeguards obviate any need for a bond.

### 6. Conclusion

It is therefore respectfully requested that the Court approve the notices proposed by Class Counsel and attached as Exhibits 6 and 7 (Dkts.179-6 and 179-7). Class Counsel also requests that the Court order defendants to bear the cost of class notice.

Respectfully submitted,

/s/ Patrick W. Morrissey
Thomas G. Morrissey
Patrick W. Morrissey
Thomas G. Morrissey, Ltd.
10257 S. Western Ave.
Chicago, IL 60643
(773) 233-7901
*Attorneys for the plaintiff class*

9