IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cuauhtemoc Hernandez, et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| *-vs-* | ) | No. 23-cv-16970 |
| | ) | |
| Thomas Dart, Sheriff of Cook | ) | Judge Harjani |
| County, and Cook County, Illinois, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF'S MOTION FOR PERMANENT INJUNCTIVE RELIEF**

The Rule 23(b)(2) plaintiff class, by counsel, moves the Court to order defendants Dart and Cook County to make the necessary architectural modifications at the Residential Treatment Unit (RTU) east tunnel ramp to comply with the Americans with Disabilities Act and to provide interim relief to class members until the renovation is complete.

Grounds for this motion are as follows:

1.       On February 4, 2026, the Court granted summary judgment in favor of the Rule 23 (b)(3) class of Cook County Jail detainees who have been assigned a cane, crutch, or walker by a jail medical provider, for a period of more than two weeks, and traversed the Residential Treatment Unit east tunnel ramp from February 13, 2022  to the date of judgment.  The Court found "that the RTU east ramp has not complied with the structural standards required by the ADA from February 13, 2022, to the date of judgment." Dkt. 175, Memorandum Opinion and Order at 10.

-1-

2.      Following the Court's ruling on summary judgment, class counsel reached out to defense counsel, requesting defendants to take the necessary steps to bring the RTU east ramp into compliance with the ADA structural standards. Additionally, defendants were asked to implement alternate policies and procedures for moving class members during reconstruction of the ramp.

3.      Despite the parties March 31, 2026 joint status report, in which defendants requested an additional two weeks to provide an update regarding efforts to resolve the injunctive-relief portion of this case, *see* Dkt. 184, Joint Status at 2, no further update or progress concerning resolution of this issue has been reported.

4.      Because the parties have been unable to reach an agreement regarding relief for the Rule 23(b)(2) class, the plaintiff class respectfully requests that the Court fashion appropriate permanent prospective relief.

5.      The Seventh Circuit in *Lacy v. Cook County*, explained a permanent injunctive relief is appropriate when a plaintiff has shown: "(1) success . . . on the merits; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendant, and (4) that the public interest will not be harmed by the requested relief." 897 F.3d 847, 867 (7th Cir. 2018) (cleaned up). The plaintiff class meets each of these elements.

## I.    Success on the merits

6.      The Rule 23(b)(2) plaintiff class has standing to seek prospective relief because of the "inherently transitory exception." Plaintiff Mathis moved to represent a Rule 23(b)(2) class on August 14, 2024. Dkt. 41, Motion. At this time,

he was incarcerated at Cook County Jail and was prescribed a cane to traverse the RTU east tunnel ramp. Dkt. 175, Memorandum Opinion and Order at 3 (noting Mathis "had a medical alert to use a cane for long distances from October 16, 2023, until at least August 15, 2024"). Mathis was transferred to the Illinois Department of Corrections on August 29, 2024. Dkt. 158, Def. Resp. to SOF ¶ 2.

7.     "The inherently transitory exception allows a named plaintiff in a class action to continue prosecuting the action even though intervening circumstances may have mooted his or her personal claim following the inception of the lawsuit." *Westmoreland v. Hughes*, No. 23-cv-14044, 2024 WL 6080514, at *4 (N.D. Ill. May 23, 2024), *aff'd*, 144 F.4th 952 (7th Cir. 2025). To qualify, a plaintiff must have "filed for class certification while [still] a party to a live controversy." *Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010). Having done so, the plaintiff must then establish that "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Id.* at 582. So long as those conditions are met, the inherently transitory exception "furnishes a court with subject matter jurisdiction over a case despite the plaintiff's lack of a personal stake in its outcome." *Westmoreland*, 2024 WL 6080514, at *4.

8.     Plaintiff Mathis meets this test here. He was incarcerated at the Cook County Jail and used a cane traverse the RTU east tunnel ramp until his transfer to the IDOC on August 29, 2024. "[T]he crux of the inherently transitory exception is the uncertainty about the length of time a claim will remain alive," not

its actual lifespan. *Olson,* 594 F.3d at 582 (quotation omitted). So long as it is "*uncertain* that any potential named plaintiff in the class of inmates would have a live claim long enough for a district court to certify a class," the first condition of the inherently transitory exception is fulfilled. *Id.* (emphasis added). Uncertainty abounds with respect to the duration of detention at the Jail. The facility generally serves as a temporary holding area for inmates facing trial, awaiting transfer to the IDOC, or serving a short-term sentence. As a result, "the length of incarceration in a county jail generally cannot be determined at the outset and is subject to a number of unpredictable factors, thereby making it inherently transitory." *Id.* Because all class members' claims for injunctive relief depend on continued assignment to the Jail, it is uncertain whether any given member will retain a live claim long enough to permit certification, establishing the first element of the inherently transitory exception. Also, the exception's second element is fulfilled. It requires that there "be a constant class of persons suffering the deprivation complained of in the complaint." *Id.* The certified class qualifies, since the makeup is constant and ever-changing.

9.      Second, there is no question the RTU east tunnel ramp violates the ADA structural standards. The Memorandum Opinion and Order issued on February 4, 2026, made factual findings regarding the ramp's noncompliance. Dkt. 175, Memorandum Opinion and Order at 4.  Additionally, the Court has already found that defendants' purported policy of "staff assistance" up and down the noncompliant ramp "does not constitute equivalent access." *Id.* at 8. Accordingly, it is beyond dispute, as determined by the Court, that "the RTU east

tunnel ramp has not complied with the structural standards required by the ADA from February 13, 2022, to the date of judgment." *Id.* at 10.

