**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CUAUHTEMOC HERNANDEZ and  )
WILLIAM MATHIS,  )
             )
    *Plaintiffs,*  )
             )    Case No. 23-cv-16970
   *-vs-*  )
             )    Judge Sunil R. Harjani
THOMAS DART, Sheriff of Cook County,  )    Magistrate Judge Keri L. Holleb Hotaling
and COOK COUNTY, ILLINOIS,  )
             )
    *Defendants.*  )

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
FOR PERMANENT INJUNCTION**

Defendants, THOMAS J. DART, in his official capacity as Sheriff of Cook County, and COOK COUNTY, ILLINOIS, by their attorney EILEEN O'NEILL BURKE, State's Attorney of Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD., respond to Plaintiff's motion for permanent injunction as follows:

**INTRODUCTION**

Plaintiff, William Mathis, has moved for permanent injunctive relief before the legal issues in this case have been tried by a jury. As such, Plaintiff seeks to circumvent Defendants' Seventh Amendment constitutional right to a trial by jury. A similar situation was analyzed by the Seventh Circuit in *Lacy v. Cook County*, 897 F.3d 847 (7th Cir. 2018). In *Lacy*, the Seventh Circuit found that a court committed reversible error when it ruled on a motion for a permanent injunction prior to submitting the issue of whether defendants violated the Americans with Disabilities Act ("ADA") to a jury. Similar to the Plaintiff in *Lacy*, Plaintiff has presented disputed issues to "the wrong trier of fact," and any ruling on Plaintiff's motion at this stage will "infect[] the disposition" of his equitable claim. *Id.* at 861. Ruling on Plaintiff's motion would also be premature because Defendants intend challenge Plaintiffs' standing at trial, an issue specifically reserved by the Court

1

to be analyzed at the time of trial. (*See* Ord., Dkt. No. 185) ("[I]f indeed the Court finds that Plaintiffs never had standing, then it would doom the class action.").

Even if this Court were to rule on Plaintiff's equitable claim prior to his legal claim being decided by a jury, Plaintiff's motion should nevertheless be denied. While traversing the Residential Treatment Unit ("RTU") east tunnel ramp ("RTU east ramp") no class member suffered harm due to any alleged noncompliance with ADA structural standards. Regardless, Defendants are already engaging in a comprehensive, multi-contract program to ensure compliance with the accessibility standards throughout the entire Cook County Department of Corrections ("CCDOC"). As such, Plaintiff's request for injunctive relief is moot. This Court should deny Plaintiff's motion for a permanent injunction.

**LEGAL STANDARDS**

A plaintiff who "seeks an injunction has the burden of persuasion – damages are the norm, so the plaintiff must show why his case is abnormal." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) (citation omitted).

A plaintiff must meet the following requirements to obtain permanent injunctive relief: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Vaughn v. Walthall*, 968 F.3d 814, 824 (7th Cir. 2020) (citation omitted).

Additionally, a plaintiff must show not just a probability of success on the merits, but actual success. *Id.* at 824-825. "Critically, a finding of liability on a defendant's part does not automatically give rise to an entitlement to injunctive relief." *Liebhart v. SPX Corp.*, 998 F.3d 772,

2

779 (7th Cir. 2021). "To the contrary, an injunction issues 'only as necessary to protect against otherwise irremediable harm." *Id.* (quoting *LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 944 (7th Cir. 2019).

The Prison Litigation Reform Act ("PLRA") places further restraints on a court's authority to enter an injunction with respect to jail conditions. *Rasho v. Jeffreys*, 22 F.4th 703, 711 (7th Cir. 2022); *Iglesias v. Fed. Bureau of Prisons*, 598 F. Supp. 3d 689, 703 (S.D. Ill. 2022) ("[T]he PLRA applies to suits filed by incarcerated individuals and limits the equitable relief a district court can order."). Under the PLRA, a court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Rasho*, 22 F.4th at 711 (quoting 18 U.S.C. § 3626(a)(1)(A)). When determining whether these requirements are met, "courts must give substantial weight to any adverse impact on public safety or the operation of a criminal justice system." *Brown v. Plata*, 563 U.S. 493, 530 (2011).

## STATEMENT OF FACTS

### I.      Ongoing Renovation of CCDOC Facilities

The CCDOC campus is a 96-acre complex located at 2700 S. California Ave., Chicago, Illinois. (Ex. A, Davis Decl. at ¶ 3.) The RTU is one of a number of separate buildings located on the campus. (*Id.* at ¶ 4.) CCDOC provides housing to thousands of individual detainees on a daily basis.

