IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cuauhtemoc Hernandez, et al., | ) | |
| | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| *-vs-* | ) | No. 23-cv-16970 |
| | ) | |
| Thomas Dart, Sheriff of Cook | ) | Honorable Sunil R. Harjani |
| County, and Cook County, Illinois, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFFS' MOTIONS IN LIMINE**

Plaintiffs, by counsel, requests that the Court rule on the following matters

prior to trial.

## 1. Bar defendants from presenting evidence or arguments contrary to the Court's summary judgment memorandum opinion and order

Defendants are expected to present legal and factual arguments that this

Court has already considered and rejected at summary judgment. During the

parties' July 7, 2026 conferral, lead counsel for Sheriff Dart and Cook County

indicated that defendants may argue: (1) the Cermak ramp complied with the ADA

when it was constructed; (2) any deviations from the applicable standards was *de*

*minimis* or that the ramps substantially complied with the ADA; (3) the absence of

a required intermediate landing on the Cermak ramp was inconsequential because

the rise exceeded the 30-inch maximum by only 2.4 inches; and (4) defendants'

policy of providing staff assistance, wheelchairs, or carts cured any structural

noncompliance. Each of these arguments is contrary to the Court's summary judgment memorandum opinion and order.

Specifically,

a. There is no evidence that either the Cermak ramp or the RTU east tunnel ramp complied with the applicable ADA structural standards when constructed.

b. The Court made explicit findings regarding the structural deficiencies of both ramps. The Court found that the Cermak ramp "had a rise of 32.4 inches, which is 2.4 inches over the maximum permitted by the 1991 Standards," and that its handrails did not comply with the applicable standards. Dkt. 175, Memorandum Opinion and Order at 6. The Court likewise identified the specific structural violations affecting the RTU east tunnel ramp. *Id.* at 9. The Court further rejected defendants' arguments that the ramps were in "substantial compliance" or that "any non-compliance is *de minimis*." *Id.* at 7, 9-10.

c. Defendants also argued at summary judgment that they provided "functional alternatives – staff assistance, wheelchairs, and carts – to ensure access" on the ramps. Dkt. 141 at 21. The Court rejected that argument as a matter of law, holding that such measures, even if implemented, "do[] not constitute equivalent access." Dkt. 175, Memorandum Opinion and Order at 8-9.

Because these issues have already been decided, defendants should not be permitted to relitigate them before the jury through evidence or argument inconsistent with the Court's summary judgment rulings. Allowing defendants to do so would confuse the issues, waste trial time, and invite the jury to disregard legal determinations that are already the law of the case.

Accordingly, plaintiffs respectfully request that the Court bar defendants from presenting evidence or argument that is contrary to the Court's summary judgment memorandum opinion and order.

## 2.  Bar evidence regarding the "ramp survey" dated 11/1/2022

Defendants filed a "ramp survey" at summary judgment purporting to be the Cermak ramp. *See* Exhibit 1, "Ramp Survey," filed by defendants at Dkt. 140-1 at 8. Defendants then argued this "2022 survey using a laser level confirmed that the ramp was compliant" because the rise was exactly 30 inches. Dkt. 141, Defendants' Memorandum. During a July 7, 2026 phone conferral, defense counsel stated that this survey may be used to argue the Cermak ramp – in 2022 – was fully compliant with the ADA. Defendants should be barred from arguing this point for several reasons.

First, there is no dispute that the Cermak ramp in 2022 was not compliant in 2022 because the rise was 32.4 inches. This Court granted summary judgment on this issue in favor of the Rule 23(b)(3) class and held the Cermak class - from December 20, 2021 to November 14, 2025 - prevailed on the issue whether the ramp complies with the ADA. *See* Dkt. 175, Memorandum Opinion and Order at 1-

2. Defendants should not be permitted to use this unsigned survey to relitigate the merits of compliance with the ADA structural standards.

Second, the survey is inadmissible hearsay. The document is neither signed nor sealed by a licensed surveyor, engineer, or other qualified professional. *See* Exhibit 1, "Ramp Survey." Defendants also fail to identify in discovery any witness who prepared, verified, or can authenticate the survey.

Moreover, defendants have previously acknowledged the document's lack of reliability. During proceedings in *Walker v. Dart*, 20-cv-261, on March 23, 2023, counsel for the Sheriff and Cook County represented to the Court that the survey was not defensible in front of a jury. Exhibit 2, Transcript from 3/23/2023 at 18:16-19:7.

