PIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cuauhtemoc Hernandez, et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| *-vs-* | ) | No. 23-cv-16970 |
| | ) | |
| Thomas Dart, Sheriff of Cook | ) | Judge Harjani |
| County, and Cook County, Illinois, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTIVE RELIEF

The east RTU tunnel ramp is designated an accessible route to bring people from the Residential Treatment Unit (RTU) building to the CCDOC underground tunnel system. This ramp is less than 60 feet from the Cermak ramp, the main passageway for individuals housed in the RTU to go for medical appointments at Cermak.

The Court has found this ramp violates the ADA structural standards. Defendants' retained architect, Carl Darr from Globetrotters Engineering Corporation (GEC) and Eric Davis, the Deputy Director of Capital Planning and Policy for Cook County, agree the east RTU tunnel ramp is non-compliant with the ADA structural standards due to many violations. Exhibit 4, Darr Dep 100:10-17; Dkt. 190-1, Davis (3/5/2026) Dep 64:9-23. One of the more egregious violations, the top landing that is 85 percent short of the required space, can be easily corrected by relocating doors. Another violation, the non-compliant slope near the upper portion of the ramp, appears to be easily corrected within several months by resurfacing the walking surface.

-1-

Rather than move at all deliberate speed to repair this ramp, defendants seek to wait years to make necessary corrections due to a desire to first conduct an evaluation of the entire CCDOC facility for ADA compliance.

This proposal is unworkable. The RTU east ramp violations deprive class members the ability to traverse the ramp on the same basis as non-disabled inmates. Defendants know the rights of class members will continue to be violated until the ramp is brought into compliance with the ADA.

For the reasons previously advanced and discussed below, the plaintiff class requests that the Court grant the motion for permanent injunctive relief requiring defendants to: (1) undertake the architectural modifications necessary to bring the RTU east tunnel ramp into compliance with the ADA; and (2) implement appropriate interim accommodations for class members with mobility disabilities until those modifications are completed.

### I.    The Court has the power to enter permanent injunctive relief

The jury trial set for August 17, 2026, is limited to adjudicating the "the individual claims by the two named Plaintiffs." Dkt. 181, Minute entry. This trial, however, will not relitigate the question whether the RTU east tunnel ramp violates the ADA. The Court resolved this factual and legal issue. The jury's determination of whether Mr. Mathis demonstrates the remaining elements of his legal claim under the ADA for damages does not involve any issues "common" to the equitable claim at issue in this motion. *See Lacy v. Cook County*, 897 F.3d 847, 858 (7th Cir. 2018).  Defendants do not explain why "[t]he issue of damages" has any bearing on relief for the Rule 23(b)(2) class. *See* Dkt. 193, Response at 5.

Indeed, there is no dispute that Mr. Mathis, the Rule 23(b)(2) class representative, lacks standing individually to seek injunctive relief since he is no longer at the Cook County Jail. Dkt. 190, Motion ¶¶ 6-8. However, at the time the Court certified the Rule 23(b)(2) class it was determined that Mr. Mathis was adequate to represent this class. *See* 72, Memorandum Opinion and Order at 4. The claims of the 23(b)(2) class remain live because of the inherently transitory exception that the Seventh Circuit recently addressed in *Westmoreland v. Hughes*, 144 F.4th 952 (7th Cir. 2025).[1] Defendants do not even mention *Westmoreland* in their brief and given the Court's detailed finding that the RTU east tunnel ramp violates the ADA, there are no factual disputes left for a jury to decide.

Defendants, relying on the Seventh Amendment and *Lacy* insist that a jury must decide damages prior to a decision on equitable relief. Dkt. 193, Response at 5. This argument is irreconcilable with *Bennett v. Dart*, 953 F.3d 467, 468-69 (7th Cir. 2020), where the Seventh Circuit held the issue whether a building complies with the federal accessibility standards "avoids all person-specific questions." Applying this principle, the Ninth Circuit reiterated in *Kirola*, "[o]bedience to the spirit of the ADA does not excuse

