**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CUAUHTEMOC HERNANDEZ and WILLIAM MATHIS, | ) ) ) | |
| *Plaintiffs,* | ) ) ) | Case No. 23-cv-16970 |
| -*vs*- | ) ) | |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) ) ) ) | Judge Sunil R. Harjani Magistrate Judge Keri L. Holleb Hotaling |
| *Defendants.* | ) ) | |

**DEFENDANTS' REPLY IN SUPPORT OF OPPOSED MOTIONS *IN LIMINE***

Defendants, THOMAS J. DART, in his official capacity as Sheriff of Cook County, and COOK COUNTY, ILLINOIS, by and through their attorneys, submit the following reply in support of their opposed motions *in limine*:

**1.    Motion to Bar Nonparty Detainee Testimony, Grievances, Declarations, and Related Evidence.**

Plaintiffs' response substantially narrows the parties' dispute. Plaintiffs do not defend the admission of live testimony or declarations from numerous nonparty detainees. Instead, they argue that grievances from non-party detainees may be relevant to show that Defendants had notice that RTU east tunnel ramp and Cermak ramp were not ADA compliant. (Pls.' Resp. at 1–2, ECF No. 202.)

Plaintiffs' response rests on a fundamental conflation between notice of an allegation and knowledge that harm to a federally protected right was substantially likely. For compensatory damages, deliberate indifference requires proof that Defendants knew that harm to an ADA-protected right was substantially likely and deliberately failed to act on that likelihood. It is not

1

enough to establish that Defendants received grievances containing the words "accessible" or "non-compliant."

A grievance establishes, at most, that its author made statements appearing in it. It does not establish that those statements are accurate. A detainee's characterization of a ramp as "not ADA accessible" or "non-compliant" is a lay legal conclusion. The truth of that conclusion depends upon technical matters—including the applicable accessibility standard, the rise of each run, the slope ratios, and the dimensions of the landings. None of the grievants measured the ramps, identified the governing standard, described the applicable numerical requirements, or explained which structural component violated which provision.

The later determination that the ramps did not comply with the ADA does not retroactively convert every earlier complaint or grievance into actual notice of that noncompliance. A person who makes an unsupported accusation does not necessarily provide reliable notice merely because a later investigation reaches the same ultimate conclusion. The relevant inquiry is what information Defendants possessed at the time—not whether a subsequent expert assessment happened to confirm a generalized lay assertion.

In this case, Plaintiffs have identified 10 grievances (PX26 through PX35). (Ex. A, Grievances.) The grievances conveyed those individual detainees had trouble, pain, fear, or problems receiving assistance while traversing one or more ramps. Those complaints could arise for many reasons unrelated to structural noncompliance, including the detainee's medical condition, the mobility device being used, the way the detainee operated that device, the availability of staff assistance, or an isolated failure by an employee to provide assistance. A complaint that a particular detainee found a ramp difficult does not establish that the ramp violated

2

the ADA, any more than another detainee's ability to traverse the ramp would establish that it complied.

The Sheriff's responses to the grievances reinforce this distinction. Several responses reflect investigations into individualized assistance and movement issues, rather than recognition of a structural defect. For example, the response to Thompson's grievance stated that video showed him self-propelling his wheelchair without apparent difficulty or distress and that he did not report injuries or request medical treatment. (Ex. A at 6, PX28.) The response to Williams's grievance addressed whether escorting officers pushed his wheelchair in accordance with policy. (Ex. A at 9, PX29.) The response to Mathis's grievance stated that he was transported by cart and wheelchair and did not walk to RTU on the date identified. (Ex. A at 25, PX34.) The other grievances were treated as requests for mobility assistance or complaints arising from a detainee's particular medical limitations. These documents therefore notified Defendants of disputed individual experiences and possible assistance issues. They did not establish that the RTU east tunnel ramp or Cermak ramp's rise or slope violated the ADA.

Likewise, there is no evidence of record that Phillips—the author of one grievance relied upon in the summary-judgment order—ever reviewed an architectural or engineering report or was aware of any specific structural issue with either ramp. Rather, he only stated that the ramps were difficult to traverse. His grievance might have notified the Sheriff that Phillips personally experienced difficulty, but it did not provide notice of an identified structural violation about which Phillips himself knew nothing.

