IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cuauhtemoc Hernandez, et al., | ) | |
| | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| -*vs*- | ) | No. 23-cv-16970 |
| | ) | |
| Thomas Dart, Sheriff of Cook County, | ) | Honorable Sunil R. Harjani |
| and Cook County, Illinois, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFFS' TRIAL BRIEF**

Plaintiffs, by counsel, submit the following trial brief in accordance with the Court's standing order.

**1. Theory of liability**

Plaintiffs Hernandez and Mathis were detained at Cook County Jail and allege they were required to traverse the noncompliant RTU east tunnel ramp and the Cermak ramp. Plaintiffs allege movement up and down these ramps violated their rights under Title II of the Americans with Disabilities Act (ADA).

First, each plaintiff must show that he is a qualified individual with a disability. For purposes of analysis under the ADA, an individual is disabled if he has a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). A "disability includes the limitation of one or more major life activities, which include walking, standing, bending, and caring for oneself." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012); 42 U.S.C. § 12102(2)(A). Here, the evidence will show that each plaintiff has a mobility disability that impacts walking. The governing regulations

set for that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). In fact, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii).

Second, plaintiffs must show that each was "denied access when traversing the Cermak and RTU ramps." Dkt. 175, Memorandum Opinion and Order at 11. As the Court explained with respect to Mr. Mathis, a "reasonable jury could find that having to traverse non-compliant ramps, which caused pain, shortness of breath, and his knees to pop in and out of place, was more than a mere 'inconvenience' and constituted a denial of access." *Id.* Likewise, the Seventh Circuit has recognized that "[w]e have no difficulty concluding that that a handicapped-accessible toilet for disabled persons amounts to a service, the denial of which could establish a claim" under either the ADA or Rehabilitation Act. *Shaw v. Kemer*, 52 F.4th 331, 334 (7th Cir. 2022).

As the Seventh Circuit further explained in *Lacy*, "[p]erhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services." *Lacy v. Cook County*, 897 F.3d 847, 853 (7th Cir. 2018). Consistent with that principle, the Supreme Court has explained that facilities constructed or altered after the ADA's effective date must comply with the applicable architectural standards. *Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (citing 28 CFR § 35.151). Congress enacted these requirements to ensure that public entities "take

reasonable measures to remove architectural and other barriers to accessibility." *Lane*, 541 U.S. at 531 (citing 42 U.S.C. § 12131(2)).

Here, the Court has already determined that the Cermak and RTU ramps failed to comply with the ADA's mandatory structural accessibility standards. Dkt. 175, Memorandum Opinion and Order at 9-10. At trial, plaintiffs will present evidence that, because of those structural barriers, they experienced pain, hardship, and unequal access while traversing the ramps. That evidence will permit the jury to conclude that plaintiffs were denied meaningful access to the Sheriff's services, programs, or activities by reason on the ramps' noncompliance with the ADA's required architectural standards.

Third, plaintiffs must show "that the denial or discrimination was by reason of his disability." *Lacy*, 897 F.3d at 853. In the context of an ADA architectural barrier case, it does not require proof that anyone disliked or intended to mistreat a plaintiff because he had a disability. Instead, the question is whether the plaintiff cannot safely use the noncompliant ramp with excessive rises, deficient landings, and noncompliant handrails. The inability to use the ramp on the same basis as others is because of the person's disability.

Fourth, the plaintiffs must show that the discrimination was intentional. "This standard requires proof of (1) knowledge that a harm to a federally protected right is substantially likely and (2) a failure to act upon that likelihood." *Lacy*, 897 F.3d at 857. "Title II imposes an affirmative obligation on public entities to provide facilities …that comply with detailed architectural standards or provide equivalent access." *Clemons v. Dart*, 168 F.Supp.3d 1060, 1071 (N.D. Ill. 2016) (Tharp, J.) (citing 28 C.F.R. § 35.151).

First, the evidence demonstrates that both ramps were required to comply with the ADA's architectural standards when they were constructed. Several of the violations were open and obvious. For example, the Cermak ramp lacked handrails until the court ordered defendants in *Walker v. Dart*, to install ADA compliant handrails by December 31, 2022. PX 12. Likewise, the top landing on the RTU east tunnel ramp measures only 9 inches in length. *See* Dkt. 175, Memorandum Opinion and Order at 4, 9.

Second, defendants received repeated notice that the ramps violated the ADA. In 2018, architect Ellen Stoner, whom Cook County retained to evaluate the Cermak facility, advised that the Cermak ramp was not ADA compliant and identified the modifications necessary to bring it into compliance. Thereafter, Globetrotters Engineering Corporation issued a report on December 6, 2023 concluding that the Cermak ramp was noncompliant and, on April 1, 2024, issued a second report concluding that the RTU east tunnel ramp was likewise noncompliant.

