**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CUAUHTEMOC HERNANDEZ and WILLIAM MATHIS, | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| | ) | Case No. 23-cv-16970 |
| -*vs*- | ) ) | |
| | ) | Judge Sunil R. Harjani |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' TRIAL BRIEF**

Defendants, THOMAS J. DART, in his official capacity as Sheriff of Cook County, and COOK COUNTY, ILLINOIS, by and through their attorneys, respectfully submit this trial brief disclosing their theory of the case, theory of defense, and theory of any anticipated motion for judgment as a matter of law:

**INTRODUCTION**

This case concerns claims brought by two detainees of the Cook County Department of Corrections (CCDOC) under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and the Illinois Civil Rights Remedies Restoration Act, 775 ILCS 60/1 et seq.

Plaintiffs Cuauhtemoc Hernandez and William Mathis, who were prescribed canes during their detention, allege that two ramps at the CCDOC—the Cermak ramp and the Residential Treatment Unit (RTU) east tunnel ramp—did not comply with federal accessibility standards and that Defendants acted with deliberate indifference to their federally protected rights. The Court has already resolved through summary judgment two certified Rule 23(c)(4) issues: whether the Cermak ramp and the RTU east tunnel ramp complied with the applicable ADA structural

1

standards during the relevant class periods. The Court found that neither ramp complied with those standards. The Court has not, however, resolved Plaintiffs' individual claims, including the remaining elements of their claims and their request for damages, which remain for trial.

At trial, Defendants will establish that while certain technical deviations from the ADA structural standards existed, Plaintiffs did not suffer compensable injuries caused by those deviations, Defendants provided reasonable accommodations to ensure access, and Defendants did not act with deliberate indifference to Plaintiffs' rights. The evidence will show that Plaintiffs' alleged difficulties were caused by their underlying medical conditions and the distances they traveled—not by the minor structural variances the Court identified. The evidence will further show that Defendants acted reasonably and in good faith throughout the relevant periods by commissioning assessments, installing handrails, providing staff assistance and mobility devices, and working to bring the facilities into compliance.

Further, the evidence will show that Plaintiffs did not suffer a concrete injury from the alleged non-compliant ramps. Without a concrete injury to establish Article III standing, this Court did not have jurisdiction to decide the question of whether the ramps comply with the accessibility standards, and this class action must be dismissed for lack of subject matter jurisdiction.

### THEORY OF DEFENSE

To prevail on their claims, Plaintiffs must prove: (1) they are qualified individuals with a disability, (2) Defendants denied them the benefits of services, programs, or activities or otherwise subjected them to discrimination, and (3) the denial or discrimination occurred because of their disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

To recover damages on their claims, Plaintiffs must prove that Defendants acted with deliberate indifference, which requires a showing Defendants "*knew* that harm to a federally protected right was substantially likely and . . . *failed* to act on that likelihood." *Hildreth v. Butler*,

960 F.3d 420, 431 (7th Cir. 2020) (emphasis in original) (quoting *Lacy v. Cook County*, 897 F.3d 847, 862 (7th Cir. 2018)).

If, at the close of Plaintiffs' case-in-chief, Plaintiffs have failed to present legally sufficient evidence to establish any element of their claims, Defendants will move for judgment as a matter of law under Federal Rule of Civil Procedure 50. Defendants' anticipated grounds for judgment as a matter of law will be based on the arguments set forth below.

**I.     Plaintiffs Cannot Establish That the Alleged Ramp Deviations Caused Them Compensable Injuries.**

**A.     Causation requires proof that the specific deviations—not preexisting conditions or distance traveled—caused Plaintiffs' alleged harms.**

Plaintiffs must establish that the specific deviations from the ADA standards—not their preexisting medical conditions, not the distances they traveled, and not the overall difficulty of ambulating—caused them concrete, compensable injuries. *See H.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (stating that the ADA "requires proof of causation"). If Plaintiffs present only generalized testimony about pain and difficulty without establishing a causal link to the minor structural variances, no reasonable jury could find causation.

