IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cuauhtemoc Hernandez, et al., | ) | |
| | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| *-vs-* | ) | No. 23-cv-16970 |
| | ) | |
| Thomas Dart, Sheriff of Cook | ) | Honorable Sunil R. Harjani |
| County, and Cook County, Illinois, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTIONS IN LIMINE**

Plaintiffs, by counsel, file this reply in support of their motions in limine.

**1. Bar defendants from presenting evidence or arguments contrary to the Court's summary judgment memorandum opinion and order**

Plaintiffs agree that defendants may argue that they were not injured by moving up and down the noncompliant ramps and may dispute the elements for deliberate indifference. Defendants, however, should not be allowed to argue they "provided reasonable accommodations that gave Plaintiffs equivalent access." Dkt. 201, Response at 2. That argument was rejected in the Court's summary judgment memorandum opinion and order. Dkt. 175, Memorandum Opinion and Order at 8-9 (policy of having correctional officers available to assist class members in wheelchairs up or down the ramps or drive them in a cart across a non-compliant ramp does not constitute equivalent access). Courts in this district have consistently rejected this argument. *Clemons v. Dart*, 168 F.Supp.3d 1060, 1066 (N.D. Ill. 2016) (Tharp, J.) (finding "the availability of assistance upon request

does not constitute equivalent access under the applicable regulations"); *Flora v. Dart*, 2017 WL 2152392, at \*5 (N.D. Ill. 2017) (Kennelly, J.) (vacated by agreement of the parties); *Roberts v. Dart*, 2018 WL 1184735, at \*4 (N.D. Ill. 2018) (Lee, J.) (holding a disabled inmate was denied access to a toilet on a basis equal to non-disabled persons because defendants required plaintiff to seek permission before using an accessible toilet); *Spence v. Dart*, 2020 WL 4677053, at \*5 (N.D. Ill. 2020) (Kennelly, J.) (a wheelchair upon request to move up or down the Cermak ramp is not equivalent access under the ADA); *Walker v. Dart*, 2025 WL 3496580, at \*3 (N.D. Ill. 2025) (Rowland, J.); *Craig v. Hughes*, 2025 WL 3688016, at \*7 (N.D. Ill. 2025) (Harjani, J.) (explaining "carrying an inmate from place to place instead of providing him with compliant walkways and ramps" is "not the law" and "[n]o reasonable jury could find that a practice of making a wheelchair user request a portable shower chair, in lieu of providing an ADA or UFAS-compliant shower, constitutes equivalent access"); *Rogers v. Dart*, 2026 WL 1584767, at \*7 (N.D. Ill. 2026) (Rowland, J.) ("Courts in this district have consistently found that when an alternative to the structural standards involve an inmate requesting and relying on the assistance of others, the alternative does not constitute equivalent access.").

Indeed, defendants' policy to require an inmate to request assistance to overcome non-compliant structural elements has been found, as a matter of law, to be deliberately indifferent. In *Clemons*, the district court explained that for buildings constructed after 1992, like the Cermak and RTU east tunnel ramps, "Title II imposes an affirmative obligation on public entities to provide facilities . . . that comply with detailed architectural standards or provide equivalent access."

*Clemons*, 168 F.Supp.3d at 1071. *Flora v. Dart*, another case that addressed noncompliant toilets and showers, the district court held "[t]he Sheriff's non-equivalent 'accommodations' does not suggest anything other than deliberate indifference." *Flora*, 2017 WL 2152392, at *7.

Defendants, therefore, should be barred from arguing that the disputed ramp assistance policy provided "equivalent access" up and down the noncompliant ramps. Similarly, defendants should be barred from arguing or introducing evidence that this disputed policy is evidence that defendants were not deliberately indifferent to plaintiffs.

Defendants do not address the other elements raised in plaintiffs' motion, including, (1) that the ramps at the time of construction complied with the ADA, (2) that Cermak's rise being 2.4 inches higher than the 30 inch maximum is inconsequential, or (3) any deviations from the mandatory minimum standards were *de minimis* or that the ramps substantially complied with the ADA. *See* Dkt. 198, Motion at 1-2. The Court carefully rejected each argument at summary judgment and defendants should not be permitted to relitigate the factual and legal findings regarding each ramp's structural noncompliance.

## 2. Bar evidence regarding the "ramp survey" dated 11/1/2022

Defendants argue the unsigned ramp survey should be admissible to "show Defendants' knowledge and belief regarding the ramp's compliance, which is relevant to the issue of deliberate indifference." Dkt. 201, Response at 3. The lead attorney for defendants – from the same law firm – told Judge Rowland on March 23, 2023 in *Walker v. Dart* that this survey is not defensible to a jury and

-3-

defendants' position now that this statement "by counsel in a prior litigation do[es] not establish the inadmissibility of evidence in this case" is unpersuasive. *Id.* at 4.

