# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Cauhtemoc Hernandez and William Mathis,<br><br>Plaintiffs,<br><br>v.<br><br>Thomas Dart, Sheriff of Cook County and Cook County, Illinois<br><br>Defendants. | Civil action 1:23-cv-16970<br><br>The Honorable Sunil R. Harjani<br>Courtroom 1925 |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants—by and through undersigned Defense Counsel—respectfully move this Honorable Court, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, for judgment as a matter of law based upon the evidence submitted in this trial.

## INTRODUCTION

At the close of their case in chief, Plaintiffs Hernandez and Mathis have not presented sufficient evidence for a jury to grant judgment in their favor and against Defendants. Specifically, Plaintiffs failed to prove that they suffered compensable injuries due to the minor deviations in the RTU and Cermak ramps, that the Defendants did not provide reasonable accommodation to ensure access, and that Defendants were deliberately indifferent to the rights of Plaintiffs. Because a reasonable factfinder could not find Defendants liable, this Court should enter judgment as a matter of law in Defendants' favor pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

If the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the a party fully heard on an issue during a jury trial, the court may (1) resolve the issue against that party and (2) grant a motion for judgment as a matter of law against that party on any claim or defense relying on a favorable finding on the issue. Fed. R. Civ. P. 50(a)(1). A party may move for judgment as a matter of law at any time before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2). The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment. Fed. R. Civ. P. 50(a)(2). Under Rule 50(a), "the district court must enter judgment if, under the governing law, a reasonable factfinder could not find for the nonmoving party." *Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

## ARGUMENT

Defendants are entitled to judgment as a matter of law. Plaintiffs have failed to prove that they are qualified individuals with a disability, they were denied the benefits of services, programs, or activities or otherwise subjected to discrimination, and that any denial or discrimination occurred because of their disability. Plaintiffs have also failed to present evidence that any alleged denial or discrimination from Defendants was intentional.

To prevail on their claims, Plaintiffs must prove: (1) they are qualified individuals with a disability, (2) Defendants denied them the benefits of services, programs, or activities or otherwise subjected them to discrimination, and (3) the denial or discrimination occurred because of their disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

To recover damages on their claims, Plaintiffs must prove that Defendants acted with deliberate indifference, which requires a showing Defendants "knew that harm to a federally

protected right was substantially likely and . . . failed to act on that likelihood." Hildreth v. Butler, 960 F.3d 420, 431 (7th Cir. 2020) (emphasis in original) (quoting *Lacy v. Cook County*, 897 F.3d 847, 862 (7th Cir. 2018)).

## I. Plaintiffs Cannot Establish that they were denied the benefits of the services, programs or activities of a public entity or otherwise subjected to discrimination by such an entity

### A. *Hernandez has failed to prove that he was denied the benefits of a service, program or activity.*

Hernandez has not proved that he was denied the benefits of the services, programs, or activities available in the Cook County Department of Corrections ("CCDOC") or that he was otherwise subjected to discrimination. Hernandez testified that he never missed a medical appointment at Cermak due to traversing the Cermak ramp. Even during the times where he was stopped to catch his breath, he was able to eventually make it to his appointments. He never speaks of a time when he asks an officer to help him go up the ramp, and they denied his request. Even if we consider the Cermak ramp itself a service, program, or activity, Hernandez has not stated that he was ever denied access to the ramp. He also testified of riding on the back of the cart on two occasions, while going to Cermak.

Further, Hernandez has failed to establish that he was discriminated against. He states that officers were helpful in traversing the ramp. He mentions that an officer even helped carry his stuff so that he had his hands free to walk. He never testifies to any discrimination on the part of the CCSO. For the above reasons, Hernandez has failed to prove that he was denied the benefits of any service program or activity.

B. *Mathis has failed to prove that he was denied the benefits of a service, program or activity.*

Mathis has not proved that he was denied the benefits of the services, programs, or activities available in the Cook County Department of Corrections ("CCDOC") or that he was otherwise subjected to discrimination. There are six videos entered into evidence which show Mathis riding on a cart to his appointment in Cermak On December 10, 2023 (DX 102, 109, 120, 122, 129, 145). On that same date, Mathis submitted a grievance stating that he had trouble traversing the ramps, even though he did not walk the ramps that day. (PX 34). This shows that despite Plaintiff's claims, he was able to make his appointments. Further, PA-C Trammell testified that after reviewing all of Mathis' medical records, he never saw anything that connected his medical conditions to his traversing of the ramps. Trammell also testified that upon review of Mathis' denials to show up to his medical appointments, the denials were never related to the Cermak or RTU ramp. In his testimony, Mathis testified that he never missed an appointment. Even if we consider both ramps a service, program, or activity, Mathis never testifies that he was denied the ability to traverse the Cermak or RTU ramp.

