**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CUAUHTEMOC HERNANDEZ and WILLIAM MATHIS,<br><br>Plaintiffs, | Case No. 23 cv 16970 |
| v. | Honorable Sunil R. Harjani |
| THOMAS DART and COOK COUNTY, ILLINOIS,<br><br>Defendants. | |

**AMENDED MEMORANDUM OPINION AND ORDER**

Plaintiffs Cuauhtemoc Hernandez and William Mathis, former detainees of the Cook County Department of Corrections, bring this class action lawsuit on their own behalf and on behalf of three classes against Sheriff Thomas Dart and Cook County, Illinois. Plaintiffs are cane users and allege they were denied access to the Cook County Jail because the jail's ramps do not comply with the federal accessibility standards. Before the Court are the parties' cross-motions for summary judgment and Defendants' motion for leave to file their first amended affirmative defenses. For the reasons stated below, Plaintiffs' motion for partial summary judgment [121] is granted, and Defendants' motion for summary judgment [138] is denied. Because the Court finds that Plaintiffs have standing to bring their claims, and because the Cermak ramp and the Residential Treatment Unit (RTU) east tunnel ramp are not compliant with the federal accessibility standards, Plaintiffs' motion for partial summary judgment is granted, and Defendants' motion is denied on the class claims. Further, Plaintiffs raise genuine disputes of material fact on their individual claims, and thus Defendants' motion for summary judgment on those claims is denied. Finally, Defendants have not explained their delay in seeking to amend their answers until after summary judgment had been fully briefed, and, as a result, Defendants' motion for leave to file first amended affirmative defenses [168] is denied.

**Background**

This case involves ramps at Cook County Jail that allegedly fail to comply with the federal accessibility standards. The relevant ramps are the Cermak ramp and the RTU east tunnel ramp. Plaintiffs Mathis and Hernandez, the two named plaintiffs and class representatives, allege claims under Section 202 of the Americans with Disabilities Act (ADA), 42 U.S.C. §12132, Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), and the Illinois Civil Rights Remedies Restoration Act, 775 ILCS 60/1 *et seq*. The Court previously certified the following classes and class representatives:

- Class 1: Pursuant to Rule 23(b)(2), all inmates at Cook County Jail prescribed a cane, crutch, or walker by a jail medical provider for a period of more than two weeks and who traversed either the Residential Treatment Unit east tunnel and/or the Cermak ramp. Mathis was also certified as the class representative. *See* [72] at 6. Because Defendants have since reconfigured the Cermak ramp, and all parties agree that it now complies with the federal accessibility standards, Plaintiffs moved to terminate the Cermak 23(b)(2) class as moot after the motions for summary judgment had been fully briefed. The Court granted the motion. *See* [165] [166].

- Class 2: Pursuant to Rule 23(b)(3), all Cook County Jail detainees who have been assigned a cane, crutch, or walker by a jail medical provider, for a period of more than two weeks, and traversed the Residential Treatment Unit east tunnel ramp from February 13, 2022 to the date of judgment, to resolve the Rule 23(c)(4) issue of whether the east tunnel ramp complied with the structural standards required by the ADA and Rehabilitation Act at that time. Mathis was certified as the class representative. *See* [72] at 6.

- Class 3: Pursuant to Rule 23(b)(3), all Cook County Jail detainees who have been assigned a cane, crutch, or walker by a jail medical provider, for a period of more than two weeks, and traversed the Cermak ramp from December 20, 2021 to the date of judgment, to resolve the Rule 23(c)(4) issue of whether the Cermak ramp complied with the structural standards required by the ADA and Rehabilitation Act at that time. Hernandez was certified as the class representative. *See id.* After the filing of summary judgment, Plaintiffs moved to close this class as of November 14, 2025, because Defendants have since reconfigured the Cermak ramp, and the parties agree that it complies with the federal accessibility standards. The Court granted the motion. *See* [165] [166]. So the class period is from December 20, 2021, to November 14, 2025.

In the summary judgment motions pending before the Court, Plaintiffs move for partial summary judgment on the certified issues for the Rule 23(b)(3) classes. Defendants cross-move for summary judgment on the same issues, and also move for summary judgment on Plaintiffs' individual ADA claims.

Before addressing the parties' motions, the Court addresses Defendants' argument that by only moving for summary judgment with respect to the ADA claims, Plaintiffs have waived summary judgment on the Rehabilitation Act claims. Plaintiffs dispute that the Rehabilitation Act claims are waived, but they concede that because claims under the ADA and Rehabilitation Act are coextensive, and all parties agree that Title II of the ADA applies, the court need not separately decide whether Defendants receive federal funds, a requirement under the Rehabilitation Act.

Plaintiffs are correct that the relief available to them under the ADA and the Rehabilitation Act is coextensive. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). And "the analysis governing each statute is the same except that the Rehabilitation Act includes as an

additional element the receipt of federal funds." *Id.* In *Jaros*, the plaintiff brought claims under the ADA and the Rehabilitation Act. The Seventh Circuit concluded that, as a practical matter, because the Rehabilitation Act indisputably applied, it could "dispense with the ADA" and need not address the "thorny question of sovereign immunity" because the plaintiff could only have one recovery. *Id.* at 672; *see also McDaniel v. Syed*, 115 F.4th 805, 821 n.9 (7th Cir. 2024) (noting the plaintiff "could recover damages under either the ADA or the Rehabilitation Act but not both"). Because neither party disputes that the ADA applies, the Court agrees that it need not address the claims under the Rehabilitation Act.

