**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CUAUHTEMOC HERNANDEZ and WILLIAM MATHIS, | ) | |
| *Plaintiffs,* | ) | Case No. 23-cv-16970 |
| -*vs*- | ) | |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) | Judge Sunil R. Harjani<br>Magistrate Judge Keri L. Holleb Hotaling |
| *Defendants.* | ) | |

**<u>DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)</u>**

Defendants, THOMAS J. DART, in his official capacity as Sheriff of Cook County, and COOK COUNTY, ILLINOIS, by their attorney EILEEN O'NEILL BURKE, State's Attorney of Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD., pursuant to Federal Rule of Civil Procedure 12(b)(1), move to dismiss this action with prejudice for lack of subject matter jurisdiction. In support of their motion, Defendants state as follows:

## INTRODUCTION

A federal court has an "ongoing obligation to assure itself of its jurisdiction." *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022). This case presents an important jurisdictional question: whether Plaintiffs proved at trial that the particular ramp conditions challenged in this action caused them any concrete harm. They did not.

Plaintiffs proved that they had preexisting medical conditions and experienced pain while walking long distances and traversing inclined surfaces. But a compliant ramp would still have required Plaintiffs to walk a long distance on an incline. The relevant question is not whether Plaintiffs experienced pain somewhere along their path of travel. It is whether the few additional

inches of rise and the handrail conditions caused a concrete injury that Plaintiffs would not have experienced on a fully compliant ramp.

The trial evidence provides no basis for that finding. Plaintiff Cuauhtemoc Hernandez admitted that walking long distances caused him pain whether or not a ramp was involved and that he felt pain regardless of whether he was using a ramp. He nevertheless attended every medical appointment, was never prevented from going to court, and was never denied access to a jail service because of the ramps. He never fell on those ramps. Plaintiff William Mathis similarly admitted that the ramps never prevented him from accessing services or attending appointments and that he never sought treatment for an injury caused by the ramps. He testified that he was always able to reach his destination unless he chose not to go because his knee was bothering him. Mathis attributed his pain to distance, incline, arthritis, knee problems, and gout, and acknowledged that on some days he could traverse the ramps without difficulty.

Plaintiffs' testimony therefore describes pain associated with distance, incline, exertion, arthritis, a torn meniscus, and gout—conditions that would have existed while traversing a fully compliant ramp. Neither Plaintiff identified pain, a fall, a missed appointment, or a denied service caused by the specific measurements that exceeded the structural standards. Plaintiffs offered no evidence establishing that the Cermak ramp's 2.4 inches of excess rise or the RTU ramp's excess rise of 1.93 and 2.47 inches caused their pain. Neither Plaintiff offered evidence separating the effects of those minor deviations from the effects of the compliant portions of the ramps, the overall path of travel, or his underlying conditions.

A statutory or regulatory violation does not automatically establish Article III injury; a plaintiff must prove concrete personal harm beyond the violation itself. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Plaintiffs also must prove that their asserted injuries are fairly traceable to

the challenged conditions and likely to be redressed by the requested relief. *Id.* at 338. Because Plaintiffs did not prove that the deviations in the ramps' measurements caused their asserted injuries—or that correcting those deviations would have prevented those injuries—the action must be dismissed for lack of subject matter jurisdiction.

## BACKGROUND

### I. Procedural History.

Plaintiffs are former Cook County Department of Corrections detainees who used canes. (Am. Compl. ¶¶ 8–9, 15–16, ECF No. 43.) They brought this action under the Americans with Disabilities Act alleging claims related to the Cermak and RTU east tunnel ramps. (*Id.* ¶ 1.) On November 27, 2024, the Court certified issue classes concerning whether those ramps complied with federal structural standards. (Memo. Op. & Order at 6, ECF No. 72.) On February 4, 2026, the Court granted partial summary judgment finding that the measurements of the Cermak and RTU east tunnel ramps did not comply with federal structural standards. (Memo. Op. & Order at 1, 6–10, ECF No. 175.) On August 20, 2026, the Court amended its order to conform the language of the order with the underlying undisputed facts. (Order, ECF No. 236; Am. Memo. Op. & Order, ECF No. 238.)