10. Accordingly, the Rule 23(b)(2) plaintiff class has demonstrated success on the merits.

## II. Irreparable harm and no adequate remedy at law

11. Members of the class suffer irreparable harm without permanent injunctive relief. Plaintiff Mathis testified that he "experienced pain and shortness of breath when traversing the RTU east tunnel ramp" and "that his knees popped in and out of place." Dkt. 175, Memorandum Opinion and Order at 5. Kavarian Rogers used a walker to traverse the ramp and testified "[g]oing up, that was the hardest part, traveling up the ramp with my walker" and that he complained multiple times that he required assistance. Dkt. 122-33, Rogers Dep 27:22-28:14. The record contains other declarations from class members about pain and the inability to traverse the RTU east tunnel ramp on the same basis as nondisabled individuals. Dkt. 122-30, Tommy Love Decl. ¶¶ 2-4, Dkt. 122-31, Quovotis Harris Decl. ¶ 2-6.

12. Carl Darr, an architect from Globetrotters Engineering Corporation (GEC), was hired by Cook County to assess this ramp and stated the ADA structural standards are "mandatory" and that the ramp must be renovated to comply with the ADA. Dkt. 122-8, Darr (4/30/2025) Dep 17:21-18:8; Dkt. 122-15, RTU Report at 16. Renovations include correcting the top landing and intermediate landing that are not 60 inches, repairing the noncompliant slope,

and installing handrails that fully comply with the ADA. Dkt. 122-2, Response to Admission ¶ 47.

13.     Eric Davis, Cook County's Deputy Director of Capital Planning and Policy, recently testified the east tunnel ramp was required to comply with the ADA standards when it was constructed and that "[i]t clearly was constructed wrong." Exhibit 1, Davis (3/5/2026) Dep at 13:1-5, 18:4-11. Mr. Davis agreed it is "obvious" the ramp is noncompliant. *Id.* at 64:9-22.

14.     Presently, there is no commitment by defendants to bring the ramp into compliance with the ADA and Mr. Davis said "[i]f it's determined that we need to spend money" to bring the RTU east tunnel ramp into compliance with the ADA standards, it may take two years. Exhibit 1, Davis (3/5/2026) Dep at 64:24-65:23.

15.     Mr. Davis testified that he has not contacted his partners with the Sheriff's Office to advise them the ramp is a barrier for mobility impaired detainees and does not comply with the ADA standards. Exhibit 1, Davis (3/5/2026) Dep at 73:13-74:19. Similarly, Mr. Davis has not offered operational advice to the Sheriff's Office regarding the noncompliant ramp because "[t]hat's an operation. We don't give advice to the Sheriff about how to operate the jail." *Id.* at 80:1-4.

16.     Class members will continue to use the RTU east tunnel ramp and suffer harm. "Physical injury can be an irreparable harm." *Rogers v. Dart*, 2025 WL 2239341, at *6 (N.D. Ill. Aug. 6, 2025) (Rowland, J.).

17.     Similarly, any argument by defendants that monetary damages are adequate to compensate for physical injurie should be rejected for the same reasons outlined in *Rogers*, a case alleging showers in Division 9 at the Cook County Jail are not compliant with the federal structural standards since they lack accessible features such as grab bars. *See id.* "[C]ourts routinely hold physical injuries are serious harms that money damages cannot adequately remedy." *Id.*

18.     Thus, the plaintiff class has made a threshold showing that they will suffer irreparable harm if the injunction is not granted and the traditional legal remedies would be inadequate.

III.    **Balance of equities and the public interest**

19.     A plaintiff seeking injunctive relief must show the balance of harms weighs in favor of relief and the public will benefit from such relief. *Lacy*, 897 F.3d at 867. When balancing the harms, the Court must weigh the irreparable harm the plaintiff would endure without the protection of the injunction against any irreparable harm the defendant would suffer if the Court were to grant the requested relief. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). Here, there is no question the ramp is noncompliant with the mandatory standards. Class members will continue to face the inability to traverse the east tunnel ramp on the same basis as other inmates and face the risk of physical injury because of the structural noncompliance. As explained in *Lacy*, "[p]erhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services." 897 F.3d at 853.

20.     Finally, as explained in *Rogers*, "[t]here is substantial public interest in ensuring correctional facilities" comply with the ADA standards. *Rogers*, 2025 WL 223941, at *7.

## IV.    Scope of requested relief

21.     Under the Prison Litigation Reform Act, prospective injunctive relief must be "narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westerfer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (cleaned up).

22.     Consistent with that standard, class counsel requests that defendants propose interim measures to accommodate class members while the RTU east tunnel ramp remains noncompliant with the ADA. Class counsel further requests that defendants submit a binding remediation plan, including a reasonable timetable, for the structural modifications necessary to bring the RTU east tunnel ramp into compliance with applicable ADA standards.

## V.    Conclusion

It is therefore respectfully requested that the Court enter permanent injunctive relief in favor of the Rule 23(b)(2) plaintiff class and order defendants Dart and Cook County to: (1) undertake the architectural modifications necessary to bring the RTU east tunnel ramp into compliance with the ADA; and (2) implement appropriate interim accommodations for class members with mobility disabilities until those modifications are completed.

Respectfully submitted,

/s/    Patrick W. Morrissey
Patrick W. Morrissey
Thomas G. Morrissey, Ltd.
10257 S. Western Ave.
Chicago, IL 60643
(773) 233-7901
pwm@morrisseylawchicago.com

*an attorney for the plaintiff class*