Currently, Cook County is undergoing a comprehensive, multi-contract program to assess all of Cook County's public safety facilities (encompassing approximately 11 million square feet across all facilities) and their overall accessibility and compliance under the ADA. (*Id.* at ¶¶ 2, 6.)

As part of this program, Cook County is in contact with numerous architectural/engineering firms to analyze the entire CCDOC campus for ADA compliance. (*Id.* at ¶ 5.) The work for any ADA renovations at CCDOC, including the RTU east ramp, is funded under the County budget.

Plaintiffs' counsel, the same counsel involved a number of different cases involving ADA compliance at CCDOC, has been made aware of this ongoing effort by Cook County to bring its facilities into compliance.[1] (*Id.* at ¶ 9.) As previously explained to Plaintiffs' counsel, there are a plethora of concerns to be taken into consideration as a part of this renovation. (*Id.* at ¶¶ 6-9.) Without an analysis of the facility, the full extent of actions needed to bring the RTU east ramp and its surrounding area into compliance remains unknown. (*Id.* at ¶ 10.) Once the comprehensive assessment is complete, Cook County will implement the recommendations via a phased, multi-year program to bring the CCDOC into compliance. (*Id.* at ¶ 7.) A comprehensive assessment of the entire facility provides the most complete avenue to bring the RTU east ramp into compliance under the ADA and avoids the risk of making hasty repairs that may create additional problems and not bring the facilities fully into compliance. (*Id.* at ¶ 8.)

## **ARGUMENT**

### **I.**  **Plaintiff Has Presented the Disputed Facts to the Wrong Trier of Fact**

The Seventh Amendment guarantees Defendants the right of a trial by Jury. U.S. Const. amend. VII. Under the Federal Rules of Civil Procedure, the right to a trial by jury is "preserved to the parties inviolate." Fed. R. Civ. P. 38(a).

---

[1] *See Bennett v. Dart, et al.*, 18-cv-4268; *Walker v. Dart, et al.*, 20-cv-261; *Westmoreland v. Dart, et al.*, 23-cv-1851; *Rogers v. Dart, et al.*, 24-cv-3739; *McClain v. Dart, et al.*, 25-cv-771; *Enriquez v. Dart, et al.*, 25-cv-2298; *Johnson v. Dart, et al.*, 25-cv-5924.

Plaintiff filed this lawsuit seeking damages and injunctive relief for alleged noncompliance of the RTU east ramp.[2] (Am. Compl., ECF No. 43.) Plaintiff alleges that he suffered from "pain and discomfort" while traversing the RTU east ramp, and was unable to traverse the ramp on the same basis as non-disabled detainees. (*Id.* at ¶ 22, ECF No. 43.) Plaintiff then sought partial summary judgment on the limited issue of "whether the RTU east ramp complied with the structural standards required by the ADA and Rehabilitation Act." (Pl.'s Mot., at 1-2, ECF No. 123.) The issue of damages, and specifically whether or not any Plaintiff suffered actual injury as a result of the RTU east ramp's noncompliance, was specifically noted by the Court as being left for determination at trial. (*See* Memo. Op. at 6, ECF No. 175) ("Whether [Plaintiffs'] pain was caused by the ramps . . . is an issue . . . that Defendants are free to raise at trial.") (internal quotation marks omitted).

Defendants are entitled to have a jury decide these issues. Whether the RTU east ramp really did cause Plaintiff pain or prevented him from being able to traverse the ramp on the same basis as non-disabled detainees are questions of fact that a jury must resolve. *See Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978)

Because Plaintiff has brought a case with both legal and equitable claims, the legal claims must first be presented to a jury. *See Sealy*, 585 F.2d at 844 ("Where both legal and equitable relief are sought by a plaintiff, the Seventh Amendment right to a jury trial requires that the legal claims be tried first, to a jury."); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959) (explaining that a defendant's right to a jury trial must be protected by trying the legal claims of a case in front of a jury prior to trying the equitable claims). Under existing precedent, when a case has a legal

---

[2] Plaintiff also brought a separate claim involving a ramp located in the Cermak Health Services Building ("Cermak ramp"). However, after this present lawsuit commenced, the Cermak ramp was renovated and brought into compliance with ADA structural standards. (*See* Memo. Op., at 3, ECF No. 175.) ("Defendants have since renovated the Cermak ramp, and the parties agree that as of November 14, 2025, the area . . . now complies with the ADA.").

claim joined with an equitable claim, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Lacy*, 897 F.3d at 858 (citation and internal quotation marks omitted).