The document also bears no resemblance to the professionally prepared survey generated after demolition of the Cermak ramp. That survey was prepared by a licensed engineering firm, contains field measurements, and bears the hallmarks of a reliable professional survey. *See* Exhibit 3, Eva Design and Engineering LLC Field Measurements dated 11/18/2025. In contrast, defendants have offered no foundation establishing who created the challenged survey, how the measurements were obtained, or whether the document accurately reflects the conditions it purports to depict. Without such foundation, the survey is inadmissible hearsay and should be excluded.

### 3. Limit evidence of plaintiffs' prior felony convictions

Each plaintiff has several felony convictions. The IDOC's publicly available information shows that Mr. Mathis was convicted of possession of a controlled

substance and spent 1 year in the Illinois Department of Corrections beginning on May 24, 2013. Exhibit 4, IDOC Inmate Search Results for Mathis. He is presently incarcerated for an aggravated discharge of a firearm and is serving a four-year sentence under Case No. 23CR0510701. *Id.* Mr. Mathis also avers that he has felony convictions as a juvenile and that he has had many convictions, 13 or 14, relating to driving on a revoked or suspended license. Exhibit 5, Mathis Interrogatory Answer ¶ 11.

Mr. Hernandez also has a significant criminal history. On February 7, 2001, he was sentenced to 44 years in the IDOC for murder and attempted murder under 98 CR 2437301. Mr. Hernandez served, in total, approximately 21 years in custody for this conviction. Dkt. 122-22, Hernandez Dep 14:3-13. He returned to the IDOC on or around April 12, 2022, for violating mandatory supervisory release. *Id.* at 24:3-25:7. Mr. Hernandez was also convicted of a gun case. *Id.* at 23:1-11.

As the Seventh Circuit concluded in *Barber v. City of Chicago*, 725 F.3d 702 (7th Cir. 2013), "[p]resenting a § 1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict based not on the evidence, but on emotions and other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers." *Id.* at 715; *accord*, *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992).

The Court should exclude argument and evidence of the felony convictions under Rule 609(b) where more than 10 years has passed since release from confinement. This applies to the conviction of Mr. Mathis for possession of a controlled substance where he spent 1 year in the Illinois Department of

Corrections beginning on May 24, 2013. *See* Exhibit 4, IDOC Inmate Search Results for Mathis. More than 10 years have passed since this felony conviction and defendants cannot show, in the context of this case, the probative value substantially outweighs its prejudicial effect.

Second, informing the jury of the nature of each plaintiff's convictions or charges over his lifetime creates a substantial risk of unfair prejudice. Rule 403 favors exclusion. In criminal cases, the Seventh Circuit has identified five considerations weighing probative value against prejudicial effect: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004) (citing *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir. 1976)). "While not all of these factors will apply in civil cases, the same general concerns may illuminate the court's analysis." *Buchanan v. McCann*, 08 C 7063, 2012 WL 1987917, at *1. Courts should take care "to ensure that a civil rights plaintiff's criminal past is not being used to unfairly prejudice him or her." *Anderson v. City of Chicago*, 09 C 2311, 2010 WL 4928875, at * 1 (N.D. Ill. Nov. 30, 2010) (quoting *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992)).

In *Kincaid v. Sangamon County*, 09-cv-3053, 2015 WL 13548179, at *1 (C.D.Ill. 2015), the district judge excluded evidence of the nature of the plaintiff's conviction for child pornography under Rule 403 because "[a] juror would likely find it difficult to get past the heinous nature of the Plaintiff's crime and listen to the

testimony with an open mind." The same result occurred in *Christmas v. Sanders*, 759 F.2d 1284, 1292 (7th Cir. 1985), where the Court of Appeals affirmed the exclusion of a plaintiff's rape conviction in a civil rights action.

Accordingly, the Court should exclude specific evidence of each plaintiff's criminal record and merely allow defendants to introduce the fact that each plaintiff is a convicted felon. *Smith v. Nurse*, 14 C 5514, 2016 WL 4539698, at *2-4 (Aug. 31, 2016) (Dow, J.) (limiting evidence under Rule 609(a)(1)(A) that plaintiff had convictions in 2013 for residential burglary and attempted aggravated criminal sex abuse and an earlier felony conviction or burglary to "the fact that Plaintiff is a convicted felon"). Plaintiff's counsel offered this proposal during a conferral on July 7, 2026, but defendants did not agree and indicated that the jury should be informed of the nature of each felony conviction because it attacks each person's character for truthfulness.