---

[1] The Seventh Circuit's decision in *Scherr v. Marriott Intern., Inc*, 703 F.3d 1069 (7th Cir. 2013), is also instructive. In that case, a disabled plaintiff sued Marriott under Title III of the ADA seeking injunctive relief on grounds doors at fifty-seven various properties across the country were not compliant with the ADA. 703 F.3d at 1071. The Court explained Title III is available to "any person who is being subjected to discrimination on the basis of disability" or who has "reasonable grounds for believing that such person is about to be subjected to discrimination." *Scherr*, 703 F.3d at 1075 (citing 42 U.S.C. § 12188(a)(1)). Persuaded by the Ninth Circuit's "observ[ations]" regarding this language, the Seventh Circuit has interpreted "is being subjected to" and "is about to be subjected to" as meaning that "a continuing or a threatened violation of the ADA is an injury within the meaning of the [ADA]" and that a plaintiff may seek "injunctive relief to stop or to prevent such injury." *Scherr*, 703 F.3d at 1075 (quotations omitted) (citing *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002)). "[A]s long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied." *Kohen v. Pacific Inv. Management Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009). And, of course, "[a] certified class thus acquires a legal status separate from the interest asserted by the named plaintiff." *United States v. Sanchez-Gomez*, 584 U.S. 381, 387-88 (2018) (quoting *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)).

noncompliance with [] ADAAG's requirements."[2] *Kirola v. City and County of San Francisco*, 860 F.3d 1164, 1178 (9th Cir. 2017) (internal citation omitted).

Defendants also misapply *Lacy* and fail to acknowledge the Seventh Circuit affirmed the grant of permanent injunctive relief with respect to moving a privacy screen located in a holding cell at the Maywood courthouse because it was "1.5 inches too close to the rear walls of the cell[]" under the appliable accessibility standards. *Lacy*, 897 F.3d at 867, 869. *Lacy* concerned six courthouses that "were built before 1992 and thus are not subject to the ADA's structural accessibility standards." *Lacy*, 897 F.3d at 854. The district court consolidated the hearings on preliminary injunctive relief and permanent injunctive relief – without adequate notice required under Fed.R.Civ.P. 65(a)(2) - and made a finding the "defendants had not consistently helped wheelchair-using detainees maneuver the ramps" and issued a permanent injunction "with respect to the ramp-assistance policy." 897 F.3d at 856, 859, n. 23. The Seventh Circuit overturned the district court's grant of permanent injunctive relief only with respect to the "Sheriff's ramp policy." 897 F.3d at 869. The Seventh Circuit held the district court did not correctly apply Rule 65(a)(2) and deprived defendants of a jury trial. 897 F.3d at 859. The "proper procedure would be for the district court to hold a hearing on the preliminary injunction, then to try the legal issues before a jury, and then to hold the hearing itself on the permanent injunction." 897 F.3d at 859.

---

[2] And when the Ninth Circuit reviewed *Kirola* again in 2023 it held the "district court abused its discretion in denying relief for the ADAAG violations," *Kirola v. City and County of San Franscico,* 2023 WL 2851368, at *2 (9th Cir. 2023), which prompted the district court, on remand, to grant injunctive relief directing the local government to correct ADAAG violations such as "a missing grab bar in one of the accessible restrooms in the ballpark area in violation of ADAAG § 4.17.3" and "[t]he doorway to the video booth in the Deaf Services Center has too little clear opening width in violation of ADAAG § 4.13.5." *Kirola v. City and County of San Francisco*, 2024 WL 1354414, *2-3 (N.D. Cal. March 28, 2024).

While most of *Lacy* did not concern compliance with structural accessibility standards – because the structural standards did not apply - two holding cells at the Maywood courthouse were renovated after the litigation commenced. The County modified these holding cells to "to bring them into partial compliance with the latest accessibility standards." 897 F.3d at 867. Specifically, the "County updated the holding cell entryways, replaced the metal benches, and installed new lavatory fixtures and grab bars; however, it did not remove or reposition the privacy screens." *Id.* These voluntary modifications triggered a legal obligation to bring the facilities "into compliance with the latest accessibility standards." 897 F.3d at 868. "After receiving supplemental briefing and conducting a limited evidentiary hearing, the district court concluded that the accessibility standards mandated the County's full compliance with the clear-floor-space requirements" and "issued a permanent injunction requiring the County to move the privacy screens by 1.5 inches." 897 F.3d at 867.

The Seventh Circuit affirmed the permanent injunction in *Lacy* holding the district court was the appropriate "finder of fact" when deciding whether it was "technically infeasible" to move the privacy screen located near the toilet 1.5 inches. 897 F.3d at 869. It was appropriate for the district court to reach "a reasoned conclusion based on the competing evidence before it" and there was "no reason to disturb its factual findings." *Id.* Similar to the *Lacy* decision regarding the Maywood courthouse privacy screens being 1.5 inches too close to the toilet, the Court is the appropriate "finder of fact" whether the east RTU ramp complies with the applicable structural standards and has the power to enter permanent injunctive relief.