Plaintiffs' theory would create an impermissible circular inference: (1) a detainee alleges a ramp is not compliant; (2) an expert later determines that the ramp violates a technical standard; (3) Plaintiffs then argue that the earlier lay allegation proves Defendants already knew the expert's

3

later conclusion. That reasoning improperly treats the grievance as true in order to establish notice that it was true. But the Court stated that grievances offered for notice are not admitted to prove that there were, in fact, issues with the ramps. (Order at 13–14, ECF No. 175.) If the allegations cannot be considered for their truth, Plaintiffs cannot use them to establish that Defendants knew the ramps were actually noncompliant. At most, the grievances show that Defendants knew certain detainees subjectively complained of difficulty.

The Court's summary-judgment ruling does not require a different result at trial. At summary judgment, the Court was required to view the evidence and draw reasonable inferences in Plaintiffs' favor. It determined that the email and three grievances were sufficient to create a factual dispute and defeat Defendants' motion. The Court did not find that the grievances were accurate, that the Sheriff actually knew the ramps were noncompliant, or that the complete grievance narratives were admissible for every purpose. Nor did the Court conduct the trial-specific Rule 403 analysis presented by Plaintiffs' designation of ten separate grievance exhibits. (*Id.*)

At trial, the jury could easily misuse the grievances as substantive evidence that numerous detainees suffered pain, burns, fear, and denied assistance. Their limited value in establishing receipt of generalized complaints is substantially outweighed by the risk that the jury will reason that, because many other detainees allegedly had painful experiences, Hernandez and Mathis must also have experienced pain and Defendants must have acted unlawfully. The evidence would also require collateral litigation concerning the accuracy of each grievance, each detainee's disability, mobility order, route, requested assistance, medical treatment, and the Sheriff's investigation.

Accordingly, the nonparty grievances should be excluded under Rules 401 and 403. Plaintiffs cannot use them to establish actual structural noncompliance without offering them for

the truth of their allegations, and they have minimal probative value regarding the distinct question whether Defendants knew that an ADA violation was substantially likely.

Alternatively, any grievance admitted should be limited to the proposition that a complaint was received. Plaintiffs should be prohibited from arguing that the grievance's allegations were true or that the grievant correctly concluded that a ramp violated the ADA. Plaintiffs should also be barred from arguing that the number of grievances proves that the ramps caused pain to Hernandez or Mathis. The jury should be instructed that the grievance may be considered only to determine whether Defendants received the complaint and may not be considered as evidence that the reported incident occurred or that the ramp violated the ADA.

In sum, notice that a detainee alleged an ADA violation is not the same as knowledge that an ADA violation was substantially likely. A conclusory lay accusation, unsupported by measurements, technical information, or identification of the allegedly deficient structural feature, does not acquire retroactive evidentiary value merely because an expert later determines that the ramp was noncompliant. For all these reasons, this Court should grant Defendants' motion *in limine* No. 1.

2. **Motion to Bar Subsequent Remedial Measures of Ramp Renovation, Renovation Plans, and Renovation Costs.**

Plaintiffs contend that evidence of Defendants' renovation efforts, plans, and assessments should be admitted to show "notice" and "deliberate indifference." (Pls.' Resp. at 3.) This argument misunderstands both Rule 407 and the summary judgment record. Rule 407 bars the use of subsequent remedial measures to prove "negligence" or "culpable conduct." The core policy behind Rule 407 is to encourage defendants to take remedial measures without fear that those measures will be used against them at trial. *See Flaminio v. Honda Motor Co.*, 733 F.2d 463, 469 (7th Cir. 1984). Plaintiffs' proposed use of renovation evidence to prove deliberate indifference

falls squarely within Rule 407's prohibition—deliberate indifference is a form of culpable conduct requiring proof of intentional discrimination. Plaintiffs rely on the rule's exception permitting use of subsequent remedial measures for "another purpose" such as "impeachment." (*Id.*) But that exception does not apply here. Such use would eviscerate Rule 407's protection and create the precise disincentive the rule was designed to eliminate.