Despite this knowledge, defendants did not correct the structural barriers. Instead, they relied on disputed policies under which correctional staff purportedly assisted individuals in traversing the noncompliant ramps. Dkt. 175, Memorandum Opinion and Order at 8-9; *see also Spence v. Dart*, 2020 WL 4677053, at * 5 (N.D. Ill. 2020) (Kennelly, J.) (rejecting defendants' argument that a wheelchair available upon request to move up or down the Cermak ramp is equivalent access under the ADA). As Judge Kennelly observed in *Flora v. Dart*, "[t]he Sheriff's offer of non-equivalent accommodations does not suggest anything other than deliberate indifference." 2017 WL 2152392, at *7 (N.D. Ill. May 17, 2017) (Kennelly, J.) (vacated by agreement of the parties).

The evidence concerning Mr. Mathis independently satisfies the deliberate indifference standard. Defendants had actual notice that Mr. Mathis was experiencing difficulty traversing the ramps. On December 13, 2023, the Sheriff's Office received a grievance in which Mr. Mathis complained that he could not safely traverse the Cermak ramp. DX 23 at 19-20. Five days later, on December 18, 2023, defendants received a second grievance in which Mr. Mathis reported the same problem with the RTU east tunnel ramp. PX 34. Despite receiving these complaints, they required him to continue using the noncompliant ramps until his transfer to the Illinois Department of Corrections on August 29, 2024. A reasonable jury could conclude from this evidence that defendants knew a violation of Mr. Mathis's federally protected rights was substantially likely and consciously failed to act upon that knowledge, thereby acting with deliberate indifference.

**2. Theory of damages**

Plaintiffs seek damages for harm caused by moving up and down the noncompliant ramps. The evidence of harm will be consistent with the record at summary judgment. Plaintiff Matthis is expected to testify consistent with his deposition; that going up the ramp was the most part that caused him, at times, to experience shortness of breath, pain in his knee, and that the keep popped in and out of place. Dkt. 175, Memorandum Opinion and Order at 11. Plaintiff Hernandez similarly experienced pain traversing the ramps. *Id.* The pain, according to plaintiff Hernandez, was because there was no resting spot and that the ramp was too steep and long. *Id.*

Additionally, Plaintiff Mathis will seek damages for movement up and down the ramps after January 1, 2024 provided under the Illinois Civil Rights Remedies Restoration Act, 775 ILCS 60/1 *et seq.* This law provides the following remedies:

Sec. 20. Remedies. Whoever injures another by a violation of this Act is liable for each and every offense for all remedies available at law, including, but not limited to, damages for past, current, and future monetary losses, emotional pain, suffering, inconvenience, mental anguish, loss of employment of life, and other nonmonetary losses, and any amount that may be determined by a jury, or a court sitting without a jury, but in no case less than $4,000, and any attorney's fees, costs, and expenses, including but not limited to, expert witness fees, that may be determined by the court in addition thereto.

775 ILCS 60/20.

### 3. Theory of anticipated motion for judgment as a matter of law

Plaintiffs anticipate a motion for judgment as a matter of law on the issue of deliberate indifference as applied to plaintiff Mathis. In this case, defendants had notice that he complained of an inability to traverse the ramps on the same basis as nondisabled inmates because of his two grievances submitted in December 2023. Following receipt of these grievances, Mr. Mathis remained in the CCDOC until August 29, 2024. During this time, defendants had knowledge that the Cermak ramp violated the ADA structural requirements because of the GEC report issued on December 6, 2023. Defendants also had knowledge that the RTU east tunnel ramp violated the ADA structural standards by at least April 1, 2024, when they received the report that the ramp violated the ADA.

Public entities have an affirmative obligation to provide ramps that comply with the ADA structural standards. *See Clemons*, 168 F.Supp.3d at 1071. These ramps did not comply. Moreover, after receiving complaints by Mr. Mathis and verification the ramps did not comply with the mandatory minimum standards, defendants still required Mr. Mathis to travel up and down these noncompliant ramps. This, as a matter of law, is deliberate indifference. *Flora,* 2017 WL 2152392, at *7 (holding that "[t]he Sheriff's offer

of non-equivalent accommodations does not suggest anything other than deliberate indifference.")

Respectfully submitted,

/s/   Patrick W. Morrissey
      Thomas G. Morrissey, Ltd.
      10257 S. Western Ave
      Chicago, IL 60643
      (773)233-7901
      pwm@morrisseylawchicago.com

*attorneys for the plaintiffs*

-7-