The evidence will show that Plaintiffs have preexisting conditions that explain their difficulties. Plaintiff Hernandez testified that his pain was caused by walking long distances generally, not due to traveling on the ramps, specifically. He testified that walking on the ramps merely "irritated" his leg, back, and shoulder, not that it caused a distinct injury or denied him access to any facility or service. Hernandez stated that he was, in fact, able to rest on the ramp. He stated that he could remember two occasions which he used a cart, not that these were the only times he was able to utilize it. Hernandez further testified that officers told him that he needed a "medical script" for a wheelchair to travel long distances because they would not be able to take him in the cart all the time, not that they would refuse to transport him in the cart if he did not have

3

a "medical script." Hernandez stated that the officers assisted him in the best way they could to get to his destination. He testified that he was never prevented from reaching an appointment, service, or destination. Even on occasions when he needed to stop and rest, he was still able to complete the trip and access the appointment or service.

Plaintiff Mathis admitted that the Cermak ramp never actually stopped or prevented him from accessing services or attending appointments. He stated that he was always able to get where he wanted to go, unless he "didn't feel like going over" due to his general knee pain. Mathis testified that he told the correctional officers that he was experiencing pain in his foot, to which the officers suggested that he go to the doctor to be treated. Once Mathis told the officers that he was unable to complete the walk to the doctors, the officers arranged for Mathis to be transported. Mathis testified that officers escorted him on a cart once when his gout was bad and in a wheelchair once or twice when his foot was swollen.

If Plaintiffs cannot establish that the specific deviations—as opposed to their underlying conditions or the overall distances traveled—caused them harm, judgment as a matter of law is appropriate.

### B. Plaintiffs' claims of "irritation" and "difficulty" are insufficient to establish Article III standing.

Plaintiffs bear the burden of demonstrating they have standing to sue to remedy an alleged violation. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing."); *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 623 (7th Cir. 2019) ("The burden of making this showing—of demonstrating the requisite injury to invoke federal jurisdiction—rests with the plaintiff.").

"[I]n a case . . . that proceeds to trial, the specific facts set forth by the plaintiff to support standing 'must be supported adequately by the evidence adduced at trial.'" *TransUnion*, 594 U.S. at 431 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted)).

Plaintiffs will be unable to meet their burden at trial because they have not suffered a concrete and particularized injury that is traceable to the alleged violations, i.e., non-compliant Cermak and RTU ramps, as opposed to traveling any long distance, even on level ground. Hernandez testified that walking on the ramps merely "irritated" his leg, back, and shoulder, not that it caused a distinct injury or denied him access to any facility or service. Mathis admitted that the Cermak ramp never actually stopped or prevented him from accessing services or attending appointments. These generalized complaints of discomfort do not establish the concrete, particularized injury required for standing or damages.

An "irritation" of a preexisting condition is not an injury, and neither is difficulty navigating a ramp. *See, e.g.*, *Deboard v. Solid Rock Props., LLC*, No. 1:22-CV-435-HAB, 2024 U.S. Dist. LEXIS 57690, at *4 (N.D. Ind. Mar. 29, 2024) (holding that "physical difficulty" is not a concrete injury that would establish Article III standing); *Harper v. Dart*, No. 14 C 01237, 2015 U.S. Dist. LEXIS 142871, at *14 (N.D. Ill. Oct. 21, 2015) (holding that plaintiff's allegation that he had "great difficulty" showering, toileting, and getting into bed was insufficient to withstand a motion to dismiss because the plaintiff's allegations were "just conclusions without facts, which are not enough"). Physical difficulty navigating a facility, without more, does not establish a concrete injury sufficient to support Article III standing or a damages award. Plaintiffs must show that the specific deviations caused them to suffer a concrete injury, which is something they will be unable to do at trial.

5

## II.     Defendants Provided Reasonable Accommodations That Ensured Plaintiffs Had Access to Services, Programs, and Activities.

Even if Plaintiffs could establish that the ramp deviations caused them some difficulty, the evidence will show that Defendants provided reasonable accommodations that ensured Plaintiffs had access to all services, programs, and activities at the CCDOC.

Pursuant to training and policy, individuals with disabilities have equal access to services, programs, and activities that are provided by the Sheriff's Office. Lonnie Hollis, an administrator at the Sheriff's Office, testified that any time an inmate with a cane, crutch, or walker requested assistance, the correctional staff would provide assistance. Hollis further testified that if a cart was not available for use when an inmate requested it, it was common practice for correctional officers to provide alternative forms of assistance to inmates, such as transportation via wheelchair. A sign is posted at the end of the Cermak and RTU ramps that provide notice to detainees with cane, crutches, or walkers that they can ask for help.