More than three years have passed since defense counsel made this statement to the district court in *Walker* and there has been no effort to disclose any person with knowledge of this "ramp survey." Notably, defendants have not disclosed any trial witness with personal knowledge about the creation of this document or any additional documents associated with this "ramp survey."

Defendants have no foundation for this ramp survey. The parties have no idea who created this ramp survey, a firm is not identified as preparing this survey, and this "survey" is not signed. Moreover, defendants do not present any evidence to support the admissibility of this ramp survey.

Defendants also contend that this purported "survey" is admissible to show they believed the Cermak ramp complied with the ADA in November 2022 because it reflected a rise of exactly 30 inches. *See* Dkt. 201, Response at 3. That argument fails.

Even assuming the survey accurately measured the ramp's rise, the Cermak ramp indisputably lacked ADA required handrails in November 2022. Handrails are a mandatory component of an ADA-compliant ramp. Indeed, in *Walker v. Dart*, Judge Rowland ordered defendants to install ADA compliant handrails on the Cermak ramp no later than December 31, 2022. Exhibit 1, *Walker v. Dart*, 20-cv-261, Dkt. 120, Order. The work order documents produced by defendants in *Walker* demonstrate that the installation was completed in December 2022 and January 2023. Exhibit 2, Work Order Documents. Moreover,

-4-

as the Court has already found, even those newly installed handrails failed to comply with the ADA's structural requirements. *See* Dkt. 175, Memorandum Opinion and Order at 3.

Accordingly, the purported survey cannot reasonably support defendants' claim that they believed the Cermak ramp complied with the ADA in November 2022. Regardless of the ramp's rise, the absence of required handrails alone rendered the ramp structurally noncompliant. Defendants should not be permitted to rely on an unauthenticated document containing inaccurate measurements to suggest otherwise or relitigate an issue that has already been resolved by the Court.

### 3. Limit evidence of plaintiffs' prior felony convictions

Defendants seek to introduce evidence regarding the specific felony convictions and sentences of each plaintiff. *See* Dkt. 201, Response at 5. Defendants object to plaintiffs' proposal that the parties instead agree that each plaintiff is a "convicted felony" on grounds it "removed the information necessary for the jury to evaluate the impeachment evidence." *Id.* at 5-6.

The specific nature of the charges, street crimes concerning use of guns and murder, has, "at best, limited probative value, and admission of that evidence would unfairly prejudice plaintiff[s] in a way that far exceeds the limited probative value of that evidence." Exhibit 3, *Westmoreland v. Dart*, 21-cv-4330, Dkt 144, Rulings on Motions in limine at 6-7 (excluding the specific nature of the plaintiff's criminal conviction, a sex offense). The Seventh Circuit concluded in *Barber v. City of Chicago*, 725 F.3d 702 (7th Cir. 2013), "[p]resenting a § 1983 plaintiff's criminal

-5-

history to the jury presents a substantial risk that the jury will render a defense verdict not on the evidence but on emotions and other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers." *Id.* at 714.

The specific street crimes that each plaintiff has been convicted of do not have any particular weight on credibility. *See Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990) (explaining that "[a]cts involving fraud or deceit clearly raise" doubt whether a party is "telling the truth," but that "certain acts, such as murder, assault, or battery normally do not"). Similarly, it is not relevant that Plaintiff Hernandez was sentenced to 44 years imprisonment on February 7, 2001. Plaintiffs, therefore, request that the Court grant plaintiffs' motion and bar defendants from introducing "the title [and] date" of the convictions.

4. **Bar evidence of the criminal charges against each plaintiff while detained at the Cook County Jail**

Plaintiffs agree that defendants may introduce evidence that each is a convicted felon. The jury will also know that each plaintiff was detained at the CCDOC because each alleges he traversed the noncompliant ramps and seek damages. Plaintiffs will also present evidence about when each was detained at the CCDOC and the dates when they traversed the ramps. Contrary to defendants' argument, it is not necessary for the jury to understand the specific criminal charges during this period.

Defendants cite no case law for the proposition that introducing the criminal charges of each plaintiff while detained at CCDOC. *See* Dkt. 201, Response at 7-

8. Defendants also fail to explain why the specific charges of each plaintiff – unlawful possession of a firearm by Mr. Hernandez or unlawful discharge of a firearm by Mr. Mathis – is circumstantial evidence of their disability. Dkt. 201, Response at 7-8.

Plaintiffs request that the Court bar evidence about the specific criminal charges against each plaintiff because its probative value is marginal and admission of that evidence would unfairly prejudice plaintiffs in a way that far exceeds the limited probative value of that evidence.