Further, Mathis has failed to establish that he was discriminated against. He never testifies to any discrimination on the part of the CCSO. For the above reasons, Mathis has failed to prove that he was denied the benefits of any service program or activity.

## II. Plaintiffs cannot establish that any denial or discrimination was by reason of their disability

A. *Causation requires proof that the specific deviations-not preexisting conditions or distance traveled- caused Plaintiff's alleged harms.*

Plaintiffs must establish that the specific deviations from the ADA standards—not their preexisting medical conditions, not the distances they traveled, and not the overall difficulty of ambulating—caused them concrete, compensable injuries. *See H.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (stating that the ADA "requires proof of causation"). If Plaintiffs present only generalized testimony about pain and difficulty without establishing a causal link to the minor structural variances, no reasonable jury could find causation.

The evidence will show that Plaintiffs have preexisting conditions that explain their difficulties. Plaintiff Hernandez testified that his pain was caused by walking long distances generally, not due to traveling on the ramps, specifically. He testified that walking on the ramps merely "irritated" his leg, back, and shoulder, not that it caused a distinct injury or denied him access to any facility or service. Hernandez stated that he was, in fact, able to rest on the ramp. He stated that he could remember two occasions in which he used a cart, not that these were the only times he was able to utilize it. Hernandez further testified that officers told him that he needed a "medical script" for a wheelchair to travel long distances because they would not be able to take him in the cart all the time, not that they would refuse to transport him in the cart if he did not have a "medical script." Hernandez stated that the officers assisted him in the best way they could to get to his destination. He testified that he was never prevented from reaching an appointment, service, or destination. Even on occasions when he needed to stop and rest, he was still able to complete the trip and access the appointment or service.

Plaintiff Mathis admitted that the Cermak ramp never actually stopped or prevented him from accessing services or attending appointments. He stated that he was always able to get where he wanted to go, unless he "didn't feel like going over" due to his general knee pain.

Mathis testified that he told the correctional officers that he was experiencing pain in his foot, to which the officers suggested that he go to the doctor to be treated. Once Mathis told the officers that he was unable to complete the walk to the doctors, the officers arranged for Mathis to be transported. PA-C Trammell testified that when gout flares up, it can be really painful and affect walking. Mathis testified that the time when his gout flare up was really bad, he was taken to his medical appointment in a cart and was pushed in a wheelchair, so Mathis did not need to walk up the ramps.

If Plaintiffs cannot establish that the specific deviations—as opposed to their underlying conditions or the overall distances traveled—caused them harm, judgment as a matter of law is appropriate.

## III. Plaintiffs have not shown that denial or discrimination was intentional.

To recover damages on their claims under the disability statutes, Plaintiffs must produce evidence of "intentional conduct (and not mere negligence) by a named defendant." *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022). This means Plaintiffs must prove that Defendants acted with deliberate indifference, which requires a showing Defendants "*knew* that harm to a federally protected right was substantially likely and . . . *failed* to act on that likelihood.'" *Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020) (emphasis in original) (quoting *Lacy*, 897 F.3d at 862). In other words, Plaintiffs must prove "indifference that is a 'deliberate choice'" by Defendants. *Lange v. City of Oconto*, 28 F.4th 825, 841 (7th Cir. 2022) (quoting *Lacy*, 897 F.3d at 862). Plaintiffs do not have any evidence that Defendants knew that Plaintiffs' or any class members' rights would be violated.

### A. *Plaintiffs have not shown that Cook County acted with deliberate indifference.*

Plaintiffs have not shown that Cook County knew that a federally protected right was substantially likely and failed to act. Indeed, the Cermak ramp's original design plans called for the rise to be a compliant 30 inches. (Dx 32) Eric Davis, Deputy Director of Capital Planning and Policy for Cook County, testified that the 2022 survey of the Cermak ramp, which used a laser level, showed that the Cermak ramp was exactly 2.5 feet, in line with the original design plans. (DX 33 Page 001) It was only when Cook County proactively hired an outside contractor, Globetrotters Engineering Corporation (GEC), who used advanced LIDAR technology that Cook County does not possess, that it was discovered that the Cermak and RTU ramps were minimally out of compliance. (PX 1, 2).