## Facts

The following facts are undisputed unless otherwise indicated.[1] Hernandez, a former detainee at the Cook County Jail, had a medical alert to use a cane at all times from February 2, 2022, to August 30, 2022, and from May 10, 2023, to May 11, 2023. DRPSOF ¶ 1. Mathis, also a former detainee at the Cook County Jail, had a medical alert to use a cane for long distances from October 16, 2023, until at least August 15, 2024. *Id.* ¶ 2.

### I. Cermak Ramp

Relevant to this case, the Cermak Health Services Facility was constructed after 1993. *Id.* ¶ 7. The Cermak ramp connects the Cermak building to a pedestrian/material access tunnel that serves the Cermak Health Services Facility at the basement level. *Id.* ¶¶ 6, 8. In 2023, Cook County hired a third-party architectural/engineering firm to assess ADA compliance at the Cermak Health Services facility, including the Cermak ramp. *Id.* ¶ 19; PRDSOAF ¶ 7. The firm authored a report on the Cermak ramp on December 6, 2023. PRDSOAF ¶ 9. The firm found that the Cermak ramp had a rise of 32.4 inches and the handrails did not extend 12 inches beyond the ramp. DRPSOF ¶¶ 20, 22.[2] The Court notes that the Defendants have since renovated the Cermak ramp, and the parties agree that as of November 14, 2025, the area of the former Cermak ramp now complies with the ADA. While detained at the Cook County Jail, both Hernandez and Mathis traversed the Cermak ramp.

---

[1] The Court cites to Defendants' response to Plaintiffs' statement of facts as "DRPSOF," Plaintiffs' response to Defendants' statement of additional facts as "PRDSOAF," and Defendants' response to Plaintiffs' statement of additional facts as "DRPSOAF."

[2] Defendants object that these facts lack foundation and call for a legal conclusion, but don't otherwise dispute that these were the architectural/engineering firm's assessments. The Court overrules the objections. It is undisputed that the architectural/engineering firm analyzed the ramp using advanced technology (called LIDAR) to document the physical conditions in three-dimensional form. PRDSOAF ¶ 8. There is thus sufficient foundation for the measurements. In addition, the measurements and observations about the ramp do not call for a legal conclusion, but rather provide factual information for the Court to consider.

## II. RTU East Tunnel Ramp

The RTU was constructed after 2010 and contains an east tunnel ramp that leads directly to the Cermak ramp. *Id.* ¶ 24.[3] The RTU east tunnel ramp includes two-sloped floor runs separated by an intermediate landing, and the runs are both steeper than 1:20 and therefore qualify as ramps under the ADA. *Id.* ¶ 26. The same architectural/engineering firm that inspected the Cermak ramp also inspected the RTU east tunnel ramp in January 2024 and authored its report on the RTU east tunnel ramp on April 1, 2024. *Id.* ¶ 27; PRDSOAF ¶¶ 19, 20. The firm found that the top landing of the RTU east tunnel ramp is 9 inches in length and the intermediate landing is 57 inches in length. DRPSOF ¶ 28.[4] The firm also found that the last 4.27 feet at the top of the upper portion of the ramp has a slope of 1:11, and the last 1 foot at the very bottom of the lower portion of the ramp has a slope of 1:8.5. *Id.* The firm determined that the handrails extend 7.4 inches beyond the lower ramp and 11.3 inches beyond the upper ramp. *Id.* As of August 15, 2024, the Cook County Board of Commissioners has not approved any funds to reconstruct the RTU east tunnel ramp to comply with the ADA. *Id.* ¶ 34. While detained at the Cook County Jail, Mathis traversed the RTU east tunnel ramp.[5]

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The standards for summary judgment remain the same when addressing cross-motions for summary judgment: the court must "construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). "The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC. v. Int'l Union of Operating Eng'rs, Local Union 150, ALF-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

---

[3] Defendants object that the 2010 ADA Standards do not apply to this ramp, but otherwise do not dispute this fact. Defendants' objection regarding the 2010 ADA Standards is addressed below, but the date regarding construction and the location of the RTU east tunnel ramp are deemed admitted.

[4] Defendants object that these facts lack foundation and call for a legal conclusion, but otherwise don't dispute that these were the firm's assessments. For the same reasons noted above with regard to the Cermak ramp measurements, the objections are overruled.

[5] The Court notes that only Mathis brings a claim based on the RTU east tunnel ramp.

## Discussion

### I. Standing

As a threshold matter, Defendants argue that neither Plaintiff has standing to bring their claims. Defendants maintain that "Plaintiffs have failed to meet their burden because they have not submitted any evidence that they suffered a concrete and particularized injury that is traceable to the *alleged violations*[.]" [141] at 9 (emphasis in original). Defendants further claim that Plaintiffs "offer no evidence that the *design* of the Cermak or RTU east tunnel ramps (as opposed to their preexisting conditions) caused them any concrete, particularized injury." *Id.* at 10 (emphasis in original). In response, Plaintiffs argue that they each testified to the pain and difficulty they experience when traversing the ramp.

To have Article III standing, a plaintiff must have "(1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). When discussing standing in the ADA context, the Seventh Circuit has noted that "[a] public entity's unjustified exclusion of people with disabilities can amount to discrimination under the ADA." *Straw v. Vill. of Streamwood, Illinois*, 734 F. App'x 344, 348 (7th Cir. 2018) (unpublished); *see also Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018) ("Perhaps the most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services.").