### II. Ramp Measurements.

The measurement deviations the Court identified as noncompliant were limited. The Cermak ramp had 2.4 inches of excess rise distributed across a 43.64-foot run. (*Id.* at 3; Pls.' Resp. to Defs' SOAF ¶ 10, ECF No. 142.) For the RTU ramp, the last 4.27 feet at the top of the upper portion of the ramp had a slope of 1:11, and the last 1 foot at the very bottom of the lower portion of the ramp had a slope of 1:8.5. (Am. Memo. Op. & Order at 9.) Under the structural standards, the limit for a compliant slope is 1:12. (*Id.*) The deviations in the rise that correspond to the slight excess in slope are measured in inches: the upper portion had 1.93 inches of excess rise across

25.95 feet, and the lower portion had 2.47 inches of excess rise across 30.4 feet. (Pls.' Resp. to Defs' SOAF ¶ 23.) Regarding the handrails, the Court found that the Cermak ramp handrails did not extend 12 inches beyond the ramp, and the RTU ramp handrails only extended 7.4 inches beyond the lower ramp and 11.3 inches beyond the upper ramp. (Am. Memo. Op. & Order at 6, 9.) Under the structural standards, handrails must extend at least 12 inches beyond the ramp. (*Id.*)

## III. Plaintiffs' Trial Testimony.

### A. Hernandez's Testimony.

Hernandez entered the jail with a bad right shoulder, a bad back, and a torn meniscus in his right knee, and he used a cane. (Ex. A, Tr. Trans. 3:21–4:11.) He testified that walking up the Cermak ramp was painful because of his torn meniscus and back condition. (*Id.* at 11:18–12:17.) He also sought a wheelchair for court appearances and other "long distances," describing the trip from Division 10 to Cermak as a long distance for him. (*Id.* at 7:23–8:2, 17:19–18:4.) On cross-examination, Hernandez confirmed that he felt pain for days after walking any long distance. (*Id.* at 45:14–46:15.) He further admitted that walking long distances caused pain whether or not a ramp was involved and that he felt pain regardless of whether he used a ramp. (*Id.*) He acknowledged that his broader concern was traveling throughout the jail generally. (*Id.* at 48:4–13.)

The Cermak ramp did not deny Hernandez access to care or another service. (*Id.* at 38:6–23.) Hernandez testified that he attended every medical appointment, was never prevented from going to court, and was never denied access to a jail service because of the ramp. (*Id.*) He never fell on the Cermak ramp. (*Id.* at 42:16–20.) He could stop and rest while traversing it, used a motorized cart on an occasion, and acknowledged that officers assisted him in reaching his destination. (*Id.* at 39:13–22, 50:7–15.)

### B. Mathis's Testimony

Mathis testified that he had gout, arthritis in his knee, that his knee popped and caused pain, and that his shortness of breath was associated with a brain tumor, weight gain, and physical movement. (*Id.* at 53:24–54:14, 66:6–10, 77:8–12.) He described his complaint as involving the "distance" and traveling up and down at an angle. (*Id.* at 88:7–19.) He acknowledged that some days he could traverse the ramps without problems and could carry his lunch while doing so. (*Id.*)

Mathis admitted that the Cermak ramp never prevented him from accessing services or attending appointments. (*Id.* at 77:13–78:11.) He also admitted that he never sought treatment for an injury caused by the ramps. (*Id.*) He confirmed that he was always able to reach his destination unless he chose not to go because his knee was bothering him. (*Id.*) He never fell on either ramp and could traverse both ramps while carrying a lunch tray or paperwork. (*Id.* at 87:17–88:6.)