Absent a party waiving their right to a jury trial, which Defendants have not waived in this matter, the proper procedure is for a district court to try the legal issues first before a jury prior to deciding on a permanent injunction. *Id.* at 859. "Otherwise, the court might limit the parties' opportunity to try to a jury every issue underlying the legal claims by affording preclusive effect to its own findings on fact on questions that are common to both the legal and equitable claims." *Id.* at 858.

Accordingly, the Seventh Circuit has held that it is "reversible error" for a district court to deprive defendants of their right to a jury trial on ADA liability by granting a permanent injunction before the legal issues are decided by a jury. *Id.* at 860-861. In *Lacy*, "if not for the court's error, the defendants would have been entitled to a jury determination on all of the facts underlying the alleged ADA violations." *Id.* at 861. Because the issues were presented to the "wrong trier of fact," the Seventh Circuit stated the "court's error 'infect[ed] the disposition' of the equitable claims as well." *Id.* at 861 (citation omitted).

Plaintiff presents disputed facts – such as allegations that Plaintiff experienced "pain and shortness of breath when traversing the RTU east tunnel ramp" and that "his knees popped in and out of place" – to the wrong trier of fact. (*See* Pl.'s Mot., at 5, ECF No. 192.) Further, Defendants also plan to challenge Plaintiffs' standing during the time of trial. (*See* Ord., Dkt. No. 185) ("Defendant continues to challenge the standing of the Plaintiffs."). The determination of whether or not any of the Plaintiffs suffered injury is central to Defendants' factual challenge to Plaintiffs' standing. (*See* Deft.'s Resp., at 2-4, Dkt. 182); (Ord., Dkt. No. 185). A jury, and this Court, must

first resolve these factual issues before this Court may rule on the motion for permanent injunction. *See Lacy*, 897 F.3d at 861. Therefore, Plaintiff's motion is premature and should be denied.

## II.     A Permanent Injunction is Unnecessary Because Cook County Is Conducting a Thorough Evaluation of the Entire CCDOC Facility to Ensure Compliance with Accessibility Standards

Defendants are voluntarily working with contractors to evaluate the entire CCDOC complex into compliance with accessibility standards. Accordingly, Plaintiff's request to order Cook County to present a binding remediation plan to the Court is unnecessary and Plaintiff's need for injunctive relief is moot.

Before granting injunctive relief, a court must determine whether the plaintiff's need for injunctive relief is moot. *See Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000) ("When a case is moot, it must be dismissed as non-justiciable."). A defendant's voluntary conduct can moot a case where "there is no reasonable expectation that the wrong will be repeated." *Hummel v. St. Joseph Cty. Bd. Of Comm'rs*, 817 F.3d 1010, 1023 (7th Cir. 2016) (citation omitted).

When a defendant is a government actor, courts "ordinarily presume that the objectionable behavior will not recur." *Id.* The Seventh Circuit places "greater stock in [public officials'] acts of self-correction, so long as they appear genuine." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020) (quoting *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003)); *see Freedom from Religion Found., Inc. v. Concord Cmty. Schs*, 885 F.3d 1038, 1051 (7th Cir. 2018) ("[I]f a government actor sincerely self-corrects the practice at issue, a court will give this effort weight in its mootness determination."). A contrary conclusion would put courts in the position of "presuming [the government] has acted in bad faith," which is something courts "ordinarily do not presume." *Speech First*, 968 F.3d at 645.

Cook County is already taking action to make the changes that Plaintiff is requesting in his motion for permanent injunction. Currently, Cook County is working to hire architectural firms to

evaluate the entire CCDOC facility to make sure each aspect of the facility is ADA compliant. (Ex. A, Davis Decl. at ¶¶ 5-6.) The evaluation will determine whether renovation of the RTU east ramp is the best course of action, or whether there are alternative courses of action available. (*Id.* at ¶ 7.) Plaintiff's counsel has previously been informed of Cook County's efforts to ensure that the CCDOC is completely ADA Compliant. (*Id.* at ¶ 9.) Plaintiff's assertion that "there is no commitment by defendants to bring the ramp into compliance with the ADA" is false. (*See* Pl.'s Mot., at 6, ECF No. 190.) By conducting a complete evaluation of the CCDOC, Defendants avoid the risk of making hasty repairs which may not bring the RTU east ramp and its immediate surroundings fully into compliance. (*Id.* at ¶ 8.)