## 4. Bar evidence of the criminal charges against each plaintiff while detained at the Cook County Jail

Mr. Hernandez was detained at the Cook County Jail on an alleged violation of supervised release and a weapons charge. Mr. Mathis was detained while facing several felony charges that ultimately resulted in convictions related to aggravated discharge of a firearm. The nature of the criminal charges that resulted in each plaintiff's detention has no bearing on any issue the jury must decide in this case. The relevant facts are that each plaintiff was detained at the Cook County Jail and that each encountered the inaccessible ramps during that detention.

Evidence concerning the specific criminal charges is therefore irrelevant under Federal Rules of Evidence 401 and 402. Even if marginally relevant, any probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and inviting the jury to decide the case based on the plaintiffs' alleged criminal conduct rather than whether defendants complied with the ADA.

To further minimize any potential prejudice, plaintiffs have offered to stipulate that each plaintiff is a convicted felon. Nothing in plaintiff's request prevents defendants from seeking to impeach either plaintiff in accordance with Federal Rule of Evidence 609.

Accordingly, plaintiffs respectfully request that the Court bar defendants from introducing evidence or argument concerning specific criminal charges for which either plaintiff was detained at the Cook County Jail.

5. **Bar evidence that plaintiffs, if they prove a violation of the ADA after January 1, 2024, are entitled to statutory damages under Illinois law**

The Illinois Civil Rights Remedies Restoration Act, 775 ILCS 60/1 *et seq*. provides a minimum remedy of $4,000. 775 ILCS 60/20. During a conferral on July 7, 2026, plaintiff requested an agreement that the parties do not introduce evidence of this minimum remedy under state law. Defendants opposed this request.

It is not relevant for the jury to know that Illinois provides minimum damages of $4,000 for a violation of the ADA "and any attorney's fees, costs, and expenses, including, but not limited to, expert witness fees, that may be determined by the court in addition thereto." *Id.* Such evidence relating to statutory damages is not

-8-

relevant to the issue of whether defendants violated the ADA and whether each plaintiff can prove compensatory damages.

## 6. Bar defendants from producing new documents on the eve of trial

Discovery in this case closed approximately one year ago. Nevertheless, during the parties' July 7, 2026 conferral, defense counsel stated that defendants intend to produce additional documents that they may seek to introduce at trial. For example, defense counsel represented that he is now in possession of certified copies of each plaintiff's criminal convictions. Defendants offered no explanation why these documents were not produced during discovery.

Plaintiff is also concerned that defendants may attempt to produce other previously undisclosed evidence shortly before or during trial, including, but not limited to:

a) Additional videos depicting either Mr. Hernandez or Mr. Mathis;

b) Additional records maintained by the Sheriff or Cook County pertaining the Mr. Hernandez and/or Mr. Mathis.

When asked whether any additional documents would be produced, defense counsel stated he was not currently aware of any other materials but could not rule out future productions because his clients might locate additional documents, which he believed would then have to be disclosed.

Defendants have had ample opportunity to identify, collect, and produce all responsive documents. There is no justification for withholding discoverable materials until the eve of trial. For example, Mr. Mathis has not been in defendants' custody since August 29, 2024, and defendants have had nearly two years to

supplement their document production. Likewise, all records maintained by the Sheriff or Cook County have been within defendants' possession, custody, or control throughout this litigation.

Permitting defendants to introduce documents that were not timely disclosed during discovery would unfairly prejudice plaintiffs by depriving them the opportunity to investigate the documents, conduct follow-up discovery, depose witnesses regarding the documents, or otherwise prepare for trial. Such prejudice cannot be cured on the eve of trial.

Accordingly, plaintiffs respectfully request that the Court bar defendants from introducing at trial any documents, videos, or other evidence that were not timely produced during discovery, absent a showing of substantial justification or that the failure to disclose was harmless.

## 7. Conclusion

It is therefore respectfully requested that the Court rule on the above referenced matters in advance of trial.

Respectfully submitted,

/s/  Patrick W. Morrissey
Thomas G. Morrissey, Ltd.
10257 S. Western Ave
Chicago, IL 60643
(773)233-7901
pwm@morrisseylawchicago.com

*attorneys for the plaintiffs*

-10-