Finally, defendants contend that Cook County would retain an independent contractor to repair the noncompliant ramp and suggest that the Court lacks authority to compel such a contractor to perform the work. *See* Dkt. 193, Response at 8-9. This argument is meritless. The County remains fully capable of complying with the Court's order by retaining and directing a contractor to perform whatever work is necessary to bring the ramp into compliance with the federal law.

## II. Request for injunction is not moot on grounds of an intent by Eric Davis, Deputy Director of Capital Planning and Policy, to repair the non-compliant ramp

Defendants argue plaintiff's request for an injunction is "unnecessary" and "moot" because Mr. Davis plans to repair the non-compliant ramp but first desires to conduct an "architectural assessment" of "every building in the CCDOC facility, as well as adjacent buildings, tunnels, ramps, sidewalks, etc." Dkt. 194, David Decl ¶ 6. If an architect is hired under this comprehensive plan to identify all ADA violations, Mr. Davis has "absolutely no idea" of the cost to make necessary improvements, but believes the cost "is likely in the tens of millions of dollars, if not more." Exhibit 1, Davis (6/5/2024) Dep 244:9-15. And prior entering any contract to assess ADA compliance or commencing construction to repair ADA violations all funding must be approved by the Cook County Board of Commissioners. Exhibit 1, Davis (6/5/2024) 244:16-245:8. Recently, Mr. Davis testified that plans for the assessment began around 2018 when the Sheriff's ADA Compliance Officer prepared a FY19 Business Case for an assessment of the CCDOC. *See* Dkt. 190-1, Davis (3/5/2026) Dep 25:3-24, 51:15-52:2; Exhibit 6, FY19 Business Case dated 4/3/2018. Mr. Davis believes the cost for this entire project, including to both design and

construction, could reach a hundred million dollars. Dkt. 190-1, Davis (3/5/2026) Dep 48:2-19.

Cook County has absolutely no idea how long the east RTU ramp will remain non-compliant with the ADA. Exhibit 1, Davis (6/5/2024) 228:12-19. In June of 2024, Mr. Davis said the ramp "may or may not" be renovated in four years. Exhibit 1, Daivs (6/5/2024) Dep 247:10-24. It is not uncommon for Cook County to take years to attempt to remedy a non-compliant ramp.[3]

The purpose of the ADA is to ensure that individuals with disabilities have equal access to public facilities. Mr. Davis testified that this is an "extremely important principle" because individuals should be able to "interact on an equal basis with their environment." Exhibit 1, Davis (6/5/2024) Dep 230:24-232:17. Consistent with that principle, Mr. Davis acknowledged that "we need to find a way to remedy" the non-compliant east RTU ramp. *Id.* at 235:7-13.

Mr. Davis further agreed that the ramp's noncompliant landings – which are less than the required 60 inches – deprive individuals with mobility impairments of the same

---

[3] In 2019 Mr. Davis testified that the intent of Cook County was to procure an architect to design the Cermak ramp, a few feet from the east RTU ramp, "through what's called a task order." Exhibit 2, Davis (12/19/2019) Dep 35:7-36:4. The purpose of the "task order" was to "expedite execution of projects." *Id.* The County Board, however, denied the request by Mr. Davis. *Id.* at 36:5-8. Following the County Board's decision, Mr. Davis testified on December 19, 2019, that he was "working with procurement to establish a standard that would allow us to go forward" and hoped to "accomplish those projects as expeditiously as possible." *Id.* at 36:18-37:17.

Mr. Davis, the evidence cited by Cook County in support of an "intent" to repair the ramp, does not have the authority to bind the government to repair the non-compliant ramp. Ultimately, the County Board must allocate funds to repair the ramp. Exhibit 3, Davis (3/12/2024) Dep 234:10-13. Cook County, at the time of this deposition, had not even priced construction for the Cermak ramp because they do not have an architectural design for the ramp and "[y]ou can't price anything until you have the design, which we're working on getting right now." *Id.* at 237:7-22. And prior to review by the County Board, the Cook County Procurement Office has the power to reject construction or design proposals. *Id.* at 225:21-226:20. In response to his counsel's questions, Mr. Davis said "[y]ou know, so as far as uncertainty is concerned, can I absolutely guarantee it? No." *Id.* at 226:21-22.

ability to navigate the ramps as nondisabled individuals.[4] *Id.* at 162:4-18. When asked about the top landing, which is approximately 85 percent smaller than the minimum landing required by the ADA Standards, Mr. Davis testified "I am at a loss to understand why it would have been constructed that way." Exhibit 1, Davis (6/5/2024) Dep 155:12-18.