Plaintiffs' reliance on the GEC reports is particularly misplaced. Those reports were commissioned by Defendants as part of a proactive, campus-wide effort to assess ADA compliance at approximately 11 million square feet of public safety facilities. If this Court permits Plaintiffs to use that evidence to prove liability, it sends a clear message to public entities: do not conduct assessments during litigation because the results will be weaponized against you. This result would harm not only defendants but also detainees and the public, as facilities would delay improvements to avoid creating evidence. The Court should grant Defendants' motion and exclude all evidence of subsequent remedial measures, renovation plans, and renovation costs under Rule 407.

**3.     Motion to Bar Evidence and Testimony from Carl Darr, Ellen Stoner, and Gary Keclik, and Related Expert Reports, Because They Were Not Disclosed as Experts and Because the Structural Standards Are Not at Issue at Trial.**

Plaintiffs oppose exclusion of Carl Darr and Ellen Stoner,[1] arguing these witnesses were adequately disclosed and are relevant to "notice" and "deliberate indifference." (Pls.' Resp. at 5.) This argument ignores both the Federal Rules and the issues for trial. First, the structural standards are not at issue at trial. This Court granted summary judgment on the certified Rule 23(c)(4) issues and found that the ramps did not comply with the ADA structural standards during the relevant time periods. The only issues remaining for trial are Plaintiffs' individual claims for damages, which require proof of denial of access and deliberate indifference. Expert testimony about

---

[1] Plaintiffs represent that they will not be calling Gary Keclik as a witness at trial.

whether a ramp complies with technical specifications is irrelevant to these issues. The jury will not be asked to independently assess compliance with structural standards.

Second, although Defendants properly disclosed Darr under Rule 26(a)(2)(B), his testimony is limited to the opinions in his expert reports, which concerned structural compliance—an issue no longer before the jury. Plaintiffs did not disclose Darr as an expert witness under Rule 26(a)(2), and Darr does not have knowledge of the facts of this case. Plaintiffs cannot now expand Darr's role to testify about "notice" when his reports do not address that issue.

Third, Ellen Stoner was not disclosed as a witness under Rule 26(a)(1), much less as an expert under Rule 26(a)(2). Plaintiffs' assertion that they identified "Ms. Stoner's testimony from *Walker* and her 2018 drawing" in their Rule 26(a)(1) disclosure of documents does not satisfy the requirement to disclose Stoner as a witness who is likely to have discoverable information. (Pls.' Resp. at 5.) Mentioning a witness's name in a different case does not constitute proper disclosure in this case. This Court should bar Carl Darr, Ellen Stoner, and Gary Keclik from testifying at trial and bar their reports.

4. **Motion to Bar Testimony, Evidence, or Argument Regarding Employee Misconduct or a Violation of Any of Defendants' Policies, Practices, Procedures, or Rules.**

Plaintiffs argue that if Defendants are permitted to present evidence of their policy of providing staff assistance, Plaintiffs must be allowed to rebut that contention by showing no such policy was communicated, implemented, or enforced. (Pls.' Resp. at 6.) This argument conflates two distinct issues. First, Defendants' motion seeks to exclude evidence that individual employees violated Defendants' policies or committed misconduct. Such evidence is irrelevant because "a government entity's failure to follow its own internal practices does not create an enforceable legal duty under the ADA." *Williams v. Chi. Transit Auth.*, No. 16 C 9072, 2018 U.S. Dist. LEXIS 103808, at *6 (N.D. Ill. June 21, 2018) (citation omitted). Whether a particular officer on a

particular occasion failed to offer assistance does not establish that Defendants denied Plaintiffs access in violation of the ADA.

Second, to the extent Plaintiffs seek to challenge the existence or adequacy of Defendants' policies, that is a different issue. But Plaintiffs cannot use individual instances of alleged non-compliance to prove that no policy exists or that the policy was inadequate. The proper way to challenge a policy is through testimony about the policy itself—its terms, training, and implementation—not through isolated instances about individual officers' actions. Plaintiffs' citation to testimony that Lonnie Hollis could not answer questions about accommodations "without being speculative" does not create a triable issue. (Pls.' Resp. at 7.) Hollis testified about the policies and training in place, and his inability to recall specific incidents involving specific inmates does not establish that the policies were not followed. The Court should grant Defendants' motion and bar evidence of individual employee misconduct or alleged violations of Defendants' policies.