The record shows that Plaintiffs successfully navigated the ramps with accommodations, including use of mobilized carts and wheelchairs. There is no evidence that Plaintiffs missed medical appointments, were unable to participate in programs or other opportunities, or were excluded from activities as a result of the ramps. Hernandez testified that on a few occasions he was transported in a cart. Mathis testified that correctional officers provided assistance by transporting him in a cart and wheelchair on different occasions. While Plaintiffs contend that staff assistance was not always provided when requested, Defendants will establish that any isolated instances where assistance was not immediately available do not constitute a systemic denial of access.

Title II of the ADA requires public entities to provide reasonable modifications to policies, practices, or procedures when necessary to avoid discrimination on the basis of disability. *Shaw v.*

*Kemper*, 52 F.4th 331, 334 (7th Cir. 2022). Here, Defendants made reasonable modifications by providing staff assistance, wheelchairs, and carts to ensure detainees using canes, crutches, or walkers could access all areas of the facility. There is no evidence that Plaintiffs missed medical appointments due to the ramps, were unable to participate in programs or other opportunities, or were excluded from activities.

### III.     Defendants Did Not Act with Deliberate Indifference to Plaintiffs' Rights.

The evidence will show that Defendants did not have knowledge that harm to Plaintiffs' rights was substantially likely. Defendants commissioned campus-wide assessments, installed handrails, provided staff assistance and mobility devices, renovated the Cermak ramp, and is working to hire architectural firms to determine the best course of action to bring the RTU east tunnel ramp into full compliance.

Defendants relied on the original design and construction of the ramps as proof of compliance. Indeed, the original design plans for the Cermak ramp called for the rise to be a compliant 30 inches. In 2022, a survey using a laser level confirmed that the ramp measured 30 inches. Defendants had no reason to believe the ramp was noncompliant until Cook County proactively hired Globetrotters Engineering Corporation (GEC) that deployed advanced LIDAR technology—which the County does not possess—to conduct a comprehensive assessment. The GEC report identified only minor deviations—a 2.4-inch surplus in rise over a 43.64-foot run and handrail extensions that fell short of the 12-inch requirement because anti-ligature fittings with the required extensions are not available. The Cermak ramp was then renovated to bring it into compliance.

Defendants cannot be held deliberately indifferent for failing to know that advanced LIDAR technology would reveal a 2.4-inch deviation that neither the original design plans nor the

2022 survey detected. The evidence shows that Defendants acted reasonably and in good faith based on the information available to them at the time.

With respect to the RTU east tunnel ramp, Cook County is working to hire architectural firms to evaluate the entire CCDOC facility to make sure each aspect of the facility is ADA compliant. The evaluation will determine whether renovation of the RTU east ramp is the best course of action, or whether there are alternative courses of action available. By conducting a complete evaluation of the CCDOC, Defendants avoid the risk of making hasty repairs which may not bring the RTU east ramp and its immediate surroundings fully into compliance. Cook County's efforts at evaluating the CCDOC complex and identifying the best course of action to bring it fully into compliance, including the RTU east tunnel ramp, is the antithesis of deliberate indifference.

## CONCLUSION

WHEREFORE, Defendants THOMAS J. DART, in his official capacity as Sheriff of Cook County, and COOK COUNTY, ILLINOIS, respectfully request that the Court consider the theories of defense and anticipated grounds for judgment as a matter of law set forth in this trial brief and grant judgment as a matter of law in Defendants' favor.

Respectfully submitted,

JOHNSON & BELL, LTD.

Dated: July 28, 2026

/s/ *Samuel D. Branum*
One of the attorneys for Defendants
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770
branums@jbltd.com

/s/ *Jordan F. Yurchich*
One of the attorneys for Defendants
Assistant State's Attorney

8

Civil Rights/Torts Litigation
Civil Actions Bureau
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-1902
jordan.yurchich@cookcountysao.org

/s/ *Maceo Dillard III*
One of the attorneys for Defendants
Assistant State's Attorney
Civil Rights/Torts Litigation
Civil Actions Bureau
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-1931
maceo.dillard@cookcountysao.org

9