## 5. Bar evidence that plaintiffs, if they prove a violation of the ADA after January 1, 2024, are entitled to statutory damages under Illinois law

The Illinois Civil Rights Remedies Restoration Act, 775 ILCS 60/1 *et seq*. provides that a prevailing plaintiff is entitled to recover no less than $4,000 in damages. 775 ILCS 60/20. Accordingly, if plaintiff Mathis proves a violation of the ADA, he is entitled to recover at least $4,000, even if the jury determines that he proved only nominal damages.

Defendants cite no authority holding that a jury should be informed of the statutory minimum damages provision. To the contrary, analogous federal authority recognizes that statutory damage limitations and enhancements are matters for the court, not the jury. For example, in employment discrimination cases, Congress expressly provides that "the court shall not inform the jury of limitations" on compensatory damages. 42 U.S.C. § 1981a(c)(2). Likewise, in *Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1242 (5th Cir. 1974), the Fifth Circuit held that a jury should not be informed that any damages it awards

would be trebled under 15 U.S.C. § 15. The court explained that informing the jury of the statutory enhancement "would serve no useful function and its probable consequence would be harmful – an impermissible lowering of the amount of damages." 498 F.2d at 1243.

The same reasoning applies here. The jury's function is to determine whether defendants are liable and, if so, to determine the amount of damages supported by the evidence for plaintiffs Mathis and Hernandez arising from their use of structurally noncompliant ramps. Whether Illinois law requires that award to be increased to the statutory minimum of $4,000 is a legal question for the Court after the verdict. As the Fifth Circuit explained in *Pollock & Riley, Inc.*, the application of a statutory damages provision "is a matter of law to be applied by the district court without interference form the jury." 498 F.2d at 1243. Informing the jury that Illinois law guarantees a minimum recovery would create the same risk identified in *Pollock & Riley, Inc.* – namely, that jurors would improperly reduce the damages they otherwise would award because they know the Court will increase the award to $4,000.

## 6.  Bar defendants from producing new documents on the eve of trial

Fact discovery closed on March 3, 2025. Dkt. 86, Minute entry. Despite the close of discovery, defendants have continued to supplement their disclosures by identifying new witnesses and producing new documents. Rule 37(c)(1) provides that when a party fails to identify or produce information as required by Rule 26(a) or (e), that party is not permitted to use the witnesses or information at trial unless the failure was substantially justified or harmless. Neither expectation applies here.

-8-

On March 7, 2026, approximately one month after the Court ruled on the parties' cross motions for summary judgment, defendants served their First Supplemental Rule 26(a)(1) Disclosure identifying three previously undisclosed witnesses: PA Barbara Davis, PA Salvador Martinez, and PA Brittany Wilkins. Exhibit 4. Defendants' disclosure vaguely states that these witnesses possess "discoverable information" without identifying the substance of their expected testimony. *Id.* Because discovery had long since closed, plaintiffs had no opportunity to depose these witnesses or otherwise investigate their purported knowledge. During the pretrial preparation process, defendants have offered no explanation for their failure to disclose these witnesses during the discovery period, and the late disclosure is neither substantially justified nor harmless.

Defendants have continued this pattern after plaintiffs filed the present motion in limine. On July 28, 2026, defendants identified four additional trial witnesses who likewise had never been disclosed during discovery: RN Rosetta Hunter, Dr. Diane Hsu, PA Danial Kaczrowski, and Dr. Patrick Ennis. Exhibit 5, ASA Yurchich e-mail sent 7/28/2026. Plaintiffs objected to these witnesses in the proposed final pretrial order. Dkt. 205 at 9-11. Permitting defendants to identify new witnesses after the close of discovery and on the eve of trial would reward a clear violation of Rule 26 while depriving plaintiffs of any meaningful opportunity to conduct discovery or prepare for cross examination.

Defendants have likewise produced new documents after the close of discovery, including plaintiffs' arrest records and certified copies of criminal convictions, identified as DX 14, 15, 25, and 26. These documents were produced

-9-

only within the last several weeks, despite defendants offering no explanation why they could not have been produced during discovery. In addition to violating Rule 26, these records have little, if any, probative value and create a substantial danger of unfair prejudice, confusing the issues, and misleading the jury. Accordingly, these witnesses and documents should be excluded from trial.

## 7. Conclusion

It is therefore respectfully requested that the Court rule on the above referenced matters in advance of trial.

Respectfully submitted,

/s/ Patrick W. Morrissey
Thomas G. Morrissey, Ltd.
10257 S. Western Ave
Chicago, IL 60643
(773)233-7901
pwm@morrisseylawchicago.com

*attorneys for the plaintiffs*