The handrails were noncompliant because compliant handrails created a risk of strangulation. See, e.g., *Clark v. Cook Cty. Sheriff's Office*, No. 19 C 7131, 2025 U.S. Dist. LEXIS 156499, at *13–14 (N.D. Ill. Aug. 13, 2025) ("Far from deliberate indifference, the evidence shows that the Sheriff's Office was aware of the issue, researched the issue, tested different wheelchairs, considered its legal obligations with regard to detainees, and reached a well-thought-out conclusion that balanced the risks and benefits of using wheelchairs with removable armrests. Clark may disagree with that conclusion. But the Sheriff's Office was not deliberately indifferent."). Eric Davis testified that he believed the lack of handrails did not violate the ADA based on an exception to handrail use in the special context of jails. Further, he testified that after the Court ordered handrails, the County installed them to the best extent possible, besides the tight corners where they needed custom designed anti-ligature handrails. (PX 12). This shows that there was no failure to act by Cook County once there was sufficient knowledge that hand-railings needed to be added.

Plaintiffs may point to the two GEC reports, but these reports do not establish the requisite knowledge. First, the report on the RTU ramp was authored on April 1, 2024, after Plaintiffs filed their lawsuits. (PX 2, ¶ 1). The report on the Cermak ramp was authored on December 6, 2023, which was two weeks before Plaintiff Hernandez filed this lawsuit and months after Mr. Hernandez was released in May 2023. (PX 1, ¶ 1) Second, the two reports set forth only minor deviations that would not create any cognizable difference in mobility. The two reports do not establish that “harm to a federally protected right was substantially likely.” *Lacy*, 897 F.3d at 862.

During the time Mr. Hernandez was in the jail, the County did not have definitive information that the Cermak Ramp’s measurements were not compliant. Plaintiff’s may point to Ellen Stoner’s recommendations as proof that Defendants had notice. Eric Davis testified about Ellen Stoner’s recommendations and noted that they were based on a flawed analysis of the ramp, namely that she forgot to include a critical measurement for determining compliance: the rise of the ramp. Ms. Stoner said that the run of the Cermak ramp was off, but that measurement does not determine compliance. Notably, she did not measure the run of the ramp, she measured the length. Ms. Stoner’s recommendation did not provide notice of non-compliance. It indicated only that more information was needed, and that information was then gathered as part of a larger project involving other buildings on the jail compound.

For the RTU ramp, the related GEC report did not come out until April 2024. The last date Mr. Mathis was housed in the RTU and used the ramp was February 29, 2024, before the report came out. During the time Mr. Mathis was in jail, the County did not have any information that the RTU ramp’s measurements were not compliant.

Plaintiffs may also argue that the Cook County foreman who measured the ramp put the County on notice because there was an email with the results sent out which included Eric Davis and Sabrina Trevizo. Eric Davis testified that the first measurement of the ramps was done with blocks. Eric Davis testified that a subsequent email was sent by the foreman after the foreman measured the ramp with a laser level, which showed that the ramp complied with the 30-inch measurement required. This shows that Cook County further investigated the ramp and determined that it was in compliance with the ADA. Plaintiffs did not establish that the measurements by the foreman gave notice to the Sheriff's Office or Cook County.

Plaintiffs argued that Defendants knew that harm was substantially likely before the two GEC reports were authored. Defendants, and the record, dispute any such knowledge, but even assuming arguendo that Defendants had such knowledge, Plaintiffs cannot meet the second element of deliberate indifference that Defendants "failed to act on that likelihood." *Lacy*, 897 F.3d at 862. If Defendants had "failed" to act, then GEC would never have been retained, and the two reports would never have been authored. Carl Darr, Architect for GEC, testified that GEC was retained initially as part of a comprehensive, multi-contract program to assess the overall ADA/accessibility compliance of all its public safety facilities. The fact that Defendants had taken proactive steps to assess the Department of Corrections compound and remedy any deviations is the antithesis of deliberate indifference. Plaintiffs want to punish Defendants for doing the right thing. Plaintiffs do not have any evidence that Defendants failed to act in the face of any knowledge that harm to the rights of disabled persons was substantially likely. Cook County has not acted with deliberate indifference, and therefore, Plaintiffs may not be awarded damages.

B. *Plaintiffs have not shown that the Cook County Sheriff's Office acted with deliberate indifference.*

Plaintiffs have not shown that the Cook County Sheriff's Office ("CCSO") knew that a federally protected right was substantially likely and failed to act. Carl Darr testified that he only communicated with Cook County for the GEC Cermak Report and with attorneys for the GEC RTU report. (PX 1, 2). Plaintiff attempted to establish that Cook County Sheriff employees were present during the walkthroughs that GEC did while inspecting the ramp. Being present at walkthroughs does not equate to knowledge that the Sheriff's Office knew that a federal protected right was substantially likely. There was no connection made between the GEC reports and the CCSO. Plaintiffs published Mathis's grievances into evidence. (PX34, DX 23). Plaintiffs failed to establish that the grievances gave the Sheriff's Office any notice that the ramps were in violation of ADA. At most, it shows that Mathis had struggles going up the ramp.