Plaintiffs each testified to the pain they experienced when traversing the allegedly non-compliant ramps.[6] Hernandez testified that he felt knee pain every time he walked through the Cermak ramp and that the pain was because there was no "resting spot, and the fact that [the ramp] was too steep and too long." [122-22] at 53:23–54:15; 92:23–93:7.[7] Mathis similarly testified that he experienced pain and shortness of breath when traversing the RTU east tunnel ramp, that his knees popped in and out of place, and that he experienced the same issues with pain and shortness of breath when traversing the Cermak ramp. [122-26] at 24:19–25:7; 26:24–27:7.[8] Case law from the Seventh Circuit shows that physical harms constitute "actual injuries" sufficient to confer standing. *See Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1190 (7th Cir. 2021) ("Tangible harms, like physical or monetary harms, 'readily qualify as concrete injuries.'" (quoting

---

[6] Plaintiffs offer various facts about their experiences traversing the ramps, with supporting citations to their deposition testimony. Defendants raise many objections in response to that testimony. Defendants' principal objection is that the cited testimony does not support the offered fact. To the extent the Court relies on those facts or testimony, the Court has reviewed the cited testimony and finds the testimony supports the facts offered by Plaintiff, so the Court overrules Defendants' objections.

[7] Defendants object that this testimony lacks foundation, is based on speculation, and that Hernandez has not been disclosed as an expert. The objections are overruled. Hernandez testified about his personal experience when traversing the ramp.

[8] Defendants object that much of this testimony lacks foundation, is based on speculation, and that Mathis has not been disclosed as an expert. The objections are overruled. Mathis testified about his personal experience when traversing the ramp. Defendants also object that the testimony about his knee pain is immaterial and irrelevant, but the Court finds that such testimony is clearly material and relevant to Mathis' individual ADA claim and the issue of whether he experienced an injury sufficient to confer standing.

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)). Defendants attempt to minimize Plaintiffs' testimony by claiming that their injuries are not significant enough to confer standing, but there is standing "when the plaintiff suffers an actual or impending injury, no matter how small." *Brandt v. Vill. of Winnetka, Ill.*, 612 F.3d 647, 649 (7th Cir. 2010); *see also Walker v. Dart*, 2025 WL 2624577, at *3 (N.D. Ill. Sept. 11, 2025) ("Walker attests he has suffered physical injury such as uncontrollable muscle spasms and pain in his hands and shoulder from traversing the allegedly non-compliant ramp. This is sufficient evidence of an injury-in-fact.").

Defendants also raise a traceability argument. Defendants maintain that traceability "requires more than a generalized complaint about facility design—it requires a causal link between the alleged barrier and a denied benefit or program." [141] at 11. When it comes to traceability, the Supreme Court has explained that "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, (1976)) (alterations in original). But, "[p]roximate causation is not a requirement of Article III standing." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n. 6 (2014).

Here, Plaintiffs offer evidence that they experienced physical pain specifically when traversing the allegedly non-compliant ramps. Thus, the pain is sufficiently traceable to the ramps for standing. Whether that pain was caused "by [the ramps'] deviations as opposed to their preexisting conditions" is an issue of proximate cause, not standing, that Defendants are free to raise at trial. *See Taylor v. City of Milford*, 10 F.4th 800, 812 (7th Cir. 2021) ("Causation is fundamentally a jury question.").

## II. Certified Issue as to the Cermak Ramp

The parties have filed cross-motions for summary judgment on the certified issue of whether the Cermak ramp complied with the structural standards required by the ADA. It is undisputed that Cermak was constructed after 1993, and neither party disputes that the 1991 ADA Standards apply to the Cermak ramp. *See* 28 C.F.R. § 35.151(c). Under the 1991 Standards, the rise of a ramp run can be a maximum of 30 inches. 1991 Standards § 4.8.2. In addition, a ramp with a rise greater than 6 inches must have handrails, and the handrails must extend 12 inches beyond the ramp. *Id.* § 4.8.5.

The assessment conducted by Defendants' architectural/engineering firm indisputably shows that the Cermak ramp did not comply with the 1991 ADA Standards. The Cermak ramp had a rise of 32.4 inches, which is 2.4 inches over the maximum permitted by the 1991 Standards. It is also undisputed that the handrails did not extend 12 inches beyond the ramp. Based on these undisputed facts, no reasonable jury could find that the Cermak ramp complied with the structural standards set by the ADA.

Defendants raise four arguments in opposition to Plaintiffs' motion and in support of their own motion, but none have merit. First, Defendants argue that the ramp did not violate the ADA because it "substantially complied" with the technical specifications. Defendants cite no binding authority recognizing that "substantial compliance" is a defense under the ADA, and the Court is

aware of none. A review of the text of the implementing regulations belies such a defense. There are two exceptions to full compliance with the requirements for buildings constructed after January 26, 1992—structural impracticability and equivalent access. *See* 28 C.F.R. § 35.151(a)(2)(i) ("Full compliance with the requirements of this section is not required where a public entity can demonstrate that it is structurally impracticable to meet the requirements."); *id.* § 35.151(c)(1) ("Departures from particular requirements of [the federal accessibility standards] by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided."). The Court is aware of no similar exception for "substantial compliance" in the text of the implementing regulations, and Defendants have not provided one.

Defendants cite two out-of-circuit district court opinions to support the notion that "substantial compliance" is a defense under the ADA: *Lonberg v. City of Riverside*, 2000 WL 34602547 (C.D. Cal. June 12, 2000) and *Bacal v. Se. Pennsylvania Transp. Auth.*, 1998 WL 324907 (E.D. Pa. May 29, 1998), *as corrected* (June 3, 1998). However, neither of these cases are binding or persuasive authority to this Court, and neither actually applied a "substantial compliance" standard in the context of determining whether structural accessibility standards were violated. More recent case law from the Ninth Circuit suggests that no such defense is available, notwithstanding the *Lonberg* case cited by Defendants. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945–46 (9th Cir. 2011) ("We have held that 'obedience to the spirit of the ADA' does not excuse noncompliance with the [ADA Accessibility Guidelines'] requirements . . . [the] requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches."); *Long v. Coast Resorts, Inc.*, 267 F.3d 918, 923 (9th Cir. 2001) (noting the "only statutory defense for noncompliance" is "structural impracticability").