During a severe gout flare on December 10, 2023, Mathis could not place pressure on his foot or walk to medical care. (*Id.* at 69:24–70:15, 70:25–71:10.) Staff obtained a wheelchair, transported him by cart to Cermak, and later transported him by wheelchair to his living unit. (*Id.*) Mathis admitted that his symptoms became severe enough to prevent him from walking any distance, and when that occurred, staff transported him. (*Id.* at 83:7–9.)

## LEGAL STANDARD

Article III standing requires a plaintiff to establish a concrete and particularized injury in fact, a causal connection between that injury and the challenged conduct, and a likelihood that a favorable decision will redress the injury. *Spuhler v. State Collection Serv.*, 983 F.3d 282, 285 (7th Cir. 2020). Those requirements are indispensable parts of the plaintiff's case, not merely pleading requirements. *Id.*

Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021); *Keep Chi. Livable v. City of*

*Chi.*, 913 F.3d 618, 623 (7th Cir. 2019). When standing is challenged as a factual matter under Rule 12(b)(1), plaintiffs must prove it by a preponderance of the evidence. *Spuhler*, 983 F.3d 282, 285. The Court may consider evidence beyond the allegations, weigh that evidence, and determine whether subject matter jurisdiction exists. *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). The plaintiff's allegations receive no presumption of correctness once competent jurisdictional evidence is presented. *Id.*

Standing must exist not only at the time of filing but must be supported throughout the litigation process, including at trial and even on appeal. *See Big Shoulders Capital LLC v. San Luis & Rio Grande R.R.*, 13 F.4th 560, 567–68 (7th Cir. 2021) ("A party must have standing in every stage of the litigation, including on appeal."). At the trial stage, controverted jurisdictional facts must be supported by the evidence adduced at trial. *TransUnion*, 594 U.S. at 431. When the evidence calls the truth of the jurisdictional allegations into question, the Court must resolve that factual dispute. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020).

## ARGUMENT

### I. Plaintiffs Did Not Prove a Concrete Injury Caused by the Identified Ramp Deviations.

Article III requires an injury that affects the plaintiff personally and individually and is actual or imminent rather than conjectural or hypothetical. *Access Living of Metro. Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 613 (7th Cir. 2020). A statutory violation alone does not satisfy that requirement; even when a statute grants a right, the plaintiff still must show concrete harm. *Spokeo*, 578 U.S. at 341. A bare procedural violation, "divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. *Id.*; *Mack v. Resurgent Capital Servs., L.P.*, 70 F.4th 395, 403 (7th Cir. 2023).

That distinction is decisive here. The Court's determination that the ramps departed from structural standards does not itself prove that either Plaintiff suffered a concrete injury from those

departures. Plaintiffs had to prove a personal injury from the challenged conditions, not merely that they encountered a structure containing technical deviations.

The evidence showed that Hernandez experienced pain from walking long distances regardless of whether a ramp was involved. (Ex. A, Tr. Trans. 45:14–46:15.) It showed that Mathis experienced pain from arthritis, gout, distance, and incline, and that some days he could traverse the ramps without problems. (*Id.* at 53:24–54:14, 66:6–10, 88:7–19.) Those facts may establish that ambulation was difficult for Plaintiffs. They do not establish injury from the particular inches of excess rise, the minor slope deviations at the very top and bottom of the ramp, or the identified handrail conditions.

Plaintiffs also failed to identify a resulting denial of access. Hernandez attended every medical appointment and was never prevented from going to court or denied a jail service because of the Cermak ramp. (*Id.* at 38:6–23.) Mathis admitted that the Cermak ramp never prevented access to services or appointments. (*Id.* at 77:13–78:11.) Neither Plaintiff fell while traversing the ramp. (*Id.* at 42:16–20, 87:17–88:6.)