Cook County's efforts at evaluating the CCDOC complex and identifying the best course of action to bring it fully into compliance are genuine and are indeed already in the beginning stages. Consistent with the case law, this Court should presume that the appropriate actions to ensure compliance will be implemented without a court order. *See Speech First*, 968 F.3d at 645. Plaintiff's request for a permanent injunction is now moot, given Cook County's voluntary conduct. As such, Plaintiff's motion should be denied.

**III.     The Requested Injunction Cannot Be Entered Because It is Impermissibly Vague and Would Depend on Binding a Nonparty Independent Contractor Outside Rule 65(d)(2).**

Federal Rule of Civil Procedure 65(d)(1) requires any injunction to "state its terms specifically" and "describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." The injunction Plaintiffs seek does not satisfy this rule.

Moreover, Plaintiff seeks an injunction compelling the County to repair the RTU east ramp, but the actual repair work would be performed by an independent contractor who is not employed by the County. That matters because Rule 65 does not permit an injunction to impose compliance

8

duties on a nonparty contractor who is outside the limited categories of persons bound by an injunction.

Rule 65 limits the persons bound by an injunction to "the parties," "the parties' officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation with" them. Fed. R. Civ. P. 65(d)(2). The Seventh Circuit has enforced that limitation by holding that a district court "must not direct" a named defendant "to do things that only some other" nonparty "could perform." *Lake Shore Asset Mgmt. v. CFTC*, 511 F.3d 762, 767 (7th Cir. 2007).

Plaintiff's proposed injunction would violate those limits. The County is the party before the Court, but the person or entity that would actually perform the renovation is an independent contractor, not a County employee. Plaintiff therefore seeks relief whose performance, on a "reasonable timetable" no less, turns on a nonparty's actions, decisions, and professional judgment. Under the Seventh Circuit's rule, the Court should not enter an order that directs the County to accomplish acts that only the nonparty contractor can perform. *See id.*

Nor can Plaintiff avoid Rule 65 by assuming that the contractor will be bound merely because the County may hire or request the contractor to perform the work. Nonparties may be bound when they are in active concert or participation with an enjoined party and receive actual notice, but Rule 65 does not automatically bind every nonparty whose cooperation would make an injunction effective. *See* Fed. R. Civ. P. 65(d)(2). An order framed as a command to the County would function as an indirect command to the contractor, without first establishing that the contractor is bound by Rule 65(d)(2). Accordingly, Plaintiff's requested injunction violates Rule 65 and should be denied.

9

**IV.     Plaintiff Cannot Meet Each of the Requirements for a Permanent Injunction**

Plaintiff cannot succeed on his motion for permanent injunction because he fails to establish the requirements for permanent injunctive relief to be granted. To obtain a permanent injunction, Plaintiff must show "not just a probability of success on the merits but actual success." *Vaughn*, 968 F.3d at 825. Plaintiff must further show (1) irreparable injury; (2) that money damages are inadequate to compensate for that injury; (3) the balance of hardships between plaintiff and defendant weigh in favor of an injunction; and (4) the public interest would not be disserved by a permanent injunction. *Id.* at 824.

> **A.     No class members will suffer irreparable injury, and monetary damages are adequate.**

No class member can demonstrate that they have suffered, or will suffer, an irreparable injury due to the alleged noncompliance of RTU east ramp. Further, whether any class member suffered from any injury is still disputed and should be tried in front of a jury. If a plaintiff cannot show an irreparable injury "a court's inquiry is over and the injunction must be denied." *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005) (citation omitted). Even where a plaintiff shows actual harm, this does not prove that the harm will be irreparable. *Id.*

Damages are the norm, so a plaintiff "must show why his case is abnormal." *Walgreen Co. v. Sara Creek Property Co.*, 966 F.2d 273, 275 (7th Cir. 1992). For an injury to be "irreparable" in the context of an injunction, it must "not be rectifiable by the entry of a final judgment." *Id.*; *see Bellon*, 414 F.3d at 703-704 (determining that an injury is irreparable "only if it cannot be remedied through a monetary award after trial"). Even "repeated and ongoing violations" of law do not warrant injunctive relief "if each violation may be remedied by a monetary award." *Bellon*, 414 F.3d at 704.

Plaintiff asserts that class members will continue to suffer harm in the form of pain and an inability to traverse RTU east ramp. (Pl.'s Mot., at 5, ECF No. 190.) Plaintiff's contention that this "threshold showing" is enough to prove that their injuries are irreparable is incorrect. (Motion at 5, ECF No. 190.) Even if these accounts are credible, such pain or hardship is not irreparable harm. *See Wheeler v. Talbot*, 770 F.3d 550, 552-553 (7th Cir. 2014) (determining that a plaintiff's injuries which caused his skin to hurt and ooze puss was insufficient to show irreparable harm). Such harm is fully compensable through a monetary award, and Plaintiff has failed to meet their burden to demonstrate why this case is abnormal enough for this Court to take the "extraordinary" step of awarding injunctive relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Further, these assertions are disputed facts, which Defendants are entitled to have tried in front of a jury.