On a final note, Cook County has made similar representations regarding an intent to renovate inaccessible buildings. In *Lacy*, for example, the "County Board approved $8.3 million in funding for ADA renovations to the Leighton courthouse holding cells as a part of its 2015 budget" and "as of September 1, 2015, the County had executed a contract with Prima Engineering for the renovation design of the holding cells in the lower and upper-levels at the Leighton courthouse." *Lacy v. Dart*, 2015 WL 5921810, at *9 (N.D. Ill. 2015) (Gettleman, J.). Specifically, Michael Gumm, the County's former ADA Project Coordinator, testified "the Leighton courthouse construction will be completed in three phases over the course of 34 months (10 months for design and 24 months for construction). The first phase of construction will renovate the lower level/bridge holding cells, the second phase will renovate the holding cells behind the courtrooms on floors one and two, and the third phase will renovate the holding cells behind the courtrooms on floors three through seven." *Id.* Fast forward ten years, the County has not renovated the holding cells at the Leighton courthouse. Mr. Davis testified the drawings by Primera, the architect of record, "were not complete" because "[t]here was an issue with phasing that came up in terms of implementing it, so the drawings were never completed and issued for permit or construction." Exhibit 5, Davis (1/24/2022) Dep 192:5-19. Cook County spent

---

[4] A 60 inch landing allows a person to have a "place of rest" according to Mr. Davis. Exhibit 1, Davis (6/5/2024) Dep 158:23-159:22, 160:7-161:2.

approximately one million dollars for design drawings for the Leighton courthouse. *Id.* at 192:5-9. This is evidence that although Mr. Davis and Cook County may have noble intentions, an injunction is necessary to ensure the east RTU ramp is remedied to comply with the law. Similar to the district court's analysis in *American Council of Blind of Metropolitan Chicago v. City of Chicago*, 667 F.Supp.3d 767 (N.D. Ill. 2023), even if Cook County's "current projections – unlike those it has made in the past – come to fruition in the manner the [County] describes, a plan in merely a start, it is not evidence that creates a dispute of material fact regarding current accessibility of the programs and services the [County] offers." 667 F.Supp.3d at 776-77 (cleaned up).

### III. Plaintiff satisfies each of the requirements for a permanent injunction

Defendants contend plaintiff is unable to satisfy any of the requirements for a permanent injunction. Dkt. 193, Response at 10-14. Plaintiff respectfully requests that the Court reject this argument for the following reasons.

#### A. Success on the merits

Defendants advance no argument that the Rule 23(b)(2) plaintiff class cannot prevail on the merits. Indeed, the Court already found the ramp is noncompliant with the ADA. Thus, plaintiff has demonstrated actual success on the merits.

#### B. Irreparable injury

Defendants argue "[n]o class member can demonstrate that they have suffered, or will suffer, an irreparable injury due to the alleged noncompliance of the RTU east tunnel ramp" and "whether any class member suffered from any injury is still disputed and should be tried in front of a jury." Dkt. 193, Response at 10.

First, it is plainly wrong for defendants to assert there is mere "alleged noncompliance of the RTU east tunnel ramp." The Court granted summary judgment in favor of the Rule 23(b)(3) class and found, as a matter of law, the ramp is non-compliant. Dkt. 175, Memorandum Opinion and Opinion at 1. Class members experience harm because the ramp is too steep, the handrails are non-compliant, and the landings – used to provide a place of rest, and transition on a ramp – are woefully inadequate under the minimum standards. These structural defects deprive mobility impaired individuals the ability to interact on the same basis with the environment as non-disabled, *see* Exhibit 1, Davis (6/5/2024) Dep 230:24-236:4, and violate the ADA. The Rule 23(b)(2) class is harmed by "intangible harm made actionable by a statute" and the Seventh Circuit held in *Patterson v. Howe*, 96 F.4th 992, 997 (7th Cir. 2024), "[i]ntangible harms arising from statutory violations can satisfy the injury-in-fact requirement so long as they are sufficiently concrete."