5.     **Motion to Bar Testimony, Evidence, or Argument Critical of Any Aspect of the Grievance Process in this Case.**

Plaintiffs oppose exclusion of evidence criticizing the Sheriff's investigation of grievances, arguing such evidence is relevant because Mathis's grievance "may be used to show that defendants continued to be deliberately indifferent to his rights." (Pls.' Resp. at 8.) This argument fails on both relevance and Rule 403 grounds. An alleged inadequate investigation into a grievance could never be the proximate cause of injury because the alleged injuries occurred before the investigation. Plaintiffs do not—and cannot—argue that a different grievance response would have prevented their alleged injuries or changed their experiences traversing the ramps. The adequacy of the investigation is therefore irrelevant to liability.

Moreover, under Rule 403, the danger of confusing the issues substantially outweighs any probative value. If the jury reviews information from the Sheriff's Office regarding events after they occurred, there is a substantial risk the jury will focus on the adequacy of the investigation rather than whether Defendants violated the ADA. *See* Fed. R. Evid. 403. The Court should grant Defendants' motion and bar testimony and argument critical of the Sheriff's grievance investigation or response process.

**6. Motion to Bar Testimony, Evidence, or Argument that the Sheriff's Office Is Vicariously Liable for the Actions of Its Employees Under a Respondeat Superior Theory.**

Plaintiffs argue that Defendants' motion regarding vicarious liability should be denied as moot because the Court has already determined that the alleged policy of providing assistance "does not provide equivalent access." (Pls.' Resp. at 8.) This argument misses the point of Defendants' motion. Defendants seek to bar Plaintiffs from arguing that Defendants are vicariously liable based on the misconduct of individual employees under a respondeat superior theory.

Vicarious liability is not a basis for liability under Title II of the ADA or § 504 of the Rehabilitation Act. *See Ravenna v. Village of Skokie*, 388 F. Supp. 3d 999, 1008 (N.D. Ill. 2019). Rather, to prevail on an ADA claim, Plaintiffs must prove that an "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on [the defendant's] behalf ha[d] actual knowledge of discrimination in [the defendant's] programs and fail[ed] to adequately respond." *Id.* (citation omitted). The issue is not whether Defendants had a policy of providing assistance or whether that policy constitutes equivalent access. The issue is whether Plaintiffs may argue to the jury that Defendants are liable based solely on individual officers' failure to provide assistance, without proving that an appropriate decisionmaker had knowledge of discrimination and failed to respond. Plaintiffs may not pursue a respondeat superior theory, and the Court should grant Defendants' motion to bar such arguments.

**7.      Motion to Bar Speaking to Media, Posting on Internet, or Communicating Through Social Media About This Case Prior to and During Pendency of Trial.**

Plaintiffs object that they should be allowed to speak publicly about the case while the trial is ongoing. Plaintiffs' one-sided statements made outside of court would bias and influence the jury and should not be permitted. Comments and implied references of this kind have no probative value, are irrelevant to the issues presented, and are highly prejudicial. Therefore, any such evidence should be excluded. Fed. R. Evid. 401, 402, and 403.

**8.      Motion to Bar Testimony, Evidence, or Argument Regarding Improper Training or Failure to Train.**

Plaintiffs argue that Federal Rule of Evidence 406 permits evidence of "routine practice" and that the issue should be decided "in an evidence-specific context." (Pls.' Resp. at 10.) But Plaintiffs have not offered any reason why evidence of improper training or a failure to train would be relevant to their ADA claims. Evidence of how Cook County or the Sheriff's Office trains, supervises, disciplines, monitors, or controls employees is irrelevant to Plaintiffs' ADA claims and would confuse the jury. There are no *Monell* failure-to-train claims in this case, and such evidence should be excluded.

**9.      Motion to Bar Testimony, Evidence, or Argument, Including but Not Limited to Civilian Complaints, Lawsuits, Employee or Other Disciplinary Proceedings, and OPR Investigations Against Any Testifying Employee of Defendants.**

Plaintiffs offer no substantive response to Defendants' motion to exclude evidence of civilian complaints, lawsuits, and disciplinary proceedings against testifying employees, stating only that "the Court should deny this motion without prejudice to renewal at trial." (Pls.' Resp. at 10.) Defendants' motion should be granted. Such evidence constitutes improper character propensity evidence under Rule 404(b) and is highly inflammatory and prejudicial. *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc).