Further, Plaintiffs did not establish that the CCSO failed to act. Lonnie Hollis, Assistant Executive Director at the Cook County Department of Corrections, testified that it is the policy of the CCSO to accommodate individuals in custody with disabilities. He also stated that he has never seen a detainee with a disability be denied help going up the Cermak or RTU ramps. Plaintiffs both testified to this, stating that the officers had consistently helped them go up the ramps to make it to any appointments. Sabrina Trevizo testified that officers were trained to use the ADA and that the CCDOC had 3 policies related to helping individuals with disabilities. (DX 27, 28, 29). Plaintiffs both testified to this, stating that the officers had consistently helped them go up the ramps to make it to any appointments.  This shows that the officers in CCDOC continually acted in accordance with its policy, to make sure they assisted detainees while going

up the ramp. The CCSO has not acted with deliberate indifference, and therefore, Plaintiffs may not be awarded damages.

## IV. Plaintiffs lack standing because they failed to meet their burden of showing they suffered an actual injury due to the alleged non-compliant ramps

As the parties invoking federal jurisdiction, Plaintiffs bear the burden of demonstrating they have standing to sue to remedy an alleged violation. *See TransUnion*, 594 U.S. at 430–31 ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing."); *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 623 (7th Cir. 2019) ("The burden of making this showing—of demonstrating the requisite injury to invoke federal jurisdiction—rests with the plaintiff."). Plaintiffs must meet this burden with evidence, not allegations. *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 284–85 (7th Cir. 2020).

Plaintiffs have failed to meet their burden because they have not submitted any evidence that they suffered a concrete and particularized injury that is traceable to the *alleged violations*, *i.e.*, non-compliant Cermak and RTU ramps, as opposed to traveling *any long distance*, even on level ground. To establish standing, a plaintiff must demonstrate: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) that the injury would likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Even assuming Plaintiffs experienced some difficulty navigating the ramps, they have not shown that such difficulty was caused by the ramp design as opposed to unrelated medical conditions or a lack of requested accommodations. Traceability requires more than a generalized complaint about facility design—it requires a causal link between the alleged barrier and a denied benefit or program. That link is missing here. See *Lujan*, 504 U.S. at 560 (stating that

"traceability" requires "a causal connection between the injury and the conduct complained of"). Remember, the alleged problems with the Cermak and RTU ramps are slight excesses in rise that are negligible when compared to the ramps' horizontal runs, measuring over 40 feet in length, and slight deviations in handrail and landing requirements.

During testimony, Plaintiffs provided no evidence of any injury caused by those deviations as opposed to their preexisting conditions and the same journey over level ground. Named plaintiffs must have standing to sue "at the time the complaint is filed." *Sosna v. Iowa*, 419 U.S. 393, 402 (1975). PA-C Trammel testified that arthritis is complicated and that some people may have a struggle going up a ramp while others are able to run a marathon. Both Hernandez and Mathis have arthritis and have not shown any evidence that their arthritis are traceable to going up and down the Cermak or RTU Ramp. If the plaintiffs "never had standing" to bring a lawsuit, "federal jurisdiction never attached," regardless of whether a class action was later certified. *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998).

Plaintiffs have failed to present any evidence establishing they suffered an Article III injury or have standing to bring this claim. Plaintiffs have not presented evidence that they suffered "a concrete and particularized injury," see *Spuhler*, 983 F.3d at 284, that is traceable to the slight deviations of the Cermak and RTU ramps as opposed to just walking long distances. "The standard for demonstrating the jurisdictional facts at summary judgment is whether the plaintiffs have supplied evidence of 'specific facts' that, taken as true, show each element of standing." *Id.* at 286 (quoting *Lujan*, 504 U.S. at 561). Plaintiffs have completely failed to supply the required evidence. As such, Plaintiffs lack standing to bring this claim.

## CONCLUSION

Because a reasonable factfinder could not find Defendants liable, this Court should enter judgment as a matter of law in Defendants' favor pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Hernandez and Mathis have failed to produce evidence enough for a jury to find in their favor. Plaintiffs have failed to prove that they are qualified individuals with a disability, they were denied the benefits of services, programs, or activities or otherwise subjected to discrimination, and that any denial or discrimination occurred because of their disability. Plaintiffs have also failed to present evidence that any alleged denial or discrimination from Defendants was intentional.

Respectfully submitted,

August 19, 2026

Samuel Branum
Johnson & Bell Ltd.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
T: +1 (312) 372-0770
E: Branums@jbltd.com

Maceo Dillard III
Jordan Yurchich
Cook County State's Attorney's Office
50 West Washington Street
Suite 500
Chicago, Illinois 60602
T: +1 (312) 603-1931
E: maceo.dillard@cookcountysao.org
E: jordan.yurchich@cookcountysao.org
Attorneys for Defendants