Second, Defendants argue that any non-compliance is *de minimis*. As with the "substantial compliance" defense, the Court is unaware of any binding or persuasive authority recognizing a *de minimis* defense under the ADA. In fact, courts in this district have previously rejected similar *de minimis* defenses. *See Walker v. Dart*, 2025 WL 3496580, at *3 (N.D. Ill. Dec. 5, 2025); *Crockwell v. Dart*, 2016 WL 4493456, at *3 (N.D. Ill. Aug. 26, 2016). Such a defense strikes the Court as inapplicable and inconsistent with the ADA, given the precise technical requirements of the standards and the references to "full compliance" in the text of the implementing regulations. *See, e.g.*, 1991 Standards; 2010 Standards; 28 C.F.R. § 35.151(a)(2).[9]

Third, Defendants argue that installing handrails that extend 12 inches beyond the Cermak ramp is technically infeasible because "anti-ligature handrails are a necessary safety precaution," but the special fitting that allows for handrails to extend past the ramp is not available for anti-ligature handrails. [141] at 14–15. These facts are disputed by Plaintiffs. *See* PRDSOAF ¶¶ 14, 15.

---

[9] The Court notes that in response to many of Plaintiffs' facts, Defendants object and argue that the ramps substantially comply with the ADA and that any technical non-compliance is *de minimis*. To the extent the Court relies on those facts in this Opinion, those objections are overruled for the reasons stated in this section regarding the applicability of those defenses.

But even if the disputes are resolved in Defendants' favor, Defendants have not established the facts necessary to support their argument. Under the implementing regulations, a "technically infeasible" alteration is defined, in relevant part, as "something that has little likelihood of being accomplished because existing structural conditions would require removing or altering a loadbearing member that is an essential part of the structural frame; or because other existing physical or site constraints prohibit modification or addition of elements, spaces, or features that are in full and strict compliance with the minimum requirements." 36 C.F.R. § Pt. 1191, App. B. In considering this defense, the Seventh Circuit has noted that "questions of technical infeasibility turn on detailed factual determinations about the effects of construction on the structural integrity of altered facilities." *Lacy*, 897 F.3d at 869. Defendants offer no evidence that installing anti-ligature handrails would affect the structural integrity of Cermak, which is the relevant consideration for the technical feasibility exception under the ADA. *See id.* Thus, the facts offered by Defendants fail to raise a genuine, material dispute of fact, nor would they allow a reasonable jury to conclude that installing ADA-compliant handrails was technically infeasible.

Finally, Defendants raise an equivalent access defense in response to Plaintiffs' individual claims.[10] As referenced above, Title II of the ADA states that "[d]epartures from particular requirements of [the federal accessibility standards] by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided." 28 C.F.R. § 35.151(c)(1), (2). This means that an entity may "permissibly deviate from the ADA's structural requirements" by use of an alternative that provides "equivalent or greater access than would full compliance with the ADA's structural requirements." *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1069 (N.D. Ill. 2016) (citing 28 C.F.R. § 35.151(c)(1)). Defendants argue that they provided "functional alternatives—staff assistance, wheelchairs, and carts—to ensure access" on the ramps. [141] at 21. Plaintiffs dispute various aspects of Defendants' purported policy and object to Defendants' facts on evidentiary grounds. But even assuming the jail has such a policy of providing staff assistance, wheelchairs, and carts, it does not constitute equivalent access.

Although the Seventh Circuit has not addressed the burden of proof on this issue, the Court agrees with the other district courts that have concluded that defendants bear the burden of showing equivalent access. *See, e.g.*, *Spence v. Dart*, 2020 WL 4677053, at *2 (N.D. Ill. Aug. 12, 2020) ("As indicated by the language of this regulation, a public entity that does not comply with the ADA standards has the burden of demonstrating that an alternative method provides equivalent access."); *Cherry v. City Coll. of San Francisco*, 2006 WL 6602454, at *5 (N.D. Cal. Jan. 12, 2006) ("Since the regulations themselves state that equivalence must be 'clearly evident,' the entity should bear the burden of proof on this issue."). Defendants' proffered policy is to have inmates request assistance from staff to either push them in a wheelchair or drive them across the ramp in a cart. Courts in this district have consistently found that when the alternative involves an inmate requesting and relying on the assistance of others, the alternative does not constitute equivalent access. *See, e.g.*, *Walker*, 2025 WL 3496580, at *3 (policy of having correctional officers available

[10] Defendants only raise this argument in the context of their motion for summary judgment on Plaintiffs' individual claims. However, the Court finds it is relevant to the class claims as well and addresses it here.

to assist wheelchair users up and down a non-compliant ramp does not constitute equivalent access); *Clemons*, 168 F. Supp. 3d at 1066–69 (providing access to around-the-clock nursing care in lieu of ADA-compliant fixtures is not equivalent access); *Roberts v. Dart*, 2018 WL 1184735, at *4 (N.D. Ill. Mar. 7, 2018) (jail did not provide equivalent access when it housed an inmate in a non-compliant cell and required him to request assistance to access a toilet with grab bars). This Court has previously come to the same conclusion. *See Craig v. Hughes*, 2025 WL 3688016, at *5–8 (N.D. Ill. Dec. 19, 2025). For the same reason, the Court finds that the disputed policy does not provide equivalent access.

Having rejected Defendants' arguments, the Court concludes that Defendants fail to raise a genuine dispute of material fact with regard to the Cermak ramp, and no reasonable jury could find that the Cermak ramp complied with the ADA during the relevant time period. The Court grants summary judgment in favor of the Cermak Rule 23(b)(3) class and finds that the Cermak ramp did not comply with the structural standards required by the ADA for the time period of December 20, 2021, to November 14, 2025.