The evidence therefore does not distinguish Plaintiffs' alleged harm from the pain they would have experienced while walking the same general distance and incline on a fully compliant ramp. Without proof of a personal injury attributable to the challenged conditions, Plaintiffs have shown only that they encountered ramps that did not conform to every structural measurement. However, a bare violation divorced from concrete harm is insufficient for Article III standing. *Spokeo*, 578 U.S. at 341; *Mack*, 70 F.4th at 403.

## II. Plaintiffs Did Not Prove That Their Alleged Injuries Were Fairly Traceable to the Minor Deviations.

Traceability requires Plaintiffs to connect their injuries to the conduct they challenge. *Foster v. PNC Bank*, 52 F.4th 315, 322 (7th Cir. 2022). An asserted injury does not satisfy Article

III when the evidence shows that it preceded, arose independently of, or otherwise was not caused by the challenged conduct. *Id.*; *J.B. v. Woodard*, 997 F.3d 714, 720 (7th Cir. 2021); *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 518 (7th Cir. 2010).

The challenged conduct here is not the existence of ramps, the length of Plaintiffs' overall path of travel, or the requirement that detainees walk on ramps to attend appointments. It is the presence of specific deviations: 2.4 inches of excess rise over the Cermak ramp's 43.64-foot run, variances of 1.93 and 2.47 inches over the RTU ramp's lengthy runs; and identified handrail conditions.

At trial, Plaintiffs had the burden of proving that those particular deviations caused their alleged injuries. They did not do so. No testimony identified any harm caused by the additional few inches of rise for each ramp. The slope of the RTU ramp was fully compliant almost the entire length of the upper and lower portions of the ramp. (Am. Memo. Op. & Order at 9.) Only the last 4.27 feet at the top of the upper portion of the ramp and the last 1 foot at the very bottom of the lower portion of the ramp had slope variances. (*Id.*)

No evidence separated the exertion attributable to those measurements from the exertion required by the remainder of each ramp. And no evidence showed that Plaintiffs would have avoided the same pain had each ramp met the structural standards precisely. Instead, Plaintiffs described features that a compliant ramp would retain. Hernandez complained of walking long distances and acknowledged pain even without a ramp. (Tr. Trans. 7:23–8:2, 17:19–18:4, 45:14–46:15.) Mathis complained about distance and traveling at an angle. (*Id.* at 88:7–19.) A compliant ramp would still have length, incline, and require ambulation. Plaintiffs offered no evidentiary basis to find that reducing the total rise by the identified inches would have prevented their pain

rather than leaving the same complaints attributable to distance, incline, exertion, and their preexisting conditions.

Plaintiffs' underlying conditions further break the asserted causal link. Hernandez entered the jail with a torn meniscus, a bad back, and a bad shoulder. (*Id.* at 3:21–4:11.) Mathis attributed his symptoms to arthritis, gout, knee problems, weight, and movement. (*Id.* at 53:24–54:14, 66:6–10, 77:8–12.) Mathis's symptoms varied by day, and on some days he traversed the ramps without difficulty. (*Id.* at 88:7–19.) That variability is attributable to his underlying conditions, not the fixed measurements of the ramps.

Plaintiffs' handrail theory is equally unsupported. Hernandez testified that his bad right shoulder affected his use of handrails and acknowledged that he did not file a grievance specifically concerning handrails. (*Id.* at 47:19–24.) Mathis admitted that he could traverse the Cermak ramp without using the handrails. (*Id.* at 87:14–16.) Neither Plaintiff testified that a fall, missed appointment, or injury was caused by the handrail conditions.

Plaintiffs may argue that they experienced pain while they were physically on the ramps. But temporal and spatial correlation does not establish that the noncompliant measurements caused that pain. The evidence must connect the asserted injury to the challenged conduct in a personalized way; generalizations about pain untethered to the measurement deviations are insufficient. *Access Living*, 958 F.3d at 613. Because Plaintiffs did not isolate any harm caused by the specific deviations, traceability rests on speculation rather than proof.