### B.     The balance of hardships weighs against a permanent injunction.

Plaintiff seeks an injunction ordering Cook County to "undertake architectural modifications" to bring the RTU east ramp into compliance with the federal accessibility standards, and to "implement appropriate interim accommodations for class members" while the RTU east ramp is noncompliant. (Pl.'s Mot., at 7, ECF No. 190.) Because Plaintiff is asking this Court to order Cook County to perform an affirmative act, as opposed to refrain from doing something, Plaintiff is seeking a mandatory injunction.

Mandatory injunctions are "rarely issued," and not issued unless "upon the clearest equitable grounds." *Graham v. Med. Mut.*, 130 F.3d 293, 295 (7th Cir. 1997). The requirement to show the balance of hardships "takes on heightened importance" when a plaintiff requests a mandatory injunction. *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011). A mandatory injunction imposes significant burdens on the defendant and "requires careful

11

consideration of the intrusiveness of the ordered act," as well as the difficulties that may arise in supervising compliance with the court's order. *Id*.

The balance of hardships weighs more heavily on Cook County if a permanent injunction is entered than it does on Plaintiff if an injunction is not entered. Neither Plaintiff, nor any other member of the class, has presented evidence outside of their own self-interested accounts that traversing the RTU east ramp causes them pain or prevents them from traversing the ramp the same basis as able-bodied detainees. While there is a public interest in ensuring that correctional facilities comply with accessibility standards, Cook County is already engaged in efforts to make the ramp conform to ADAAG standards and throughout the CCDOC. The entry of a permanent injunction would place the Court in the role of County administrator, and general contractor. Additional oversight and the creation of a "binding remediation plan" would impose additional costs on the project, take time away from completing the project on an expedited basis, and interfere with the management of the CCDOC.

Further, any renovations conducted at CCDOC carry with them special considerations which differ from other public institutions. For instance, if any area of travel is restricted due to renovations, the Sheriff's Office must identify specific alternative methods of travel and implement new policies and procedures in order to ensure the safety and security of both detainees and jail staff. For this reason, renovations must be carefully sequenced with any other ongoing construction. This plethora of considerations adds to the overall level of hardship which Defendants must endure in order to conduct any renovation of the RTU east ramp.

This Court's analysis of the balance of hardships is governed by the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520 (1979). It is well established that jail officials are entitled to a great deal of deference when addressing the day-to-day operations of correctional institutions.

12

*See Bell*, 441 U.S. at 548 ("[J]udicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.").

Courts are not to engage in "an impermissible substitution of its view on the proper administration of [a jail] for that of the experienced administrators of that facility." *Block v. Rutherford*, 468 U.S. 576, 589 (1984). Cook County is presently undergoing efforts to ensure that the RTU east ramp completely conforms to the requirements of the ADAAG, and Plaintiff's counsel has been aware of these efforts. This Court should allow the administration of this project to continue without unnecessary judicial oversight. Plaintiff has failed to establish his burden of showing the balance of hardships weighs in favor of a mandatory permanent injunction, and his motion should be denied.

### C.     The public interest would be disserved by a permanent injunction.

"Courts must give substantial deference to the professional judgment of [jail] administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Nigl v. Litscher*, 940 F.3d 329, 334 (7th Cir. 2019); *see Henry v. Hulett*, 969 F.3d 769, 783 (7th Cir. 2020) ("[C]ourts must afford prison administrators wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.") (quotation marks omitted).

The decisions involved in renovating the RTU east ramp and for the accommodations to be provided to detainees traveling to the RTU are best made by elected officials who are accountable to the public. The budget allocation, design, and the construction of any renovations

to the facilities are being implemented through a predetermined process that is in the public interest. The County Board is elected to operate in the public interest. An order from the Court outside that democratic process would subvert the public interest.

## **CONCLUSION**

For these reasons, Defendants respectfully ask the Court to deny Plaintiff's motion for permanent injunction.

Respectfully submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

Dated: June 29, 2026

/s/ *Nelson A. Aydelotte*
Special Assistant State's Attorney


Samuel D. Branum (branums@jbltd.com)
Nelson A. Aydelotte (aydelotten@jbltd.com)
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770