Second, it is legally incorrect that each class member must show an "injury" and that each class member's injury "should be tried in front of a jury." Dkt. 193, Response at 10. This position conflates damages alleged by Rule 23(b)(3) class members with a claim for relief by the Rule 23(b)(2) class to bring this ramp into compliance with the mandatory minimum standards. *See* Dkt. 72, Memorandum Opinion and Order at 5 (explaining the Rule 23(b)(2) class have "a common injury - inability to safely use the Cermak and Residential Treatment Unit ramps" and "[c]ommon injunctive relief would remedy the injury - either by bringing the ramps into compliance or by ordering policies and procedures to assist class members while the ramps undergo construction").

The core purpose of the Rehabilitation Act and ADA is to ensure that disabled individuals have "meaningful access" to public benefits. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985); *Segal v. Metro. Council*, 29 F.4th 399, 404 (8th Cr. 2022); *American Council of Blind of Metropolitan Chicago*, 667 F.Supp.3d at 776. As the district court recognized in *Council of Blind of Metropolitan Chicago*, "meaningful access has its common and ordinary understanding, signifying access to services that is substantially equal to the services provided to non-disabled persons." 667 F.Supp.3d at 776. And "[w]here the plaintiffs identify an obstacle that impedes their access to a government program or benefit, they likely have established meaningful access to a program or benefit." *Id.* (internal citation omitted).

Members of the Rule 23(b)(2) class continue to suffer irreparable harm because they are denied meaningful access to the CCDOC tunnel network by the RTU east tunnel ramp, which does not comply with the ADA's minimum structural standards. Defendants' own experts agree the ramp is noncompliant, and the record demonstrates mobility impaired individuals have been harmed and will continue to be harmed absent injunctive relief. *See Roberts v. Dart*, 2018 WL 1184735, at *4 (N.D. Ill. 2018) (Lee, J.) (finding amputee was at risk of harm each time he used a toilet because it lacked grab bars).

The video evidence is compelling. On November 7, 2019, Eugene Westmoreland, who used a cane, stumbled while ascending the RTU east tunnel ramp. Dkt. 149, Digital Exhibit, Exhibit 3, Tunnel-Cam 0.108 11/7/2019. At summary judgment, defendants admitted the video shows Mr. Westmoreland stumble near the top of the ramp at 10:01:45 am and brace himself against the wall at 10:02:09 am near the top of the ramp. Dkt. 158, Defendants' Local Rule Response ¶¶ 15-16. Later that same day, after traversing the tunnel

system, Mr. Westmoreland became fatigued, fell while climbing to his top bunk, and suffered catastrophic injuries. As Judge Kennelly found, Mr. Westmoreland was transported to Stroger Hospital, underwent spinal surgery, and "is now confined to a wheelchair." *Westmoreland v. Dart*, 2023 WL 4273661, at \*5-6 (N.D. Ill. 2023) (Kennelly, J.) (factual findings at summary judgment).

This evidence demonstrates that the noncompliant ramp, coupled with defendants' failure to implement "policies and procedures to assist class members while the ramp[] undergo[es] construction," *see* Dkt. 72, Memorandum Opinion and Order at 5, creates an ongoing risk of serious harm to mobility-impaired detainees. That continuing risk establishes irreparable harm and underscores the need for permanent injunctive relief.

Defendants incorrectly rely on *Wheeler v. Talbot*, 770 F.3d 550 (7th Cir. 2014), to argument pain moving up and down the ramp is not irreparable harm. Dkt. 193, Response at 11. This argument is flawed because *Wheeler* does not concern a claim under the ADA, but rather claims brought under the United States Constitution concerning deliberate indifference to a serious medical need. *See Wheeler v. Talbot*, 770 F.3d at 552-53. Here, the noncompliant ramp deprives mobility impaired people the ability move "on the same basis as other inmates." *Jaros v. Illinois Dep't. of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012); *accord Shuhaiber v. Illinois Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020). This is the harm plaintiff seeks to protect by the entry of an injunction. *See Kirola*, 860 F.3d at 1175 (barrier prevented plaintiff "from benefitting from the same degree of access as a person without a mobility disability, [that] deterred her from future attempts to access the facilities she visited" found to be "a concrete and particularized harm").