**10.     Motion to Bar Undisclosed, Unsupported, or Layperson Medical-Causation Opinions.**

Plaintiffs should be limited to testifying only about their own perceptions and should not be permitted to offer opinion testimony regarding the causes of their medical and physical conditions. Where an injury "would not be obvious to a layman" and may have been "caused by a myriad of factors," expert testimony is required to establish causation. *Bennett v. Chi. Police Officer Thomas*, No. 12-CV-6060, 2014 U.S. Dist. LEXIS 207452, at *24 (N.D. Ill. Jan. 16, 2014) (citation omitted). Plaintiffs' testimony may not cross the line into expert causation testimony, and the Court should bar Plaintiffs from offering this testimony.

**11.     Motion to Bar Plaintiffs from Treating Every Cook County or Cook County Sheriff's Office Employee as an Adverse Witness.**

Plaintiffs rely primarily on *Pryor v. Corrigan*, 2023 WL 1100436 (N.D. Ill. Jan. 30, 2023), and *Smith v. City of Chicago*, 2025 WL 1744919 (N.D. Ill. June 24, 2025), neither of which is binding on this Court. Both decisions apply a blanket presumption that permits adverse examination of any employee associated with a party. This approach contradicts the express language of Rule 611(c) and the Seventh Circuit's two-part test.

In *Ellis v. Chicago*, 667 F.2d 606, 613 (7th Cir. 1981), the Seventh Circuit held that police officers employed by a defendant municipality qualified as "witness(es) identified with an adverse party" under Rule 611(c) when they were "present during portions of the incident which gave rise to [the] lawsuit." The Seventh Circuit emphasized two factors: (1) employment by the defendant, and (2) involvement in the events giving rise to the lawsuit. The *Ellis* holding has not been expanded to cover all employees regardless of their connection to the underlying incident.

The presumption in *Pryor* cited by Plaintiffs turns this analysis on its head. Rather than requiring Plaintiffs to show both employment and involvement in the case, *Pryor* presumes adverse status based solely on employment and shifts the burden to Defendants to disprove it for

11

"particular" witnesses. That approach eliminates the second *Ellis* factor entirely and renders the phrase "identified with" meaningless. *See* Fed. R. Evid. 611(c).

Allowing leading questions without a factual showing undermines the truth-seeking function of Rule 611. Leading questions "are generally undesirable on direct examination" because they permit the examining attorney to testify rather than the witness. *Ellis*, 667 F.2d at 613. The Seventh Circuit has recognized that leading questions on direct examination can distort witness testimony, particularly when the witness is not genuinely adverse or hostile. *See United States v. Durham*, 645 F.3d 883, 891 (7th Cir. 2011).

The same concern applies here. A Cook County or Sheriff's Office employee who had no involvement in the events at issue is not "identified with" Defendants in any meaningful sense. Allowing Plaintiffs to lead such a witness distorts the truth-seeking process, wastes time, and creates confusion for the jury.

**12.     Motion to Bar Testimony, Evidence, or Argument Regarding Other Litigation Related to the Cook County Jail, ADA Claims, and Ramps.**

Plaintiffs argue that evidence of other litigation concerning ADA claims and ramps at the Cook County Jail is relevant to show Defendants' knowledge. But Plaintiffs fail to demonstrate that evidence of other lawsuits is more probative than prejudicial under Rule 403. The "marginal probative value is far outweighed by the unfair prejudice that would result to the defendants from the bare admission of the results of other lawsuits, or the extraordinary confusion of the issues and waste of time that would result if the particulars of those cases had to be aired before the jury." *Brennan v. Paul Revere Life Ins. Co.*, Case No. 00 C 0725, 2002 U.S. Dist. LEXIS 10505, at *13 (N.D. Ill. June 10, 2002).

"A lawsuit is an allegation. So pointing to other lawsuits simply establishes that other people have made accusations against [the defendant]." *Arquero v. Dart*, 587 F. Supp. 3d 721, 730

(N.D. Ill. 2022). Other lawsuits are not probative of any of the issues in this case, and any arguable probative value would be substantially outweighed by its prejudicial effect. Plaintiffs should be barred from offering any testimony, evidence, or argument regarding the class claims and any other former or pending claims, allegations, and/or lawsuits.