## III. Certified Issue as to the RTU East Tunnel Ramp

The parties have also filed cross-motions for summary judgment on the certified issue of whether the RTU east tunnel ramp complies with the structural standards required by the ADA. It is undisputed that RTU was constructed after 2010. However, the parties dispute which standards apply, and neither party has provided the court with the precise date that the RTU was constructed. This is important because determining which version of the standards applies depends on the date a building was constructed. A building that was constructed after July 26, 1992, but prior to September 15, 2010, must comply with the 1991 Standards or the Uniform Federal Accessibility Standards (UFAS). *See* 28 C.F.R. § 35.151(c)(1). A building constructed on or after September 15, 2010, and before March 15, 2012, must comply with the 1991 Standards, UFAS, or the 2010 Standards. *Id.* § 35.151(c)(2). A building constructed on or after March 15, 2012, must comply with the 2010 Standards. *Id.* § 35.151(c)(3). However, this is a non-issue because the 1991 and 2010 Standards have materially identical requirements when it comes to the allegedly non-compliant aspects.

It is undisputed that the RTU east ramp has one landing that is 9 inches in length and another landing that is 57 inches in length. Under both the 1991 and 2010 Standards, the landing length must be a minimum of 60 inches. *See* 1991 Standards § 4.8.4; 2010 Standards § 405.7.3. It is also undisputed that the last 4.27 feet at the top of the upper portion of the ramp has a slope of 1:11, and the last 1 foot at the very bottom of the lower portion of the ramp has a slope of 1:8.5. Under both standards, the slope of a ramp cannot be steeper than 1:12. *See* 1991 Standards § 4.8.2; 2010 Standards § 405.2. Finally, the handrails of the RTU east ramp only extend 7.4 inches beyond the lower ramp and 11.3 inches beyond the upper ramp. Under both standards, handrails must extend at least 12 inches beyond the ramp. *See* 1991 Standards § 4.8.5; 2010 Standards §§ 405.8; 505.10.1.

As noted above, Defendants advance various arguments about substantial compliance, *de minimis* non-compliance, technical infeasibility, and equivalent access that have been rejected by

the Court. Thus, on this record, there are no disputes of material fact as to the non-compliant aspects of the RTU ramp, and no reasonable jury could find that the RTU east ramp complies with the structural standards of the ADA. Accordingly, the Court grants summary judgment in favor of the RTU Rule 23(b)(3) class and finds that the RTU east tunnel ramp has not complied with the structural standards required by the ADA from February 13, 2022, to the date of judgment.

## IV. Defendants' Motion for Summary Judgment on Plaintiffs' Individual Claims

Defendants move for summary judgment on Plaintiffs' individual ADA claims. Hernandez brings a claim concerning the Cermak ramp, while Mathis brings a claim about both the Cermak ramp and the RTU east tunnel ramp. To prevail on an ADA claim, a plaintiff must show "that he is a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (internal quotation marks omitted). To obtain compensatory damages, a plaintiff must establish intentional discrimination. "[A] plaintiff can establish intentional discrimination in a Title II damage action by showing deliberate indifference." *Lacy*, 897 F.3d at 863. The Seventh Circuit has adopted a two-part standard for deliberate indifference: "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* (internal quotation marks omitted). Defendants argue that neither Plaintiff has shown a denial of access to services, programs, or activities, or a refusal of reasonable accommodations. Defendants further argue that there is no evidence to establish that Defendants acted with deliberate indifference. The Court addresses each of the Plaintiffs' claims below.

### a. Denial of Access

Defendants first argue that Plaintiffs received reasonable accommodations and that there is no evidence that either Plaintiff missed medical appointments, was unable to participate in housing opportunities, or was excluded from activities. As aptly noted by another district court, "The line between a mere inconvenience and a more serious denial of access is not a bright one." *Edwards v. Dart*, 2022 WL 3543474, at *6 (N.D. Ill. Aug. 17, 2022). However, case law from the Seventh Circuit provides guidance on the line between mere inconvenience and actionable denial of access.

On the inconvenience side of the line is *Wagoner v. Lemmon*, 778 F.3d 586 (7th Cir. 2015). There, the Seventh Circuit affirmed summary judgment for the Indiana Department of Corrections where the plaintiff alleged that his wheelchair was improperly repaired and that he was transported in an ill-equipped van. *Id.* at 592–93. In affirming the district court, the Seventh Circuit noted, "these claims are a poor fit for the statutes Wagoner has invoked. He does not allege, for example, that the failure to provide him with an adequate wheelchair backrest or a wheelchair-ready van (however inappropriate those failings might otherwise have been) denied him access to any services or programs." *Id.* at 593. The Seventh Circuit found that the plaintiff's strongest argument was that "by failing to repair his wheelchair, [the defendant] impeded his access to facilities available to non-disabled prisoners." *Id.* However, because the plaintiff did not assert that the was denied access to programs and said "only that he was inconvenienced with longer waits and humiliation, as when he had to crawl off the regular van because it did not accommodate his wheelchair," his claims were insufficient. *Id.* The Court concluded that such allegations, although

disconcerting, "do not amount to a denial of services within the meaning of either" the ADA or the Rehabilitation Act. *Id.*

On the other end of the spectrum, the Seventh Circuit in *Love v. Westville Corr. Ctr.*, 103 F.3d 558 (7th Cir. 1996) found that the plaintiff was "denied all access to some programs and activities, and his access to others was severely limited" when he was housed in the infirmary unit. *Id.* at 560. Because certain programs were not offered in the plaintiff's unit, such as church services, substance abuse programs, and college classes, but were offered in the main quarters of the prison, the Court found that it was "clear" that the plaintiff was denied access to programs and activities. *Id.*

With the Seventh Circuit's guidance in mind, the Court concludes that there is evidence from which a reasonable jury could conclude that Hernandez was denied access in violation of the ADA because of the non-compliant ramp. While it is undisputed that Hernandez testified that he was never prevented from reaching an appointment, service, or destination, *see* PRDSOAF ¶ 35, he also testified that he experienced pain when traversing the ramp. According to Hernandez, this was all due to there not being a "resting spot, and the fact that [the ramp] was too steep and too long." [122-22] at 92:23–93:7.