The causation defect becomes clear by considering the condition Plaintiffs say the law required: a fully compliant ramp. Plaintiffs' own testimony does not establish that their alleged injuries would have been different under that counterfactual. Hernandez would still have walked a long distance, and he admitted that walking long distances caused pain whether or not a ramp

was involved. (Tr. Trans. 45:14–46:15.) Mathis would still have walked a lengthy inclined route, and he expressly identified any distance and incline as the sources of his complaint while admitting that some days he could traverse the ramps without any issues at all. (*Id.* at 88:7–19.)

Thus, even accepting Plaintiffs' descriptions of pain, the evidence does not show that compliance would have prevented it. Plaintiffs did not quantify any incremental exertion caused by the excess rise. They did not identify a symptom appearing only on the noncompliant portion of a ramp. They did not compare their experience on the challenged ramps with their experience on a compliant ramp of comparable length. And they did not establish that correcting the identified handrail conditions would have changed their ability to traverse the ramps.

Article III requires more than the possibility that the challenged measurements contributed to Plaintiffs' discomfort. A plaintiff must establish each standing element with the degree of evidence required at the current stage of litigation. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Plaintiffs' failure to separate injury caused by the deviations from injury caused by conditions common to a compliant ramp defeats their burden of proving standing at trial with the degree of evidence required. *See id.*

## III. Plaintiffs Did Not Prove Redressability Because Correcting the Deviations Would Not Remedy Their Alleged Injuries.

Redressability requires a likelihood—not speculation—that a favorable decision will remedy the plaintiff's injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 567 (1992). A declaration that conduct violated the law does not establish standing when the requested relief would not remedy the plaintiff's personal injury. *Id.* at 568.

Plaintiffs did not prove that bringing the ramps into precise compliance with the technical measurements would have prevented or reduced their alleged pain. Hernandez's pain from walking long distances with a torn meniscus, back condition, and shoulder condition would remain. (Tr.

Trans. 3:21–4:11, 11:18–12:17, 45:14–46:15.) Mathis's arthritis, gout, knee pain, and difficulty walking long distances would remain. (*Id.* at 53:24–54:14, 66:6–10, 88:7–19.) The need to traverse distance and incline would also remain because a compliant ramp is still a ramp.

Without proof that the challenged deviations caused concrete harm, the damages award Plaintiffs sought would only have compensated Plaintiffs for technical noncompliance rather than for an injury traceable to that noncompliance. Article III does not permit a plaintiff to proceed based solely on a statutory violation unaccompanied by concrete harm. *Spokeo*, 578 U.S. at 341; *Mack*, 70 F.4th at 403.

**IV. Plaintiffs' Encounters with the Ramps Do Not Dispense with the Required Proof of Harm.**

Plaintiffs may contend that personally encountering noncompliant ramps necessarily establishes standing. However, encountering the ramps is not causation, and it is not evidence of concrete harm associated with the challenged deviations. Their burden was to prove that the particular conditions challenged in this case personally caused or imminently threatened concrete harm. Their testimony established only that walking long distances and traversing inclined surfaces could be painful because of their medical conditions.

Nor does the Court's earlier summary judgment findings resolve this post-trial inquiry. When jurisdictional facts are factually challenged, Plaintiffs must supply proof "with the manner and degree of evidence required at the successive stages of the litigation." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561. At the post-trial stage, the Court must weigh the evidence and determine for itself whether subject matter jurisdiction exists. *Apex Dig.*, 572 F.3d at 444. The trial record does not establish injury caused by the identified deviations in the ramps' measurements. Plaintiffs failed to meet their burden of proof at trial to establish Article III standing, and the case must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Thomas Dart, in his official capacity as Sheriff of Cook County, and Cook County, Illinois, respectfully request that the Court dismiss this action with prejudice under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and grant such other relief the Court deems appropriate and just.

Respectfully submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

Dated: November 20, 2026

/s/ *Samuel D. Branum*
Special Assistant State's Attorney

Samuel D. Branum
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770
branums@jbltd.com