The Rule 23(b)(2) class will suffer irreparable harm absent injunctive relief because the ramp is not compliant with the ADA and the rights of class members will continue to be violated until the ramp is repaired. *See Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest."). An award of money damages cannot prevent physical injury. *Dolezal v. Concert Health Plan*, 433 F.Supp.2d 886,894 (N.D. Ill. 2005); *see also Flynn v. Doyle*, 992-93 (E.D. Wis. 2009) (no adequate remedy for "unnecessary pain and suffering"); *Von Colln v. County of Ventura*, 189 F.R.D. 583, 598 (C.D. Cal. 1999) (finding a defendant cannot plausibly argue "pain and suffering is not irreparable harm").

### C. Balance of hardships

Defendants next argue the balance of hardships weighs against a permanent injunction because plaintiff is seeking a mandatory injunction that "imposes significant burdens on the defendant." Dkt. 193, Response at 11. This representation is inconsistent with the findings by GEC that many of the violations can be corrected by making minor changes to the ramp such as extending the top of the ramp to provide a 60" landing required by the ADA. Dkt. 122-15, GEC Report at 16.

Defendants also argue that the Court should afford "a great deal of deference when addressing the day-to-day operations" and since Cook County is taking steps to repair the ramp, the "Court should allow the administration of this project to continue without unnecessary judicial oversight." Dkt. 193, Response at 12-13. Those arguments should be rejected.

Judicial oversight is warranted because there is no binding commitment by Cook County to bring the RTU east tunnel ramp into compliance within a reasonable time. Defendants have not proposed a completion date, agreed to any enforceable timetable, or otherwise demonstrated that the violations will be remedied absent a court order. To the contrary, defendants' in-house subject matter expert, Mr. Davis, testified that repairing the ramp is "important" and acknowledged that, if ordered by the Court, the renovations could be completed on an accelerated schedule. Exhibit 1, Davis (6/5/2024) Dep 228:20-229:17, 248:18-250:23.

The record also demonstrates that judicial oversight is necessary because Cook County has previously failed to complete promised accessibility projects. In the *Lacy* litigation, Cook County represented it would renovate the Leighton Criminal Courthouse holding cells within 34 months. More than a decade later, the project remains unfinished, with no definite completion date. The Court should not permit the same indefinite delay to occur here, where class members continue to be denied meaningful access to the tunnel system.

Finally, the balance of hardships favors entry of a permanent injunction. Defendants themselves represent that Cook County is already moving forward with plans to renovate the ramp. *See* Dkt. 193, Response at 12-13. A permanent injunction would therefore impose little additional burden beyond requiring defendants to complete work within a reasonable, court-enforceable timeframe, while protecting class members from the ongoing denial of their rights under the ADA.

### D. Public interest

Defendants' final argument is that the public interest is not served by an injunction because "decisions involved in renovating the RTU east ramp and for the accommodations to be provided to detainees are best made by elected officials who are accountable to the public." Dkt. 193, Response at 13. This argument should be rejected for the following reasons.

First, the public interest is served by repairing the ramp to comply with federal law. *See Von Colln*, 189 F.R.D. at 598 ("Fourteenth Amendment considerations dictate that the public interest would be best served by granting the injunction"). Indeed, Mr. Davis agrees that the ramp must be repaired. Dkt. 190-1, Davis (3/5/2026) Dep 64:9-65:17.

Second, defendants have known since at least March of 2021 that this ramp may be inaccessible and have been unable to take action to bring it into compliance. *See* Dkt. 122-7, e-mail from TJ Tyrrell, General Manager of Facility Management, sent 3/8/2021. Five years have passed and there is no enforceable commitment for this ramp to be repaired. Thus, the public interest is best served by the Court mandating compliance with the law.

### IV. Conclusion

It is therefore respectfully requested that the Court enter permanent injunctive relief in favor of the Rule 23(b)(2) plaintiff class and order defendants Dart and Cook County to: (1) undertake the architectural modifications necessary to bring the RTU east tunnel ramp into compliance with the ADA; and (2) implement appropriate interim accommodations for class members with mobility disabilities until those modifications are completed.

Respectfully submitted,

/s/  Patrick W. Morrissey
      Patrick W. Morrissey
      Thomas G. Morrissey, Ltd.
      10257 S. Western Ave.
      Chicago, IL 60643
      (773) 233-7901
      pwm@morrisseylawchicago.com

      *an attorney for the plaintiff class*