**13.     Motion to Bar Inflammatory and/or Provocative Language.**

Plaintiffs devote only one paragraph to Defendants' motion *in limine*, contending that Defendants have not explained why Plaintiffs cannot testify "about how the ramp was unsafe or dangerous to traverse." (Pls.' Resp. at 13.) This mischaracterizes the relief requested. Defendants do not seek to prevent Plaintiffs from describing what they personally observed or experienced. Plaintiffs may also explain why they believed it was dangerous or unsafe. What Plaintiffs should not be permitted to do is replace factual testimony with argumentative characterizations that the ramps were "illegal," "dangerous," "unsafe," "hazardous," a "trap," or a "known dangerous condition." Those labels add no factual content. They instead invite the jury to decide the case based on emotion and suggest legal conclusions that the Court did not make. Accordingly, this Court should grant Defendants' motion *in limine*.

**14.     Motion to Bar Damages Evidence Not Disclosed Under Rule 26(A)(1)(A)(iii), Including Damages for Undisclosed Emotional or Mental Injuries.**

Plaintiffs' response does not address Defendants' assertions that Plaintiffs did not disclose emotional or mental injuries. Plaintiffs' quote from the Hernandez Rule 26(a)(1) disclosure served on June 25, 2024, state that Plaintiff seeks compensatory damages for physical pain and suffering and for harm caused by being unable to traverse the Cermak ramp on the same basis as non-disabled individuals due to the alleged structural barriers. (Pls.' Ex. 5 at 5.) The listing of these damages does not equate to disclosure of emotional or mental injuries. They relate solely to the purported physical issues that Plaintiffs alleged they faced traversing the ramps.

Under the PLRA, Plaintiffs must prove that their physical injuries were more than *de minimis* to recover for a mental or emotional injury. To recover under the Civil Rights Remedies Restoration Act, there must first be a finding that Defendants violated the ADA.

**15.    Motion to Bar Testimony, Evidence, or Argument Regarding the Fact that the Sheriff's Office Retained Outside Counsel or Referring to Defense Counsel as "State's Attorneys."**

Plaintiffs argue this motion should be denied because during trial, "it will be obvious" that three attorneys represent Defendants. The fact that the number of attorneys at trial will be obvious to the jury does not mean Plaintiffs should be permitted to make reference to the number of attorneys as a way to suggest that Plaintiffs are "not playing on a level playing field" and that Defendants have an unfair advantage that the jury should take into account. Defendants' motion *in limine* should be granted.

**16.    Motion to Bar Testimony, Evidence, or Argument Regarding Conditions at the Jail that Are Unrelated to the Ramps.**

Plaintiffs offer no substantive response to Defendants' motion to exclude testimony and evidence regarding conditions at the Jail unrelated to the ramps, instead stating the motion is too "broad." (Pls.' Resp. at 15.) Evidence of general jail conditions is irrelevant, highly inflammatory, and would lead to undue delay and confusion of the issues. Fed. R. Evid. 403. Plaintiffs should be barred from introducing this evidence.

<strong>CONCLUSION</strong>

WHEREFORE, Defendants THOMAS J. DART, in his official capacity as Sheriff of Cook County, and COOK COUNTY, ILLINOIS, respectfully request that this Court enter an order *in limine* as to the foregoing issues and grant such other relief as the Court deems appropriate and just.

14

Respectfully submitted,

JOHNSON & BELL, LTD.

Dated: July 28, 2026

/s/ *Samuel D. Branum*
One of the attorneys for Defendants
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770
branums@jbltd.com

/s/ *Jordan F. Yurchich*
One of the attorneys for Defendants
Assistant State's Attorney
Civil Rights/Torts Litigation
Civil Actions Bureau
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-1902
jordan.yurchich@cookcountysao.org

/s/ *Maceo Dillard III*
One of the attorneys for Defendants
Assistant State's Attorney
Civil Rights/Torts Litigation
Civil Actions Bureau
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-1931
maceo.dillard@cookcountysao.org

15