The Court finds that a jury could find that the noncompliant ramp was more than an "inconvenience" that prevented Hernandez from accessing the jail on the same basis as non-disabled detainees. He testified that he experienced difficulties traversing the ramp due to pain. A reasonable jury could find that a disabled person need not experience pain to access a service, and that forcing that person to do so amounts to a denial of access. *See Mendoza v. Dart*, 638 F. Supp. 3d 898, 901 (N.D. Ill. 2022) ("As for the primary obstacle plaintiff identifies at the Leighton Courthouse—the narrow gate that he could cross only by lifting himself out of his wheelchair—a jury crediting his testimony could likewise conclude that the pain and discomfort he experienced was more than an inconvenience.").

Similarly, the Court finds that Mathis has also raised a genuine dispute of material fact as to whether he was denied access when traversing the Cermak and RTU ramps. There is a genuine dispute as to whether Mathis missed medical appointments due to the non-compliant ramps, and both sides offer conflicting interpretations of Mathis' testimony. *See* DRPSOF ¶ 59; PRDSOAF ¶¶ 36, 37. But even if he didn't miss any medical appointments, Mathis testified that "going up" the ramp is the most troubling part and that other than general pain, he also experienced shortness of breath, pain in his knee, and his knees popped in and out of place. [122-26] at 24:19–25:7. He suffered the same difficulties on both the Cermak ramp and the RTU east tunnel ramp. *Id.* at 26:24–27:7. When viewing this evidence in the light most favorable to Mathis, the Court finds that a reasonable jury could find that having to traverse non-compliant ramps, which caused pain, shortness of breath, and his knees to pop in and out of place, was more than a mere "inconvenience" and constituted a denial of access. *See Mendoza*, 638 F. Supp. 3d at 901.

b. **Deliberate Indifference – Cermak Ramp**

As to deliberate indifference, Defendants argue that Plaintiffs have no evidence that Defendants knew that Plaintiffs' rights would be violated. The Court notes that it is undisputed that Defendants were aware that Hernandez used a cane, since he had a medical alert to use a cane at all times. Similarly, Defendants were aware that Mathis used a cane for long distances, since he had a medical alert for that as well. Concerning the Cermak ramp, Plaintiffs respond that Defendants were on notice of the ramp's noncompliance as early as 2018 when an architect hired by Cook County identified the ramp as non-ADA-compliant in a report. *See* DRPSOF ¶¶ 15, 16.[11] Defendants offer a different 2022 survey that says the opposite. This is a quintessential dispute of fact that precludes summary judgment.

Because there is a genuine dispute of material fact as to whether (and when) Defendants had knowledge that the Cermak ramp was not ADA-compliant, there is also a triable issue as to whether Defendants failed to act. Defendants argue that evidence of their recent efforts to assess the ramps and efforts to make the Cermak ramp compliant is evidence that they were not deliberately indifferent. However, there is a dispute of fact as to whether Defendants may have known that the ramp was not ADA-compliant as early as 2018, and a reasonable jury could find that failing to take action for years constitutes deliberate indifference. For the foregoing reasons, Defendants' motion for summary judgment on the Plaintiffs' individual claims regarding the Cermak ramp is denied.

c. **Deliberate Indifference – RTU East Tunnel Ramp**

Like with the claims regarding the Cermak ramp, Defendants argue there is no evidence in the record to establish deliberate indifference about the RTU east tunnel ramp. First, Defendants argue there is no evidence that they were aware that the RTU ramp was not ADA-compliant. In response, Plaintiffs argue that Defendants have known that the RTU ramp is not ADA-compliant since the architectural/engineering firm issued its report about the RTU east tunnel ramp on April 1, 2024.[12] Such evidence generally can be used as evidence of Defendants' knowledge. *See, e.g.*, *Daniel v. Cook Cnty.*, 833 F.3d 728, 735–36 (7th Cir. 2016) (monitor report detailing jail's progress in remedying systemic healthcare problems could be offered to establish that sheriff was on notice of the problems described in the report); *Bowers v. Dart*, 2017 WL 4339799, at *8 (N.D. Ill. Sept. 29, 2017), *aff'd*, 1 F.4th 513 (7th Cir. 2021) (Department of Justice architectural survey and report that identified non-ADA-compliant showers was evidence of knowledge before plaintiff's incarceration).

[11] Defendants object that the architect's conclusions and recommendations lack foundation and call for a legal conclusion. Defendants also dispute the accuracy of the architect's conclusions. It is undisputed that the architect toured the facility, so there is foundation for her measurements and findings about the Cermak ramp. The Court overrules the objections on those grounds. As to other objections, the Court only considers this as evidence that Defendants had notice of potential ADA compliance issues in 2018, not for the truth of the architect's conclusion that the ramp violates the ADA. Thus, the additional objections are overruled.

[12] Defendants contend that this report was authored after each of the Plaintiffs filed their respective lawsuits, but they do not explain or cite any case law for why it can nevertheless be offered as evidence of Defendants' knowledge as of April 1, 2024.

That being said, Mathis' incarceration began prior to April 1, 2024. As evidence that Defendants were on notice that the RTU east tunnel ramp was not compliant before the 2024 report, Plaintiffs offer an email from the General Manager of Cook County's Facility Management Department as well as prior grievances from other inmates about the ramp. Defendants do not specifically respond to this evidence.

First, Plaintiffs point to a 2021 email from TJ Tyrrell, the General Manager of Cook County's Facility Management Department. In the email, Tyrrell provides measurements for the Cermak ramp. *See* [122-7]. He writes:

> Also, I checked the ramp from the same tunnel going into the basement of Division 8- this appears to be slightly out of compliance. I can show you or Sabrina this as well. Looks to be like whomever did the concrete work is to blame for this. Might want to add this one in as well if county is having someone make these ADA Compliant. Let me know if you need anything further.

*Id.* Plaintiffs maintain that this part of the email refers to the RTU east tunnel ramp. Defendants dispute this. In their response to Plaintiffs' statement of facts, Defendants object that this email lacks foundation and is based on speculation because Tyrrell did not identify the ramp and did not indicate that any measurements were taken. *See* DRPSOF ¶ 25.

On the one hand, the Court agrees with Defendants that the email does not clearly state that the unidentified ramp is the RTU east tunnel ramp. However, the RTU east tunnel ramp leads directly to the Cermak ramp, which is on the basement level, so it is consistent with the description of the ramp in Tyrrell's email. Tyrrell also wrote that he "checked" the other ramp after taking measurements of the Cermak ramp, which suggests that he took measurements or otherwise similarly evaluated the other ramp. When viewing this evidence in the light most favorable to Plaintiffs, as the Court must at this stage, the Court concludes that a reasonable jury could find that the email refers to the RTU east tunnel ramp, and as such, it raises a triable issue as to whether Defendants had notice that the RTU east tunnel ramp was not ADA-compliant as early as 2021.

In addition, Plaintiffs argue that grievances from inmates who use wheelchairs, canes, crutches, and walkers about traversing the RTU east tunnel ramp raise a genuine dispute of material fact on Defendants' knowledge. Plaintiffs point to three grievances from other inmates that implicate the RTU ramp – an August 12, 2021, grievance [143-6], a December 12, 2022, grievance [143-7], and a January 14, 2024, grievance [143-8]. These grievances identify the ramps in the location of Cermak and RTU and explain, quite clearly, the difficulties that inmates with disabilities experienced when traversing the ramps. The Court finds that these grievances are additional evidence from which a jury could conclude that Defendants had knowledge that the RTU east tunnel ramp failed to comply with the ADA before and during Mathis' incarceration. Furthermore, the Court notes that Mathis filed his own grievance about the inaccessibility of the RTU ramp. *See* [42-5].

Although Defendants do not specifically address the grievances in their reply brief, they raise hearsay objections in their response to Plaintiffs' statement of additional facts. Those objections are overruled. The grievances are offered to show that Defendants were on notice of

issues with the ramps, not to establish that there were, in fact, issues with the ramps. "Evidence that is 'used only to show notice' is not hearsay." *Harden v. Marion Cnty. Sheriff's Dep't*, 799 F.3d 857, 861 (7th Cir. 2015) (quoting *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.,* 518 F.3d 459, 468 (7th Cir. 2008).

When viewing the evidence in the light most favorable to Mathis, the Court finds that the email and the grievances are sufficient evidence from which a jury could find that Defendants had knowledge that the RTU east tunnel ramp was not ADA-compliant. Mathis has thus raised a genuine dispute of material fact on the knowledge prong of deliberate indifference.

It is undisputed that there is no current plan to renovate the RTU east tunnel ramp, nor has the Cook County Board of Commissioners approved any funds to reconstruct the RTU east tunnel ramp to comply with the ADA. On this record, the court finds a reasonable jury could determine that Defendants failed to act despite knowledge that a harm to a federally protected right was substantially likely, precluding summary judgment for Defendants. For the foregoing reasons, Defendants' motion for summary judgment on Mathis' individual claim regarding the RTU east tunnel ramp is denied.

## V. Motion for Leave to Amend

After the parties completed briefing on the cross-motions for summary judgment, Defendants filed a motion to amend their answer to add four affirmative defenses under the Illinois Tort Immunity Act as well as a defense under Section 1997e(e) of the Prison Litigation Reform Act (PLRA). *See* [168]. The Court briefly recounts the procedural history relevant to this motion. After Plaintiffs' individual cases were consolidated into this case, Plaintiffs filed a consolidated amended complaint, and thereafter Defendants filed a motion to dismiss raising the Illinois Tort Immunity Act affirmative defenses. *See* [43], [54]. The Court declined to dismiss the complaint based on the affirmative defenses, but the denial of Defendants' motion on that basis was "without prejudice to defendants' raising it at a later time after the close of discovery." *See* [70] at 2. After the Court issued its Order on Defendants' motion to dismiss, Defendants answered the complaint. *See* [75], [76]. While they asserted certain affirmative defenses, they did not assert any Illinois Tort Immunity Act affirmative defenses or the defense under the PLRA they now seek to add.

As a threshold matter, Defendants now seek to assert a defense pursuant to Section 1997e(e) of the PLRA. *See* [168-1] at 3. The text of the PLRA states, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]" 42 U.S.C. § 1997e(e). The Court notes that circuit courts are divided on whether the physical injury requirement of the PLRA is properly considered an "affirmative" defense. *Compare Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008) ("[W]e conclude that the limitation of complaints by prisoners for emotional injury, 42 U.S.C. § 1997e(e), provides an affirmative defense, not a jurisdictional limitation.") *with Walker v. Schult*, 45 F.4th 598, 615 (2d Cir. 2022) ("Finally, and more fundamentally, we disagree with the district court's view that § 1997e(e) was intended to provide an 'affirmative' defense.'"). The Seventh Circuit has not definitively weighed in on the issue, and neither party has raised this issue before the Court. As explained in more detail below, because Defendants have not explained the reason for the delay in

seeking to amend their answers nor demonstrated that Plaintiffs will experience no undue prejudice, Defendants' motion for leave to amend is denied. However, if Defendants intend to raise a defense under Section 1997e(e) at a later stage of this case, the Court will grant leave for the parties to address the issue of whether such a defense is truly an "affirmative" defense that must be pled in an answer.

The Illinois Tort Immunity Act, on the other hand, does provide affirmative defenses. *See Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 370, 799 N.E.2d 273, 280 (2003) ("Because the immunities afforded to governmental entities operate as an affirmative defense, those entities bear the burden of properly raising and proving their immunity under the Act."). Because Defendants failed to raise these affirmative defenses in their answer, the affirmative defenses have been forfeited.[13] *See* Fed. R. Civ. P. 8(c); *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019) ("A defendant's failure to plead an affirmative defense may result in a waiver of the defense if the defendant has relinquished it knowingly and intelligently, or forfeiture if the defendant merely failed to preserve the defense by pleading it."). However, the Seventh Circuit has cautioned that the "rule that forfeits an affirmative defense not pleaded in the answer (or by an earlier motion) is, we want to make clear, not to be applied rigidly." *Matthews v. Wis. Energy Corp., Inc.*, 642 F.3d 565, 570 (7th Cir. 2011) (quoting *Herremans v. Carrera Designs, Inc.,* 157 F.3d 1118, 1123 (7th Cir.1998)). "The failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it." *Id.* (quoting *Carter v. United States,* 333 F.3d 791, 796 (7th Cir. 2003)).

Federal Rule of Civil Procedure 15 counsels that a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).[14] Amendments should be allowed absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, (1962). And while amendments to pleadings are not prohibited after the filing of summary judgment, the Seventh Circuit has emphasized that "[a]llowing a last-minute defense that introduces . . . new factual and legal issues after discovery has closed raises the costs of litigation and allows the party that was at least negligent in failing to plead its defense to take unfair advantage of its opposing party." *Reed*, 915 F.3d at 482.

Defendants have not provided a reason for their delay, nor have they met their burden of showing that Plaintiffs would experience no undue prejudice. The motion is therefore denied. The Court agrees with Plaintiffs that Defendants have filed a "boilerplate" motion to amend. Defendants have not explained their delay in seeking leave to amend their answers. Discovery has been closed since at least May 2025, *see* [107], and Defendants were aware of the applicability of the Illinois Tort Immunity Act affirmative defenses before answering the complaint. They also do

[13] To the extent the physical injury requirement of the PLRA is also an affirmative defense, it too would be forfeited.

[14] Defendants argue that the motion should be decided under Rule 15. Plaintiffs do not dispute that Rule 15 applies, and neither party suggests that the "good cause" standard of Rule 16 applies. The Court thus proceeds with the analysis under Rule 15.

not contend that they were unaware of the applicability of the PLRA defense, and the Court notes that they asserted a different affirmative defense under the PLRA in their answers. This case is therefore unlike those cases where defendants discover the applicability of an affirmative defense only later in the litigation. *Cf. Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997) ("The pertinence of a particular defense may only become apparent after discovery, for example, in which case it would be reasonable for the court to permit the belated assertion of that defense."). Although the parties argue over the interpretation of the Court's Order on the motion to dismiss, nothing in the Order prevented Defendants from asserting either the Illinois Tort Immunity Act affirmative defenses or the PLRA defense in their answers or moving to amend their answers earlier in the litigation. Since Defendants attempt to do so now, that also demonstrates that they don't truly believe that it was unnecessary. Given the delay and the lack of explanation from the Defendants to excuse the delay, the Court is well within its discretion in denying the motion. *See, e.g., Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945 (7th Cir. 2024) ("Without a sound excuse for the undue delay, the district court did not abuse its discretion when it denied Flowers leave to amend her complaint."); *Kleinhans v. Lisle Sav. Profit Sharing Tr.*, 810 F.2d 618, 625 (7th Cir. 1987) (concluding that "[i]n view of [the plaintiff's] failure to adequately explain the unreasonable delay in moving to amend his complaint . . . when all of the information necessary to stating such a claim has been available to him for eighteen months, we agree with the judgment and reasoning of the district court" in denying the motion for leave to amend); *see also Reed*, 915 F.3d at 484 (concluding the district court abused its discretion in considering an affirmative defense in part because the defendant "has offered no credible excuse for its delay, and the normal rule is forfeiture of unpleaded defenses").

Further, Defendants maintain that "Plaintiffs do not identify any evidence they were unable to obtain in discovery to rebut Defendants' affirmative defenses." [172] at 3. However, the "party seeking an amendment carries the burden of proof in showing that no prejudice will result to the non-moving party." *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994). Defendants have failed to meet their burden. Defendants argue that the defenses are based on the same evidence as Plaintiffs' claims, so Plaintiffs need no new evidence, but they only address the evidence for two of the affirmative defenses under the Illinois Tort Immunity Act in their reply brief (which is too late and constitutes waiver) and also ignore the others, including the defense under the PLRA. *See Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived."). In any event, discovery is closed, and it was reasonable for Plaintiffs to conclude that Defendants abandoned those defenses and structure their discovery without considering those defenses. For these reasons, the Court exercises its broad discretion and denies Defendants' motion to amend.

## Conclusion

For the reasons stated above, Plaintiffs' motion for partial summary judgment [121] is granted, and Defendants' motion for summary judgment [138] is denied. Defendants' motion to amend [168] is denied.

**SO ORDERED.**

Dated: August 20, 2026
*Nunc Pro Tunc* February 4, 2026

Sunil R. Harjani
United States District Judge